# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VINCENT MITCHELL and SHAWNTESSA GUILLORY-CAILLIER, individually and on behalf of all others similarly situated, | **CASE NO. _____** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY DEMAND** |
| PROGRESS SOFTWARE CORPORATION, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs VINCENT MITCHELL and SHAWNTESSA GUILLORY-CAILLIER ("Plaintiffs") bring this Class Action Complaint ("Complaint") against Defendant PROGRESS SOFTWARE CORPORATION, ("PSC" or "Defendant") as individuals and on behalf of all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This Class Action arises from a recent cyberattack resulting in a data breach of sensitive information in the possession and custody and/or control of Defendant (the "Data Breach").

2.      The Data Breach resulted in unauthorized disclosure, exfiltration, and theft of consumers' highly personal information, including names, Social Security numbers, dates of birth, addresses, demographic information, driver's license numbers, vehicle registration numbers, and financial information, ("personally identifying information" or "PII").

3. PSC is a software company offering a range of products and services to government and corporate entities across the country and around the world, including cloud hosting and secure file transfer services such as MOVEit file transfer and MOVEit cloud.

4. PSC's breach differs from typical data breaches because it affects consumers who had no relationship with PSC, never sought one, and never consented to PSC collecting and storing their information.

5. PSC sourced their information from third parties, stored it on PSC's systems, and assumed a duty to protect it, advertising that it "put in place physical, electronic, and managerial procedures designed to help prevent unauthorized access, to maintain data security, and to use correctly the Information we collect online."[1] But PSC never implemented the security safeguards needed despite acknowledging their importance.

6. On information and belief, PSC was notified of a system vulnerability in its MOVEit cloud on May 28, 2023.[2]

7. On or about May 31, 2023, PSC posted a notice on its website confirming a recently discovered SQL injection vulnerability related to its MOVEit Transfer and MOVEit Cloud file transfer services resulting from a breach in its network and systems that may have been exploited by cybercriminals from as far back as 2021.

8. Despite the enormity of the breach, PSC has not yet began sent direct notice to those impacted by the Data Breach, though many of its customers, including the Louisiana Office of

---

[1] Privacy Policy, PSC, https://www.progress.com/legal/privacy-policy (last visited June 21, 2023).
[2] Hackers use flaw in popular file transfer tool to steal data, Reuters, https://www.reuters.com/technology/hackers-use-flaw-popular-file-transfer-tool-steal-data-researchers-say-2023-06-02/ (last visited June 21, 2023).

Motor Vehicles[3], have begun notifying individuals, including Plaintiffs and Class Members, that their PII has been compromised as a result of the PSC Data Breach.

9.      PSC continues to delay notification of the Data Breach to its victims even though Plaintiffs and at least 6 million Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

10.      PSC is actively obfuscating the breach details, nature of the breach and the threat it posted—refusing to tell its consumers who are impacted, how many people were impacted, how the breach happened, or why PSC has delayed notifying its victims that hackers had gained access to highly sensitive PII.

11.      Defendant's failure to timely detect and report the Data Breach made its consumers vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

12.      Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

13.      In failing to adequately protect Plaintiffs' and the Class's PII, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state and federal law and harmed an unknown number of its consumers.

---

[3] Major Cyber Attack at OMV Vendor, Louisianans Should Act Urgently to Protect Their Identities, Office of the Governor, https://gov.louisiana.gov/index.cfm/newsroom/detail/4158 (last visited June 21, 2023)

14. Plaintiffs and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiffs and members of the proposed Class trusted Defendant with their PII. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

15. Plaintiffs Vincent Mitchell and Shawntessa Guillory-Caillier are Data Breach victims.

16. Accordingly, Plaintiffs, on their own behalf and on behalf of a class of similarly situated individuals, bring this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

17. The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before this data breach, consumers' private information was exactly that—private. Not anymore. Now, consumers' private information is forever exposed and unsecure.

## PARTIES

18. Plaintiff, Vincent Mitchell, is a natural person and citizen of Louisiana, where he intends to remain. Plaintiff Mitchell has had a driver's license issued by the State of Louisiana since approximately 2013 and a State of Louisiana identification card since 2022, and thus he is a Data Breach victim.

19. Plaintiff, Shawntessa Guillory-Caillier, is a natural person and citizen of Louisiana, where she intends to remain. Plaintiff Guillory-Caillier has had a driver's license issued by the State of Louisiana since approximately 2002, and thus she is a Data Breach victim.

20. Defendant, PSC, is a Massachusetts Corporation, with its principal place of business at 15 Wayside Road, Suite 400, Burlington, Massachusetts 01803.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class. Plaintiffs and Defendant are citizens of different states.

22.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District and does substantial business in this District.

23.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

*PSC*

24.     PSC considers itself "the experienced, trusted provider of products designed with you, our customers, in mind", boasting that one of its values is to "uphold trust" of its clients and consumers.[4] PSC touts a total annual revenue of 602 million.[5]

25.     As part of its business, Defendant receives and maintains the PII of thousands of consumers (such as, *inter alia*, its clients' consumers) In collecting and maintaining PII, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiffs and Class members themselves took reasonable steps to secure their PII.

26.     Indeed, PSC boasts that it "employs industry standard security measures to ensure the security of information" that it collects, promising that "any Personal Information about you that we handle will only be accessible by those Progress personnel who have a reason to do so."[6]

---

[4] About, Progress, https://www.progress.com/company (last visited June 21, 2023).
[5] PSC Revenue, Zippia, https://www.zippia.com/progress-software-careers-9392/revenue/ (last visited June 21, 2023).
[6] Privacy Policy, PSC, https://www.progress.com/legal/privacy-policy (last visited June 21, 2023).

27.     In collecting and maintaining consumers' PII, PSC agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their PII.

28.     Despite recognizing its duty to do so, on information and belief, PSC has not implemented reasonably cybersecurity safeguards or policies to protect its consumers' PII or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, PSC leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to consumers' PII.

***The Data Breach***

29.     Plaintiffs are unsure how PSC got their information but assumes that Louisiana's Office of Motor Vehicles provided PSC with her personal information.

30.     On information and belief, Defendant collects and maintains consumers' PII in its computer systems.

31.     In collecting and maintaining PII, Defendant implicitly agrees that it will safeguard the data using reasonable means according to its internal policies, as well as state and federal law.

32.     According to its web page regarding MOVEit Transfer and MOVEit Cloud Vulnerability, PSC discovered "a vulnerability in MOVEit Transfer and MOVEit Cloud (CVE-2023-34362) that could lead to escalated privileges and potential unauthorized access to the environment" on May 31, 2023. Following an internal investigation, PSC discovered "additional vulnerabilities that could potentially be used by a bad actor to stage an exploit. These newly

discovered vulnerabilities are distinct from the previously reported vulnerability shared on May 31, 2023".[7]

33.    In other words, PSC's investigation revealed that Defendant's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its consumers' highly sensitive PII.

34.    On information and belief, the notorious Clop ransomware gang claimed responsibility for the cyberattack, exploiting the MOVEit Transfer and MOVEit Cloud vulnerability for nefarious purposes. Clop is one of the most active ransomware actors, having breached over 130 organizations alone through a similar file transfer tool vulnerability.[8] PSC, a "leading" software company providing file transfer services, knew or should have known of the tactics that groups like Clop employ.

35.    With the PII secured and stolen by Clop, the hackers then purportedly issued a ransom demand to PSC. However, PSC has provided no public information on the ransom demand or payment.

36.    On information and belief, Clop threatened to name all companies whose customers' PII was stolen in the Data Breach, stating that names would be added to their data leak site on June 14 if negotiations did not occur. Additionally, Clop stated that if the extortion demand

---

[7]    MOVEit Transfer and MOVEit Cloud Vulnerability, Progress Security Center, https://www.progress.com/security/moveit-transfer-and-moveit-cloud-vulnerability (last visited June 21, 2023).
[8]    Clop ransomware hack of Fortra GoAnywhere MFT hits 1M CHS patients, SC Medica, https://www.scmagazine.com/news/ransomware/clop-ransomware-hack-of-fortra-goanywhere-mft-hits-1m-chs-patients (last visited June 21, 2023).

is not paid, it would begin leaking all data obtained in the Data Breach, including PII onto its site on June 21st.[9]

37.     Defendant continues to delay notifying its victims about the Data Breach, despite Clop's threat to leak the PII it obtained through the Data Breach onto the dark web. To date, Defendant has not yet begun sending out Data Breach Notices.

38.     Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

39.     Despite its duties and alleged commitments to safeguard PII, Defendant did not in fact follow industry standard practices in securing consumers' PII, as evidenced by the Data Breach.

40.     In response to the Data Breach, Defendant contends that it has or will be making "[a new] upgrade and migration guide", "new indicators of compromise", as well as "enhanced remediation steps".[10] Although Defendant fails to expand on what these alleged enhancements and "steps" are, such enhancements should have been in place before the Data Breach.

41.     Through its Breach Notice, Defendant also recognized the actual imminent harm and injury that flowed from the Data Breach, encouraging that it "is extremely important that [clients and consumers] take immediate action"[11]

42.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiffs' and the Class's PII.

---

[9]Clop     ransomware     gang     starts     extorting     MOVEit     data-theft     victims,     bleeping     computer, https://www.bleepingcomputer.com/news/security/clop-ransomware-gang-starts-extorting-moveit-data-theft-victims/ (last visited June 21, 2023).
[10] MOVEit Transfer Critical Vulnerability, Progress Commuinity, https://community.progress.com/s/article/MOVEit-Transfer-Critical-Vulnerability-31May2023 (last visited June 21, 2023).
[11] *Id.*

Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiffs' and the Class's financial accounts.

43. On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its consumers' PII Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice.***

44. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the file-transfer software industry preceding the date of the breach, including recent similar attacks against secure file transfer companies like Accellion and Fortra carried out by the same Russian cyber gang, Clop.[12]

45. In light of recent high profile data breaches at other file-transfer software companies, Defendant knew or should have known that its electronic records and consumers' PII would be targeted by cybercriminals.

46. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[13] The 330 reported

---

[12] See https://www.bleepingcomputer.com/news/security/global-accellion-data-breaches-linked-to-clop-ransomwaregang/ (last visited on June 21, 2023); see also https://www.bleepingcomputer.com/news/security/fortra-sharesfindings-on-goanywhere-mft-zero-day-attacks/ (last visited on June 21, 2023).
[13] 2021 Data Breach Annual Report, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf  last visited June 13, 2023).

breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020. [14]

47.     Indeed, cyberattacks have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [15]

48.     Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including PSC.

***Plaintiffs' Experiences***

49.     Plaintiff Mitchell, who possesses a Louisiana driver's license that he first obtained in approximately 2013 and last renewed on April 26, 2016, and a Louisiana state identification card that he first obtained on May 13, 2022, was notified by Louisiana's Office of Motor Vehicles of the PSC Breach on June 15, 2023. He is unsure why Defendant is in possession of his PII but assumes it was provided by Louisiana's Office of Motor Vehicles.

50.     Plaintiff Guillory-Caillier, who possesses a Louisiana driver's license that she first obtained in approximately 2002 and last renewed on September 25, 2017, was notified by Louisiana's Office of Motor Vehicles of the PSC Breach on June 15, 2023. She is unsure why Defendant is in possession of her PII but assumes it was provided by Louisiana's Office of Motor Vehicles.

---

[14] *Id.*
[15] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited June 13, 2023).

51.     Regardless, Defendant obtained and continues to maintain Plaintiffs' PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

52.     Defendant deprived Plaintiffs of the earliest opportunity to guard themselves against the Data Breach's effects by failing to notify them.

53.     As a result of the Data Breach notice, Plaintiffs will spend time dealing with the consequences of the Data Breach, which will include time spent verifying the legitimacy of the Notice of Data Breach, self-monitoring their accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

54.     Plaintiffs will spend considerable time and effort monitoring their accounts to protect themselves from additional identity theft. Plaintiffs fear for their personal financial security and uncertainty over what PII was exposed in the Data Breach.

55.     Plaintiffs will experience feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

56.     Plaintiffs suffered actual injury in the form of damages to and diminution in the value of Plaintiffs' PII —a form of intangible property that Plaintiffs entrusted to Defendant, which was compromised in and as a result of the Data Breach.

57.     Plaintiffs have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third parties and possibly criminals.

58. Plaintiffs have a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

59. Plaintiffs and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

60. As a result of Defendant's failure to prevent the Data Breach, Plaintiffs and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

   a. The loss of the opportunity to control how their PII is used;

   b. The diminution in value of their PII;

   c. The compromise and continuing publication of their PII;

   d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

   e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

   f. Delay in receipt of tax refund monies;

   g. Unauthorized use of stolen PII; and

h. The continued risk to their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

61.     Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

62.     The value of Plaintiffs' and the Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen PII openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

63.     It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

64.     One such example of criminals using PII for profit is the development of "Fullz" packages.

65.     Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

66.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiffs and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create

a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

67.    Defendant disclosed the PII of Plaintiffs and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiffs and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

68.    Defendant's failure to properly notify Plaintiffs and members of the Class of the Data Breach exacerbated Plaintiffs' and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

69.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

70.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

14

    a.  protect the sensitive consumer information that it keeps;

    b.  properly dispose of PII that is no longer needed;

    c.  encrypt information stored on computer networks;

    d.  understand their network's vulnerabilities; and

    e.  implement policies to correct security problems.

71.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

72.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

73.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

74.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

*Defendant Fails to Comply with Industry Standards*

75.     As noted above, experts studying cyber security routinely identify entities in possession of PII as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

76.     Several best practices have been identified that a minimum should be implemented by employers in possession of PII, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

77.     Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

78.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

16

79. These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for its employees. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

80. Plaintiffs sue on behalf of themselves and the proposed class ("Class"), defined as follows, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

> All individuals residing in the United States whose PII was compromised in the PSC Data Breach and MOVEit vulnerability.

81. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including its staff and immediate family.

82. Plaintiffs reserve the right to amend the class definition.

83. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a. **Numerosity**. Plaintiffs are representatives of the Class, consisting of at least 6 million members, far too many to join in a single action;

b. **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

c. **Typicality**. Plaintiffs' claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy**. Plaintiffs will fairly and adequately protect the proposed Class's interests. Her interests do not conflict with the Class's interests, and she has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiffs' and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

    i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's PII;

    ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    iii. Whether Defendant were negligent in maintaining, protecting, and securing PII;

    iv. Whether Defendant breached contract promises to safeguard Plaintiffs' and the Class's PII;

    v. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

    vi. Whether Defendant's Breach Notice was reasonable;

    vii. Whether the Data Breach caused Plaintiffs' and the Class's injuries;

    viii. What the proper damages measure is; and

    ix. Whether Plaintiffs and the Class are entitled to damages, treble damages, or injunctive relief.

84.     Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

## COUNT I
## Negligence
### (On Behalf of Plaintiffs and the Class)

85.     Plaintiffs reallege all paragraphs as if fully set forth below.

86.     Plaintiffs and members of the Class entrusted their PII to Defendant. Defendant owed to Plaintiffs and the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

87.     Defendant owed a duty of care to Plaintiffs and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII —just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and the Class's PII by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

88.     Defendant owed to Plaintiffs and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiffs and members of the Class the scope,

nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiffs and the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

89. Defendant owed these duties to Plaintiffs and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiffs' and the Class's PII.

90. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII —whether by malware or otherwise.

91. PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiffs and the Class and the importance of exercising reasonable care in handling it.

92. Defendant breached its duties by failing to exercise reasonable care in supervising its employees, agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiffs and the Class which actually and proximately caused the Data Breach and Plaintiffs' and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs' and members of the Class's injuries-in-fact. As a direct and traceable result of

Defendant's negligence and/or negligent supervision, Plaintiffs and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

93. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**Negligence *Per Se***
**(On Behalf of Plaintiffs and the Class)**

94. Plaintiffs reallege all paragraphs as if fully set forth below.

95. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's PII.

96. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, consumers' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the members of the Class's PII.

97. Defendant breached its duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

98. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

99. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' and the Class's PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

100. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

101. But for Defendant's wrongful and negligent breach of the duties owed to Plaintiffs and members of the Class, Plaintiffs and members of the Class would not have been injured.

102. The injury and harm suffered by Plaintiffs and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiffs and

members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

103.    Had Plaintiffs and the Class known that Defendant did not adequately protect their PII, Plaintiffs and members of the Class would not have entrusted Defendant with their PII.

104.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

105.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

106.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their PII in its continued possession.

## COUNT III
## Breach of Contract
### (On Behalf of Plaintiffs and the Class)

107.    Plaintiffs reallege all paragraphs as if fully set forth below.

108.    Defendant entered into various contracts with its clients, including the Louisiana Office of Motor Vehicles, to provide software services to its clients.

109.   These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiffs and the Class, as it was their confidential PII that Defendant agreed to collect and protect through its services. Thus, the benefit of collection and protection of the PII belonging to Plaintiffs and the Class were the direct and primary objective of the contracting parties.

110.   Defendant knew that if it were to breach these contracts with its clients, the clients' consumers, including Plaintiffs and the Class, would be harmed by, among other things, fraudulent misuse of their PII.

111.   Defendant breached its contracts with its clients when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiffs' and Class Members' PII.

112.   As reasonably foreseeable result of the breach, Plaintiffs and the Class were harmed by Defendant failure to use reasonable data security measures to store their PII, including but not limited to, the actual harm through the loss of their PII to cybercriminals.

113.   Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

## COUNT IV
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Class)

114.   Plaintiffs reallege all paragraphs as if fully set forth below.

115.   Plaintiffs and Class members conferred a benefit upon Defendant. After all, Defendant benefitted from using their PII to provide file transferring software services.

116. Defendant appreciated or had knowledge of the benefits it received from Plaintiffs and Class members. And Defendant benefited from receiving Plaintiffs' and Class members' PII, as this was used to provide file transferring software services.

117. Plaintiffs and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

118. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class members' PII.

119. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiffs and Class members by utilizing cheaper, ineffective security measures. Plaintiffs and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

120. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' and Class members' payment because Defendant failed to adequately protect their PII.

121. Plaintiffs and Class members have no adequate remedy at law.

122. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

**COUNT V**
**Invasion of Privacy**
**(On Behalf of Plaintiffs and the Class)**

123. Plaintiffs reallege all paragraphs as if fully set forth below.

124.    Plaintiffs and Class Members had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

125.    Defendant owed a duty to Plaintiffs and Class Member to keep their PII confidential.

126.    The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiffs' and Class Members' PII is highly offensive to a reasonable person.

127.    Defendant's reckless and negligent failure to protect Plaintiffs' and Class Members' PII constitutes an intentional interference with Plaintiffs' and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

128.    Defendant's failure to protect Plaintiffs' and Class Members' PII acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

129.    Defendant knowingly did not notify Plaintiffs and Class Members in a timely fashion about the Data Breach.

130.    Because Defendant failed to properly safeguard Plaintiffs' and Class Members' PII, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

131.    As a proximate result of Defendant's acts and omissions, the PII of Plaintiffs and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages.

132.     As a proximate result of Defendant's acts and omissions, the private PII of Plaintiffs and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages.

133.     Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class since their PII is still maintained by Defendant with their inadequate cybersecurity system and policies.

134.     Plaintiffs and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiffs and the Class.

135.     Plaintiffs, on behalf of themselves and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiffs' and Class Members' PII.

136.     Plaintiffs, on behalf of themselves and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**COUNT VI**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiffs and the Class)**

137.     Plaintiffs reallege all paragraphs as if fully set forth below.

138.     In light of the special relationship between Defendant and Plaintiffs and Class Members, whereby Defendant became guardian of Plaintiffs' and Class Members' PII, Defendant became a fiduciary by its undertaking and guardianship of the PII, to act primarily

for Plaintiffs and Class Members, (1) for the safeguarding of Plaintiffs' and Class Members' PII; (2) to timely notify Plaintiffs and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

139.    Defendant has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of PSC's relationship with its, in particular, to keep secure their PII.

140.    Defendant breached its fiduciary duties to Plaintiffs and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

141.    Defendant breached its fiduciary duties to Plaintiffs and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiffs' and Class Members' PII.

142.    Defendant breached its fiduciary duties owed to Plaintiffs and Class Members by failing to timely notify and/or warn Plaintiffs and Class Members of the Data Breach.

143.    Defendant breached its fiduciary duties to Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' PII.

144.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future

consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and (vii) the diminished value of Defendant's services they received.

145.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## **PRAYER FOR RELIEF**

Plaintiffs and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class;

C.    Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Class;

D.    Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E. Awarding Plaintiffs and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

Dated: June 23, 2023                                   Respectfully submitted,

By: */s/ Christina Xenides*
**SIRI & GLIMSTAD LLP**
Christina Xenides
1005 Congress Avenue, Suite 925-C36
Austin, TX 78701
Tel: (512) 265-5622
cxenides@sirillp.com

**TURKE & STRAUSS LLP**
Samuel J. Strauss
Raina Borrelli
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
sam@turkestrauss.com
raina@turkestrauss.com

*Attorneys for Plaintiffs and Proposed Class*

TO ORDER COPIES OF ANY DOCUMENTS LISTED
BELOW, CALL WESTLAW COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply)

**This docket is current through 07/06/2023**

Today's Date: 7/6/2023
Source: U.S. District Court, District of Massachusetts (Boston)

| | |
|---|---|
| **Court:** | U.S. District Court, District of Massachusetts (Boston) |
| **Case Title:** | Guillory-Caillier et al v. Progress Software Corporation |
| **Case:** | 1:23-CV-11417 |
| **Judge:** | Chief Judge F. Dennis Saylor, IV |
| **Date Filed:** | 06/23/2023 |

**CASE INFORMATION**

| | |
|---|---|
| **Case Number:** | 1:23CV11417 |
| **Jury Demand:** | Plaintiff |
| **Demand:** | $5,000,000 |
| **Nature of Suit:** | Torts: Other Personal Property Damage (380) |
| **Jurisdiction:** | Diversity |
| **Cause:** | 28 USC 1332 Diversity-Property Damage |

**PARTICIPANT INFORMATION**

### Shawntessa Guillory-Caillier

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Christina Xenides |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | Siri & Glimstad LLP |
| **Attorney Address:** | 1005 Congress Avenue |
| | Suite 925-C36 |
| | Austin, TX 78701 |
| **Attorney Phone:** | 512-265-5622 |
| **Email Address:** | cxenides@sirillp.com |

### Vincent Mitchell

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Christina Xenides |
| **Status:** | ATTORNEY TO BE NOTICED |
| **Firm Name:** | Siri & Glimstad LLP |
| **Attorney Address:** | 1005 Congress Avenue |
| | Suite 925-C36 |
| | Austin, TX 78701 |
| **Attorney Phone:** | 512-265-5622 |
| **Email Address:** | cxenides@sirillp.com |

---

## Progress Software Corporation

**Type:**                          Defendant

**CALENDAR INFORMATION**
**View Calendar Information**

**DOCKET PROCEEDINGS (3)**

| Entry #: | Date: | Description: | | |
|---|---|---|---|---|
| 3 | 06/26/2023 | Summons Issued as to Progress Software Corporation. Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service. (Dore, Samantha) (Entered: 06/26/2023) | View | Add to request |
| 2 | 06/26/2023 | ELECTRONIC NOTICE of Case Assignment. Chief Judge F. Dennis Saylor, IV assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Donald L. Cabell. (Danieli, Chris) (Entered: 06/26/2023) | Send Runner to Court | |
| 1 | 06/23/2023 | COMPLAINT against Progress Software Corporation Filing fee: $ 402, receipt number AMADC-9918438 (Fee Status: Filing Fee paid), filed by Shawntessa Guillory-Caillier, Vincent Mitchell. (Attachments: # 1 Civil Cover Sheet, # 2 Category Form)(Xenides, Christina) (Entered: 06/23/2023) | View | Add to request |

TO ORDER COPIES OF ANY DOCUMENTS LISTED
ABOVE, CALL WESTLAW COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply)

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

---