# EXHIBIT A

Query    Reports ▾    Utilities ▾    Help    Log Out

JURY

# U.S. District Court
## Eastern District of Virginia - (Richmond)
## CIVIL DOCKET FOR CASE #: 3:23-cv-00426-RCY

King v. Genworth Financial Inc.
Assigned to: District Judge Roderick C. Young
Demand: $50,000,000,000
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 06/30/2023
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Delilah King**
*individually, and on behalf of all others
similarly situated*

represented by **Joseph Kirchgessner**
Woehrle Dahlberg Yao PLLC
2016 Lafayette Blvd
Suite 101
Fredericksburg, VA 22401
540-898-8881
Email: jkirchgessner@lawfirmvirginia.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Ready Tate**
NDH LLC
44 Broad St NW
Suite 200
Atlanta, GA 30303
404-254-0442
Fax: 703-935-2453
Email: atate@peifferwolf.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brandon Michael Wise**
Peiffer Wolf Carr Kane Conway & Wise,
LLP (MO-NA)
818 Lafayette Avenue
Floor 2
St. Louis, MO 63104
*** NA ***
(314) 833-4827
Email: bwise@peifferwolf.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Genworth Financial Inc.**

| Date Filed | # | Docket Text |
|---|---|---|

| Date Filed | # | Docket Text |
|---|---|---|
| 06/30/2023 | 1 | Complaint (Filing Fee: $402.00, Receipt Number: AVAEDC-9007016), filed by Delilah King. (Attachments: # 1 Civil Cover Sheet, # 2 Disclosure of Citizenship) (Kirchgessner, Joseph) (Entered: 06/30/2023) |
| 07/03/2023 | | Initial Case Assignment to District Judge Roderick C. Young. (smej, ) (Entered: 07/03/2023) |
| 07/03/2023 | | Notice of Correction re 1 Complaint: The filing attorney is instructed to file the proposed summons (in non-fillable format) to serve the defendant, or if waiving service, to notify the court in writing by electronically filing the notice. (smej, ) (Entered: 07/03/2023) |
| 07/12/2023 | 2 | Motion to appear Pro Hac Vice by Brandon Michael Wise and Certification of Local Counsel Joseph Michael Kirchgessner Filing fee $ 75, receipt number AVAEDC-9022130. by Delilah King. (Kirchgessner, Joseph) (Main Document 2 replaced on 7/13/2023) (smej, ). (Additional attachment(s) added on 7/13/2023: # 1 Exhibits) (smej, ). (Entered: 07/12/2023) |
| 07/12/2023 | 3 | Motion to appear Pro Hac Vice by Andrew Ready Tate and Certification of Local Counsel Joseph Michael Kirchgessner Filing fee $ 75, receipt number AVAEDC-9022256. by Delilah King. (Kirchgessner, Joseph) (Main Document 3 replaced on 7/13/2023) (smej, ). (Additional attachment(s) added on 7/13/2023: # 1 Exhibits) (smej, ). (Entered: 07/12/2023) |
| 07/13/2023 | | Notice of Correction re 3 Motion to appear Pro Hac Vice by Andrew Ready Tate and Certification of Local Counsel Joseph Michael Kirchgessner Filing fee $ 75, receipt number AVAEDC-9022256. , 2 Motion to appear Pro Hac Vice by Brandon Michael Wise and Certification of Local Counsel Joseph Michael Kirchgessner Filing fee $ 75, receipt number AVAEDC-9022130. : Filing attorney reminded that PDF's should not be filed as fillable forms. Please convert all fillable forms to non-fillable prior to filing. The filing attorney is reminded to also separate exhibits from the main document. Clerk has corrected the documents. No further action needed at this time. (smej, ) (Entered: 07/13/2023) |
| 07/18/2023 | 4 | ORDER granting 2 Motion for Brandon Michael Wise to appear Pro hac vice for Delilah King. Signed by District Judge Roderick C. Young on 7/18/2023. (smej, ) (Entered: 07/18/2023) |
| 07/18/2023 | 5 | ORDER granting 3 Motion for Andrew Ready Tate to appear Pro hac vice Delilah King. Signed by District Judge Roderick C. Young on 7/18/2023. (smej, ) (Entered: 07/18/2023) |
| 07/18/2023 | | Notice of Correction re 3 Motion to appear Pro Hac Vice by Andrew Ready Tate : Mr. Tate is advised that his contact information must be updated through their PACER account. (smej, ) (Entered: 07/18/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/25/2023 16:43:43 | | |
| **PACER Login:** | SidleyCHPacer | **Client Code:** | 083500-90100-38331 |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-00426-RCY |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| DELILAH KING, individually, and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No.  3:23cv426 |
| v. | **CLASS ACTION COMPLAINT** |
| GENWORTH FINANCIAL, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

### PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

Plaintiff Delilah King ("Plaintiff") brings this Class Action Petition against Genworth Financial, Inc. ("Genworth Financial" or "Defendant"), individually and on behalf of all others similarly situated ("Class Members"), and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information ("PII") including, but not limited to, Plaintiff's and Class Members' names, addresses, dates of birth, Social Security numbers, and medical records (collectively, "Private Information" or "PII"). Defendant's severe failures have affected—and continue to affect—a class of over 2.5 million people.

2.      Defendant Genworth Financial provides "long term care insurance, life insurance, annuity retirement solutions and more." Genworth Financial experienced a data breach between on or around May 29 to May 30, 2023, in which unauthorized third-parties were able to access certain files on its network.

3.      During the course of its business operations, Defendant acquired, collected, utilized, and derived a benefit from Plaintiff's and Class Members' Private Information. Therefore, Defendant owed and otherwise assumed statutory, regulatory, and common law duties and obligations, including to keep Plaintiff's and Class Members' Private Information confidential, safe, secure, and protected from the type of unauthorized access, disclosure, and theft that occurred in the Data Breach.

4.      On or about May 29, 2023, Defendant was notified "that specific Genworth files containing policyholder and agent information were compromised due to a security event that took advantage of a vulnerability identified in the widely-used MOVEit file transfer software that PBI uses."[1] An investigation determined that there was a cybersecurity incident between May 29, 2023 and May 30, 2023, in which unauthorized third parties accessed Plaintiff's and Class Members' Private Information stored on Defendant's network (the "Data Breach"). On June 22, 2023, Genworth Financial filed a Form 8-K with the U.S. Securities and Exchange Commission (SEC) stating that "based on the current state of the investigation [] approximately 2.5-2.7 million policyholders' or other customers' personal information, including social security numbers, was exposed to and obtained by the threat actor as a result of the PBI security event."[2] On June 27, 2023, Defendant posted a notice of the data breach on its website (the "Website Notice").

5.      Defendant launched an investigation into the Data Breach and confirmed that an unauthorized actor accessed its system and certain files containing Plaintiff's and Class Members' Private Information, including, but not limited to, the following: "For customers, the exposed information includes: social security number, name, date of birth, zip code, state of residence, and

---

[1] *See* https://www.genworth.com/moveit.html (last accessed June 29, 2023)
[2] https://investor.genworth.com/sec-filings/all-sec-filings/content/0001193125-23-172549/0001193125-23-172549.pdf

policy number. For agents, the exposed information includes the agent ID, social security number, name, date of birth, and full address. For customers, the exposed information also includes the role of the individual (ex. Annuitant, Joint Insured, Owner, etc.) and general product type—and if deceased, the city and date of death, along with the source of that information. For agents: the exposed information also includes their social security number (which is the same as their agent ID) and a preferred full address -- and if deceased, the date of death and the source of that information."

6.     Based on the Website Notice, Defendant admits that Plaintiff's and Class Members' Private Information was unlawfully accessed by a third party.

7.     Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access of an unknown third party and precisely what specific type of information was accessed.

8.     Upon information and belief, Defendant maintained the Private Information in a negligent manner. In particular, the Private Information was maintained on computer systems and networks that were in a condition vulnerable to cyberattack. Upon information and belief, the mechanism of the Data Breach and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant; and, thus, Defendant was on notice that failing to take appropriate protective measures would expose and increase the risk that the Private Information could be compromised and stolen.

9. Hackers can offer for sale the unencrypted, unredacted Private Information to criminals. The exposed Private Information of Plaintiff and Class Members can, and likely will, be sold repeatedly on the dark web.

10. Plaintiff and Class Members now face a current and ongoing risk of identity theft, which is heightened here by the loss of Social Security numbers – the gold standard for identity thieves.

11. This Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the Private Information of Plaintiff and Class Members.

12. As a result of this data breach, Plaintiff's and Class Members' Private Information has been compromised, and they are, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

13. While many details of the Data Breach remain in the exclusive control of Defendant, upon information and belief, Defendant breached its duties and obligations by failing, in one or more of the following ways: (1) failing to design, implement, monitor, and maintain reasonable network safeguards against foreseeable threats; (2) failing to design, implement, and maintain reasonable data retention policies; (3) failing to adequately train staff on data security; (4) failing to comply with industry-standard data security practices; (5) failing to warn Plaintiff and Class Members of Defendants' inadequate data security practices; (6) failing to encrypt or adequately encrypt the Private Information; (7) failing to recognize or detect that its network had been compromised and accessed in a timely manner to mitigate the harm; (8) failing to utilize widely available software able to detect and prevent this type of attack, and (9) otherwise failing

to secure the hardware using reasonable and effective data security procedures free of foreseeable vulnerabilities and data security incidents.

14.     As a result of Defendant's unreasonable and inadequate data security practices that resulted in the Data Breach, Plaintiff and Class Members are at a current and ongoing risk of identity theft and have suffered numerous actual and concrete injuries and damages, including: (a) invasion of privacy; (b) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (d) financial "out of pocket" costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) loss of time due to increased spam and targeted marketing emails; (g) the loss of benefit of the bargain (price premium damages); (h) diminution of value of their Private Information; (i) anxiety, annoyance and nuisance, and (j) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

15.     Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed during the Data Breach. Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, future costs of identity theft monitoring, and injunctive relief including improvements to Defendant's data security systems, and future annual audits.

16.     Accordingly, Plaintiff brings this action against Defendant seeking redress for its unlawful conduct, and asserting claims for: (i) negligence, (ii) negligence per se, (iii) invasion of privacy; (iv) unjust enrichment, (v) violations of the Virginia Personal Information Breach

Notification Act, (vi) violations of the Virginia Consumer Protection Act, and (vii) declaratory judgment and injunctive relief.

## PARTIES

17.     Plaintiff Delilah King is a Citizen of Virginia residing in Caroline County, Virginia. Plaintiff is a policyholder of long term care insurance with Genworth Financial, Inc. Plaintiff was notified that Defendant's network had been accessed and Plaintiff's Private Information may have been involved in the Data Breach by the Website Notice.

18.     Defendant Genworth Financial is a for profit corporation organized under the laws of Delaware and headquartered in Richmond, Virginia. Defendant's principal place of business is located at 6620 West Broad Street, Richmond VA 23230. Defendant can be served through its registered agent, Corporation Service Company, 100 Shockoe Slip Fl 2, Richmond, VA, 23219.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 putative class members, and the amount in controversy exceeds $5 million, exclusive of interest and costs. Specifically, Class Members include policyholders who are citizens of numerous states other than Virginia, including, *inter alia*, Pennsylvania, Maryland, and New York.[3] Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20.     This Court has personal jurisdiction over Defendant because it operates and is headquartered in this District and conducts substantial business in this District.

---

[3] *See, i.e., Skochin et al. v. Genworth Life Insurance Company et al*., 3:19-cv-00049-REP, ECF Doc. No. 90, Third Am. Class Act. Compl., ¶¶ 35-43 (November 22, 2019) (specifically identifying Genworth policyholders residing in Pennsylvania, Maryland, and New York).

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendant is based in this District, maintains Plaintiff's and Class Members' Private Information in this District, and has caused harm to Plaintiff and Class Members in this District.

## FACTUAL ALLEGATIONS

### *The Data Breach*

22.     On or about May 29, 2023, Defendant became aware that its network may have been breached.

23.     Following a forensic investigation, Defendant then discovered that cybercriminals had accessed a set of electronically stored personal information stored on its network between May 29, 2023 and May 30, 2023.

24.     Defendant's Form 8-K filing with the SEC and its Website Notice admits that Plaintiff's and Class Members' Private Information was accessed without authorization.[4]

### *Plaintiff Delilah King's Experience*

25.     As a requisite to receiving insurance services from Defendant, Plaintiff provided her Private Information to Defendant and trusted that the information would be safeguarded according to state and federal law. Upon receipt, Private Information was entered and stored on Defendant's network and systems.

26.     Plaintiff is very careful about sharing her sensitive Private Information. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information

27.     Plaintiff stores any documents containing her sensitive Private Information in a safe and secure location or destroys the documents. Moreover, Plaintiff diligently chooses unique

---

[4] *Id.*; https://www.genworth.com/moveit.html (last accessed June 29, 2023)

usernames and passwords for her various online accounts. Had she known Defendants failed to follow basic industry security standards and failed to implement systems to protect her Private Information, she would not have provided that information to Defendant.

28.     The Website Notice notified Plaintiff that Defendant's network had been accessed and Plaintiff's Private Information may have been involved in the Data Breach, which included Plaintiff's social security number, name, date of birth, zip code, state of residence, policy number, role of individual on the policy, and general product type purchased.

29.     Furthermore, Defendant directed Plaintiff to be vigilant and to take certain steps to protect her Private Information and otherwise mitigate her damages.

30.     As a result of the Data Breach, Plaintiff heeded Defendant's warning and spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Website Notice and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured. Moreover, this time was spent at Defendant's direction by way of the Website Notice where Defendant advised Plaintiff to mitigate her damages by, among other things, monitoring her accounts for fraudulent activity.

31.     Even with the best response, the harm caused to Plaintiff cannot be undone.

32.     Plaintiff further suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

33.     She also lost her benefit of the bargain by paying for insurance services that failed to provide the data security that was promised.

34. Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

35. Plaintiff has suffered imminent and impending injury arising from the present and ongoing risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

36. Future identity theft monitoring is reasonable and necessary and such services will include future costs and expenses.

37. Plaintiff has a continuing interest in ensuring that Plaintiff's Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *The Data Breach Was Foreseeable*

38. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members and the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

39. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to potentially millions of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

40. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[5]

41. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the insurance and financial services industry preceding the date of the breach.

42. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020. Of the 1,862 recorded data breaches, 279 of them, or 14.98% were in the financial services industry.[6] The 279 reported breaches in 2021 exposed nearly 20 million sensitive records (19,978,108), compared to only 138 breaches that exposed nearly 2.7 million sensitive records (2,687,084) in 2020.

43. In light of recent high profile cybersecurity incidents at other insurance provider companies, including Bitmarck (300,000 policyholders, April 2023), Point32Health (2.5 million policyholders, April 2023), Latitude Financial (14 million customer records, March 2023), Capita (470,000 members, March 2023), and NationsBenefits (20 million members, January 2023), Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

44. Indeed, cyberattacks have become so notorious that the International Association of Insurance Supervisors had issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As their 2016 Report explained, Cyber risk presents a growing

---

[5] *See* How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last accessed Aug. 23, 2021).
[6] *See* IAIS, Issues Paper on Cyber Risk to the Insurance Sector, https://www.iaisweb.org/uploads/2022/01/160812-Issues-Paper-on-Cyber-Risk-to-the-Insurance-Sector_final.pdf (last accessed July 29, 2023)

challenge for the insurance sector, and one which, under the ICPs, supervisors are obliged to address. Insurers collect, store, and manage substantial volumes of confidential personal and commercial information. Because of these reservoirs of data, insurers are prime targets for cyber criminals who seek information that later can be used for financial gain through extortion, identity theft, or other criminal activities. In addition, because insurers are significant contributors to the global financial sector, interruptions of insurers' systems due to cybersecurity incidents may have far-reaching implications."[7]

45.     Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

### Value of PII and PHI[8]

46.     The PII of consumers remains of high value to criminals, as evidenced by the prices offered through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9] According to the Dark Web Price Index for 2021, payment card details for an account balance up to $1,000 have an average market value of $150, credit card details with an account balance up to $5,000 have an average market value of $240, stolen online banking logins with a minimum of $100 on the account have an average market value of $40, and stolen online banking logins with a minimum of $2,000 on the account have an

---

[7] FBI, Secret Service Warn of Targeted, Law360 (Nov.18,2019),
https://www.law360.com/articles/1220974/fbisecret-service-warn-of-targeted-ransomware
[8] While Defendant does not state that Protected Health Information ("PHI") was involved in this breach, the presence of PHI on Defendant's network is relevant in assessing Defendant's duty of care in protecting Plaintiff's and Class Members' Private Information.
[9] *Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

average market value of $120.[10] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[11]

47.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.

48.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information…[is] worth more than 10x on the black market."[12]

49.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing, or even give false information to police.

50.    The fraudulent activity resulting from the Data Breach may not come to light for years.

51.    Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."

---

[10] *Dark Web Price Index 2021*, Zachary Ignoffo, March 8, 2021, available at:
https://www.privacyaffairs.com/dark-web-price-index-2021/
[11] *In the Dark,* VPNOverview, 2019, available at https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.
[12] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers,* IT World, (Feb. 6, 2015), available at:
https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Aug. 23, 2021).

52.     There is also a robust legitimate market for the type of sensitive information at issue here. Marketing firms utilize personal information to target potential customers, and an entire economy exists related to the value of personal data.

53.     Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII and PHI on the black market for the purpose of target-marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

54.     Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[13]

55.     As such, future monitoring of financial and personal records is reasonable and necessary well beyond the one of protection offered by Defendant.

***Defendant Failed to Properly Protect Plaintiff's and Class Members' Private Information***

56.     Defendant could have prevented this Data Breach by properly securing and encrypting the systems containing the Private Information of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data, especially for individuals with whom it had not had a relationship for a period of time.

---

[13] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at*: https://www.gao.gov/assets/gao-07-737.pdf (last accessed Aug. 23, 2021).

57. Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to companies like Defendant to protect and secure sensitive data they possess.

58. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

59. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[14]

60. The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

61. To prevent and detect unauthorized cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and

---

[14] *See generally Fighting Identity Theft With the Red Flags Rule: A How-To Guide for Business*, FED. TRADE COMM., https://www.ftc.gov/business-guidance/resources/fighting-identity-theft-red-flags-rule-how-guide-business (last accessed May 1, 2023).

Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[15]

62.     To prevent and detect cyber-attacks, including the cyber-attack that resulted in the

Data Breach, Defendant could and should have implemented, as recommended by the United

States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**.  Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks…
- **Use caution with links and when entering website addresses.**  Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's

---

[15] *Id.* at 3-4.

helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)…

- **Open email attachments with caution.** Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.
- **Keep your personal information safe.** Check a website's security to ensure the information you submit is encrypted before you provide it….
- **Verify email senders.** If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.
- **Inform yourself.** Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.
- **Use and maintain preventative software programs.** Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic…[16]

63.     To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

---

[16] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last accessed Aug. 23, 2021).

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[17]

64. Moreover, given that Defendant was storing the PII and PHI of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

65. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the PII of Plaintiff and Class Members.

66. As a result of computer systems in need of security upgrades and inadequate procedures for handling email phishing attacks, viruses, malignant computer code, and hacking attacks, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

---

[17] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last accessed Aug. 23, 2021).

67.     Because Defendant failed to properly protect and safeguard Plaintiff's and Class Members' Private Information, an unauthorized third party was able to access Defendant's network, and access Defendant's database and system configuration files and exfiltrate that data.

### Defendant Failed to Comply with FTC Guidelines

68.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making.

69.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal patient information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[18]

70.     The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

71.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity

---

[18] Protecting Personal Information: A Guide for Business, Federal Trade Commission (2016). Available at https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed May 16, 2023).

on the network; and verify that third-party service providers have implemented reasonable security measures.

72.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect patient data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions clarify the measures businesses take to meet their data security obligations.

73.     Defendant failed to properly implement basic data security practices.

74.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

75.     Defendant was always fully aware of its obligation to protect the Private Information of Plaintiff and Class Members. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### *Defendant Failed to Comply with Industry Standards*

76.     As shown above, experts studying cyber security routinely identify insurance providers as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain.

77.     Several best practices have been identified that at a minimum should be implemented by insurance providers like Defendant, including, but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-

malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

78.     Other best cybersecurity practices that are standard in the insurance industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

79.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

80.     The foregoing frameworks are existing and applicable industry standards in the insurance industry, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

81.     Upon information and belief, Defendant failed to comply with one or more of the foregoing industry standards.

### *Defendant's Negligent Acts and Breaches*

82.     Defendant participated and controlled the process of gathering the Private Information from Plaintiff and Class Members.

83.     Defendant therefore assumed and otherwise owed duties and obligations to Plaintiff and Class Members to take reasonable measures to protect the information, including the duty of

20

oversight, training, instruction, testing of the data security policies and network systems. Defendant breached these obligations to Plaintiff and Class Members and/or were otherwise negligent because it failed to properly implement data security systems and policies for its insurance providers network that would adequately safeguarded Plaintiff's and Class Members' Sensitive Information. Upon information and belief, Defendant's unlawful conduct included, but is not limited to, one or more of the following acts and/or omissions:

    a) Failing to design and maintain an adequate data security system to reduce the risk of data breaches and protect Plaintiff's and Class Members Sensitive Information;

    b) Failing to properly monitor its data security systems for data security vulnerabilities and risk;

    c) Failing to test and assess the adequacy of its data security system;

    d) Failing to develop adequate training programs related to the proper handling of emails and email security practices;

    e) Failing to put into develop and place uniform procedures and data security protections for its insurance network;

    f) Failing to adequately fund and allocate resources for the adequate design, operation, maintenance, and updating necessary to meet industry standards for data security protection;

    g) Failing to ensure or otherwise require that it was compliant with FTC guidelines for cybersecurity;

    h) Failing to ensure or otherwise require that it was adhering to one or more of industry standards for cybersecurity discussed above;

i) Failing to implement or update antivirus and malware protection software in need of security updating;

j) Failing to require encryption or adequate encryption on its data systems;

k) Otherwise negligently and unlawfully failing to safeguard Plaintiff's and Class Members' Private Information provided to Defendant, which in turn allowed cyberthieves to access its IT systems.

## COMMON INJURIES & DAMAGES

84. As result of Defendant's ineffective and inadequate data security practices, Plaintiff and Class Members now face a present and ongoing risk of fraud and identity theft.

85. Due to the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (d) "out of pocket" costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) loss of time due to increased spam and targeted marketing emails; (g) the loss of benefit of the bargain (price premium damages); (h) diminution of value of their Private Information; and (i) the continued risk to their Private Information, which remains in Defendant's possession, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

***The Risk of Identity Theft to Plaintiff and Class Members Is Present and Ongoing***

86.     The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

87.     Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity – or track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

88.     For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

89.     The dark web is an unindexed layer of the internet that requires special software or authentication to access.[19] Criminals in particular favor the dark web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or 'surface' web, dark web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is

---

[19] *What Is the Dark Web?,* Experian, available at
https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/ (last accessed May 16, 2023).

ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.[20] This prevents dark web marketplaces from being easily monitored by authorities or accessed by those not in the know.

90.    A sophisticated black market exists on the dark web where criminals can buy or sell malware, firearms, drugs, and frequently, personal and medical information like the PII at issue here.[21] The digital character of PII stolen in data breaches lends itself to dark web transactions because it is immediately transmissible over the internet and the buyer and seller can retain their anonymity. The sale of a firearm or drugs on the other hand requires a physical delivery address. Nefarious actors can readily purchase usernames and passwords for online streaming services, stolen financial information and account login credentials, and Social Security numbers, dates of birth, and medical information.[22] As Microsoft warns "[t]he anonymity of the dark web lends itself well to those who would seek to do financial harm to others."[23]

91.    Social Security numbers, for example, are among the worst kinds of personal information to have stolen because they may be put to numerous serious fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone

---

[20] *Id.*

[21] *What is the Dark Web?* – Microsoft 365, available at https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web (last accessed May 16, 2023).

[22] *Id.*; What Is the Dark Web?, Experian, available at https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/

[23] *What is the Dark Web?* – Microsoft 365, available at https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web

is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[24]

What's more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

92.     Even then, new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[25]

93.     Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name. And the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[26]

---

[24] Social Security Administration, *Identity Theft and Your Social Security Number*, available at: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed May 16, 2023).
[25] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited Sep 13, 2022).
[26] *Identity Theft and Your Social Security Number,* Social Security Administration, 1 (2018), https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Sep. 13, 2022).

94.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.[27]

95.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[28] Defendant did not rapidly report to Plaintiff and the Class that their Private Information had been stolen.

96.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

97.    In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims have to spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

98.    Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and Class Members will need to remain vigilant against unauthorized data use for years or even decades to come.

99.    The Federal Trade Commission ("FTC") has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner

---

[27] *See* https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120 (last accessed October 21, 2022).
[28] *Id.*

Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis and profit."[29]

100. The FTC has also issued numerous guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires: (1) encrypting information stored on computer networks; (2) retaining payment card information only as long as necessary; (3) properly disposing of personal information that is no longer needed; (4) limiting administrative access to business systems; (5) using industry-tested and accepted methods for securing data; (6) monitoring activity on networks to uncover unapproved activity; (7) verifying that privacy and security features function properly; (8) testing for common vulnerabilities; and (9) updating and patching third-party software.[30]

101. According to the FTC, unauthorized PII disclosures are extremely damaging to consumers' finances, credit history and reputation, and can take time, money and patience to resolve the fallout. The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.[31]

102. Defendant's failure to properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injury by depriving them of the earliest ability

---

[29] Statement of FTC Commissioner Pamela Jones Harbour (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited May 28, 2015).

[30] *See generally* https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

[31] *See e.g.,* https://www.ftc.gov/news-events/news/press-releases/2016/07/commission-finds-labmd-liable-unfair-data-security-practices (last accessed: October 21, 2022).

to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

### *Loss of Time to Mitigate the Risk of Identity Theft and Fraud*

103. As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm – yet, the resource and asset of time has been lost.

104. Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must, as Defendant's Website Notice instructs them, "Plac[e] credit freezes and/or fraud alerts with the three credit bureaus" and "add a password to your Genworth account to add a level of security in accessing your policy".

105. Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as placing "freezes" and "alerts" with credit reporting agencies, contacting financial institutions, closing or modifying financial accounts, changing passwords, reviewing and monitoring credit reports and accounts for unauthorized activity—which may take years to discover and detect—and filing police reports.

106. Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office, who released a report in 2007 regarding data breaches ("GAO Report") in

which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[32]

107.    Plaintiff's mitigation efforts are also consistent with the steps that FTC recommends that data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[33]

108.    A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[34]



---

[32] See United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[33] See Federal Trade Commission, IdentityTheft.com, https://www.identitytheft.gov/Steps (last visited July 7, 2022).

[34] "Credit Card and ID Theft Statistics" by Jason Steele, 10/24/2017, at: https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php (last visited Sep 13, 2022).

109.    In the event that Plaintiff and Class Members experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[35] Indeed, the FTC recommends that identity theft victims take several steps and spend time to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[36]

### Diminution of Value of the Private Information

110.    PII is a valuable property right.[37] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

111.    For example, drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII/PHI on the black market for the purpose of target-marketing their products and services to the physical maladies of the data breach victims themselves.

---

[35] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last visited Sep. 13, 2022) ("GAO Report").
[36] *See* https://www.identitytheft.gov/Steps (last visited Sep. 13, 2022).
[37] *See*, e.g., John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

112.    Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[38]

113.    Medical information is especially valuable to identity thieves. According to account monitoring company LogDog, medical data was selling on the dark web for $50 and up.[39]

114.    An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[40] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[41][42] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[43]

115.    As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished in its value by its unauthorized and potential release onto the Dark Web, where it may soon be available and holds significant value for the threat actors.

116.    To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered as a result of the Data Breach – Defendant has only offered one year of inadequate identity monitoring services through IDX, despite Plaintiff and

---

[38] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec
(July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited Sep. 13, 2022).
[39] https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content (last visited Sep 13, 2022).
[40] https://www.latimes.com/business/story/2019-11-05/column-data-brokers
[41]  https://datacoup.com/
[42] https://digi.me/what-is-digime/
[43] Nielsen Computer & Mobile Panel, Frequently Asked Questions, available at https://computermobilepanel.nielsen.com/ui/US/en/faqen.html.

Class Members being at risk of identity theft and fraud for the foreseeable future. Defendant has not offered any other relief or protection.

117.    The one year of credit monitoring offered to persons whose Private Information was compromised is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud. Defendant also places the burden squarely on Plaintiff and Class Members by requiring them to expend time signing up for that service, as opposed to automatically enrolling all victims of this Data Breach.

118.    Given the type of targeted attack in this case and sophisticated criminal activity, the type of Private Information, and the modus operandi of cybercriminals, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes – e.g., opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

119.    It must be noted there may be a substantial time lag – measured in years – between when harm occurs versus when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

120.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

121.    Furthermore, the information accessed and disseminated in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, where victims can easily cancel or close credit and debit card accounts.[44] The information disclosed in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers).

122.    Consequently, Plaintiff and Class Members are at a present and ongoing risk of fraud and identity theft for many years into the future.

123.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information.

*Injunctive Relief Is Necessary to Protect Against Future Data Breaches*

124.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from

---

[44] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web*, New Report Finds, FORBES (Mar. 25, 2020), https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1 (last accessed May 16, 2023).

further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Private Information is not accessible online and that access to such data is password protected.

## CLASS ACTION ALLEGATIONS

125.    Plaintiff brings this nationwide class action on behalf of herself and on behalf of others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

126.    The Nationwide Class that Plaintiff seeks to represent is defined as follows:

> All persons whose Private Information was actually or potentially accessed or acquired during the Data Breach for which Defendant Genworth Financial provided notice to Plaintiff and other Class Members beginning on or around May 29, 2023 (the "Class").

127.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

128.    Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

129.    <u>Numerosity</u>, Fed. R. Civ. P. 23(a)(1): Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are between 8,861,076 and

8,923,662 individuals whose Private Information may have been improperly accessed in the Data

Breach, and each Class is apparently identifiable within Defendant's records.[45]

130.     <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact

common to the Classes exist and predominate over any questions affecting only individual Class

Members. These include:

a)  Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;
b)  Whether Defendant had duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;
c)  Whether Defendant had duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;
d)  Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;
e)  Whether and when Defendant actually learned of the Data Breach;
f)  Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;
g)  Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;
h)  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;
i)  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;
j)  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members;
k)  Whether Defendant violated the consumer protection statutes invoked herein;
l)  Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;
m)  Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and
n)  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

---

[45] Breach Portal, U.S. Dept of Health and Hum. Servs.,
https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last visited June 8, 2023).

131. <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their Private Information compromised as a result of the Data Breach, due to Defendant's misfeasance.

132. <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

133. <u>Adequacy of Representation</u>, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

134. <u>Superiority</u>, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and

36

expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

135.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

136.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, uniform methods of data collection, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

137.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

138.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to

provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

139.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

140.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b.    Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c.    Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.    Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

e.    Whether Defendant breached the implied contract;

f.    Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members; and

i.  Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and All Class Members)

141.  Plaintiff and the Class repeat paragraphs 1-140 of the Complaint as if fully set forth herein.

142.  Upon gaining access to the PII of Plaintiff and members of the Class, Defendant owed to Plaintiff and the Class a duty of reasonable care in handling and using this information and securing and protecting the information from being stolen, accessed, and misused by unauthorized parties. Pursuant to this duty, Defendant was required to design, maintain, and test their security systems to ensure that these systems were reasonably secure and capable of protecting the PII of Plaintiff and the Class. Defendant further owed to Plaintiff and the Class a duty to implement systems and procedures that would detect a breach of their security systems in a timely manner and to timely act upon security alerts from such systems.

143. Defendant owed this duty to Plaintiff and the other Class members because Plaintiff and the other Class members compose a well-defined, foreseeable, and probable class of individuals whom Defendant should have been aware could be injured by Defendant's inadequate security protocols. Defendant actively solicited clients who entrusted Defendant with Plaintiff's and the other Class members' PII when obtaining and using Defendant's services. To facilitate these services, Defendant used, handled, gathered, and stored the PII of Plaintiff and the other Class members. Attendant to Defendant's solicitation, use and storage, Defendant knew of its inadequate and unreasonable security practices with regard to their computer/server systems and also knew that hackers and thieves routinely attempt to access, steal and misuse the PII that Defendant actively solicited from clients who entrusted Defendant with Plaintiff's and the other Class members' data. As such, Defendant knew a breach of its systems would cause damage to its clients and Plaintiff and the other Class members. Thus, Defendant had a duty to act reasonably in protecting the PII of its policyholders.

144. The duty included obligations to take reasonable steps to prevent disclosure of the Private Information, and to safeguard the information from theft. Defendant's duties included the responsibility to design, implement, and monitor data security systems, policies, and processes to protect against reasonably foreseeable data breaches such as this Data Breach.

145. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, policies, and procedures, and the personnel responsible for them, adequately protected the Private Information.

146. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its patients, which is recognized by

laws and regulations including but not limited to the FTC Act, and common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

147. Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

148. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information that it either acquires, maintains, or stores.

149. Defendant breached its duties, and thus were negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information, as alleged and discussed above.

150. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the insurance industry.

151. It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

152. The imposition of a duty of care on Defendant to safeguard the Private Information they maintained is appropriate because any social utility of Defendant's conduct is outweighed by the injuries suffered by Plaintiff and Class Members as a result of the Data Breach.

41

153.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members are at a current and ongoing risk of identity theft, and Plaintiff and Class Members sustained compensatory damages including: (a) invasion of privacy; (b) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (d) financial "out of pocket" costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) loss of time due to increased spam and targeted marketing emails; (g) diminution of value of their Private Information; (h) future costs of identity theft monitoring; (i) anxiety, annoyance and nuisance, and (j) the continued risk to their Private Information, which remains in  Defendant's possession, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

154.     Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

155.     Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class Members in an unsafe and unsecure manner.

156.     Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II
## NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and All Class Members)

157.    Plaintiff and the Class repeat and re-allege paragraphs 1-140 of the Complaint as if fully set forth herein.

158.    Pursuant to Federal Trade Commission, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

159.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant's, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

160.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored, and the foreseeable consequences of the Data Breach for companies of Defendant's magnitude, including, specifically, the immense damages that would result to Plaintiff and Class Members due to the valuable nature of the Private Information at issue in this case— including Social Security numbers.

161.    Defendant's violations of Section 5 of the FTC Act constitute negligence *per se.*

162.    Plaintiff and Class Member are within the class of persons that the FTC Act was intended to protect.

163. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

164. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

165. Defendant's duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

166. Defendant owed Plaintiff and Class Members a duty to notify them within a reasonable time frame of any breach to their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of Defendant's Data Breach.

167. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, Defendant actively sought and obtained the PII of Plaintiff and Class Members.

168. Defendant breached their duties, and thus were negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII. And but for Defendant's negligence, Plaintiff and Class Members would not have been injured. The specific negligent acts and omissions committed by Defendant include, but are not limited to:

a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b.  Failing to comply with—and thus violating—FTCA and its regulations;

c.  Failing to adequately monitor the security of its networks and systems;

d.  Failing to have in place mitigation policies and procedures;

e.  Allowing unauthorized access to Class Members' PII;

f.  Failing to detect in a timely manner that Class Members' PII had been compromised; and

g.  Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

169.    Plaintiff seek to remedy these harms on behalf of themselves and all similarly situated and "impacted" individuals whose Private Information was accessed during the Data Breach, including: (a) invasion of privacy; (b) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (d) financial "out of pocket" costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) loss of time due to increased spam and targeted marketing emails; (g) diminution of value of their Private Information; (h) anxiety, annoyance and nuisance,  (i) nominal damages, and (j) the future costs of identity theft monitoring.

170.    Simply put, Defendant's negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injuries-in-fact and damages. These injuries include, but are not limited to, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their

bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence. Moreover, injuries-in-fact and damages are ongoing, imminent, and immediate.

171.    Moreover, Plaintiff's and Class Members' Private Information remains at risk, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

172.    Plaintiff and the Class Members are entitled to compensatory and consequential damages suffered because of the data breach.

173.    Therefore, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit and identity theft monitoring to all Class Members.

**COUNT III**
**INVASION OF PRIVACY**
**(On Behalf of Plaintiff and All Class Members)**

174.    Plaintiff and the Class repeat and re-allege paragraphs 1 – 140 of the Complaint as if fully set forth herein.

175.    Plaintiff and Class Members had a reasonable expectation of privacy in the Private Information Defendant mishandled.

176.    As a result of Defendant's conduct, publicity was given to Plaintiff's and Class Members' Private Information, which necessarily includes matters concerning their private life such as PII.

177.    A reasonable person of ordinary sensibilities would consider the publication of Plaintiff's and Class Members' Private Information to be highly offensive.

178.   Plaintiff's and Class Members' Private Information is not of legitimate public concern and should remain private.

179.   As a direct and proximate result of Defendant's public disclosure of private facts, Plaintiff and Class Members are at a current and ongoing risk of identity theft and sustained compensatory damages including: (a) invasion of privacy; (b) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (d) financial "out of pocket" costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) loss of time due to increased spam and targeted marketing emails; (g) diminution of value of their Private Information; (h) future costs of identity theft monitoring; (i) anxiety, annoyance and nuisance, and (j) the continued risk to their Private Information, which remains in Defendant's possession, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

180.   Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

181.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members)**

182.    Plaintiff and the Class repeat and re-allege paragraphs 1 – 140 of the Complaint as if fully set forth herein.

183.    This cause of action is plead in the alternative to the breach of implied contract theory.

184.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by paying money for insurance services that relied on Defendant to render certain services, a portion of which was intended to have been used by Defendant for data security measures to secure Plaintiff and Class Members' PII. Plaintiff and Class Members further conferred a benefit on Defendant by entrusting their PII to Defendant and its customers from which Defendant derived profits.

185.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide adequate security.

186.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

187.    Defendant acquired the monetary benefit, PII, through inequitable means in that

Defendant failed to disclose the inadequate security practices, previously alleged, and failed to maintain adequate data security.

188.    If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to give their money—or disclosed their data—to Defendant or Defendant's customers.

189.    Plaintiff and Class Members have no adequate remedy at law.

190.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered—and will continue to suffer—a host of injuries, including but not limited to: (1) actual identity theft; (2) the loss of the opportunity to determine how their PII is used; (3) the compromise, publication, and/or theft of their PII; (4) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (5) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (6) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their possession; and (7) future expenditures of time, effort, and money that will be spent trying to prevent, detect, contest, and repair the impact of Defendant's Data Breach.

191.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members suffered—and will continue to suffer—other forms of injury and/or harm.

192.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from

Plaintiff and Class Members.

**COUNT V**
**VIRGINIA PERSONAL INFORMATION BREACH NOTIFICATION ACT**
**Va. Code. Ann. §§ 18.2-186.6,** *et seq.*
**(On Behalf of Plaintiff and the Class)**

193.     Plaintiff and the Class repeat and re-allege paragraphs 1-140 of the Complaint as if fully set forth herein.

194.     Defendant is required to accurately notify Plaintiff and Class Members following discovery or notification of a breach of its data security system if unencrypted or unredacted personal information ("PII") was or is reasonably believed to have been accessed and acquired by an unauthorized person who will, or it is reasonably believed who will, engage in identity theft or another fraud, without unreasonable delay under Va. Code Ann. § 18.2-186.6(B).

195.     Defendant is an entity that owns or licenses computerized data that includes PII as defined by Va. Code Ann. § 18.2-186.6(B).

196.     Plaintiff's and Class Members' PII includes PII as covered under Va. Code Ann. § 18.2-186.6(A).

197.     Because Defendant discovered a breach of its security system in which unencrypted or unredacted PII was or is reasonably believed to have been accessed and acquired by an unauthorized person, who will, or it is reasonably believed who will, engage in identity theft or another fraud, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Va. Code Ann. § 18.2-186.6(B).

198.     By failing to disclose the Defendant data breach in a timely and accurate manner, Defendant violated Va. Code Ann. § 18.2-186.6(B).

199.     As a direct and proximate result of Defendant's violations of Va. Code Ann. § 18.2-186.6(B), Plaintiff and Class Members suffered damages, as described above.

200. Plaintiff and Class Members seek relief under Va. Code Ann. § 18.2- 186.6(I), including actual damages.

## COUNT VI
### VIRGINIA CONSUMER PROTECTION ACT
### Va. Code. Ann. §§ 159.1-196, *et seq.*
### (On Behalf of Plaintiff and the Class)

201. Plaintiff and the Class repeat and re-allege paragraphs 1 – 140 of the Complaint as if fully set forth herein.

202. The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

203. Defendant is a "person" as defined by Va. Code Ann. § 59.1-198.

204. Defendant is a "supplier," as defined by Va. Code Ann. § 59.1-198.

205. Defendant engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198. Defendant advertised, offered, or sold goods or services used primarily for personal, family or household purposes; or relating to an individual's finding or obtaining employment (such as furnishing credit reports to prospective employers).

206. Defendant engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, including:

   a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' PII, which was a direct and proximate cause of the Data Breach;

51

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Class members' PII, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class members' PII; and

g. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

207.    Defendant intended to mislead Plaintiff and Class Members and induce them to rely on its misrepresentations and omissions.

208.    Defendant's representations and omissions were material because they were

52

likely to deceive reasonable consumers, including Plaintiff and Class Members, about the adequacy of Defendant's computer and data security and the quality of the Defendant brand.

209.    Had Defendant disclosed to Plaintiff and Class Members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff and the Class. Defendant accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and the Class Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

210.    In Defendant had a duty to disclose these facts due to the circumstances of this case, the sensitivity and extensivity of the PII in its possession, and the generally accepted professional standards. Such a duty is implied by law due to the nature of the relationship between consumers including Plaintiff and the Class – and Defendant, because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant. Defendant's duty to disclose also arose from its:

a.  Possession of exclusive knowledge regarding the security of the data in its systems;

b.  Active concealment of the state of its security; and/or

c.  Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

211.    The above-described deceptive acts and practices also violated the following

53

provisions of VA Code § 59.1-200(A):

    a.  Misrepresenting that goods or services have certain characteristics, uses, or benefits;

    b.  Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; and

    c.  Advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised;

    d.  Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

212.    Defendant acted intentionally, knowingly, and maliciously to violate Virginia's Consumer Protection Act, and recklessly disregarded Plaintiff and Class Members' rights. Defendant's numerous past data breaches put it on notice that its security and privacy protections were inadequate. An award of punitive damages would serve to punish Defendant for its wrongdoing, and warn or deter others from engaging in similar conduct.

213.    As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for Defendant's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

214.    Defendant's violations present a continuing risk to Plaintiff and Class Members as well as to the general public.

215.     Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation; restitution, injunctive relief; punitive damages; and attorneys' fees and costs.

## COUNT VII
## DECLARATORY AND INJUNCTIVE RELIEF
### (On Behalf of Plaintiff and All Class Members)

216.     Plaintiff and the Class repeat and re-allege paragraphs 1-140 of the Complaint as if fully set forth herein.

217.     Plaintiff pursues this claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

218.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.,* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

219.     An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiff's and Class Members' Private Information, and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from future data breaches that compromise their Private Information. Plaintiff and the Class remain at imminent risk that further compromises of their Private Information will occur in the future.

220.     The Court should also issue prospective injunctive relief requiring Defendant to employ adequate security practices consistent with law and industry standards to protect employee and patient Private Information.

221.    Defendant still possesses the Private Information of Plaintiff and the Class.

222.    To Plaintiff's knowledge, Defendant has made no announcement that it has changed its data storage or security practices relating to the Private Information, beyond the vague claim in the Data Breach Letter that it is "making [its] computer systems even stronger than before because [it does] not want this to happen again."

223.    To Plaintiff's knowledge, Defendant has made no announcement or notification that it has remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

224.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach at Genworth Financial. The risk of another such breach is real, immediate, and substantial.

225.    As described above, actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class members are at risk of additional or further harm due to the exposure of their Private Information and Defendant's failure to address the security failings that led to such exposure.

226.    There is no reason to believe that Defendant's employee training and security measures are any more adequate now than they were before the breach to meet Defendant's contractual obligations and legal duties.

227.    The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another data breach occurs at Genworth Financial, Plaintiff and Class Members will likely continue to be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to

Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

228.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Genworth Financial, thus eliminating the additional injuries that would result to Plaintiff and Class.

229.    Plaintiff and Class Members, therefore, seek a declaration (1) that Defendant's existing data security measures do not comply with its contractual obligations and duties of care to provide adequate data security, and (2) that to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to, the following:

a.    Ordering that Defendant engage internal security personnel to conduct testing, including audits on Defendant's systems, on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b.    Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

c.    Ordering that Defendant audit, test, and train its security personnel and employees regarding any new or modified data security policies and procedures;

d.    Ordering that Defendant purge, delete, and destroy, in a reasonably secure manner, any Private Information not necessary for its provision of services;

e.    Ordering that Defendant conduct regular database scanning and security checks; and

f.    Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel and employees how to

safely share and maintain highly sensitive personal information, including but not limited to, client personally identifiable information.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Class, and appointing Plaintiff and her Counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the

retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

v.    prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vi.    requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.    requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.    requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.      requiring Defendant to conduct regular database scanning and securing checks;

xi.     requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.    requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.    requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.     requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.    requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.      For an award of damages, including, but not limited to, actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E.      For an award of attorneys' fees, costs, and litigation expenses as allowed by law;

F.      For prejudgment interest on all amounts awarded; and

G.      Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

Date: June 30, 2023.                          Respectfully Submitted,

By: */s/_Joseph M. Kirchgessner__*
Joseph M. Kirchgessner – VA Bar #87709
**WOEHRLE DALBERG YAO, PLLC**
2016 Lafayette Blvd., Suite 101
Fredericksburg, VA 22401
Ph: (540) 898-8881
jkirchgessner@lawfirmvirginia.com


By: */s/ Brandon M. Wise*
Brandon M. Wise – IL Bar # 6319580*
**PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: (314) 833-4825
bwise@peifferwolf.com


By: */s/ Andrew R. Tate*
Andrew R. Tate – GA Bar #518068*
**PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP**
235 Peachtree Street NE, Suite 400
Atlanta, GA 30303
Ph: (404) 282-4806
atate@peifferwolf.com


*\*Pro Hac Vice* To Be Filed

*COUNSEL FOR THE PLAINTIFF
AND THE PUTATIVE CLASS*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| DELILAH KING, individually and on behalf of others similarly situated | GENWORTH FINANCIAL, INC. |

| (b) County of Residence of First Listed Plaintiff    Caroline County, VA | County of Residence of First Listed Defendant    Henrico County, VA |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Joseph M. Kirchgessner -WOEHRLE DALBERG YAO<br>2016 Lafayette Blvd., Suite 101<br>Fredericksburg, Virginia 22401 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[X] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations |
| | | | **INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions |
| | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | **LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609<br><br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Filing Under: 28 U.S.C. §1332 - Diversity of Citizenship

Brief description of cause:
Negligence, Declaratory Judgment, Data Breach

## VII. REQUESTED IN COMPLAINT:

[X] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   Exceeds $5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE      DOCKET NUMBER

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 6/30/2023 | /s/ Joseph M. Kirchgessner |

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
_____ Division

_____

             Plaintiff,

v.                      Civil Action No. _____

_____

             Defendant.


**DISCLOSURE OF CITIZENSHIP IN DIVERSITY JURISDICTION CASES**

      Pursuant to Federal Rule of Civil Procedure 7.1 and Local Civil Rule 7.1 of the Eastern District of Virginia, where jurisdiction is based on diversity of citizenship, all parties or intervenors in the case must, unless the Court orders otherwise, name and identify the citizenship of every individual or entity whose citizenship is attributable to that party or intervenor.

      Parties and intervenors are reminded that the citizenship of a limited liability company, professional corporation, limited partnership, partnership, and unincorporated association is determined by the citizenship of all its members or partners.


_____      _____
(Party/Intervenor)                  (Citizenship)


_____      _____
(Party/Intervenor)                  (Citizenship)


_____      _____
(Party/Intervenor)                  (Citizenship)


_____         _____
Date                        Signature of Attorney or Litigant
                                         Counsel for _____