## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD WEISSMAN, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ATHENE ANNUITY AND LIFE COMPANY and PENSION BENEFIT INFORMATION, LLC, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Richard Weissman ("Plaintiff"), individually, and on behalf of all others similarly situated ("Class Members"), by and through his attorneys, brings this Class Action Complaint against Defendants Athene Annuity and Life Company ("Athene") and Pension Benefit Information, LLC ("PBI" or "Pension Benefit" and, together with Athene, "Defendants"), and complains and alleges upon personal knowledge as to himself and upon information and belief as to all other matters.

## INTRODUCTION

1. Plaintiff brings this class action against Defendants for their failure to secure and safeguard his and approximately 1,209,825 other individuals' personally identifying information ("PII"), including their names, partial mailing addresses, dates of birth, and Social Security Numbers ("SSN").

2. Athene is a leading provider of products in the retirement savings market. It is one of the industry's fastest-growing writers of fixed indexed annuities. Athene is domiciled at 7700 Mills Civic Parkway, West Des Moine, Iowa 50266 and issues annuities in all states except New York.

3.    PBI provides audit and address services for insurance companies, pension funds, and other organizations.  PBI is headquartered at 711 Grand Ave., Suite 210, San Rafael, California, 94901 and maintain offices in Pennsylvania and Ohio.

4.    Athene provides the PII and Personal Health Information ("PHI") of its customers to PBI in connection with PBI's audit and address research services.

5.    PBI uses MOVEit, a file sharing program developed by Progress Software in the regular course of their business to securely transfer files.  On or around May 31, 2023, PBI was informed by Progress Software, that a vulnerability in the MOVEit software ("MOVEit") had been exploited by an unauthorized third party.  PBI conducted an investigation and found that the unauthorized third party accessed one of PBI's MOVEit Transfer servers on May 29 and May 30, 2023, and had downloaded data containing the PII/PHI of Athene and PBI's customers, including Plaintiff and Class Members ("Data Breach").

6.    Defendants owed a duty to Plaintiff and Class Members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII/PHI against unauthorized access and disclosure. Defendants breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect their customers' PII/PHI from unauthorized access and disclosure.

7.    As a result of Defendants' inadequate security and breach of their duties and obligations, the Data Breach occurred, and Plaintiff's and Class Members' PII/PHI was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of himself and all persons whose PII/PHI was exposed as a result of the Data Breach.

8.    Plaintiff, on behalf of himself and all other Class Members, asserts claims for negligence, breach of fiduciary duty, breach of implied contract, and unjust enrichment, and

seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

### *Plaintiff Richard Weissman*

9.  Plaintiff Richard Weissman is a citizen of New Jersey.

10.  Athene provides annuities or related services to Plaintiff. Athene provided Plaintiff's PII/PHI to PBI in connection with Plaintiff's insurance or related services.

11.  As a condition of receiving insurance or related services, Defendants required Plaintiff to provide them with his PII/PHI.

12.  Based on representations made by Defendants, Plaintiff believed Defendants had implemented and maintained reasonable security and practices to protect his PII/PHI. With this belief in mind, Plaintiff provided his PII/PHI to Defendants in connection with receiving annuities or related services.

13.  Defendants store and maintain Plaintiff's PII/PHI on their network systems and transmit or share that PII/PHI using MOVEit in the regular course of their business.

14.  Plaintiff takes great care to protect his PII/PHI, including his Social Security information. Had Plaintiff known that Defendants do not adequately protect the PII/PHI in their possession, he would not have obtained services from Defendants or agreed to provide them with his PII/PHI.

15.  Plaintiff received a letter from PBI notifying him that his PII/PHI was exposed in the Data Breach.

16.  As a direct result of the Data Breach, Plaintiff has suffered injury and damages including, *inter alia*, (i) actual damages of $371.06 to retain a company to monitor the identity theft caused by Defendants; (ii) a substantial and imminent risk of identity theft; (iii) the wrongful disclosure and loss of confidentiality of his highly sensitive PII/PHI; (iv) deprivation

of the value of his PII/PHI; and (v) overpayment for services that did not include adequate data security.

### *Defendant Athene Annuity and Life Company*

17.    Defendant Athene is an Iowa corporation with its principal place of business in West Des Moines, Iowa. Athene's headquarters are located at 7700 Mills Civic Parkway, West Des Moine, Iowa 50266.

18.    Defendant Athene is a subsidiary of Athene Holding, Ltd., a Bermuda corporation.

### *Defendant PBI*

19.    Defendant PBI is a California corporation with its principal place of business in San Rafael. PBI's headquarters are located at 711 Grand Ave., Suite 210, San Rafael, California, 94901.

### JURISDICTION AND VENUE

20.    The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §1332(d)(2), because: (a) there are 100 or more Class members; (b) at least one Class member is a citizen of a state that is diverse from Defendants; and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

21.    This Court has personal jurisdiction over Athene because Athene is engaged in substantial business activity in this state, including contracting to insure persons within this state.

22.    This Court has personal jurisdiction over PBI because PBI is engaged in substantial business activity in this state, including providing research and audit services for organizations within this state and handling the personal information of citizens of this state in the regular course of business.

23.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because substantial part of the events leading to Plaintiff's causes of action occurred in this District.

## FACTUAL ALLEGATIONS

### *Overview of Athene*

24.     Athene is a "leading provider of products in the retirement savings market."[1] It is one of the industry's fastest-growing writers of fixed indexed annuities. The vision for their retail business is to be the fixed annuity market leader with a strong capital base and efficient operating model.

25.     Athene is a subsidiary company of Bermuda corporation Athene Holding, Ltd. The corporate structure is as follows:[2]



26.     Athene's website includes a policy on their cybersecurity capabilities, stating

---

[1]     Athene   Annuity   &   Life   Company,   Annuity   Advantage, https://www.annuityadvantage.com/insurance-companies/athene-annuity-life-company/ (last accessed July 25, 2023).

[2]     Overview   of   Athene's   Corporate   Structure,   Athene,   April   2023, https://irathene.q4cdn.com/886888837/files/doc_presentations/2023/Apr/07/athene-corporate-structure-overview-april-2023.pdf (last accessed July 25, 2023).

that "Athene is continuously improving our security measures against new and emerging threats to help protect the data privacy of our customers and employees."[3]

27.     Moreover, Athene's website maintains a Code of Business Conducts & Ethics in which Athene highlight how their customers entrust PII/PHI to them and that they "must maintain the confidentiality of any personal or sensitive information entrusted to [them]" and that they "must also exercise appropriate care to prevent unauthorized disclosure and use of such information."[4]

28.     Athene's website does state that they may share customers information with third parties that are used to support their business and website, and also if required by law.[5]

29.     Plaintiff and Class members are, or were, customers of Athene and entrusted Athene with their PII/PHI.

### *Overview of PBI*

30.     PBI is a company operating in the financial services industry, providing audit and address research services for insurance companies, pension funds, and other organizations.

31.     PBI receives PII/PHI of Athene's customers from Athene in connection with PBI's audit and address research services.

32.     PBI acknowledges on their website that "[p]rotecting and securing the information of our clients and our company is of critical importance to PBI" and claims to use a "multi-layered approach to protect data securely" and have their data security team perform

---

[3]      Cybersecurity      Capabilities,      Athene,      August      2020, http://athenecentral.widen.net/s/z1jlrwpmpv (last accessed July 25, 2023).
[4]      Code      of      Business      Conducts      &      Ethics,      Athene https://athenecentral.widen.net/s/qxfcnhq28l/25320 (last accessed July 25, 2023).
[5]      Athene, Privacy Statement, January 2022, https://www.athene.com/privacy (last accessed July 25, 2023).

"over 30 security reviews of quarterly audit checks to test compliance against security policies."[6]

33.     Moreover, PBI claim to "provide additional safeguards for sensitive identifiable information, such as government identifiers"[7] and state that they may only share PII with third parties to meet their legal obligations, detect, investigate, and prevent security or fraud issues.[8]

### The Data Breach

34.     PBI uses a software called MOVEit, which is provided by Progress Software. PBI uses MOVEit to "securely transfer files" in the regular course of their business.[9] PBI uploads, stores, transfers, or accesses PII/PHI belonging to Athene's customers, shared by Athene, using the MOVEit software.

35.     On or about May 31, 2023, PBI were informed by Progress Software of a vulnerability in the MOVEit software that had been "exploited by an unauthorized third party."

36.     Following this, PBI "promptly" conducted an internal investigation into the "nature and scope of the MOVEit vulnerability's impact on [their] systems."[10] PBI learned through their investigation that the third party accessed one of their MOVEit servers on May 29 and May 30, 2023 and "downloaded data."[11]

37.     PBI then conducted a "manual review of [their] records to confirm the identities of the individuals potentially affected" by the Data Breach.[12] PBI began notifying affected persons of the Data Breach on or around July 14, 2023, over a month after learning of the Data

---

[6]     Data Security, PBI https://www.pbinfo.com/data-security/ (last accessed July 25, 2023).
[7]     Privacy Principles, PBI https://www.pbinfo.com/privacy-principles/ (last accessed July 25, 2023).
[8]     Privacy Policy, PBI https://www.pbinfo.com/privacy-policy/ (last accessed July 25, 2023).
[9]     Letter from PBI to Richard Weissman (July 14, 2023).
[10]    *Id.*
[11]    *Id.*
[12]    *Id*.

Breach.[13]  The notice letter PBI sent to Class Members, including Plaintiff, state the information affected by the breach includes Class Members "name and Social Security number,"[14] however a news report stated that the information affected by the breach includes Class Members "names, partial mailing addresses, dates of birth, and Social Security numbers."[15]

*Defendants Knew that Criminals Target PII/PHI*

38.    At all relevant times, Defendants knew, or should have known, that the PII/PHI that they collected, shared, and stored was a target for malicious actors.

39.    Athene acknowledge the risk of "new and emerging threats" to data privacy on their website[16] and claim to take action to protect its customers' PII/PHI. Moreover, PBI emphasizes its focus on data privacy and security on its website, stating their "multi-layered approach" and the extensive testing they carry out on their systems,[17] thus highlighting the Defendants awareness of such attacks and how the PII/PHI they hold may be targeted.

40.    Defendants knew or should have known of these risks.  Despite such knowledge, Defendants failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII/PHI from cyber-attacks that Defendants should have anticipated and guarded against.

41.    It is well known amongst companies that store sensitive PII that sensitive information – such as the SSNs stolen in the Data Breach – is valuable and frequently targeted by criminals.  The *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of

---

[13]      *Id.*

[14]      *Id.*

[15]      Steve Alder, *Pension Benefit Information Confirms PHI of 1.2 Million Individuals Stolen in MOVEit Transfer Hack,* The HIPAA Journal (Jul. 19, 2023), https://www.hipaajournal.com/pension-benefit-information-371359-hack/#:~:text=Pension%20Benefit%20Information%2C%20LLC%2C%20doing,vulnerability%20in%20the%20Progress%20Software's (last accessed July 25, 2023).

[16]      Corporate Social Responsibility, Athene https://www.athene.com/corporate-social-responsibility (last accessed July 25, 2023).

[17]      Data Security, PBI https://www.pbinfo.com/data-security/ (last accessed July 25, 2023).

businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[18]

42.     Cyber criminals also seek out PHI at a greater rate than other sources of personal information.  In a 2023 report, the healthcare compliance company Protenus found that there were 956 medical data breaches in 2022 with over 59 million patient records exposed.[19] This is an increase from the 758 medical data breaches which exposed approximately 40 million records that Protenus compiled in 2020.[20]

43.     PII/PHI is a valuable property right.[21] The value of PII/PHI as a commodity is measurable.[22] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[23] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[24]  It is so valuable to identity thieves that

---

[18]     Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, Bus. Insider (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1 (last accessed July 26, 2023).

[19]     *See* Protenus, *2023 Breach Barometer*, Protenus.com, https://www.protenus.com/breach-barometer-report (last accessed July 26, 2023).

[20]     *See id*.

[21]     *See* Marc van Lieshout, *The Value of Personal Data*, 457 Int'l Fed'n for Info. Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data (last accessed July 26, 2023).

[22]     *See* Invisibly, *How Much is Your Data Worth? The Complete Breakdown for 2023*, Invisibly.com (Jul. 13, 2021), https://www.invisibly.com/learn-blog/how-much-is-data-worth/ (last accessed July 26, 2023); *See also* Miklos Zoltan*, Dark Web Price Index 2023*, Privacy Affairs (Apr. 23, 2023), https://www.privacyaffairs.com/dark-web-price-index-2023/ (last accessed July 26, 2023).

[23]     OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLibrary (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en (last accessed July 26, 2023).

[24]     *See* IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, iab.com (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/ (last accessed July 26, 2023).

once PII/PHI has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

44.    As a result of the real and significant value of this material, identity thieves and other cyber criminals have openly posted credit card numbers, SSNs, PII/PHI, and other sensitive information directly on various Internet websites making the information publicly available.  This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated and become more valuable to thieves and more damaging to victims.

45.    PHI is particularly valuable and has been referred to as a "treasure trove for criminals."[25] A cybercriminal who steals a person's PHI can end up with as many as "seven to ten personal identifying characteristics of an individual."[26]

46.    Insurance records containing sensitive information, names, addresses, telephone numbers, email addresses, SSNs, and bank account information, complete with account and routing numbers, can fetch up to $1,200 to $1,300 each on the black market.[27]  According to a report released by the Federal Bureau of Investigation's Cyber Division, criminals can sell healthcare records, containing such information, for 50 times the price of a stolen SSN or credit card number.[28]

---

[25]    *See* Andrew Steager, *What Happens to Stolen Healthcare Data*, HealthTech Magazine (Oct. 20, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon ("*What Happens to Stolen Healthcare Data*") (quoting Tom Kellermann, Chief Cybersecurity Officer, Carbon Black, stating "Health information is a treasure trove for criminals") (last accessed July 26, 2023).

[26]    *Id.*

[27]    *See* SC Staff, *Health Insurance Credentials Fetch High Prices in the Online Black Market*, SC Mag. (July 16, 2013), https://www.scmagazine.com/news/breach/health-insurance-credentials-fetch-high-prices-in-the-online-black-market (last accessed July 26, 2023).

[28]    *See* Federal Bureau of Investigation, *Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain* (April 8, 2014), https://www.illuminweb.com/wp-content/uploads/ill-mo-uploads/103/2418/health-systems-cyber-intrusions.pdf (last accessed July 26, 2023).

47. Criminals can use stolen PII/PHI to extort a financial payment by "leveraging details specific to a disease or terminal illness."[29] Quoting Carbon Black's Chief Cybersecurity Officer, one recent article explained: "Traditional criminals understand the power of coercion and extortion . . . By having healthcare information – specifically, regarding a sexually transmitted disease or terminal illness – that information can be used to extort or coerce someone to do what you want them to do."[30]

48. Consumers place a high value on the privacy of that data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[31]

49. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII/PHI has, thus, deprived that consumer of the full monetary value of the consumer's transaction with the company.

### *Theft of PII/PHI Has Grave and Lasting Consequences for Victims*

50. Theft of PII/PHI is serious. The Federal Trade Commission ("FTC") warns consumers that identity thieves use PII/PHI to receive medical treatment, start new utility accounts, incur charges and credit in a person's name, or even pretend to be another person if arrested.[32]

---

[29] *What Happens to Stolen Healthcare Data*, *supra* n. 25.
[30] *Id.*
[31] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2) Info. Sys. Rsch. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1 (last accessed July 26, 2023).
[32] *See* Federal Trade Commission, *What to Know About Identity Theft*, Fed. Trade Comm'n Consumer Info., https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed July 26, 2023); *See* Federal Trade Commission, *Warning Signs of Identity Theft*, IdentityTheft.gov https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed July 26, 2023).

51.     Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[33]  According to Experian, one of the largest credit reporting companies in the world, "[i]dentity thieves can profit off your personal information in different ways." Among other things, they can: sell the victim's PII; take over banking, phone, and ecommerce accounts; apply for new accounts; get medical procedures; file a tax return; or apply for government benefits using the victim's name and SSN.[34]

52.     With access to an individual's PII/PHI, criminals can do more than just empty a victim's bank account and apply for government benefits. They can also commit acts of blackmail against victims or, in extreme cases, transfer home titles and taking out mortgages against the victim's home.[35]

53.     Identity theft is not an easy problem to solve.  In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[36]

54.     Theft of SSNs also creates a particularly alarming situation for victims because those numbers cannot easily be replaced.  In order to obtain a new number, a breach victim has

---

[33]     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).

[34]     *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, Experian (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/ (last accessed July 26, 2023).

[35]     *Id.*

[36]     *See* Identity Theft Resource Center, *2021 Consumer Aftermath Report*, Identity Theft Res. Ctr. (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/ (last accessed July 26, 2023).

to demonstrate ongoing harm from misuse of their SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

55.     Due to the highly sensitive nature of SSNs, theft of SSNs in combination with other PII *(e.g.*, name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. *TIME Magazine* quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating: "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[37]

56.     There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used.  For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[38]

57.     It is within this context that Plaintiff and Class Members must now live with the knowledge that their PII/PHI is forever in cyberspace and was taken by and in the possession of people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

### *Damages Sustained by Plaintiff and the Other Class Members*

58.     Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (a) retaining a company to monitor their credit; (b) a substantially increased and imminent risk of identity theft; (c) the compromise, publication, and theft of their PII/PHI; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from

---

[37]     Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (August 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/ (last accessed July 26, 2023).

[38]     John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf (last accessed July 26, 2023).

unauthorized use of their PII/PHI; (e) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (f) the continued risk to their PII/PHI which remains in Defendants' possession; (g) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (h) overpayment for the services that were received without adequate data security.

## CLASS ALLEGATIONS

59.     This action is brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

60.     Plaintiff brings this action on behalf of himself and all members of the following Data Breach of similarly situated persons:

> All persons whose personally identifiable information was compromised in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach.

61.     The Class asserts claims against Defendants for negligence, breach of fiduciary duty, breach of implied contract and unjust enrichment.

62.     Excluded from the Classes are Athene Annuity and Life Company, and its affiliates, parents, subsidiaries, officers, agents, and directors; Pension Benefit Information, LLC, and its affiliates, parents, subsidiaries, officers, agents, and directors; as well as the judge(s) presiding over this matter and the clerks of said judge(s).

63.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

64. The members of the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. It is reported that approximately 1,209,825 persons' information was exposed in the Data Breach.[39]

65. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

    a. whether Defendants had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members' PII/PHI from unauthorized access and disclosure;

    b. whether Defendants had duties not to disclose the PII/PHI of Plaintiff and Class Members to unauthorized third parties;

    c. whether Defendants failed to exercise reasonable care to secure and safeguard Plaintiff's and Class Members' PII/PHI;

    d. whether an implied contract existed between Class Members and Defendants, providing that Defendants would implement and maintain reasonable security measures to protect and secure Class Members' PII/PHI from unauthorized access and disclosure;

    e. whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII/PHI of Plaintiff and Class Members;

    f. whether Defendants breached their duties to protect Plaintiff's and Class Members' PII/PHI; and

    g. whether Plaintiff and Class Members are entitled to damages, and the measure of such damages and relief.

66. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

67. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had his PII/PHI compromised in the Data Breach. Plaintiff

---

[39] *See* Steve Alder, *supra* n. 15.

and Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendants, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

68.     Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that he has no interests adverse to, or that conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

69.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress from Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT I

### NEGLIGENCE

70.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71.     Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in safeguarding, securing, and protecting the PII/PHI in their possession, custody, or control.

72.     Defendants knew or should have known the risks of collecting and storing Plaintiff's and all other Class Members' PII/PHI and the importance of maintaining and using secure systems.  Defendants knew or should have known of the many data breaches that have targeted companies that stored PII/PHI in recent years.

73.     Given the nature of Defendants' businesses, the sensitivity and value of the PII/PHI they maintain, and the resources at their disposal, Defendants should have identified and foreseen that the third parties they share information with could have vulnerabilities in their systems and prevented the dissemination of Plaintiff's and Class Members' PII/PHI.

74.     Defendants make statements on their websites demonstrating their awareness of the risk of potential data breaches, that they will follow privacy laws and regulations, and that they will use reasonable methods to protect the PII/PHI in their control.

75.     Defendants breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII/PHI by failing to ensure that the third parties they share PII/PHI with design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII/PHI entrusted to them—including Plaintiff's and Class Members' PII/PHI.

76.     Plaintiff and Class Members had no ability to protect their PII/PHI that was, or remains, in Athens's or PBI's possession.

77. It was or should have been reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII/PHI by failing to ensure that the third parties they share PII/PHI with design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class Members' PII/PHI to unauthorized individuals.

78. But for Defendants' negligent conduct or breach of the above-described duties owed to Plaintiff and Class Members, their PII/PHI would not have been compromised. The PII/PHI of Plaintiff and the Class was accessed and stolen as the proximate result of Defendants' failure to exercise reasonable care in safeguarding, securing, and protecting such PII/PHI by, *inter alia*, ensuring that third parties they contract with and share PII/PHI with adopt, implement, and maintain appropriate security measures.

79. As a result of Defendants' above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (a) a substantially increased and imminent risk of identity theft; (b) the compromise, publication, and theft of their PII/PHI; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (d) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (e) the continued risk to their PII/PHI which remains in Defendants' possession; (f) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (g) overpayment for the services that were received without adequate data security.

## COUNT II

### BREACH OF FIDUCIARY DUTY

80. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

81. As a condition of obtaining services or employment from Defendants, Plaintiff and Class Members gave Defendants their PII/PHI in confidence, believing that Defendants would protect that information. Plaintiff and Class Members would not have provided Defendants with this information had they known it would not be adequately protected. Defendants' acceptance and storage of Plaintiff's and Class Members' PII/PHI created a fiduciary relationship between Defendants and Plaintiff and Class Members. In light of this relationship, Defendants must act primarily for the benefit of their customers, which includes safeguarding and protecting Plaintiff's and Class Members' PII/PHI.

82. Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship. They breached that duty by failing to ensure that the third parties they contract with and share PII/PHI with properly protect the integrity of the system containing Plaintiff's and Class Members' PII/PHI, failing to comply with the data security guidelines set forth by HIPAA, and otherwise failing to safeguard Plaintiff's and Class Members' PII/PHI that they collected, shared, and stored.

83. As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (a) a substantially increased and imminent risk of identity theft; (b) the compromise, publication, and theft of their PII/PHI; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (d) lost opportunity costs associated with efforts attempting to mitigate the actual and future

consequences of the Data Breach; (e) the continued risk to their PII/PHI which remains in Athene's and PBI's possession; (f) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (g) overpayment for the services that were received without adequate data security.

**COUNT III**

**BREACH OF IMPLIED CONTRACT**

84.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

85.     In connection with receiving insurance services, Plaintiff and all other Class Members entered into implied contracts with Defendants.

86.     Pursuant to these implied contracts, Plaintiff and Class Members benefited Defendants by paying monies to Defendants, and provided Defendants with their PII/PHI. In exchange, Defendants agreed to, among other things, and Plaintiff understood that Defendants would: (a) provide insurance or related benefits, products, or services, to Plaintiff and Class Members; (b) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' PII/PHI; (c) protect Plaintiff's and Class Members' PII/PHI in compliance with federal and state laws and regulations and industry standards; and (d) ensure third parties they contract with and share PII/PHI with implement and maintain reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' PII/PHI.

87.     The protection of PII/PHI was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and Defendants, on the other hand. Indeed, as set forth *supra*, Defendants recognized the importance of data security and the privacy of their customers' PII/PHI. Had Plaintiff and Class Members known that

Defendants would not adequately protect their PII/PHI, they would not have paid for products or services from Defendants.

88.     Plaintiff and Class Members performed their obligations under the implied contract when they provided Defendants with their PII/PHI and paid monies for products and services from Defendants, expecting that their PII/PHI would be protected.

89.     Defendants breached their obligations under their implied contracts with Plaintiff and Class Members by failing to implement and maintain reasonable security measures to protect and secure their PII/PHI, and in failing to ensure that the third parties they contract with and share PII/PHI with implement and maintain security protocols and procedures to protect Plaintiff's and Class Members' PII/PHI in a manner that complies with applicable laws, regulations, and industry standards.

90.     Defendants' breach of their obligations of the implied contracts with Plaintiff and Class Members directly resulted in the Data Breach and the resulting injuries to Plaintiff and Class Members.

91.     Plaintiff and all other Class Members were damaged by Defendants' breach of implied contracts because: (a) they paid monies (directly or indirectly) to Defendants in exchange for data security protection they did not receive; (b) they now face a substantially increased and imminent risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (c) their PII/PHI was improperly disclosed to unauthorized individuals; (d) the confidentiality of their PII/PHI has been breached; (e) they were deprived of the value of their PII/PHI, for which there is a well-established national and international market; (f) they lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (g) they overpaid for the services that were received without adequate data security.

## COUNT IV

### UNJUST ENRICHMENT

92.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

93.     This claim is pleaded in the alternative to the breach of implied contract claim.

94.     In obtaining services from Defendants, Plaintiff and Class Members provided and entrusted their PII and PHI to Defendants.

95.     Plaintiff and Class Members conferred a monetary benefit upon Defendants in the form of monies paid for services with an implicit understanding that Defendants would use some of their revenue to protect the PII/PHI they collect, share, and store.

96.     Defendants accepted or had knowledge of the benefits conferred upon them by Plaintiff and Class Members. Defendants benefitted from the receipt of Plaintiff's and Class members' PII/PHI, as this was used to facilitate billing and payment services, which enabled Defendants to carry out their business.

97.     As a result of Defendants' conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for and expected, and those payments without reasonable data privacy and security practices and procedures that they received.

98.     Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendants failed to adequately implement the data privacy and security procedures for themselves and the third parties that they contract with and share PII/PHI with that Plaintiff and Class Members paid for and expected, and that were otherwise mandated by federal, state, and local laws and industry standards.

99. Defendants should be compelled to provide for the benefit of Plaintiff and Class Members all unlawful proceeds they received as a result of the conduct and Data Breach alleged herein.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the Class, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief designed to prevent Defendants from experiencing another data breach by adopting and implementing best data security practices to safeguard PII/PHI and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: July 26, 2023

By:    */s/Barry J. Gainey*
        Barry J. Gainey
        **GAINEY McKENNA & EGLESTON**
        375 Abbott Road
        Paramus, NJ 07652
        Telephone: (201) 225-9001
        Facsimile: (201) 225-9002
        bgainey@gme-law.com

        Thomas J. McKenna
        Gregory M. Egleston
        **GAINEY McKENNA & EGLESTON**
        501 Fifth Avenue, 19th Floor
        New York, NY 10017
        Telephone: (212) 983-1300
        Facsimile: (212) 983-0383
        tjmckenna@gme-law.com
        gegleston@gme-law.com

        ***Attorneys for Plaintiff***

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

RICHARD WEISSMAN, individually and on behalf of all others similarly situated,

**(b)** County of Residence of First Listed Plaintiff  Camden County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Gainey McKenna & Egleston, 375 Abbott Road, Paramus, New Jersey 07652, (201)225-9001

## DEFENDANTS

ATHENE ANNUITY AND LIFE COMPANY and PENSION BENEFIT INFORMATION, LLC,

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☒ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §1332(d)(2),
Brief description of cause:
Data Breach Case

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE 07/26/2023

SIGNATURE OF ATTORNEY OF RECORD
s/Barry J. Gainey, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)    Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)    County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)    Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.    Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.    Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.    Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.  **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.    Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

# U.S. District Court
## District of New Jersey [LIVE] (Camden)
## CIVIL DOCKET FOR CASE #: 1:23-cv-03999

| | |
|---|---|
| WEISSMAN v. ATHENE ANNUITY AND LIFE COMPANY et al | Date Filed: 07/26/2023 |
| Assigned to: | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity-Breach of Contract | Nature of Suit: 190 Contract: Other |
| | Jurisdiction: Diversity |

**Plaintiff**

**RICHARD WEISSMAN**                     represented by     **BARRY J. GAINEY**
GAINEY McKENNA & EGLESTON
375 ABBOTT ROAD
PARAMUS, NJ 07652
201-225-9001
Fax: 201-225-9002
Email: bgainey@gme-law.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**ATHENE ANNUITY AND LIFE COMPANY**

**Defendant**

**PENSION BENEFIT INFORMATION, LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/26/2023 | 1 | COMPLAINT against ATHENE ANNUITY AND LIFE COMPANY, PENSION BENEFIT INFORMATION, LLC ( Filing and Admin fee $ 402 receipt number ANJDC-14484368) with JURY DEMAND, filed by RICHARD WEISSMAN. (Attachments: # 1 Civil Cover Sheet)(GAINEY, BARRY) (Entered: 07/26/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/27/2023 11:59:21 | | | |
| **PACER Login:** | Mullen1001 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-03999 Start date: 1/1/1980 End date: 7/27/2023 |

| Billable Pages: | 1 | Cost: | 0.10 |
|---|---|---|---|