BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION

| | |
|---|---|
| In re:<br><br>**MOVEit CUSTOMER DATA SECURITY BREACH LITIGATION** | MDL Docket No. 3083 |

**INTERESTED PARTY DEFENDANTS PENSION BENEFIT INFORMATION, LLC AND THE BERWYN GROUP, INC.'S RESPONSE AND MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER RELATED CASES AND FOR CENTRALIZED <u>PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407</u>**

In May of 2023, a criminal gang of Russian hackers exploited a vulnerability of Progress Software Corporation's MOVEit file transfer software, stealing the confidential information of federal and state governments, universities, healthcare organizations, and corporations around the world.  Pension Benefit Information, LLC ("PBI") was among the hundreds of MOVEit customers victimized by this global cybercrime. Because PBI and its clients acted swiftly to notify those potentially impacted, plaintiffs' class action lawyers singled out PBI as a target of early class action lawsuits. However, as other victims begin to make disclosures and notify impacted individuals, they too are or will be targeted by class action lawsuits. There will be two common features in all of these suits: (1) Russian cyber criminals and (2) the zero-day vulnerability of Massachusetts-based Progress Software Corporation's MOVEit file transfer software, which was unknown to PBI and presumably the numerous other victims.

PBI and its affiliate The Berwyn Group, Inc. ("Berwyn"), in accordance with Rule 6.2 of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, submit the following Interested Party Response to Bruce Bailey's Motion for Transfer and Centralization of Related Actions, pursuant to 28 U.S.C. § 1407.

1

As discussed further below, based on the common operative facts and anticipated legal issues among the thirty-two (32) actions that have already been tagged, PBI and Berwyn join in Bailey's arguments for centralized litigation pursuant to section 1407. However, PBI and Berwyn respectfully disagree with Bailey regarding the most appropriate location for centralized litigation, which PBI and Berwyn contend is the District of Massachusetts. The common thread among the tagged actions is the MOVEit data security incident which arose from Russian hackers exploitation of a zero-day vulnerability in software developed, owned, and/or licensed by Progress Software Corporation, which is based in Massachusetts. Moreover, of the thirty-two pending actions, more have been filed in Massachusetts than any other venue.

I.   BACKGROUND

As of the filing of this Response, there have been thirty-two (32) putative class actions filed before federal courts in California, Louisiana, Massachusetts, Maryland, Minnesota, New Jersey, and Virginia and tagged under this MDL proceeding (the "Related Actions"). The Related Actions all assert claims arising from the purported exposure of personal information of the named plaintiffs and proposed class members as a result of Russian hackers exploitation of a zero-day vulnerability discovered by Progress Software Corporation ("Progress") in MOVEit, a file transfer software application that Progress developed, owned, and licensed to is customers.  Progress is currently a named defendant in most of the Related Actions and in those cases filed against PBI and Berwyn where Progress is not named, PBI and Berwyn intend to join it as an additional defendant.

PBI provides services, including identifying decedents, lost participants or policyholders, and beneficiaries, to pensions, insurance companies, third-party administrators, financial institutions, and other entities. PBI used Progress's MOVEit file transfer software to transfer files

between organizations, including some of its clients. On or around May 31, 2023, Progress publicly disclosed a zero-day vulnerability that impacted its MOVEit file transfer software. The Federal Bureau of Investigation and (FBI) and Cybersecurity and Infrastructure Security Agency (CISA) reported that Russian hackers associated with the cyber criminal group CL0P were able to purportedly gain access to information that was on servers using the MOVEit file transfer software (the "MOVEit Incident"). As a user of that software, PBI moved quickly to apply patching when made available by Progress and undertook recommended mitigation steps recommended. PBI promptly launched an investigation, with the assistance of third-party cybersecurity specialists, to determine the potential impact of the vulnerability's presence on its MOVEit transfer servers and on the data housed on the servers. Thereafter, PBI notified its clients of the MOVEit Incident and began providing notice on certain of its clients' behalf to individuals whose personal information had been provided to PBI through use of the MOVEit transfer software. Some of those clients also notified individuals of the MOVEit Incident directly.

As a result of its use of Progress's MOVEit file transfer software and the MOVEit Incident, PBI has currently been named a defendant in thirteen (13) putative class actions tagged in this MDL. Progress is named a co-defendant in six (6) of those actions and PBI intends to join Progress in the remaining seven (7) actions. There is also one action which does not name PBI directly but was filed against one of PBI's client's affiliates, Genworth Financial, Inc.

Berwyn is a sibling company of PBI that provides similar services. Although it is named as a defendant in seven (7) of the Related Actions, Berwyn had no server impacted by the MOVEit vulnerability.

Besides the actions naming PBI and Berwyn, there are currently eighteen (18) other pending class actions arising from the MOVEit Incident and tagged in this MDL that do not involve

PBI, Berwyn, or their clients. Most name Progress and/or other users of Progress's MOVEit file transfer software who were impacted in the MOVEit Incident. Those users include the Louisiana Office of Motor Vehicles, Oregon Department of Transportation, Illinois Department of Innovation and Technology, Vitality, Johns Hopkins University, and Johns Hopkins Health System.

It is possible, if not highly probable, that additional class actions will be filed against Progress and/or other users of MOVEit, once notice is provided by other MOVEit customers to individuals whose personal information was potentially impacted in the Incident. The full extent of the MOVEit Incident remains to be seen.

## II.     ARGUMENT

### A.     The Standards for Consolidation and Transfer Under 28 U.S.C. § 1407 Are Met in this Matter.

Section 1407(a) of title 28 of the U.S. Code provides that when civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. In considering consolidation, "the Panel's statutory mandate is to weigh the interests of all the plaintiffs and all the defendants, and to consider multidistrict litigation as a whole in light of the purposes of the law." *In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1229 (J.P.M.L. 1977) (citing *In re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L.1968)).

Under 28 U.S.C. § 1407, transfer and consolidation or coordination of cases is permitted so long as they meet three requirements: (1) the cases "involv[e] one or more common questions of fact;" (2) transfer and consolidation or coordination will further "the convenience of parties and witnesses;" and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a). "Centralization is designed to "eliminate

duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification matters), and conserve the resources of the parties, their counsel and the judiciary." *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1347 (J.P.M.L. 2006); *In re SoClean, Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.,* 585 F. Supp. 3d 1355, 1356 (J.P.M.L. 2022). Furthermore, transfer under section 1407 and centralization does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant where the actions still arise from a common factual core. *In re FTX Cryptocurrency Exch. Collapse Litig.*, No. MDL 3076, 2023 WL 3829242, at *2 (J.P.M.L.) (citing *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390-91 & n.5 (J.P.M.L. 2014)).

Here, common questions of fact exist across the Related Actions, namely the nature and extent of the MOVEit Incident, which is the subject of and basis for each class action. Other common questions of fact concern the similar nature of Plaintiffs' claims—alleging wrongdoing by Progress and MOVEit's users such as PBI—related to data security practices and procedures, Progress's and others' investigation and response to the MOVEit Incident, and the notifications provided of the Incident. Additional common questions of fact concerning plaintiffs and proposed class members include their purported allegations of impact from the MOVEit Incident and resulting class-wide alleged damages. Although MOVEit users are not the same in every action, the basis of each claim is the same, *i.e.*, each MOVEit customer was impacted by the exploitation by Russian hackers of a zero-day vulnerability that resulted in the MOVEit Incident. Thus, similar defenses are likely to be raised by various defendants.

Transfer and centralization will also serve the convenience of parties and witnesses, promote efficiency and judicial economy, and prevent duplicative discovery and inconsistent

rulings, due to the significant overlap among the parties in each of the Related Actions. Centralization will avoid inconsistent rulings on plaintiffs' similar claims and defendants' similar defenses likely to be raised in the pleadings phase, or at class certification or summary judgment. Witnesses will not be forced to testify in dozens—if not more—separate class actions across the country. Centralization will significantly lower the cost of litigation for all parties, as well as the burden on the courts. All of the Related Actions were filed in late June or July 2023, and so are in essentially the same procedural posture. No parties will be prejudiced by transfer and centralization.

Based on the totality of the circumstances above, PBI and Berwyn submit that this matter is appropriate for transfer and centralization.

### B. If Centralization Occurs, the District of Massachusetts is the Most Appropriate Venue.

Should the Panel choose to centralize and consolidate the Related Actions before one court, PBI and Berwyn submit that the District of Massachusetts is the most appropriate venue. When selecting a transferee district, the Panel generally considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed the furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." *Manual for Complex Litigation (Fourth)* § 20.131 (2004).

Here, eleven (11) of the Related Actions are pending in the District of Massachusetts, which is the most among any court. That number is likely to increase as notice of the MOVEit Incident is provided to additional potentially impacted businesses and individuals. As the Related Actions are all at the same procedural stage, no court's action has progressed ahead of another.

Furthermore, Progress is located in Massachusetts, and as the MOVEit Incident was the result of the exploitation by Russian hackers of a vulnerability with its MOVEit file transfer software application, it is likely to be the target of discovery in all actions, and is already a party in most. By comparison, the other districts where the Related Actions have been filed are either where MOVEit users are located or where named Plaintiffs reside. Those jurisdictions will not have a connection to each of the Related Actions, but Massachusetts does.

The District of Massachusetts and Judge Nathaniel Gorton, who was initially assigned five of the Related Actions filed there, are fully capable of managing this litigation. The District of Massachusetts is currently handling only five active multi-district litigations. *See* Pending MDLs by District Report (July 17, 2023), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-17-2023.pdf. One of these cases, *IN RE: Fresenius GranuFlo/NaturaLyte Dialysate Products Liability Litigation*, MDL No. 2428, is being presided over by Judge Gorton, who is well-versed in managing multi-district litigations having been assigned to and successfully brought to a close a number of these cases. *See IN RE: Celexa and Lexapro Marketing and Sales Practices Litigation*, No. 1:09-md-2067 (presided over by Judge Gorton and terminated in 2020); *IN RE: Ranbaxy Generic Drug Application Antitrust Litigation*, No. 1:19-md-2878 (presided over by Judge Gorton and terminated in 2022). Further, Judge Gorton also has experience handling data breach cases as he is currently presiding over a non-MDL data breach action filed earlier this year. *See Weekes v. Cohen Cleary P.C.* 1:23-cv-10817 (data breach class action filed in April of 2023); *see also Axis Insurance Company v. Barracuda Networks, Inc. et al*, Case No. 1:20-cv-11997 (complex litigation being overseen by Judge Gorton that arises out of a data breach).

Finally, expenses are likely to be minimized by centralizing this matter in Massachusetts. Boston has a world-class airport, which is just across the Boston Harbor and a drive of less than four miles from the John Joseph Moakley Courthouse. Locating this action in Boston will not inconvenience any party. For all of these reasons, PBI and Berwyn believe that the District of Massachusetts is the appropriate venue for centralization.

### III. CONCLUSION

For the reasons stated herein, Pension Benefit Information, LLC, and The Berwyn Group, Inc., support centralization of the Related Actions, but believe the District of Massachusetts is the most appropriate location.

Dated: July 28, 2023

Respectfully submitted,

*/s/ Paulyne A. Gardner*
Paulyne A. Gardner
Mullen Coughlin LLC
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
(267) 930-2098
pgardner@mullen.law
*Counsel for Defendants, Pension Benefit Information, LLC, and The Berwyn Group, Inc.*