BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | ) <br> ) MDL No. 3083 <br> ) <br> ) |

**JOINT RESPONSE OF INTERESTED PARTIES KELLY HARRIS, DIANE WHITE, SABELA PORTILLO, AND REBECCA IDDINGS, TO MOTION TO TRANSFER RELATED CASES FOR CENTRALIZED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

**INTRODUCTION**

Plaintiffs Kelly Harris, Diane White, Sabela Portillo, and Rebecca Iddings (collectively "Plaintiffs") jointly submit this Interested Party Response in support of consolidating related actions arising out of vulnerabilities in MOVEit software that impacted tens, if not hundreds, of businesses and likely millions of individuals in the United States.[1] On July 11, 2023 and July 20, 2023, Plaintiffs filed class action complaints against Pension Benefit Information LLC ("PBI") and Progress Software Corporation ("PSC") (collectively, "Defendants") in the District of Minnesota. Plaintiffs alleged that PBI negligently implemented and deployed PSC's file transfer software, MOVEit, which was, along with other security deficiencies, exploited by hackers who gained access to millions of individuals' highly sensitive information ("Data Breach").

The Data Breach has already spawned numerous related actions filed in district courts throughout the country, including at least the Central District of California, Northern District of California, Central District of Illinois, Eastern District of Louisiana, District of Maryland, District of Massachusetts, District of Minnesota, District of New Jersey, and the Eastern District of

---

[1] Plaintiffs filed two separate actions in the District of Minesota: *Harris v. Pension Benefit Information, LLC, et al.*, 0:23-cv-2075 (D. Minn. Jul. 11, 2023) ("*Harris* Action"); *White, et al. v. Pension Benefit Information, LLC*, 0:23-cv-2254-KMM-DTS (D. Minn. Jul. 28, 2023) ("*White* Action").

Virginia. As such, cases have been filed in eight different states, California, Illinois, Louisiana, Maryland, Massachusetts, Minnesota, New Jersey, and Virginia. Given the widespread impact of the MOVEit Data Breach, additional related actions are likely, including against PSC, PBI, and other defendants already named (like Genworth Financial, Inc., Ipswitch, Inc., the Illinois Dept. of Innovation and Technology, among others), and further actions have the potential to originate from virtually any district in the country. However, each of the current actions and any future-filed actions will each focus on the same event—the MOVEit Data Breach—which has harmed plaintiffs and other individuals in the same way, by exposing sensitive information creating the risk of fraud, identity theft, and other illicit misuse.

Consequently, Plaintiffs support consolidation and centralization of the related actions to promote the efficient litigation of the actions stemming from the MOVEit Data Breach. Plaintiffs contends that centralization in the District of Minnesota is the most appropriate because Minnesota's central location will benefit litigation located nationwide and provides an area where a substantial amount of discovery is likely to reside because one of the major defendants, PBI, is located there. Judge Katherine M. Menendez—who has been assigned each of the related actions filed in Minnesota—is highly capable of managing a likely substantially complex Multi-District Litigation ("MDL") like this one.

Plaintiffs respectfully request the Panel authorize consolidation of the related actions pursuant to 28 U.S.C. § 1407(a) before Judge Menendez in the District of Minnesota.

## BACKGROUND

At the time of this submission, plaintiffs located nationwide have filed thirty-three putative class actions related to harm arising from the Data Breach involving PSC's MOVEit software ("Related Actions"). The Related Actions each concern the Data Breach, which PSC first publicly disclosed on May 31, 2023. *See Harris* Action, ECF No. 1, at ¶ 29 ("*Harris* Complaint"). PSC is a technology

company that owns and operates MOVEit, which PSC offers to commercial entities as a file transfer program, and MOVEit is used by hundreds of companies throughout the United States. *Id.* at ¶¶ 5, 23–24.  In May 2023, PSC disclosed that its MOVEit file transfer software contained an SQL injection vulnerability and had been exploited by a Russian cybercriminal group, CL0P, to gain access sensitive information stored by hundreds of different businesses, including PBI's. *Id.* at ¶ 8.  Although PSC allegedly created a patch to resolve the vulnerability, several businesses, including PBI, allegedly delayed implementing it, allowing CL0P to steal the information. *Id.* at ¶ 30.

The MOVEit Data Breach has likely impacted millions of individuals in the United States, including individuals dispersed throughout the country.  Indeed, the Related Actions have been filed in eight different states already, including California, Illinois, Louisiana, Maryland, Massachusetts, Minnesota, New Jersey, and Virginia.  Moreover, businesses that used MOVEit and were impacted by the Data Breach are, likewise, located throughout the country.  Given the widespread impact of the Data Breach, additional related actions are likely to be filed and may arise from virtually anywhere in the United States.

The currently filed Related Actions also largely assert the same types of harms, namely, the disclosure of sensitive information due to the Data Breach, that put victims at risk of fraud and identity theft.  Plaintiffs here similarly allege, among other things, that the Data Breach will force them to incur time, effort, and expense to monitor their accounts and diminished value of their sensitive data.  Since the Related Actions are centered around the same event—the Data Breach—and allege the same types of harm—due to the exposure of sensitive information—the claims largely overlap and are substantially similar.  For instance, Plaintiffs here assert claims for negligence, negligence *per se*, and declaratory relief.  *See Harris* Compl., ¶¶ 118–32; *White* Action, ECF No. 1, at [x].  These claims are alleged in many of the Related Actions as well.

Currently, several of the Related Actions are pending in the District of Minnesota, each before Judge Menendez. *See, e.g.*, *Harris* Action, ECF No. 5 (reassigning related cases to Judge Menendez). The plaintiffs who filed in the District of Minnesota have worked cooperatively with each other and with the Defendants there, who have moved to stay all actions pending the outcome of the motion for consolidation under 28 U.S.C. § 1407(a).

## ARGUMENT

I.  **The Related Actions Should be Consolidated Because they Allege Similar Harms Arising from the Same Event, the MOVEit Data Breach**

Under 28 U.S.C. § 1407(a), civil actions involving one or more common questions of fact are pending in different districts may be centralized in any district to coordinate and consolidate pretrial proceedings. Cases may be consolidated where they meet three criteria: (1) the related actions "involv[e] one or more common questions of fact;" (2) consolidation will further "the convenience of parties and witnesses;" and (3) consolidation "will promote the just and efficient conduct of [the] actions." *Id.*

"Centralization is designed to "eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification matters), and conserve the resources of the parties, their counsel and the judiciary." *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1347 (J.P.M.L. 2006). However, transfer under § 1407 does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant where the actions still arise from a common factual core. *In re FTX Cryptocurrency Exch. Collapse Litig.*, No. MDL 3076, 2023 WL 3829242, at *2 (J.P.M.L.) (citing *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390-91 & n.5 (J.P.M.L. 2014)).

Here, the Related Actions all arise out of the same factual core—the Data Breach and subsequent harm that occurred, impacting millions of individuals. The Panel has previously consolidated actions collectively arising out of a single data breach. *See,* e.g.: *In re T-Mobile Customer*

4

*Data Sec. Breach Litig.,* 576 F. Supp. 3d 1373 (U.S. Jud. Pan. Mult. Lit. 2021); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.,* 410 F. Supp. 3d 1350 (U.S. Jud. Pan. Mult. Lit. 2019); *In re Ashley Madison Customer Data Sec. Breach Litig.,* 148 F. Supp. 3d 1378 (U.S. Jud. Pan. Mult. Lit. 2015); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,* 363 F. Supp. 3d 1372 (U.S. Jud. Pan. Mult. Lit. 2019); *In re Uber Techs., Inc., Data Sec. Breach Litig.,* 304 F. Supp. 3d 1351 (U.S. Jud. Pan. Mult. Lit. 2018); *In re: Schnuck Markets, Inc., Customer Data Sec. Breach Litig.,* 978 F. Supp. 2d 1379, 1380 (U.S. Jud. Pan. Mult. Lit. 2013); *In re KeyBank Customer Data Sec. Breach Litig.*, MDL No. 3056, 2023 WL 1811824 (J.P.M.L. 2023); *In re Samsung Customer Data Sec. Breach Litig.*, MDL No. 3055, 2023 WL 1811247 (J.P.M.L. 2023).

As with those prior data breach cases, this Data Breach here has spawned similar litigation tightly bound to that single event. Consequently, each of the Related Actions raise common factual issues, including: (1) the cause, extent, and scope of the Data Breach; (2) investigations into the Data Breach; (3) communications between PSC and its customers concerning the Data Breach; (4) Defendants' data security measures prior to the Data Breach; (5) actions taken to remedy the Data Breach and security deficiencies that caused it; (6) any contractual obligations of the Defendants; (7) the adequacy of the notice of the Data Breach; and (8) harm stemming from the Data Breach. Given the similarities between the claims in the Related Actions, Defendants are also likely to rely on common defenses, requiring similar types of proof.

As such, discovery is likely to substantially overlap among the Related Actions and likely to raise similar, if not identical, legal issues. Consequently, consolidation will prevent duplicative discovery and conflicting pretrial rulings on similar issues, claims, and defenses. *See, e g.*, *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig*., 410 F. Supp. 3d at 1354 ("[C]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including

with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary."

Moreover, to date, no interested party has opposed centralization of the Related Actions, and all have recognized the benefits coordinated litigation before a single court. *See In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1229 (J.P.M.L. 1977) (noting "the Panel's statutory mandate" to "weigh the interests of all the plaintiffs and all the defendants[.]"). Given the unanimity of the benefits of consolidation and the substantial overlap of the facts, injuries, claims, and likely defenses, the Panel should grant consolidation of the Related Actions here.

## II.     The District of Minnesota Is the Most Appropriate MDL Transferee District

Defendants are located in different States, and the plaintiff-specific facts will reside wherever the plaintiffs reside, providing the potential for actions to arise in virtually every State. Already, plaintiffs in the related actions have filed their complaints in states on opposite ends of the U.S., including California on the west coast, Massachusetts, Maryland, New Jersey, and Virginia on the east coast, and three midwestern states, Minnesota Illinois, and Louisiana. Defendants, likewise, are located in many different parts of the country and include not just PSC, the company that developed MOVEit, but also PSC's customers who may have delayed in patching the MOVEit defect which subsequently allowed their information to be freely taken. As such, no single state dominates as the central location of the parties, facts, or discoverable information.

In similar circumstances, where no particular state was the "epicenter" of injury, this Panel has highlighted several favorable attributes of the District of Minnesota when consolidating cases there: (1) Minnesota is a major metropolitan court; (2) it is centrally located; (3) it is not overtaxed with other multidistrict dockets; and, (4) possess the necessary resources, facilities, and technology to sure-handedly devote the requisite skill and substantial time and effort to pretrial matters that a complex docket is likely to require. *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380

(J.P.M.L. 2001). As this Panel decided in *Baycol* and several subsequent matters, here, the District of Minnesota offers the most accessible and convenient district to consolidate this case.

> **A.  The District of Minnesota Offers the Most-Convenient Forum Because It Is the Most Geographically Accessible District.**

The quintessential purpose of consolidation under § 1407 is to centralize similar actions "for the convenience of parties and witnesses and [to] promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). One of the chief considerations in determining the transferee district is its location: geographically central districts are preferred for nationwide classes. *See, e.g.*, *In re: Fluoroquinolone*, 122 F. Supp. 3d at 1381 ("The District of Minnesota is an appropriate transferee district for this litigation . . . [because] it provides a geographically central and convenient forum for this nationwide litigation."); *Baycol*, 180 F. Supp. 2d at 1380 (selecting the District of Minnesota as the appropriate forum because of "the geographic dispersal of current and anticipated constituent actions and the wide array already of suggested transferee districts."); *In re: Subway Footlong Sandwich Marketing and Sales Practice Litig.*, 949 F. Supp. 2d 1369, 1370 (J.P.M.L. 2013)(choosing a district because it "provides a geographically central forum for this nationwide litigation, and will be convenient and accessible for all parties and witnesses."); *In re: Yasmin*, 655 F. Supp. 2d at 1344 ("This district also provides a geographically central forum for this nationwide litigation in which actions are pending in various districts across the country."); *In re: Wells Fargo Wage and Hour Employment Prac. Litig.*, 804 F. Supp. 2d 1382, 1384-85 (J.P.M.L. 2011) ("This district is geographically centrally located and accessible for parties and witnesses located throughout the United States.").

Here, the pending actions are already dispersed throughout the United States, and each action purports to represent a nationwide class of similarly situated individuals. California and Massachusetts, Maryland, Virginia, and New Jersey are located on opposite ends of the United

States. Minnesota, however, is located centrally and offers an accessible district to all current plaintiffs and the likely future plaintiffs, whatever state from which their action may originate.

The District of Minnesota is also accommodating to potential future plaintiffs. Defendants PBI and Berwyn Group, Inc. already indicated to this Panel that additional actions may be filed. *See* Interested Party Defs' PBI, LLC and the Berwyn Grp., Inc's Resp. and Mem. in Supp. of Mot. to Transfer, MDL No. 3083, ECF No. 86, at 6 (J.P.M.L. Jul. 28, 2023). Given the geographical distribution of potential plaintiffs throughout practically the entire United States, the central location of the District of Minnesota can better accommodate potential plaintiffs than a district court located at either end of the United States.

### B. The District of Minnesota Provides Unique Opportunities for Newer Attorneys in Complex Cases

The District of Minnesota also provides unique opportunities for newer lawyers to obtain court appearances and participate meaningfully in the litigation. Judge Menendez, to whom all the Related Actions filed in the District of Minnesota have been assigned, expressly promotes opportunities for new lawyers. Her Practice Pointers and Preferences memorialize her desire for newer lawyers to have opportunities to participate in court hearings:

> The Court strongly encourages litigants to be mindful of opportunities for newer lawyers to conduct hearings before the Court, particularly for motions where the lawyer drafted or contributed significantly to the underlying motion or response. The Court believes it is crucial to provide substantive speaking opportunities to newer lawyers and that the benefits of doing so will accrue to newer lawyers, clients, and the profession generally. If any special accommodations are needed to allow less experienced attorneys to argue cases (such as dividing time or having an opportunity to consult with experienced counsel during argument), please email ahead of time and those arrangements will be freely made.[2]

This is a complex action involving a substantial Data Breach that impacted hundreds of companies and millions of individuals and, thus, it is likely to generate numerous opportunities for

---

[2] Available at: https://www.mnd.uscourts.gov/sites/mnd/files/KMM.pdf.

court appearances, including status conferences and arguments on dispositive and discovery motions. The District of Minnesota offers opportunities to engage newer attorneys and promote their opportunities to meaningfully participate in the MDL and in court.

    **C.    The District of Minnesota Has the Resources and Expertise Necessary to Efficiently Resolve Pre-Trial Issues in the Related Actions**

Finally, Minnesota is eminently capable of hosting consolidated class action proceedings. Indeed, this Panel has often consolidated class action pre-trial proceedings pursuant to § 1407 in the District of Minnesota. *See In re Baycol*, 180 F. Supp. 2d at 1380 (choosing the District of Minnesota because it is "a major metropolitan court that i) is centrally located, ii) is not currently overtaxed with other multidistrict dockets, and iii) possesses the necessary resources, facilities, and technology."); *see also In re: Fluoroquinolone*, 122 F. Supp. 3d at 1381; *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 542 F. Supp. 2d 1365, 1365-66 (J.P.M.L. 2008); *In re Nat'l Arbitration Forum Antitrust Litig.*, 682 F. Supp. 2d 1343, 1345-56 (J.P.M.L. 2010).

Minneapolis offers two metropolitan cities, Minneapolis and St. Paul, with sufficient resources to host plaintiffs, attorneys, and witnesses relevant to this case. Minnesota also boasts the Minneapolis-St. Paul International Airport, where two airline hubs reside: Delta Air Lines and Sun Country Airlines. Consequently, Minnesota and St. Paul have the resources to welcome litigants from across the United States for this large MDL.

Additionally, the related actions in the District of Minnesota are currently pending before Judge Menendez, a highly qualified judge capable of handling highly complex cases such as this one. Having been confirmed to the District of Minnesota in December 2021, she has not yet had the opportunity to oversee an MDL.

9

## CONCLUSION

The Panel should consolidate and transfer the Related Actions pursuant to 28 U.S.C. § 1407(a) to the District of Minnesota.

Respectfully submitted,

Dated: August 3, 2023

/s/ Brian C. Gudmundson
Brian C. Gudmundson (MN Bar No. 336695)
June P. Hoidal (MN Bar No. 033330X)
Michael J. Laird (MN Bar No. 398436)
Charles R. Toomajian (MN Bar No. 397879)
Rachel K. Tack (MN Bar No. 399529)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com
june.hoidal@zimmreed.com
michael.laird@zimmreed.com
charles.toomajian@zimmreed.com
rachel.tack@zimmreed.com

Gary F. Lynch
Nicholas A. Colella
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
gary@lcllp.com
nickc@lcllp.com

Jennifer Czeisler
**JKC LAW, LLC**
269 Altessa Blvd.
Melville, NY 11747
Telephone: (516) 457-9571
jennifer@jkclawllc.com

James M. Evangelista
**EVANGELISTA WORLEY LLC**
500 Sugar Mill Road Suite 245A
Atlanta, GA 30350
Telephone: (404) 205-8400

`Case MDL No. 3083   Document 113   Filed 08/03/23   Page 11 of 11`

jim@ewlawllc.com

*Attorneys for Plaintiffs Kelly Harris, Diane White, Sabela Portillo, and Rebecca Iddings*

Christopher D. Jennings
**JOHNSON FIRM**
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
chris@yourattorney.com

*Attorney for Plaintiffs Diane White, Sabela Portillo, and Rebecca Iddings*

Melissa S. Weiner
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, MN  55391
Telephone: (612) 389-0600
mweiner@pwfirm.com

Jeff Ostrow
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
1 West Las Olas Blvd., 5th Floor
Fort Lauderdale, FL  33301
Telephone: (954) 525-4100
ostrow@kolawyers.com