**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION** | **MDL DOCKET NO 3083** |

**JOINT RESPONSE OF INTERESTED PARTIES**
**CODY GILSON AND PATRICIA HARRIS**
**AND MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER RELATED CASES**
**FOR CENTRALIZED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

Plaintiff Cody Gilson and Plaintiff Patricia Harris ("Plaintiffs"), by and through their undersigned counsel, submit this Joint Response in support of Movant Bruce Bailey's Motion for Centralization, pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation.

I.   **INTRODUCTION**

Cody Gilson and Patricia Harris (collectively, "Plaintiffs") are plaintiffs in two overlapping class actions pending in the District of Massachusetts and the Northern District of Illinois, respectively.[1] Plaintiffs' actions are but two of the twenty-three pending actions arising out of a data breach involving information stored on the cloud-based MOVEit software (hereinafter, the "Related Actions"),[2] one of the largest data breaches ever recorded.

---

[1] *See Gilson v. Progress Software Corporation*, No. 1:23-cv-11552 (D. Mass., filed July 11, 2023); *Harris v. Progress Software Corporation*, No. 1:23-cv-05028 (N.D. Ill., filed Aug. 1, 2023).
[2] Twenty-eight of the pending cases name Progress Software Corporation ("PSC") as a defendant. Twelve of the cases name PSC as the sole defendant, two cases name both PSC and Ipswitch, Inc. as co-defendants, and fourteen cases name PSC and the relevant subscribing organization(s) as co-defendants. The remaining actions name only the MOVEit-subscribing entity as the sole defendant. Ultimately, however, all the actions arise from the data breach in the MOVEit program and charge PSC with failing to secure its "secure" file sharing and storage program.

On July 6, 2023, counsel for plaintiff in the related action styled *Bailey v. Progress Software Corporation and Pension Benefit Information, LLC.,* Case No. 0:23-cv-2028 (D. Minn., filed July 5, 2023), filed before the United States Judicial Panel on Multidistrict Litigation (the "Panel") a motion to transfer and coordinate for pretrial proceedings all actions arising out of the MOVEit data breach before the United States District Court for the District of Minnesota. ECF No.1. Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure for the Judicial Panel on Multi-District Litigation, Plaintiffs Gilson and Harris respectfully submit this response in support of the *Bailey* plaintiffs' motion. Transfer and centralization is appropriate because at the core of the Related Actions lie nearly identical factual and legal questions. Further, Plaintiffs support transfer of the related actions to the District of Minnesota because it is a centrally located, geographically convenient and readily accessible forum with extensive judicial expertise—particularly with respect to MDL actions—and has a favorable caseload. Accordingly, Plaintiffs respectfully request that this court enter an Order transferring the Related Actions to the District of Minnesota for coordinated or consolidated pretrial proceedings.

## II.    RELEVANT FACTS

The MOVEit software is a cloud-based service marketed as a "secure" and reliable means for institutions to transfer and store large volumes of data. MOVEit was originally developed and marketed by the Ipswitch Corporation, *d/b/a* Ipswitch, Inc. The Progress Software Corporation ("PSC") subsequently acquired Ipswitch and took over support for the cloud services and continued to market and sell the product. A wide variety of private and public organizations subscribed to, licensed or otherwise used MOVEit to transfer and store vast quantities of sensitive consumer information, including the motor vehicle registration and drivers' license issuing

agencies of several states, hospitals and healthcare service providers, life insurance companies, and pension fund administrators.

Contrary to Defendants' representations concerning MOVEit's reliability and security, the program suffered from several basic security flaws that remained unresolved for over two years. One notorious cybergang exploited those vulnerabilities to infiltrate MOVEit's databases and steal vast quantities of sensitive information pertaining to millions of consumers located across the country. Cybercriminals then ransomed some of the stolen data back to MOVEit's users in exchange for millions of dollars, while other information was made available for purchase on the dark web. As a result, highly sensitive personally-identifiable information, protected health information, and payment information belonging to the patrons and patients of MOVEit's customers were compromised.

Civil litigation commenced soon after PSC and dozens of its direct clients notified governmental bodies and victims of the breach that cybercriminals were able to access sensitive information stored on the MOVEit platform. As of this filing, forty-three related class-action lawsuits are pending in District Courts across the country. On July 6, 2023, counsel for plaintiff in the *Bailey* action moved this Panel for transfer of all Related Cases to the District of Minnesota for consolidated pretrial proceedings. ECF No. 1.[3]

### III.  ARGUMENT

####   A.  Legal standard

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for . . . the convenience of parties

---

[3] Parties in several of the related actions filed responses supporting this motion. They all support consolidation of the related actions, ECF Nos. 6, 77, 80, and 86. One response supported transfer to the District of Minnesota, ECF No. 80. The remaining responses requested transfer to different districts: the Eastern District of Louisiana, ECF No. 6; and the District of Massachusetts, ECF Nos. 6, 77, and 86.

and witnesses and [promotion of] just and efficient conduct of such actions." 28 U.S.C. § 1407. Pursuant to 28 U.S.C. § 1407(a), transfer and centralization is appropriate where (1) the pending actions involve one or more common questions of fact; (2) transfer will aid the convenience of parties and witnesses; and (3) transfer will promote the just and efficient conduct of such actions. In these instances, transfer and centralization streamlines discovery, avoids conflicting rulings and scheduling issues, minimizes costs and conserves time and resources of the parties, witnesses and the courts. *Manual for Complex Litigation* § 20.131 (4th ed. 2016). As discussed below, these factors weigh heavily in favor of transfer and centralization of the Related Actions in the District of Minnesota.

### B. The Actions Share Common Factual and Legal Issues

The Related Actions meet the threshold requirements for centralization under 28 U.S.C. § 1407(a) because they share a common nexus: each Related Action arises from the very same breach of defendants' information systems. *See In re Acetaminophen - ASD/ADHD Prod. Liab. Litig.*, 2022 WL 5409345 (J.P.M.L. Oct. 5, 2022). This Panel routinely grants motions to transfer and centralize class actions arising from large, singular data breach incidents on grounds they share common factual and legal questions. *See e.g.*, *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362 (J.P.M.L. 2020); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350 (J.P.M.L. 2019); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351 (J.P.M.L. 2018); *In re Ashley Madison Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1378 (J.P.M.L. 2015).

This Panel's decision in *Blackbaud Customer Data Security Litigation* provides a useful analogue. *Blackbaud* involved a serious data breach incident at Blackbaud, Inc., which provided cloud storage services to a large number of consumer-facing institutions and companies.

*Blackbaud*, 509 F. Supp. 3d 1363 (J.P.M.L. 2020). In considering a 1407 motion to centralize, this Panel found that the related actions raised several key common factual questions:

> 1) Blackbaud's data security practices and whether the practices met industry standards; (2) how the unauthorized access occurred; (3) the extent of personal information affected by the breach; (4) when Blackbaud knew or should have known of the breach; (5) the investigation into the breach; and (6) the alleged delay in disclosure of the breach to Blackbaud clients and affected consumers.

*Id.* at 1364.

The factual questions at the heart of the Related Actions are virtually identical to those on which this Panel acknowledged in *Blackbaud*, because both arose from data security breaches at prominent cloud storage vendors. Each Related Action raises identical factual and legal questions concerning: (1) PSC's security practices and their adequacy, (2) the circumstances of the breach and how it occurred, (3) PSC's response to the breach, (4) when PSC knew or should have known about the breach, (5) details regarding PSC's investigation into the breach, (6) whether or not PSC delayed in notifying affected individuals, and (6) the extent of the information that was compromised by this breach.

The considerable factual overlap across the Related Actions renders irrelevant whether or not they also raise common legal questions. *See In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1354 (J.P.M.L. 2018) ("'the presence of . . . differing legal theories is not significant where, as here, the actions still arise from a common factual core.'" (quoting *In re: Sonic Corp. Customer Data Security Breach Litig.*, 276 F. Supp. 3d 1382, 1383 (J.P.M.L. 2017)). *See also In re Antibiotic Drugs*, 309 F. Supp. 155, 156 (J.P.M.L. 1970) ("the applicability of different legal principles will not prevent the transfer of an action under section 1407 if the requisite common questions of fact exist."). Nonetheless, the Related Actions also share a common legal nexus, including, *inter alia*, whether PSC was negligent in establish inadequate data security

5

practices and responding to the breach, whether PSC complied with the FTC Act, and whether PSC breached express or implied contracts with affected individuals.

It is irrelevant for centralization purposes that some of the related actions name additional defendants beyond PSC. Each Related Action names, at minimum, PSC as a defendant, and focused on the vulnerabilities that plagued PSC's MOVEit software. Indeed, this Panel often centralizes cases in which the named defendants vary because centralization nevertheless will "eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary." *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1354 (J.P.M.L. 2019). For example, in *American Medical Collection Agency* the Panel centralized a multitude of class actions involving a data breach at a centralized payment collections agency utilized by several medical testing companies. *Id.* Many of the actions named as co-defendants both the American Medical Collection Agency, Inc. (the breached entity) and any one of the many testing labs that utilized its services. *Id.* Although the defendants' identities varied across the actions, this Panel centralized the cases because common factual questions existed since every action arose from the same security breach. *See id. See also, e.g., Blackbaud, Inc., Customer Data Security Breach Litig.*, MDL No. 2972, ECF. No. 34 (J.P.M.L. March 30, 2021) (ordering centralization of cases that named additional defendants beyond the breached party); *In re Acetaminophen - ASD/ADHD Prod. Liab. Litig.*, 2022 WL 5409345 (J.P.M.L. October 5, 2022) (ordering centralization of cases naming varied defendants despite the absence of a common, central defendant).

Because the Related Actions raise myriad overlapping factual and legal questions, transfer and centralizations is appropriate.

### C. The District of Minnesota is the Optimal Transferee Forum

In determining an appropriate forum for centralization under 28 U.S.C. § 1407, relevant factors include "the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." *Manual for Complex Litigation* § 20.131 (4th ed. 2016).

The District of Minnesota is the most suitable transferee forum because the Related Actions are geographically dispersed. PSC marketed and sold MOVEit to private and public institutions all across the United States. As a result, the MOVEit breach affected millions of individuals nationally. The cases currently pending involve institutions such as Vitality Group of Illinois (with potentially 30 million affected app users), PBI Research of Minnesota (with affected individuals stretching into the tens of millions), and Louisiana's Department of Motor Vehicles (state population of 4.62 million), among others. Due to the national nature of this breach, no single state can truly claim to be its geographic nexus.

Accordingly, the convenience of the parties is paramount, and the District of Minnesota offers the most geographically convenient forum. *See In re McDonald's French Fries Litig.*, 444 F. Supp. 2d 1342, 1343 (J.P.M.L. 2006), adhered to, 545 F. Supp. 2d 1356 (J.P.M.L. 2008) (transferring actions to a central location "given the geographic dispersal of the constituent actions" to a District Court that "offers a relatively geographically central and accessible forum for this litigation"). The plaintiffs in the Related Actions reside across the United States, from California to Massachusetts, and Louisiana to Illinois. Minnesota thus offers a centrally located forum equidistant from most potential transferor courts. *See Lazaro Fernandez, DDS, P.A. v. 3M Co.*, 2016 WL 11787457 at *3 (S.D. Fla. Aug. 26, 2016) (transferring class action to the District of Minnesota because it would be more convenient for the dispersed class after finding that the

"District of Minnesota is centrally located within the contiguous United States"); *cf. In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 278 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) (centralizing nationwide MDL in Oklahoma, over the proposed alternative forums located on the coasts, due to its geographically central location); *In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Pracs. & Prod. Liab. Litig.*, 466 F. Supp. 3d 1380, 1382 (J.P.M.L. 2020) (centralizing MDL in Missouri over Louisiana because it is more centrally located and easily accessible, therefore more convenient); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 316 F. Supp. 3d 1380, 1381 (J.P.M.L. 2018) (centralizing nationwide MDL in Ohio, over alternative proposals in coastal forums, due to its geographically central location and proximity to some witnesses). Compared to the alternative transferee forums, Minnesota is closest to the US Median Center of Population as calculated by the last Census.[4] Moreover, the Court also is easily reached from the Minneapolis-St. Paul Airport, and thus accessible to all parties.

Third, the District of Minnesota has the judicial expertise and resources required to manage pretrial proceedings in the Related Actions. The District of Minnesota currently has only six MDLs pending before it,[5] and also offers as many potential judges as the other two proposed forums. Further, of the three proposed transferee courts, the District of Minnesota has the shortest amount of time from filing to disposition for civil actions: 6.8 months, compared to 10.8 months for the

---

[4] *Position of the Geographic Center of Area, Mean Center of Population, and Median Center of Population: 2020*, United States Census Bureau (November 16, 2021), available at https://www.census.gov/library/visualizations/2020/geo/geographic-center-2020.html (last accessed August 2, 2023).

[5] *MDL Statistics Report - Distribution of Pending MDL Dockets by District,* United States Judicial Panel on Multidistrict Litigation (last upd. July 17, 2023), available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-17-2023.pdf (last accessed July 31, 2023). Both the Eastern District of Louisiana and the District of Massachusetts each currently are overseeing five MDL actions. *Id.*

District of Massachusetts, and 68.9 months for the Eastern District of Louisiana.[6] Because of that efficiency, the District of Minnesota also has the lowest percent of pending civil cases over three years (3.3% compared to 13.3% and 73.7% for the District of Massachusetts and Eastern District of Louisiana, respectively).[7]

The District of Minnesota is the most conveniently located forum for this litigation and possesses the judicial expertise and resources needed to efficiently and effectively manage this MDL. No other venue is better suited to handle this litigation.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Panel enter an Order transferring the Related Actions to the District of Minnesota for coordinated pretrial proceedings.

Date: August 4, 2023                                Respectfully Submitted,

                                                    /s/ Nickolas J. Hagman
                                                    Nickolas J. Hagman
                                                    **CAFFERTY CLOBES MERIWETHER
                                                    & SPRENGEL LLP**
                                                    135 S. LaSalle, Suite 3210
                                                    Chicago, Illinois 60603
                                                    Telephone: (312) 782-4880
                                                    Facsimile: (312) 782-4485
                                                    nhagman@caffertyclobes.com

---

[6] U.S. District Courts- Federal Court Management Statistics – Profiles, U.S. Courts, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2023.pdf (data as of March 31, 2023).
[7] *Id.*