BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION** | MDL No. 3083 |

**DEFENDANTS JOHNS HOPKINS UNIVERSITY AND JOHNS HOPKINS HEALTH SYSTEM CORP.'S RESPONSE IN OPPOSITION TO PLAINTIFF BRUCE BAILEY'S MOTION FOR TRANSFER AND CENTRALIZATION**

Pursuant to Rule 6.1(c) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Johns Hopkins University and Johns Hopkins Health System Corp. (together the "Johns Hopkins Defendants") respectfully request that the Panel deny the Motion for Transfer and Centralization of Related Actions to the District of Minnesota Pursuant to 28 U.S.C. § 1407 for Consolidated Pretrial Proceedings (the "Motion") to the extent it seeks to include in the proposed consolidated proceeding the actions filed against the Johns Hopkins Defendants.

**I.     BACKGROUND**

In his Motion, Plaintiff Bruce Bailey argues that the purportedly related actions before the Panel should be transferred and centralized in the District of Minnesota because "all involve Defendants Progress Software Corporation '(PSC') and/or Pension Benefit Information, LLC d/b/a PBI Research Services. ('PBI', collectively with Defendant Ipswitch, Inc., 'Defendants'),'' ECF No. 1 at 1, and because "the District of Minnesota is the home forum for Defendant PBI," *id.* at 3.  He further argues that the cases "aris[e] from a common nucleus of operative facts," namely a breach of "the MOVEit file transfer application, owned by PSC, developed by Ipswitch (a wholly-owned subsidiary of PSC), and controlled, for the purposes of these actions by PBI."  ECF No. 1-1 at 2.

Between July 7 and July 19, 2023, five actions were filed against the Johns Hopkins Defendants in the United States District Court for the District of Maryland, all asserting claims against the Johns Hopkins Defendants regarding the loss of data in their possession in a data breach. The cases have been related and all are assigned to the Honorable Julia R. Rubin:

- *Pamela Hunter v. The Johns Hopkins University & Johns Hopkins Health System Corp.*, No. 1:23-cv-1826 (filed July 7, 2023)

- *Maria Gregory & Ayomiposi Asaolu v. Johns Hopkins University & Johns Hopkins Health System*, No. 1:23-cv-1854 (filed July 10, 2023)

- *Steven Pulignani v. Progress Software Corp., The Johns Hopkins University & The Johns Hopkins Health System Corp.*, No. 1:23-cv-1912 (filed July 17, 2023)

- *Monika Truesdale v. Progress Software Corp., The Johns Hopkins University & The Johns Hopkins Health System Corp.*, No. 1:23-cv-1913 (filed July 17, 2023)

- *Plaintiff Doe v. Progress Software Corp., The Johns Hopkins University & The Johns Hopkins Health System Corp.*, No. 1:23-cv-1933 (filed July 19, 2023)

The *Hunter* and *Gregory* cases name only the Johns Hopkins Defendants and identify no issues concerning Progress Software Corporation ("Progress"), Pension Benefit Information, Inc. ("PBI"), or any other party beyond the Johns Hopkins Defendants. Though the other three cases also name Progress, they do not name PBI or any other defendant and they present substantially similar issues to those set forth in *Hunter* and *Gregory*.

## II. ARGUMENT

### A. The Complaints Against the Johns Hopkins Defendants Do Not Involve PBI, Which Is the Centerpiece of the Motion

The cases that Plaintiff Bailey seeks to consolidate via his Motion may share a connection to PBI's use of MOVEit and the District of Minnesota may be an appropriate venue for the cases involving PBI,[1] but the Johns Hopkins Defendants have no such connection to PBI nor to Minnesota. Two of the five cases at issue here, all five of which were initiated by current and

---

[1] Because those cases do not involve the Johns Hopkins Defendants, the Johns Hopkins Defendants take no position on whether transfer and centralization of the cases involving PBI is appropriate nor whether the District of Minnesota is the right venue.

- 2 -

former employees and patients of the Johns Hopkins Defendants, are brought only against the Johns Hopkins Defendants. While the other three also name Progress as a defendant, the complaints allege, like the other two, that the Johns Hopkins Defendants were negligent and violated contractual and other duties in handling data in their possession and in selecting and using MOVEit. None of the five cases filed against the Johns Hopkins Defendants names PBI as a defendant and, indeed, the Johns Hopkins Defendants have no relationship with PBI.

In a recent decision declining transfer and centralization in a set of cases involving alleged abuse in cheerleading training centers, the Panel determined that "[w]hile the eight common defendants are named in all actions, there are approximately 30 individual coaches, gyms, and choreographers named as defendants in these actions. Most are named in just one action, and none are named in more than one district. Discovery regarding each individual defendant's conduct and their relationship to and interactions with the common defendants will not overlap." *In re Varsity Spirit Athlete Abuse Litig.*, 2023 WL 3828645, at *1 (J.P.M.L. June 5, 2023). This is consistent with prior precedent in which the Panel declined centralization of similar complaints brought against multiple drug manufacturers on the grounds that "the named defendants vary from action to action," that "a multi-defendant MDL 'may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks,'" that "a significant amount of the discovery in these actions appears almost certain to be defendant specific," and that fifteen cases plus twenty-four tagalongs did not warrant centralization. *In re Proton-Pump Inhibitor Prod. Liability Litg.*, 273 F. Supp. 3d 1360, 1361–62 (J.P.M.L. 2017) (declining centralization of cases alleging that proton-pump inhibitor drugs made by four manufacturers caused kidney injury); *see also In re CP4 Fuel Pump Mktg., Sales Practices & Prod. Liability Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (finding in record before Panel "little, if anything, to overcome our usual reluctance to centralize actions against different defendants in one MDL" and denying motion to transfer and centralize cases against three car manufacturers).

So too here – the proposed multidistrict litigation involves Progress, PBI, and several other defendants, but discovery into the Johns Hopkins Defendants' actions and into their use of

...

Progress's MOVEit tool will not overlap in any way with discovery into the MOVEit platform itself or the use of MOVEit by PBI or by any other Progress customer against whom claims have been made.  For the *Hunter* and *Gregory* matters, therefore, there is no basis whatsoever for them to be swept into the PBI-focused litigation; indeed, those cases do not even involve Progress.  As to *Pulignani*, *Truesdale*, and *Doe*, the allegations against the Johns Hopkins Defendants are unrelated to the allegations against PBI or any others and the only area of overlap is Progress's own actions.  The efficiency gain from transfer and centralization, which is one of multidistrict litigation's primary purposes, is thus lacking here.  Indeed, including the cases against the Johns Hopkins Defendants would only serve to complicate the centralized proceeding with little benefit to show for it.  As discussed further below, the five cases against the Johns Hopkins Defendants are appropriate for relation *with each other* but should not be included in any transfer and centralization of the claims against Progress and PBI, which will involve distinct issues about other parties' actions that will not advance the ball in evaluating plaintiffs' claims in the Maryland cases.[2]

**B.     The Cases Against the Johns Hopkins Defendants Should Be Kept Together in the District of Maryland.**

Under 28 U.S.C. § 1407, transfer and centralization are appropriate where "civil actions involving one or more common questions of fact are pending in different districts."  28 U.S.C. § 1407(a).  Here, the questions of fact in the *Hunter* and *Gregory* actions concern only the Johns Hopkins Defendants' handling of information obtained from their employees and patients and their use of the MOVEit file transfer application.  Indeed, in describing the common questions of law and fact that allegedly support class treatment, *Hunter* and *Gregory* provide the following lists[3]:

---

[2] The Johns Hopkins Defendants recognize that other parties have filed responses disputing the centrality of PBI and seeking transfer instead to the District of Massachusetts.  *See* Dkt. Nos. 77, 80, 86.  Regardless, the central issues in the cases against the Johns Hopkins Defendants are not the same issues as will need to be resolved in cases involving any other user of the MOVEit file transfer application and the Johns Hopkins Defendants' request to be excluded applies as well to any MDL proceeding in Massachusetts or any other district.

[3] The Johns Hopkins Defendants do not intend via this chart to agree that these lists demonstrate that class treatment is appropriate, only to make clear to the Panel how the plaintiffs have characterized the cases they have brought and the issues they have raised.

| *Hunter* Compl. ¶ 38 | *Gregory* Compl. ¶ 103 |
|---|---|
| Whether Johns Hopkins[4] had a legal duty to Plaintiff and the Classes to exercise due care in collecting, storing, using and/or safeguarding their PHI/PII | Whether Hopkins[5] failed to timely notify Plaintiffs of the Data Breach |
| Whether Johns Hopkins knew or should have known of the susceptibility of its data security systems to a data breach | Whether Hopkins had a duty to protect the PII of Plaintiffs and Class Members |
| Whether Johns Hopkins security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts | Whether Hopkins was negligent in collecting and storing Plaintiffs and Class members' PII, and breached its duties thereby |
| Whether Johns Hopkins failure to implement adequate data security measures allowed the Data Breach to occur | Whether Defendant [sic] breached its fiduciary duty to Plaintiffs and the Class |
| Whether Johns Hopkins failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security | Whether Hopkins breached its duty of confidence to Plaintiffs and the Class |
| Whether Johns Hopkins adequately, promptly, and accurately informed Plaintiff and Class Members that their PHI/PII had been compromised | Whether Hopkins violated its own Privacy Practices |
| How and when Johns Hopkins actually learned of the Data Breach | Whether Hopkins entered a contract implied in fact with Plaintiffs and the Class |
| Whether Johns Hopkins's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PHI/PII of Plaintiff and Class Members | Whether Hopkins breached that contract by failing to adequately safeguard Plaintiffs and Class members' PII |
| How and when Johns Hopkins adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur | Whether Hopkins was unjustly enriched |
| Whether Johns Hopkins engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PHI/PII of Plaintiff and Class Members | Whether Plaintiffs and Class members are entitled to damages as a result of Hopkins's wrongful conduct |
| Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective, and/or declaratory relief and/or accounting is/are appropriate as a result of Johns Hopkins's wrongful conduct | Whether Plaintiffs and Class members are entitled to restitution as a result of Hopkins's wrongful conduct |

---

[4] The defined term "Johns Hopkins" in the *Hunter* complaint refers collectively to the Johns Hopkins Defendants.

[5] The defined term "Hopkins" in the *Gregory* complaint refers collectively to the Johns Hopkins Defendants.

Conspicuously absent from those laundry lists of issues *Hunter* and *Gregory* identify are Progress, PBI, and any party other than the Johns Hopkins Defendants.  The questions of fact raised by the two complaints are similar to each other, but there are no "common questions of fact" when compared to any case "pending in different districts."  28 U.S.C. § 1407 therefore does not permit transfer of the *Hunter* and *Gregory* actions to the District of Minnesota or any court other than the District of Maryland nor does it permit coordination or consolidation with the other cases that Plaintiff Bailey seeks to include in the requested multidistrict litigation.

The three other cases also raise substantially similar issues to those raised in *Hunter* and *Gregory*, which is why all five actions have been related in the District of Maryland pursuant to Local Rule 103(b).  They were all brought by Maryland residents against the Johns Hopkins Defendants and allege that the Johns Hopkins Defendants violated various duties to them.  All three offer identical lists of common issues to be resolved, which include: whether the Johns Hopkins Defendants had a duty to protect, not to use, and/or not to disclose private information; whether the Johns Hopkins Defendants failed to protect the information; when and how they learned of the data breach; whether they adequately and promptly notified the plaintiffs and class members; whether they had inadequate security; whether they engaged in unlawful, unfair, or deceptive practices; and whether the plaintiffs and the class are entitled to damages, restitution, and/or injunctive relief.  *Pulignani* Compl. ¶ 156; *Truesdale* Compl. ¶ 155; *Doe* Compl. ¶ 155. These issues are the same as or substantially similar to those listed in the chart above regarding the *Hunter* and *Gregory* complaints and the same discovery from the same witnesses will be used to answer all of them.  Documents and witnesses relevant to these claims will be in Maryland, where the Johns Hopkins Defendants, the named plaintiffs, and the majority of the members of the putative class(es) are.  While the *Pulignani*, *Truesdale*, and *Doe* complaints also include allegations against Progress and ask the same questions regarding Progress's duties and alleged breaches, the close connection to the *Hunter* and *Gregory* complaints counsels in favor of keeping those five related actions together and keeping them in the District of Maryland.  It would be

irrational to split up the five related cases and it would be improper to transfer *Hunter* and *Gregory* where 28 U.S.C. § 1407 does not permit such transfer.

### C. In the Alternative, the Claims Against the Johns Hopkins Defendants Should Be Severed and Remanded

Section 1407 provides that the Panel has the discretion to "separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded." 28 U.S.C. §1407(a). Doing so is merited where it would not "advance the just and efficient conduct of the litigation or serve the convenience of the parties or witnesses to transfer" a certain action in full. *In re Hotel Telephone Charge Antitrust Litig.*, 341 F. Supp. 771, 773 (J.P.M.L. 1972) (severing and remanding claims against defendants that had agreed to settlement). To the extent the Panel determines that the claims against Progress in the *Pulignani*, *Truesdale*, and *Doe* complaints are appropriate for transfer and centralization as requested in the Motion, the Johns Hopkins Defendants respectfully request that the claims against them be excluded from the transfer or immediately severed and remanded for resolution by Judge Rubin along with the *Hunter* and *Gregory* actions. Any efficiency that might be gained from including *Pulignani*, *Truesdale*, and *Doe* in a multidistrict proceeding about Progress, PBI, and others "would be outweighed by the need for separate treatment of the major portion of these cases and difficulty which any transferee judge would face in attempting to meet such needs in an unduly large and complex group of cases." *In re Penn Cent. Sec. Litig.*, 325 F. Supp. 309, 311 (J.P.M.L. 1971) (separating out group of cases making distinct claims even if "full development of these cases may require investigation of factual areas covered in" multidistrict proceeding).

### III. CONCLUSION

The Johns Hopkins Defendants oppose the Motion to the extent it calls for the inclusion of the cases against the Johns Hopkins Defendants in any centralized proceeding. They take no position on the request to transfer and centralize cases against other defendants, including those against PBI.

- 8 -

By Its Attorneys,

Dated: August 4, 2023

By: */s/ Aravind Swaminathan*
ARAVIND SWAMINATHAN
Attorney for the Johns Hopkins Defendants

ARAVIND SWAMINATHAN
aswaminathan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street
Suite 3300
Seattle, WA  98101-2668
Telephone:      +1 206 839 4300
Facsimile:       +1 206 839 4301