BEFORE THE
UNITED STATES JUDICAL PANEL ON
MULTIDISTRICT LITIGATION

| IN RE MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO.: 3083 |
|---|---|

## PLAINTIFFS' REPONSE OPPOSING MOTION FOR TRANSFER AND CENTRALIZATION

### I.   INTRODUCTION

Pursuant to Rule 6.1 of the Rules of Procedure for the United State Judicial Panel on Multidistrict Litigation ("Panel"), Interested Parties David Berry and Bonnie Gayle Ng ("*Berry/Ng* plaintiffs") submit this brief in response to Movant Plaintiff Bruce Bailey's Motion for Transfer and Centralization of Related Actions to the District of Minnesota ("Transfer Motion"). Dkt. 1.

Before the Panel are various cases where plaintiffs allege that their personal information was improperly released to hackers. They arise from multiple different data breach incidents affecting mutually exclusive groups of plaintiffs, the release of different types of information at different times, and an array of different defendants with unique responses to the breaches. In recent years, the Panel has acknowledged circumstances where complete centralization of multiple data breach cases is unwarranted. Where, as here, the Panel is faced with disparate data breach incidents, centralization fails to achieve the efficiencies that are the purpose of multi-district litigation. Accordingly, the *Berry/Ng* plaintiffs urge the Panel to deny the Transfer Motion.

### II.   FACTUAL BACKGROUND

At various times spanning from May 27 to May 30, 2023, a group of hackers initiated several different cyber security attacks on different entities. These entities included hospitals (*i.e.*, *Hunter v. The Johns Hopkins University, et al.*, D. Md. Case No. 1:23-cv-01826),

PLAINTIFFS' REPONSE OPPOSING MOTION FOR TRANSFER AND CENTRALIZATION
1

commercial banks (*i.e.*, *Scott, et al. v. Union Bank & Trust Co.*, D. Neb. Case No. 4:23-cv-03126), insurance firms (*i.e.*, *Hauser v. Genworth Life Insurance Company*, E.D. Va. Case No. 3:23-cv-00486), government agencies (*i.e. Acevedo v. Illinois Department of Innovation and Technology, et al.*, C.D. Ill. Case No. 3:23-cv-03225), and government contractors (*i.e.*, *Berry, et al. v. Pension Benefit Information LLC, et al.*, N.D. Cal. Case No. 4:23-cv-3297), among others. In some breaches, hackers accessed patients' medical information. In other breaches, they accessed banking information. And in others, they accessed only names and social security numbers. The single common thread among the many attacks was the underlying software vulnerability that hackers exploited, apparently related to the MOVEit file transfer software sold by Progress Software Corporation ("Progress").

The Panel now has before it over 40 actions to consider in relation to the Transfer Motion. Exhibit 1, Schedule of Actions. A sizable group of interested party plaintiffs assert claims that relate to a particular breach that affected a putative class of California pensioners in violation of the specific regulatory framework set forth under California Civil Code section 1798, *et seq*. Six actions before the Panel, including the *Berry/Ng* action, allege claims only against Defendants Pension Benefit Information LLC and The Berwyn Group, Inc. ("PBI/Berwyn") for a breach of its system that leaked the personal information of a large California public employee pension fund: **(1)** the *Berry/Ng* action, D.D. Cal. Case No. 4:23-cv-3297; **(2)** *Cheng v. Pension Benefit Information, LLC*, C.D. Cal. Case No. 2:23-cv-5481; **(3)** *Collins v. Pension Benefit Information, LLC*, D. Minn. Case No. 0:23-cv-2045; **(4)** *Smith v. Pension Benefit Information, LLC*, D. Minn. Case No. 0:23-cv-2055; **(5)** *Garrison v. Pension Benefit Information, LLC*, D. Minn. Case No. 0:23-cv-2071; and **(6)** *Ellis v. Pension Benefit Information, LLC*, D. Minn. Case No. 0:23-cv-02139 ("PBI/Berwyn Actions"). A seventh alleges claims against both PBI/Berwyn and Progress, but alleges primarily California causes of action, including violations of section 1798, and includes claims for subclasses that include the same California pensioners. *Landi v. Progress Software Corporation, et al.*, N.D. Cal. Case No. 3:23-cv-03839.

PLAINTIFFS' REPONSE OPPOSING MOTION FOR TRANSFER AND CENTRALIZATION
2

Meanwhile, Movants and at least seven other interested party plaintiffs supporting centralization allege claims only against Progress. Dkt. 6; Dkt. 77; Dkt. 100; Dkt. 113; Dkt. 121; Dkt. 127. These interested party plaintiffs (the "Progress plaintiffs") share a common theory of the case: Progress is primarily culpable under a theory of common law negligence. While the Progress plaintiffs argue in favor of centralization, they dispute which venue would be most appropriate.

PBI/Berwyn claim they there are among "hundreds" of Progress customers whose networks were breached. Dkt. 86 at p. 1. They claim it is "possible, if not highly probable, that additional class actions will be filed against Progress" and against the other users of Progress's software, as more and more breach incidents come to light. *Id*. at p. 4. Critically, PBI and Berwyn's response in support of centralization acknowledges that the breach of their network was a *different event* than the breaches of other entities, both known and yet undisclosed. *Id*. Where Progress's software has been involved in other incidents that have occurred or will occur in the future, *these would also be different data breach incidents*.

### III.   ARGUMENT

**A. The *Berry/Ng* Action Involves Unique Factual and Legal Questions Given Its Distinct Causes of Action**

A party moving to centralize cases into a muti-district litigation bears "a heavy burden" to establish that a transfer is justified under 28 U.S.C. § 1407. *In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig*., 448 F. Supp. 271, 273 (J.P.M.L. 1978). Where the evidentiary needs of some actions fundamentally differ from others, transfer and centralization will not promote efficiency. *See In re Comcast Corp. Emp. Wage & Hour Emp. Pracs. Litig.*, 190 F. Supp. 3d 1344, 1345 (J.P.M.L. 2016) ("despite the factual commonality among the actions, we are not convinced that centralization is necessary to ensure the efficient conduct of these cases"). Common factual and legal questions alone do not justify centralization when "unique questions of fact predominate over any common questions of fact." *In re Pharmacy Ben. Plan Administrators Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002); *see also In re Boeing Co. Employment Practices Litigation (No. II)*, 293 F.Supp.2d 1382, 1383 (J.P.M.L. 2003)

(denying centralization where each plaintiff's terms and conditions of employment and work history at one facility predominated over any common questions relating to allegations of company-wide racial discrimination). In data breach cases, centralization has been denied where, "rather than a single data breach, there were numerous data breaches of each client defendant, occurring at different times and involving each client defendant's own servers." *In re Accellion, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372, 1374 (J.P.M.L. 2021).

The fourteen Progress plaintiffs are nearly unanimous in seeking centralization in the District of Massachusetts, where Progress is headquartered. Dkt. 77, 86, 100, 127, 121. Their actions will all involve common discovery and synchronizable pre-trial procedures. But among the cases before the Panel, there are several other clusters of actions that share little or no overlap. Many, if not most, of the interested parties in the various cases are unlikely to benefit from consolidation. Johns Hopkins patients, for example, who allege claims only against the hospital, will see no gain in efficiency or overlap in discovery by having their case centralized with California pensioners alleging violations of California state statutes and see their claims as separate from those of the other groups of interested parties and have opposed centralization. Dkt. 130 (Johns Hopkins plaintiffs opposing centralization). The same can be said for bank customers in Nebraska or life insurance policy holders in New Jersey or Virginia. Their claims share next to nothing with actions against insurance companies, banks, or state agencies.

Similarly, the *Berry/Ng* action and other PBI/Berwyn actions stand apart from the Progress plaintiffs' actions. The gravamen of the *Berry/Ng* action and other similar actions is the allegation that PBI/Berwyn violated the California Consumer Privacy Act (Cal. Civ. Code § 1798.150) ("CCPA"). Under the CCPA, the *Berry/Ng* plaintiffs will seek discovery proving their personal information was "subject to an unauthorized access and exfiltration, theft, or disclosure." Cal. Civ. Code § 1798.150. Such claims are different than the negligence claims alleged by the Progress plaintiffs. See, e.g. *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 924 (S.D. Cal. 2020) (finding plaintiff failed to plead the causation element of negligence but satisfactorily alleged violation of the CCPA). While the Progress plaintiffs will litigate the question of whether Progress owed them a duty and its breach caused them damages, the CCPA

has no applicability to Progress. It involves different factual showings required to prove liability, analyzes questions of causation differently, and permits the harmed class a different type of damages. Rather than create efficiencies, centralization will potentially cause unnecessary delays in the *Berry/Ng* action. For example, parties in other actions may engage in protracted battles over the adequacy of pleadings or motions to compel arbitration—issues that have no relation to the claims in the *Berry/Ng* action, but could nevertheless stay its discovery for months or years. *See*, *e.g.*, *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915 (2023) (automatic stay of discovery appropriate where defendant appeals denial of motion to compel arbitration). For these reasons, the *Berry/Ng* plaintiffs respectfully oppose centralization of their action with the dissimilar actions alleging common law claims against Progress.

To the extent there is overlapping discovery, counsel for the *Berry/Ng* action is prepared to coordinate with the necessary parties to minimize potential inefficiencies. Indeed, counsel for *Berry/Ng* have already begun to coordinate with other pending actions venued in the Northern District of California to coordinate pretrial and discovery matters. *See In re: Best Buy Co., Inc., Cal. Song–Beverly Credit Card Act Litig.*, 804 F.Supp.2d 1376, 1378 (J.P.M.L. 2011) (finding that "centralization under Section 1407 should be the last solution after considered review of all other options," including voluntary cooperation and coordination among the parties).

**B. Allowing the *Berry/Ng* Action to Proceed in the Northern District of California Is More Efficient**

Allowing the *Berry/Ng* action to proceed in the Northern District of California is more efficient than its consolidation into an MDL in the District of Minnesota. Again, because *Berry/Ng* brings no claims against Progress, it will have no impact on the other pending actions, almost all of which name Progress as a defendant. Nor does the fact that PBI is headquartered in Minnesota necessitate centralization in that district given the circumstances of this action; the *Berry/Ng* plaintiffs do not foresee a need to request any physical documents, or conduct any in-person depositions, in Minnesota. Parties involved in the *Berry/Ng* action can produce documents electronically, while witnesses can be deposed via video conference. Furthermore, the *Berry/Ng* action is exclusive to California residents, while the other actions concern nationwide

classes. Notably, the availability of judges in both the District of Minnesota and that of judges in the Northern District of California are roughly the same—eleven judges in the District of Minnesota have no MDLs on their dockets; eight judges in the Northern District of California have no MDLs on their dockets.

For the foregoing reasons, centralization in Minnesota will impede, rather than serve, multidistrict litigation's purpose of "conserv[ing] the resources of the parties, their counsel, and the judiciary." See *In re Folgers Coffee Mktg. & Sales Practices Litig.*, MDL No. 2984, 2021 U.S. Dist. LEXIS 63657, at *2 (J.P.M.L. Apr. 1, 2021)

## IV.   CONCLUSION

Given numerous and substantial individualized discovery and legal issues distinct to *Berry/Ng*, the Transfer Motion's request for centralization in Minnesota is inappropriate.

Dated this August 4, 2023.              Erickson Kramer Osborne, LLP

*/s/ Elizabeth Kramer*

Julie Erickson, California State Bar No. 293111
(julie@eko.law)
Elizabeth Kramer, California State Bar No. 293129
(elizabeth@eko.law)
Kevin Osborne, California State Bar No. 261367
(kevin@eko.law)
**Erickson Kramer Osborne LLP**
44 Tehama Street
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs DAVID BERRY and BONNIE GAYLE NG*