**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: MOVEit Customer Data Security Breach Litigation** | **MDL Docket No. 3083** |

**DEFENDANT PROGRESS SOFTWARE CORPORATION'S RESPONSE IN PARTIAL
SUPPORT OF TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407
<u>FOR CENTRALIZED PRETRIAL PROCEEDINGS</u>**

# <u>TABLE OF CONTENTS</u>

Pages

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ....................................................................................................................5

I.      TRANSFER TO A SINGLE DISTRICT FOR CENTRALIZED PRETRIAL
        PROCEEDINGS IS APPROPRIATE UNDER 28 U.S.C .............................................5

        A.      The Actions Involve Common Issues of Fact..........................................................5

        B.      Centralization Will Promote the Convenience of the Parties and Witnesses as
                Well As Judicial Efficiency and Justice...................................................................8

        C.      The Presence of Varying Defendants is Not a Barrier to Centralization ...............10

        D.      Section 1404 Transfers or Informal Coordination Would Be Unlikely to Achieve
                the Convenience, Efficiencies, and Consistent Rulings Achievable Through
                Centralization .........................................................................................................12

II.     THE DISTRICT OF MASSACHUSETTS, AND JUDGE NATHANIAL M. GORTON
        OR CHIEF JUDGE F. DENNIS SAYLOR IV, ARE THE MOST APPROPRIATE
        TRANSFEREE DISTRICT AND JUDICIAL OFFICERS .............................................14

        A.      The Litigation's Center of Gravity Is the District of Massachusetts .....................14

        B.      The District of Massachusetts is Best Positioned to Ensure Expeditious Handling
                of the MDL .............................................................................................................15

        C.      Judge Nathanial M. Gorton or Chief Judge F. Dennis Saylor IV are Best Suited
                for Assignment as the Judicial Officer Over an MDL for These Actions .............18

        D.      Additional Factors Weigh in Favor of Transfer to the District of Massachusetts .19

CONCLUSION ....................................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
   214 F. Supp. 3d 1357 (J.P.M.L. 2016)..................................................................6, 13, 15, 19

*Acevedo v. Progress Software Corp., et al.*,
   No. 3:23-cv-03225 (C.D. Ill.) ............................................................................................3, 4

*In re Air West, Inc. Sec. Litig.*,
   384 F. Supp. 609 (J.P.M.L. 1974)...........................................................................................5

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*,
   410 F. Supp. 3d 1350 (J.P.M.L. 2019)....................................................................................6

*Anastasio v. Progress Software Corp. et al.*,
   No. 1:23-cv-11543 (D. Mass.) ............................................................................................3, 4

*Armhein v. Eclinical Works, LLC*,
   No. 1:18-CV-11658 ...............................................................................................................17

*In re Auto Body Shop Antitrust Litig.*,
   37 F. Supp. 3d 1388 (J.P.M.L. 2014).....................................................................................9

*Axis Ins. Co. v. Barracuda Networks, Inc.*,
   No. 1:20-CV-11997 ..........................................................................................................17, 19

*In re Baycol Prods. Liab. Litig.*,
   180 F. Supp. 2d 1378 (J.P.M.L. 2001)..................................................................................16

*In re: Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*,
   896 F. Supp. 2d 1339 (J.P.M.L. 2012)..................................................................................16

*In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*,
   509 F. Supp. 3d 1362 (J.P.M.L. 2020)....................................................................................6

*In re: Body Sci. LLC Pat. Litig.*,
   883 F. Supp. 2d 1344 (J.P.M.L. 2012)..................................................................................18

*In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*,
   26 F. Supp. 3d 1394 (J.P.M.L. 2014).....................................................................................9

*In re: Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
   652 F. Supp. 2d 1377 (J.P.M.L. 2009)..................................................................................18

*In re Cessna 208 Series Aircraft Prods. Liab. Litig.*,
    408 F. Supp. 2d 1349 (J.P.M.L. 2005)............................................................................15

*In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*,
    325 F. Supp. 3d 1374 (J.P.M.L. 2018)............................................................................20

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
    509 F. Supp. 3d 1368 (J.P.M.L. 2020)............................................................................19

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013).....................................................................................................6

*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund
    Scheme Litig.*,
    338 F. Supp. 3d 1347 (J.P.M.L. 2018)............................................................................10

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
    403 F. Supp. 2d 1358 (J.P.M.L. 2005)............................................................................14

*Eggiman v. Bank of Am., N.A.*,
    No. 1:22-CV-10298 ........................................................................................................17

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
    196 F. Supp. 2d 1375 (J.P.M.L. 2002)............................................................................20

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    89 F. Supp. 3d 1322 (J.P.M.L. 2017)..............................................................................14

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
    325 F. Supp. 3d 1362 (J.P.M.L. 2018)............................................................................14

*In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig.*,
    MDL No. 2428 (D. Mass.)..............................................................................................19

*In re FTX Cryptocurrency Exch. Collapse Litig.*,
    2023 WL 3829242 (J.P.M.L. June 5, 2023).....................................................................10

*In re Generali COVID-19 Travel Ins. Litig.*,
    509 F. Supp. 3d 1365 (J.P.M.L. 2020)............................................................................19

*In re Generic Pharm. Pricing Antitrust Litig.*,
    2017 WL 4582710 (J.P.M.L. Aug. 3, 2017).................................................................8, 13

*In re German Auto. Manufacturers Antitrust Litig.*,
    278 F. Supp. 3d 1373 (J.P.M.L. 2017)............................................................................18

*In re Glob. Crossing Ltd. Sec. Litig.*,
    341 F. Supp. 2d 1357 (J.P.M.L. 2004)............................................................................18

*In re Inclusive Access Course Materials Antitrust Litig.*,
2020 WL 4670703 (J.P.M.L. Aug. 11, 2020) ........................................................9

*In re Inclusive Access Course Materials Antitrust Litig.*,
482 F. Supp. 3d 1358 (J.P.M.L. 2020).................................................................13

*In re Jamster Mktg. Litig.*,
427 F. Supp. 2d 1366 (J.P.M.L. 2006)................................................................20

*In re Janus Mut. Funds Inv. Litig.*,
310 F. Supp. 2d 1359 (J.P.M.L. 2004)................................................................16

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
24 F. Supp. 3d 1361 (J.P.M.L. 2014)...................................................................5

*In re KeyBank Customer Data Sec. Breach Litig.*,
2023 WL 1811824 (J.P.M.L. Feb. 1, 2023) ................................................ *passim*

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
363 F. Supp. 3d 1372 (J.P.M.L. 2019)............................................................6, 14

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
544 F. Supp. 3d 1371 (J.P.M.L. 2021)..................................................................6

*In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*,
249 F. Supp. 3d 1357 (J.P.M.L. 2017)................................................................13

*In re Monat Hair Care Prod. Mktg., Sales Practices & Prod. Liab. Litig.*,
325 F. Supp. 3d 1364 (J.P.M.L. 2018)................................................................20

*In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*,
988 F. Supp. 2d 1364 (J.P.M.L. 2013)................................................................10

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
24 F. Supp. 3d 1366 (J.P.M.L. 2014)...................................................................7

*In re Nat'l Hockey League Players' Concussion Injury Litig.*,
327 F.R.D. 245 (D. Minn. 2018)...........................................................................5

*In re Nat'l Prescription Opiate Litig.*,
576 F. Supp. 3d 1378 (J.P.M.L. 2021)................................................................10

*In re Nebivolol (%2C040) Patent Litig.*,
867 F. Supp. 2d 1354 (J.P.M.L. 2012)..................................................................7

*In re New England Compounding Pharm., Inc., Prod. Liab. Litig.*,
924 F. Supp. 2d 1380 (J.P.M.L. 2013)................................................................18

iv

*In re Nine W. LBO Sec. Litig.*,
  464 F. Supp. 3d 1383 (J.P.M.L. 2020)..............................................................8, 14

*In re Plumbing Fixture Cases*,
  298 F. Supp. 484 (J.P.M.L. 1968).........................................................................10

*Portier v. NEO Tech. Sol.*,
  No. 3:17-CV-30111 ...............................................................................................17

*In re Rail Freight Fuel Surcharge Antitrust Litig*,
  2019 WL 3850581 (D.C. Cir. Aug. 16, 2019) ........................................................5

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
  355 F. Supp. 3d 1382 (J.P.M.L. 2019)...................................................................18

*In re Roadway Exp., Inc. Employment Practices Litig.*,
  384 F. Supp 612 (J.P.M.L. 1974)..............................................................................9

*In re Samsung Customer Data Sec. Breach Litig.*,
  2023 WL 1811247 (J.P.M.L. Feb. 1, 2023)...........................................................6, 7

*In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*,
  978 F. Supp. 2d 1379 (J.P.M.L. 2013)...............................................................12, 13

*In re Sorin 3T Heater-Cooler Sys. Prod. Liab. Litig. (No. II)*,
  289 F. Supp. 3d 1335 (J.P.M.L. 2018)...................................................................18

*In re T-Mobile 2022 Customer Data Sec. Breach Litig.*,
  2023 WL 3829244 (J.P.M.L. June 2, 2023).............................................................9

*In Re: TJX Co. Retail Sec. Breach Litig.*,
  No. 1:07-CV-10162 ...............................................................................................17

*In re Trade Partners, Inc., Inv'rs Litig.*,
  493 F. Supp. 2d 1381 (J.P.M.L. 2007)......................................................................5

*In re Tribune Co. Fraudulent Conveyance Litig.*,
  831 F. Supp. 2d 1371 (J.P.M.L. 2011)......................................................................9

*In re U.S. Foodservice, Inc., Pricing Litig.*,
  528 F. Supp. 2d 1370 (J.P.M.L. 2007)......................................................................8

*In re Uber Techs., Inc., Data Sec. Breach Litig.*,
  304 F. Supp. 3d 1351 (J.P.M.L. 2018)................................................................6, 10

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)..............................................................................................6

*Webb v. Injured Workers Pharm., LLC*,
    No. 1:22-CV-10797 ..................................................................................................17

*Weekes v. Cohen Cleary P.C.*,
    No. 1:23-cv-10817 (D. Mass.) ..................................................................................19

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    223 F. Supp. 3d 1353 (J.P.M.L. 2016)...............................................................6, 15

*In re Zappos.Com, Inc., Customer Data Security Breach Litig.*,
    Transfer Order, MDL No. 2357 ................................................................................15

*In re Zofran (Ondansetron) Prod. Liab. Litig.*,
    138 F. Supp. 3d 1381 (J.P.M.L. 2015).....................................................................18

**Statutes**

28 U.S.C. § 1404(b) ..........................................................................................................13

28 U.S.C. § 1407(a) ........................................................................................................1, 5

**Other Authorities**

Fed. R. Civ. P. 23(b)(3).......................................................................................................6

Federal Court Management Statistics, March 31, 2023...............................................16, 17

Statistical Analysis of Multidistrict Litigation Under 28 U.S.C. § 1407, Fiscal
    Year 2022, United States Judicial Panel on Multidistrict Litigation .......................17

## INTRODUCTION

Defendants Progress Software Corporation and Ipswitch, Inc.[1] (collectively, "Progress") support transferring and consolidating the numerous actions against Progress that are now pending throughout the country. But Progress requests that the Judicial Panel transfer all such actions to the U.S. District Court for the District of Massachusetts ("D. Mass.") for consolidated proceedings.

The D. Mass.—which is the litigation's center of gravity and where the largest number of actions are currently pending—is the most appropriate venue for this litigation. It is the base for many of the key witnesses and documents, and Progress' headquarters are located there. Further, judges of the D. Mass. have substantial experience with multidistrict litigation and data breach class actions, and the district has the resources to adjudicate the actions expeditiously. By contrast, the District of Minnesota (proposed by Movant) has minimal, immaterial connections with this litigation and therefore is not the appropriate forum.

The transfer of these actions will promote the just and efficient conduct of the actions and serve the convenience of the parties and witnesses. *See* 28 U.S.C. § 1407(a). The pending actions advance claims arising from largely identical allegations and involve largely overlapping proposed classes of individuals (as defined in the complaints). All named plaintiffs allege their personal identifying information was exposed as a result of an unauthorized third-party attack on Progress' MOVEit Transfer software. Given the extensive overlap in factual allegations, the plaintiffs in each case likely will seek overlapping discovery relating, for example, to the implementation of MOVEit Transfer, the security of MOVEit Transfer, the alleged breaches, and information

---

[1] Ipswitch, Inc. ("Ipswitch") is a named co-defendant in three pending actions. In 2019, Ipswitch merged into Progress Software Corporation and ceased to separately exist.

compromised in the alleged intrusion.[2] Centralization will minimize the burden of discovery on all parties and ensure that the parties do not face competing discovery obligations.

Beyond discovery, non-MDL motion practice in each of the cases filed to date would require eleven courts to evaluate common issues. Progress anticipates it may be necessary to assert common defenses to the actions and to seek critical pretrial rulings that will overlap in numerous cases, including as it relates to class certification. Absent centralization, there will be a race in at least eleven different courts, each of which will be pressed to decide overlapping Rule 23 issues on potentially underdeveloped records, including whether common questions of law or fact predominate over individual questions and whether a class action is the superior method of adjudicating the issue. Progress also will have common defenses to the merits that it intends to raise on summary judgment. Thus, centralization almost certainly will spare these different courts from duplicative motion practice on Progress' defenses. The courts and the parties will benefit greatly from briefing and deciding these issues in a coordinated manner, and without requiring each separate district court to address the same issues.

## BACKGROUND

Between June 20 and August 3, 2023, plaintiffs filed 43 putative class actions in eleven different federal districts (the "Actions"). *See* Schedule of Actions.[3] The Actions are largely

---

[2] Although Progress recognizes that plaintiffs will likely seek discovery that will be substantially similar across all related actions, Progress reserves the right to assert any and all applicable objections to discovery requests plaintiffs may issue. Progress' position, for purposes of this petition, is that centralization will streamline any requests, responses thereto, and disputes that arise regarding the propriety of such requests.

[3] Plaintiffs have also filed two state court actions against Progress in San Francisco and Baltimore. *Landi v. Progress Software Corp., et al.,* No. CGC-23-607276 (Sup. Ct. Cal., San Fran. Cty.) (*"Landi I"*); *Turner v. The Johns Hopkins Health Sys. Corp., et al.*, No. 24-C-23-002983 (Md. Cir. Ct., Balt. City). A notice of dismissal was filed on July 25, 2023, in the *Turner* case as to Progress, and on August 3, 2023, the *Landi I* plaintiff filed an application to dismiss the action.

identical. The named plaintiffs are 60 individuals who allegedly provided their personal identifying

information ("PII") to various third-party entities (the "MOVEit Users") that licensed and utilized

MOVEit Transfer, the file-transfer software program for managing and controlling the movement

of digital files. Plaintiffs allege that cybercriminals exploited a vulnerability in MOVEit Transfer

and exposed plaintiffs' PII.

Twenty-eight of the Actions name Progress as a defendant.[4] Certain MOVEit Users are

also named co-defendants with Progress in fourteen of these Actions: Pension Benefit Information,

LLC and its affiliate The Berwyn Group (collectively, "PBI") (*Anastasio*, *Landi II*, *Ortega*,

*Hurtado*, *Bailey*, *Harris I*, *Feregrino*, *Berry II*, *White*, *Mosqueda*, and *Siflinger*); Genworth

Financial, Inc. ("Genworth") (*Anastasio*); The Johns Hopkins Health System Corporation and The

Johns Hopkins University (collectively, "Johns Hopkins") (*Truesdale*, *Pulignani*, and *Doe)*; and

the Illinois Department of Innovation and Technology ("IDIT") (*Acevedo*). Fifteen of the Actions

---

[4] *Diggs v. Progress Software Corp.*, No. 1:23-cv-11370 (D. Mass.); *Pipes v. Ipswitch, Inc., et al.*, No. 1:23-cv-11394 (D. Mass.); *Tenner v. Progress Software Corp., et al.*, No. 1:23-cv-11412 (D. Mass.); *Mitchell v. Progress Software Corp.*, No. 1:23-cv-11417 (D. Mass.); *Anastasio v. Progress Software Corp. et al.*, No. 1:23-cv-11543 (D. Mass.); *Meyer v. Progress Software Corp.*, No. 1:23-cv-11543 (D. Mass.); *Gilson v. Progress Software Corp.*, No. 1:23-cv-11552 (D. Mass.); *Deutsch v. Progress Software Corp.*, No. 1:23-cv-11547 (D. Mass.); *Smith v. Progress Software Corp.*, No. 1:23-cv-11580 (D. Mass.); *Reese v. Ipswitch, Inc., et al.*, No. 1:23-cv-11610 (D. Mass.); *Moore v. Progress Software Corp.*, No. 1:23-cv-11669 (D. Mass.); *Berry v. Progress Software Corp.*, No. 2:23-cv-02089 (E.D. La.) ("*Berry I*"); *McAdam v. Progress Software Corp.*, No. 2:23-cv-02295 (E.D. La.); *Ortega v. Progress Software Corp., et al.*, No. 2:23-cv-5301 (C.D. Cal.); *Hurtado v. Progress Software Corp., et al.*, No. 3:23-cv-03377 (N.D. Cal.); *Bailey v. Progress Software Corp., et al.*, No. 0:23-cv-02028 (D. Minn.); *Harris v. Progress Software Corp., et al.*, No. 0:23-cv-02075 (D. Minn.) ("*Harris I*"); *Feregrino v. Progress Software Corp., et al.*, No. 0:23-cv-02176 (D. Minn.); *Truesdale v. Progress Software Corp., et al.*, No. 1:23-cv-01913 (D. Md.); *Pulignani v. Progress Software Corp., et al.*, No. 1:23-cv-01912 (D. Md.); *Doe v. Progress Software Corp., et al.*, No. 1:23-cv-01933 (D. Md.); *Acevedo v. Progress Software Corp., et al.*, No. 3:23-cv-03225 (C.D. Ill.); *White v. Progress Software Corp., et al.*, No. 0:23-cv-02254 (D. Minn.); *Landi v. Progress Software Corp., et al.*, No. 3:23-cv-03839 (N.D. Cal.) ("*Landi II*"); *Harris v. Progress Software Corp.*, No. 1:23-cv-05028 (N.D. Ill.) ("*Harris II*"); *Mosqueda v. Progress Software Corp., et al.*, No. 0:23-cv-02278 (D. Minn.); *Siflinger v. Progress Software Corp.*, No. 1:23-cv-11782 (D. Mass.).

were filed against MOVEit Users but did not name Progress as a defendant.[5]

Except for *Berry I* (which seeks to certify a class of certain Louisiana residents), each action seeks to certify a nationwide class of individuals impacted by an alleged breach of MOVEit Transfer.[6] All of the Actions are in the earliest stage of litigation; other than IDIT—which filed a motion to dismiss in the *Acevedo* action on August 3, 2023—Progress and other defendants have not yet filed any responsive pleadings. Prior to filing this Response, counsel for Progress met and conferred with defense counsel for Genworth and PBI; and plaintiffs' counsel in *Diggs*, *Pipes*, *Tenner*, *Anastasio*, *Berry*, *Ortega*, *Harris*, *Bailey*, *Gilson*, and *McAdam*. Progress understands that

---

[5] *Cheng v. Pension Benefit Info., LLC, et al.*, No. 2:23-cv-05481 (C.D. Cal.); *Collins v. Pension Benefit Info., LLC, et al.*, No. 0:23-cv-02045 (D. Minn.); *Smith v. Pension Benefit Information, LLC, et al.*, No. 0:23-cv-02055 (D. Minn.); *Ellis v. Pension Benefit Info., LLC*, No. 0:23-cv-2139 (D. Minn.); *Garrison v. Pension Benefit Info., LLC*, No. 0:23-cv-02071 (D. Minn.); *Gregory v. Johns Hopkins Univ., et al.*, No. 1:23-cv-01854 (D. Md.); *Hunter v. Johns Hopkins Univ., et al.*, No. 1:23-cv-01826 (D. Md.); *King v. Genworth Fin., Inc.*, No. 3:23-cv-00426 (E.D. Va.); *Weissman v. Pension Benefit Info., LLC*, No. 1:23-cv-03999 (D. NJ); *Berry v. Pension Benefit Info., LLC, et al.*, No. 3:23-cv-03297 (N.D. Cal.) ("*Berry II*"); *Williams. v. Pension Benefit Info., LLC, et al.*, No. 0:23-cv-02238 (D. Minn.); *Hauser v. Genworth Fin., Inc.*, No. 3:23-cv-00486 (E.D. Va.); *Glabb. v. Pension Benefit Info., LLC, et al.*, No. 23-cv-02240 (D. Minn.); *Scott v. Union Bank and Trust Co.*, No. 4:23-cv-03126 (D. Neb.); *Bender v. Union Bank and Trust Co.*, No. 8:23-cv-00298 (D. Neb.).

[6] Ten actions limit the nationwide putative class definition to individuals impacted who provided their PII to PBI, Johns Hopkins, or Genworth. *Ortega*, Compl. ¶ 125 (PBI); *Garrison*, Compl. ¶ 76 (PBI); *Ellis*, Compl. ¶ 76 (PBI); *Collins*, Compl. ¶ 62 (PBI); *Smith* (D. Minn.), Compl. ¶ 81 (PBI); *Gregory*, Compl. ¶ 99 (Johns Hopkins); *Hunter*, Compl. ¶ 33 (Johns Hopkins); *King*, Compl. ¶ 125 (Genworth); *Cheng*, Compl. ¶ 14 (PBI); *Williams*, Compl. ¶ 62 (PBI); *Hauser*, Compl. ¶ 131 (Genworth). In addition to a nationwide class, twelve actions seek to certify a statewide subclass in addition to a nationwide class—*Bailey*, Compl. ¶ 71 (California); *Feregrino*, Compl. ¶ 84 (California); *Smith*, Compl. ¶ 60 (Illinois); *Meyer*, Compl. ¶ 90 (Oregon); *Acevedo*, Compl. ¶ 67 (Oregon) (Illinois); *Garrison*, Compl. ¶ 76 (California); *Ellis*, Compl. ¶ 76 (California); *Collins*, Compl. ¶ 62 (California); *Hunter*, Compl. ¶ 33 (Maryland); *Cheng*, Compl. ¶ 14 (California); *Landi II*, Compl. ¶ 39 (California); *Williams*, Compl. ¶ 62 (California); *Hauser*, Compl. ¶ 131 (Florida); *Glabb*, Compl. ¶ 78 (California); *Mosqueda*, Compl. ¶ 89 (California)— and four actions seek to certify a subclass of individuals who provided their PII to certain MOVEit Users—*Anastasio,* Compl. ¶ 148 (PBI); *Truesdale*, Compl. ¶ 151 (Johns Hopkins); *Pulignani*, Compl. ¶ 152 (Johns Hopkins); and *Doe*, Compl. ¶ 152 (Johns Hopkins); *Landi II*, Compl. ¶ 39 (PBI); *Siflinger*, Compl. ¶149 (PBI).

Genworth, PBI, and plaintiffs in each of these respective actions agree to MDL treatment but may contest which venue is appropriate.

## ARGUMENT

## I.  TRANSFER TO A SINGLE DISTRICT FOR CENTRALIZED PRETRIAL PROCEEDINGS IS APPROPRIATE UNDER 28 U.S.C. § 1407

Centralization of pretrial multi-district proceedings in a single district through an MDL is appropriate when (1) actions pending in different federal courts involve "one or more common questions of fact"; and (2) coordination "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a); *see In re KeyBank Customer Data Sec. Breach Litig.*, 2023 WL 1811824, at *1 (J.P.M.L. Feb. 1, 2023) (holding that centralization is appropriate if it would "eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification and *Daubert* motions; and conserve the resources of the parties, their counsel, and the judiciary"). The Actions satisfy these requirements and should be transferred for centralized proceedings.

### A.  The Actions Involve Common Issues of Fact

The Panel is authorized to transfer and centralize cases that involve "common questions of fact." 28 U.S.C. § 1407(a). Section 1407 "does not require a complete identity or even majority of common factual issues as a prerequisite to centralization." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (citation omitted). Rather, common factual questions are presumed "when two or more complaints assert comparable allegations against identical defendants based upon similar transactions and events." *In re Air West, Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974) (citations omitted).[7]

---

[7] This inquiry is quite different from the class certification inquiry required by Federal Rule of Civil Procedure 23. *See In re Trade Partners, Inc., Inv'rs Litig.*, 493 F. Supp. 2d 1381 (J.P.M.L. 2007) (centralization under Section 1407 appropriate even where individual questions of fact and

The Actions share numerous factual allegations to the effect that Progress permitted a security breach in violation of various statutes and state common law, and all seek certification of similar classes and/or subclasses. If the Actions were to proceed separately, eleven (or more) courts would be required to address common factual issues. When "the actions stem from the same data breach, and there is significant overlap in the central factual issues, parties, proposed classes, and claims . . . creation of a single MDL is warranted." *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019) (granting centralization).

This Panel has consistently consolidated data breach cases like the Actions here on the basis of the inherent efficiencies in dealing with common facts arising in such cases.[8] Indeed, as

---

law predominate for class certification purposes). Courts routinely deny class certification in multidistrict proceedings. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig*, 2019 WL 3850581 (D.C. Cir. Aug. 16, 2019); *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 327 F.R.D. 245 (D. Minn. 2018). Progress reserves all of its defenses to class certification, including, but not limited to, the absence of common questions susceptible to common answers, *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), and the fact that common questions do not predominate over individualized questions, *see* Fed. R. Civ. P. 23(b)(3); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1436–37 (2013).

[8] *See, e.g.*, *In re Am. Med.*, 410 F. Supp. 3d at 1353; *In re KeyBank*, 2023 WL 1811824, at *1; *In re Samsung Customer Data Sec. Breach Litig.*, 2023 WL 1811247, at *1 (J.P.M.L. Feb. 1, 2023); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 544 F. Supp. 3d 1371, 1372 (J.P.M.L. 2021); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363 (J.P.M.L. 2020); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) ("The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections. . . ."); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) ("Common factual questions are presented with respect to Uber's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016) ("Common factual questions are presented with respect to Yahoo's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) ("Here, all actions stem from the same data breach, and we are persuaded that discovery concerning the breach, how and when it was identified, what

recently as February 2023, the Panel consolidated cases related to a data breach involving a bank, holding that they presented common factual questions concerning the alleged breach:

> Common factual issues will include how [the defendant's] system was breached, what security measures [the defendant] had in place to protect against such a breach, what information was compromised in the breach, and whether [defendant] provided timely notice of the breach to its financial institution clients.

*In re KeyBank*, 2023 WL 1811824, at *1.

Similar factual issues are anticipated to arise in these Actions against Progress. *See, e.g.*, *Diggs*, Compl. ¶ 101 (alleging common questions of fact would include, in part, "[w]hen [Progress] learned of the Data Breach" and "[w]hether [Progress'] response to the Data Breach was adequate"); *id.* ¶ 11 (alleging Progress "failed to both properly monitor and properly implement data security practices"); *Pipes*, Compl. ¶ 51 (alleging Progress failed to "adequately test" MOVEit Transfer "for security flaws and vulnerabilities").

Moreover, the nature of the defenses in this case, as well as the consistency of a single ruling as to such defenses, is a strong ground supporting centralization. Progress expects that it and each other defendant will raise universal defenses to each Action at the motion to dismiss and, if necessary, class certification and summary judgment stages to defeat liability and damages. *See, e.g.*, *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 24 F. Supp. 3d 1366, 1367 (J.P.M.L. 2014) (noting actions will involve similar defenses); *In re Nebivolol (%2C040) Patent Litig.*, 867 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012) (similar).

---

security measures 21st Century had in place for securing patient data, and what steps it took after discovery of the breach will be common among the . . . actions and is likely to be complex and time-consuming.").

### B. Centralization Will Promote the Convenience of the Parties and Witnesses as Well As Judicial Efficiency and Justice

Transfer and centralization are necessary to avoid duplicative discovery, inconsistent pretrial rulings, and waste of judicial and party resources. *See, e.g.*, *In re KeyBank*, 2023 WL 1811824, at *1. Because all of the Actions are still in the pleading stage and there is substantial overlap of factual allegations, transfer will create substantial efficiencies for the parties and the courts. *In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383, 1386 (J.P.M.L. 2020) (granting transfer).

First, transfer is particularly appropriate because none of the Actions has moved past the pleading stage. *See, e.g.*, *In re Generic Pharm. Pricing Antitrust Litig.,* 2017 WL 4582710, at *2 (J.P.M.L. Aug. 3, 2017) (noting there is "ample scope to eliminate duplication and enhance the convenience of the parties, the witnesses, and the courts through coordinated proceedings in the MDL" where actions had not advanced beyond motion to dismiss); *Nine W.*, 464 F. Supp. 3d at 1386 (reasoning that "there has been no significant activity in any action such that transfer to another district would disrupt its efficient progress"). Here, other than IDIT in one action, no defendant has filed any answers or motions to dismiss, no court has held a Rule 26(f) conference, and no discovery has taken place.

Second, the creation of an MDL will best facilitate efficient discovery and case administration in light of the overlapping allegations. The parties can seek a case management order permitting the filing of a master complaint, to which Progress could address its arguments for dismissal of all claims and *only one* district court would be required to spend time at the pleading stage to resolve early dispositive motion practice.

Centralization of the Actions before a single court will allow a seasoned federal judge experienced in complex litigation to "formulate a pretrial discovery program" to avoid unnecessary

duplication of discovery efforts. *In re U.S. Foodservice, Inc., Pricing Litig.*, 528 F. Supp. 2d 1370, 1371 (J.P.M.L. 2007). This will conserve the resources of: (1) the plaintiffs, who will not each need to serve their own sets of discovery for each individual action; (2) Progress, which will not have to respond to multiple duplicative sets of discovery and have their experts and witnesses deposed multiple times on the same issues; and (3) the judiciary, which will not be burdened with multiple duplicative discovery and dispositive motions, risking inconsistent results.

Because the Actions share common factual allegations about the nature of the alleged data breach and Progress' conduct, matters that could theoretically survive dismissal would have substantial overlap as to: (1) gathering and producing of documentary evidence, (2) deposing the same or substantially identical Progress witnesses, and (3) disclosing and deposing experts on the same subject matters. *See, e.g.*, *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) (noting that transfer was appropriate to eliminate duplicative discovery when the actions shared "a common factual core"). By contrast, the existence of at least 43 different lawsuits—before at least 24 different judges in 11 different districts—in which the defendants will advance similar motions to dismiss on certain identical issues would be the opposite of efficient. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 831 F. Supp. 2d 1371, 1371 (J.P.M.L. 2011) (noting "[m]otions to dismiss likely will be similar in these actions" and ordering transfer and consolidation).

Third, the nature of the Actions warrants centralization. The underlying actions are putative class actions, which only strengthens the need for transfer and centralization in a single forum.[9]

---

[9] *See, e.g.*, *In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 2023 WL 3829244, at *1 (J.P.M.L. June 2, 2023) (centralization of data breach actions would "prevent inconsistent pretrial rulings, including with respect to class certification"); *In re Inclusive Access Course Materials Antitrust Litig.*, 2020 WL 4670703, at *1 (J.P.M.L. Aug. 11, 2020) (consolidating actions involving non-overlapping classes); *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab.*

Failure to coordinate the Actions before a single judge "would make possible, and perhaps probable, pretrial chaos in conflicting class action determinations which Section 1407 was designed to make impossible." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491–93 (J.P.M.L. 1968). Here, the plaintiffs in these Actions propose overlapping (and in many cases, almost identically-defined) classes. On the other hand, there is no efficiency case for eleven separate courts to address such overlap.

### C.     The Presence of Varying Defendants is Not a Barrier to Centralization

Even where "actions undoubtedly involve several non-overlapping defendants and raise defendant-specific issues," the Panel has granted transfer where they "all rest on the same core set of facts[.]" *In re FTX Cryptocurrency Exch. Collapse Litig.,* 2023 WL 3829242, at *2 (J.P.M.L. June 5, 2023) (granting centralization); *see also In re Uber*, 304 F. Supp. 3d at 1354 (granting centralization of data breach actions including sole action involving co-defendant); *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 338 F. Supp. 3d 1347, 1349 n. 2 (J.P.M.L. 2018) (rejecting defendants' arguments that they "will suffer prejudice from centralization because their case-specific facts will be 'lost in the mix' with hundreds of other defendants"); *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 988 F. Supp. 2d 1364, 1365–66 (J.P.M.L. 2013) ("although we agree that these actions present some individualized factual issues, the existence of such issues does not negate the common ones"). Additional parties are "essentially case management concerns that transferee judges routinely are called upon to address." *In re Customs*, 338 F. Supp. 3d at 1349, n. 2. And, if necessary, the Panel can "separate[] and remand[] cases on a per-defendant basis." *In re Nat'l Prescription Opiate Litig.*, 576 F. Supp. 3d 1378, 1380 (J.P.M.L. 2021) (collecting cases).

---

*Litig.*, 26 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("[c]entralization will . . . prevent inconsistent pretrial rulings (particularly as to class certification)").

For example, in *In re KeyBank*, the Panel granted centralization of six data breach actions. 2023 WL 1811824, at *1. The actions shared factual issues relating to an "incident in which an 'unauthorized external party' gained remote access to [Overby-Seawell Company's ("OSC')] network and acquired certain personally identifiable information of OSC's financial institution clients' customers." *Id*. OSC was a common defendant to all actions. *Id*. All actions and two potential tag-along actions also named OSC's financial institution client KeyBank as a co-defendant, and two potential tag-along actions named OSC's financial institution client Fulton Bank as a co-defendant. *Id*. "At oral argument, counsel for plaintiffs … argued that the actions naming Fulton Bank should not be included in the MDL." *Id.* The Panel declined to address the argument as the two potential tag-along actions were not before it but stated "[w]e are inclined to believe that the MDL should include all actions naming OSC and involving its July 2022 data breach, ***regardless of which, if any, financial institution is named as a co-defendant***." *Id.* at *1 (emphasis added).

So, too, here. Progress is a common defendant to 28 of the 43 Actions. In all, there are only 4 separately identifying co-defendants (specifically, Johns Hopkins, PBI, IDIT, and Genworth) in 13 of those cases. The presence of these other co-defendants is not a justification to decline centralization. Indeed, the common issues of fact and law amongst all of the cases relating to the vulnerability in the MOVEit Transfer that was utilized by MOVEit Users (even *despite* the presence of different co-defendants) only *reinforces* the need for centralization here. *See, e.g.,* PBI Response, ECF No. 86 at 2 (requesting transfer of all actions because "[t]he common thread among the tagged actions is the MOVEit data security incident"). Accordingly, the Panel should centralize all Actions, regardless of the presence of varying defendants.

**D.    Section 1404 Transfers or Informal Coordination Would Be Unlikely to Achieve the Convenience, Efficiencies, and Consistent Rulings Achievable Through Centralization**

As detailed in Section I.B, consolidation pursuant to Section 1407(a) would be convenient for the parties and efficient for the Court for several reasons. Equivalent convenience and efficiencies are far less certain through the transfer of individual cases under Section 1404 or through informal coordination.

As to potential Section 1404 transfer motions, there is no "reasonable prospect" that such motions would "eliminate the multidistrict character of the litigation." *In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380–81 (J.P.M.L. 2013). In *Schnuck Markets*, a data breach potentially affected an estimated 2.4 million customers. At the time of the hearing before the Panel, there were only four constituent actions in four districts. The parties had filed a notice of settlement in the then-pending case's district where defendant was headquartered. The defendant company objected to centralization, preferring to rely on its three pending Section 1404 transfer motions. A magistrate judge had made a recommendation for the Article III judge to grant one of the motions. Yet the Panel transferred the three cases to the district where defendant was headquartered and held there was no reasonable prospect that the Section 1404 motions would eliminate the multidistrict character of the litigation. *Id.* In doing so, the *Schnuck Markets* Panel articulated two key factors—first, the Panel opined that relying on all three Section 1404 motions to be decided the same way was uncertain given the discretionary nature of Section 1404; and second, the Panel noted that the previous decisions in which it had deferred to Section 1404 transfer motions involved cases in fewer districts (two). *See id.* at 1381. The Panel also found that additional tag-along cases might be filed. *Id.*

Here, the facts weigh even more heavily in favor of centralization than did the facts in *Schnuck Markets*. First, unlike in that case, none of the defendants have filed any Section 1404

motions in any Action. Asking eleven separate district courts to exercise their discretion under Section 1404 to transfer actions would not only require briefing in each court and use of judicial resources in deciding that number of motions, it would provide no assurance that each court would exercise its discretion to transfer each Action in exactly the same way, or on the same time frame. *See* 28 U.S.C. § 1404(b) (permitting transfer "in the discretion of the court"). If any court—or worse, multiple courts—decided not to transfer an Action, then the benefits of convenience, efficiency, and consistent rulings that are achievable with certainty through Section 1407 centralization would be lost.

Second, there are even more Actions and districts involved here than in *Schnuck Markets*. And tag-along actions are certainly possible. *See In re Inclusive Access Course Materials Antitrust Litig.*, 482 F. Supp. 3d 1358, 1359 (J.P.M.L. 2020) (rejecting consolidation via Section 1404 transfers and noting that "with six potential tag-along actions already on file, the possibility of additional actions cannot be discounted"); *In re 21st Century*, 214 F. Supp. 3d at 1358 (granting transfer and finding informal coordination would not be practical in where "more than two million patients affected by the data breach, additional tag-along actions also may be forthcoming").

Centralization is also preferable to informal coordination where, as here, there are a number of "distinct plaintiffs' counsel involved," the Actions are nearly identical, and discovery will undoubtedly overlap because a single judge is able to streamline pretrial proceedings and make consistent rulings on discovery disputes, dispositive motions, and issues relating to experts. *In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 249 F. Supp. 3d 1357, 1359 (J.P.M.L. 2017) (granting transfer). As the Panel has recognized, only centralization can achieve this goal. *In re Generic Pharm.,* 2017 WL 4582710, at *2 ("informal coordination and cooperation among the parties and courts" is not "sufficient to eliminate the potential for duplicative discovery,

13

inconsistent pretrial rulings, and conflicting discovery obligations").

## II.   THE DISTRICT OF MASSACHUSETTS, AND JUDGE NATHANIAL M. GORTON OR CHIEF JUDGE F. DENNIS SAYLOR IV, ARE THE MOST APPROPRIATE TRANSFEREE DISTRICT AND JUDICIAL OFFICERS

Although Progress agrees that transfer and consolidation of the Actions is necessary, Progress does not agree with Movant that the District of Minnesota is the proper venue. Progress further disagrees with Respondent McAdam that the Eastern District of Louisiana is the proper venue. Rather, the D. Mass., and Judge Nathanial M. Gorton or Chief Judge F. Dennis Saylor IV, are the most reasonable venue and judicial officers for centralization of the Actions.[10]

When deciding the appropriate transferee district for an MDL, the Panel considers, among other things: (1) the situs of evidence and the residence of the witnesses and parties—the litigation's center of gravity—and (2) the transferee forum's docket and its ability to manage the MDL, together with the district's familiarity with the actions and interest in serving as the transferee forum. *See, e.g.*, *Nine W.*, 464 F. Supp. 3d at 1385 (transferring to district that is "litigation's center of gravity"—even though no constituent actions were then-pending there); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 325 F. Supp. 3d 1362, 1364 (J.P.M.L. 2018) (transfer to district where Facebook is headquartered and relevant evidence and witnesses are likely to be located). Here, each of these factors strongly favor transfer to the D. of Mass.

### A.   The Litigation's Center of Gravity Is the District of Massachusetts

One of the most important considerations in selecting an appropriate transferee forum is determining which forum has the strongest "nexus" to the litigation. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005). A key factor in determining the strength of the nexus is the presence of a defendant's headquarters in the proposed

---

[10] Respondent McAdam agrees that centralization in the D. Mass. is a proper alternative to the Eastern District of Louisiana. ECF No. 6.

district.[11] In this case, the litigation's "center of gravity" is where defendant Progress is headquartered, and where most of the key Progress witnesses and evidence are located—and that is the D. Mass. Most of the relevant Progress employees are located primarily in Massachusetts. By contrast, plaintiffs are not expected to have a significant volume of documents or non-Massachusetts witnesses in this case.

The fact that Progress is not a common defendant to each Action does not change the fact that the center of gravity is the D. Mass. First, Progress is a named defendant in 28 of the 43 Actions and the vulnerability of Progress' software is the gravamen of this litigation. Progress is therefore considered the "central" defendant of the Actions. *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, 408 F. Supp. 2d 1349 (J.P.M.L. 2005) (granting transfer to location of "central" defendant). Second, counsel for PBI has indicated to Progress' counsel that they intend to join Progress in the nine actions where PBI is a named defendant and Progress is not. Finally, even in cases where Progress is not a named party, those actions will certainly require discovery from Progress concerning the MOVEit Transfer software. In light of these considerations, the center of gravity is the D. Mass., which is thus the most appropriate transferee forum.

### B.   The District of Massachusetts is Best Positioned to Ensure Expeditious Handling of the MDL

The D. Mass. has the resources, judicial expertise, and experience to manage a multidistrict litigation involving the issues here efficiently. To effectuate the purpose of Section 1407, the Panel

---

[11] *See, e.g.*, *In re Delphi Corp.* 403 F. Supp. 2d at 1360 (district where documents and witnesses likely to be found and where defendant was headquartered had "significant nexus to the litigation"); *In re Nine W.*, 464 F. Supp. 3d 1385 (same). This is particularly true in cases involving allegations of a data breach. *See, e.g.*, *In re Marriott Int'l, Inc.*, 363 F. Supp. 3d at 1374–75 (selecting district where defendant "is headquartered . . . and relevant documents and witnesses thus likely will be found there"); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 89 F. Supp. 3d 1322, 1326 (J.P.M.L. 2017) (same); *In re Yahoo! Inc.*, 223 F. Supp. 3d at 1354-55 (same); *In re 21st Century*, 214 F. Supp. 3d at 1358 (same); *In re Zappos.Com, Inc., Customer Data Security Breach Litig.*, Transfer Order, MDL No. 2357 (J.P.M.L. June 13, 2012), ECF No. 18, at 1-2 (same).

often looks to a transferee forum "with the capacity and experience to steer [the] litigation on a prudent course." *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361-62 (J.P.M.L. 2004) (making a determination of the transferee forum and judges not based on where actions were pending, but after "search[ing] for a transferee district with the capacity and experience to steer this litigation on a prudent course"); *see also In re: Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*, 896 F. Supp. 2d 1339, 1340-41 (J.P.M.L. 2012); *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001) (transferring to a district court that "possesse[d] the necessary resources, facilities and technology" to handle the matter).

| CASE DISPOSITION RATES IN RELEVANT JURISDICTIONS MARCH 31, 2022 – MARCH 31, 2023 | | | | | | | |
|---|---|---|---|---|---|---|---|
| | D. Mass. | E.D. La. | D. Minn. | D. Md. | C.D. Cal. | N.D. Cal. | C.D. Ill. |
| **Total Filings in District** | 3,513 | 5,732 | 4,177 | 4,297 | 2,766 | 9,566 | 10,008 |
| **Number of Judgeships** | 13 | 12 | 7 | 10 | 8 | 14 | 14 |
| **Civil Filings Per Judgeship** | 218 | 446 | 466 | 364 | 264 | 609 | 632 |
| **Pending Cases Per Judgeship** | 331 | 1411 | 1161 | 521 | 406 | 988 | 870 |
| **Median Time From Filing to Disposition of Civil Actions (Months)** | 10.8 | 68.9 | 6.2 | 8.7 | 11 | 5.5 | 10.1 |
| **Median Time From Filing to Trial of Civil Actions (Months)** | 32.8 | 25.6 | 40.5 | 38.8 | 31.2 | 31.3 | 29.3 |

As depicted in the table above,[12] the D. Mass. has favorable caseload and case disposition

---

[12] The data in the table is drawn from official court statistics. *See* Federal Court

statistics to conduct efficient pretrial proceedings as compared to the other jurisdictions where the Actions are pending. The D. Mass. has the second lowest total number of filings, the second highest number of judgeships, the lowest number of civil filings per judgeship, and the lowest number of pending cases per judgeship. The median time from filing to disposition and to trial of civil actions is 10.8 and 32.8 months, respectively.

Moreover, compared to the jurisdictions where the Actions are pending, the D. Mass. has the second most MDL case experience (*see* Figure 1 below[13])—highly suggestive that the district is well-positioned to adjudicate MDL cases efficiently.



Moreover, the D. Mass. is currently or has previously presided over several putative class actions involving data breach allegations.[14] The District's significant prior experience with multidistrict litigation, complex class action cases, and familiarity with Progress increases the

---

Management Statistics, March 31, 2023, available at
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2023.pdf.

[13] The data in Figure 1 is drawn from official court statistics. *See* Statistical Analysis of Multidistrict Litigation Under 28 U.S.C. § 1407, Fiscal Year 2022, United States Judicial Panel on Multidistrict Litigation, available at
https://www.jpml.uscourts.gov/sites/jpml/files/JPML%20Fiscal%20Year%202022%20Report-12-9-22_0.pdf.

[14] *See, e.g.*, *Portier v. NEO Tech. Sol.*, No. 3:17-CV-30111; *Hartigan v. Macy's, Inc.*, 1:20-CV-10551; *Webb v. Injured Workers Pharm., LLC*, No. 1:22-CV-10797; *Axis Ins. Co. v. Barracuda Networks, Inc.*, No. 1:20-CV-11997 (Gorton, J.); *In Re: TJX Co. Retail Sec. Breach Litig.*, No. 1:07-CV-10162; *Armhein v. Eclinical Works, LLC*, No. 1:18-CV-11658; *Eggiman v. Bank of Am., N.A.*, No. 1:22-CV-10298.

chances of an efficient disposition. *See In re Sorin 3T Heater-Cooler Sys. Prod. Liab. Litig. (No. II)*, 289 F. Supp. 3d 1335, 1337 (J.P.M.L. 2018) (transferring actions to judge presiding over action involving same products at issue); *In re German Auto. Manufacturers Antitrust Litig.*, 278 F. Supp. 3d 1373, 1375 (J.P.M.L. 2017) (transferring actions to judge presiding over action with potentially overlapping facts); *In re Glob. Crossing Ltd. Sec. Litig.*, 341 F. Supp. 2d 1357, 1358 (J.P.M.L. 2004) (transferring actions to judge who is "likely familiar with [the defendant's] business and operations").

### C.   Judge Nathanial M. Gorton or Chief Judge F. Dennis Saylor IV are Best Suited for Assignment as the Judicial Officer Over an MDL for These Actions

Progress respectfully suggests that centralization before the Honorable Nathanial M. Gorton or the Honorable F. Dennis Saylor IV would be most appropriate. Judge Gorton is currently assigned to seven of the Actions pending in the D. Mass., and Chief Judge Saylor is assigned to two of the Actions.

Both Judge Gorton and Chief Judge Saylor are experienced MDL jurists familiar to the Panel.[15] Since his appointment in 1992, Judge Gorton has served on several judicial committees, including: from 1997 to 2003, on the Judicial Conference Committee on Judicial Resources; from 2001 to 2008, on the U.S. Foreign Intelligence Surveillance Court; from 2010 to 2016, on the Judicial Conference Committee on Intercircuit Assignments; and since 2018, on the Panel. He has

---

[15] *See In re Ranbaxy Generic Drug Application Antitrust Litig.*, 355 F. Supp. 3d 1382, 1383 (J.P.M.L. 2019) ("By selecting Judge Nathaniel M. Gorton to preside over this litigation, we are choosing a jurist well-versed in the nuances of complex and multidistrict litigation to steer this matter on a prudent course."); *In re: Body Sci. LLC Pat. Litig.,* 883 F. Supp. 2d 1344, 1346 (J.P.M.L. 2012) ("By centralizing this litigation before Judge Nathaniel M. Gorton, we are assigning this docket to an experienced transferee judge who can steer this litigation on a prudent course."); *In re: Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 652 F. Supp. 2d 1377, 1378 (J.P.M.L. 2009) (assigning MDL to Judge Gorton); *In re Zofran (Ondansetron) Prod. Liab. Litig.*, 138 F. Supp. 3d 1381 (J.P.M.L. 2015) (assigning MDL to Judge Saylor); *In re New England Compounding Pharm., Inc., Prod. Liab. Litig.*, 924 F. Supp. 2d 1380, 1381 (J.P.M.L. 2013) (same).

previously overseen three MDLs and is currently overseeing one. *In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig.*, MDL No. 2428 (D. Mass.). He has also overseen at least two data breach putative class actions and is therefore familiar with the claims at issue. *Axis Ins. Co.*, No. 1:20-CV-11997 (D. Mass.); *Weekes v. Cohen Cleary P.C.*, No. 1:23-cv-10817 (D. Mass.).

Since 2019, Chief Judge Saylor has overseen the court in the D. Mass. Prior to his appointment in 2004, Judge Saylor was in private practice, an assistant United States attorney in the D. Mass., and special counsel and chief of staff to the assistant U.S. attorney general of the Criminal Division at Main Justice. Judge Saylor has previously been assigned to two MDLs; he currently has no assigned MDLs.

Accordingly, because both jurists have the experience and resources to oversee this matter, Progress respectfully requests that the Panel transfer the Actions to the D. Mass. for centralization before Judge Gorton or Chief Judge Saylor.

### D.   Additional Factors Weigh in Favor of Transfer to the District of Massachusetts

In addition to the D. Mass. being the situs of the litigation and having the ability to expeditiously handle an MDL, at least three additional factors also weigh in favor of transfer to the district.

First, a plurality of the Actions (13) is currently pending in the D. Mass.[16]

Second, Boston is an easily accessible metropolitan area. The city is serviced through

---

[16] *See, e.g.*, *In re KeyBank*, 2023 WL 1811824, at *2 (selecting transferee district where "[f]ive of the ten actions [are] pending" there); *In re Clearview AI, Inc., Consumer Priv. Litig.*, 509 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020) (selecting forum where six of ten actions were already pending); *In re Generali COVID-19 Travel Ins. Litig.*, 509 F. Supp. 3d 1365, 1367 (J.P.M.L. 2020) (selecting forum where three of eleven actions were already pending); *In re 21st Century*, 214 F. Supp. 3d at 1357 (selecting forum where "vast majority of actions were already pending there").

Boston Logan International Airport, one of the country's best-connected airports and approximately four miles from the proposed transferee courthouse. *See In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006) (choosing a transferee forum in an "accessible metropolitan location"); *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376–77 (J.P.M.L. 2002) ("a litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services").

Finally, to the extent the majority of the parties prefer to litigate in the D. Mass., that further weighs in favor of transfer to that district. *See In re Monat Hair Care Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 325 F. Supp. 3d 1364, 1365 (J.P.M.L. 2018) (transferring actions to district that "enjoys the support of most responding parties"); *In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 325 F. Supp. 3d 1374, 1377 (J.P.M.L. 2018) (transferring actions to district that was the first choice of plaintiffs in ten out of 19 actions and that no defendants objected to). To date, plaintiffs in nine of the Actions (*Mitchell*, *Deutsch*, *Pipes Tenner, Anastasio, Silfinger, Doe, Truesdale,* and *Pulignani*), PBI, and Union Bank and Trust Company support transfer to the D. Mass.

## **CONCLUSION**

Because the Actions involve a common set of complex, technical facts and allegations that are subject to common defenses and motion practice, centralization of the Actions for pretrial proceedings under 28 U.S.C. § 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and promote judicial economy. Therefore, Progress respectfully requests that the Panel transfer the Actions for centralization in the District of Massachusetts.

Dated: August 4, 2023

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Jeffrey Tsai*
JEFFREY E. TSAI (CA SBN 226081)
555 Mission Street, Suite 2400
San Francisco, California 94105
T: 415.615.6055
E: jeff.tsai@dlapiper.com

*Attorney for Defendants Progress Software*
*Corporation and Ipswitch, Inc.*