**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: MOVEIT CUSTOMER DATA | ) | |
| SECURITY BREACH | ) | |
| LITIGATION | ) | **MDL NO. 3083** |

**DELILAH KING'S RESPONSE IN PARTIAL OPPOSITION TO MOTION TO**
**TRANSFER AND CONSOLIDATE ACTIONS PURSUANT TO 28 U.S.C. § 1407**

Interested Party, Delilah King ("King"), the Plaintiff in *King v. Genworth Financial, Inc.* pending in the U.S. District Court for the Eastern District of Virginia (Case No. 3:23-cv-00426-RCY, E.D. Va., filed on June 30, 2023) (the "*King* Action"), through her counsel, responds in partial opposition to the Motion of Bruce Bailey, the named plaintiff in *Bailey v. Progress Software Corporation and Pension Benefit Information, LLC* (Case No. 0:23-cv-2028, D. Minn.), before the Judicial Panel on Multi-District Litigation ("JPML") to centralize all Related Actions and transfer them to the United States District Court for the District of Minnesota (MDL No. 3083, Dkt. No. ("DN") 1). Specifically, King opposes Bailey's motion to transfer based on the "Notice of Related Action" filed by Genworth Financial, Inc. ("Genworth"), which identified the *King* Action as a case that Genworth contends should be transferred to this MDL 3083. (DN 59, 70.)

## INTRODUCTION

King opposes Genworth's improper "Notice of Related Action" and its effort to include her case into the centralization effort before the Panel. The *King* Action is not eligible for transfer and transfer is neither necessary nor appropriate. King, a longtime Virginia resident, sued Genworth Financial, Inc. ("Genworth"), a publicly traded, Virginia-based company that was founded in Virginia in 1871, for inexcusably failing to protect her personally identifiable information (PII), including her Social Security Number, from well-known threats by hackers. (Exhibit 1, *King* Action Complaint.) Specifically, King entrusted sensitive data to Genworth in order to purchase a

long-term care insurance policy, and she alleges that, *inter alia*, Genworth failed to protect that data, which led to her information being breached by hackers between May 29 and May 30, 2023 (the "Data Breach"). (*King* Action Compl. ¶¶ 1-5.) According to Genworth's statements concerning the Data Breach, Genworth entrusted King's data to another company, Pension Benefit Information, LLC ("PBI")—with whom King has no contractual relationship—and PBI used the MOVEit file transfer software owned by Progress Software Corporation (and Ipswitch, Inc.)[1] ("PSC"), which contained a vulnerability to hackers. *Id*.

While there are several entities involved in the ultimate exposure of King's sensitive information (including PSC and PBI), the purpose of the *King* Action is holding *Genworth* accountable for its failure to safeguard the information entrusted to it by King and a class of 2.5 to 2.7 million similarly situated customers. Naturally, Genworth would much prefer that King's case be transferred and centralized with over 40 other cases that are, as Genworth admits in its response, (DN 135), focused on the liability of *entities others than Genworth*—entities that Genworth expressly blames for its obvious failure to protect 2.5 to 2.7 million *Genworth* customers' most sensitive information. To transfer King's case would benefit only Genworth and unnecessarily obscure King's path to hold Genworth accountable.

## LEGAL STANDARD

Federal civil actions are eligible for transfer pursuant to 28 U.S.C. § 1407 if they involve "common questions of fact" subject to discovery. *See* 28 U.S.C. § 1407(a); *In re Kugel Mesh Hernia Patch Products Liability Litigation*, 493 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2007). A party moving to centralize cases into a muti-district litigation bears "a heavy burden" to establish

---

[1] Some Related Cases have included Ipswitch, Inc. as a defendant, as PSC purchased Ipswitch, Inc., the developer of MOVEit, in 2019. *See, e.g.,* (DN 1-12, Pipes Complaint and Summons, ¶¶ 16-18).

that a transfer is justified under 28 U.S.C. § 1407. *In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978). Where the evidentiary needs of some actions fundamentally differ from others, transfer and centralization will not promote efficiency. *See In re Comcast Corp. Emp. Wage & Hour Emp. Pracs. Litig.*, 190 F. Supp. 3d 1344, 1345 (J.P.M.L. 2016) ("despite the factual commonality among the actions, we are not convinced that centralization is necessary to ensure the efficient conduct of these cases").

## ARGUMENT

### A. The *King* Action Does Not Share Common Facts to Make It Elligible for Transfer.

As several parties in support of transfer have framed it: "Reviewing the complaints in the Related Actions reveals that they concern PSC's MOVEit software vulnerability and allege that PSC failed to take adequate measures to protect the PII stored in its systems through the MOVEit software system, resulting in the Data Breach."[2] Alternatively, some of the complaints allege that *PBI,* a company to whom other companies entrusted their customers' data, failed to take adequate measures to protect the PII stored in its systems through the MOVEit software system, resulting in a data breach. But, in the *King* Action, Delilah King makes *no allegations* that PSC or PBI failed to protect her data. Moreover, she names neither PSC nor PBI as a defendant. Rather, King alleges only that Genworth—the company to whom she and putative class members entrusted their data— failed to protect her data. Genworth admits in its response that ". . . King and Hauser do not name PSC and PBI as defendants," but submits that "those cases too hinge on the MOVEit vulnerability and implicate PSC's and PBI's roles." (DN 135 at 3.) That the King and Hauser actions "implicate" the "roles" of two companies that those plaintiffs did not sue is simply not enough to permit

---

[2] Parties in favor of transfer refer to the independent breaches of thousands of companies and government agencies as a single "Data Breach" because it serves the narrative for centralization, but the "breach" they refer to was in fact numerous discrete data breaches.

transfer. *See In re Accellion, Inc., Customer Data Security Breach Litigation*, MDL 3002 (Aug. 1, 2021) (denying transfer and centralization of 26 data breach actions as "unnecessary for the convenience of the parties and witnesses or to further the just and efficient conduct of this litigation" because "any factual overlap among the actions as to Accellion's [file transfer] product, its vulnerability to attack, and its alleged support of this 'legacy' product may be eclipsed by factual issues specific to each client defendant"). Moreover, Genworth, unlike the PSC or PBI, is a consumer-facing company, which creates a legal and factual relationship that differs from PSC or PBI. *See also* (DN 130, Johns Hopkins Plaintiffs' Response in Opposition to Motion to Transfer, p. 4 (stating, "the Hopkins Defendants, unlike the Progress Companies, are consumer-facing, establishing both a legal and factual relationship that differs from many of the other defendants.").

Among the questions that other parties in favor of transfer put forth as "common questions of fact" are: Whether *PSC* had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's PII; Whether *PSC* failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; Whether *PSC* was negligent in maintaining, protecting, and securing PII; Whether *PSC* breached contract promises to safeguard Plaintiffs' and the Class's PII; Whether *PSC* took reasonable measures to determine the extent of the Data Breach after discovering it; and Whether *PSC's* Breach Notice was reasonable. (*See, e.g.,* DN 77, p. 7.) *None* of these questions are at issue in the *King* Action, and thus, none of these questions are "common" to the Related Actions.

Importantly, Genworth is not even named as a defendant in over 90% of the 44 cases and tagalongs presented by the parties in favor of transfer—unique cases covering unique data breaches including Johns Hopkins patients, California pensioners, Nebraska bank customers, and Louisiana driver's license holders. Only two of the other "related" actions name Genworth as a defendant

4

(one of which was only filed after the motion to transfer was filed), and those are the only other related actions to allege that *Genworth* failed to protect individuals' data. (DN 59 (identifying *Robert Anastasio v. Progress Software Corporation*; *Pension Benefit Information, LLC d/b/a PBI Research Services; and Genworth Financial, Inc.*, Case No. 1:23-cv-11442, D. Mass., filed on June 28, 2023 (amended to name Genworth on July 13, 2023); DN 110 (identifying *Patrice Hauser, v. Genworth Life Insurance Company*,[3] Case No. 3:23-cv-00486, E.D. Va., filed on August 2, 2023).) Only one of the 43 other cases presented for transfer, the *Hauser* Action, *exclusively* seeks to hold Genworth liable, and like the *King* Action, it was filed in the Eastern District of Virginia, where local consolidation with the *King* Action is the much more appropriate step due to the (truly) overlapping claims and theories of liability. The other approximately 40 "related" actions mostly allege only that PSC, PBI, and/or The Berwyn Group (an alleged business partner of PBI) failed to protect consumers' data. The *King* Action should not be transferred because King, a Genworth customer, is exclusively focused on the liability of Genworth—not PSC, not PBI, and not anyone outside the Genworth corporate group.

**B. Transfer of the *King* Action is Neither Necessary Nor Appropriate.**

Vital to the Panel's analysis is this point: Should the *King* Action be centralized and transferred, King's theories of liability against Genworth will be abandoned in favor of a broad brushstroke pinning PSC and/or PBI as the only culpable parties. Understandably, but wholly without merit or constitutional concern, Genworth's sophisticated counsel fully endorsed this concept by filing a notice of related action in this MDL, which prompted King's instant response. Indeed, in Genworth's filing in support of transfer, (DN 135), Genworth repeatedly attempts to shift blame to PSC and PBI. But Genworth's culpability cannot be obfuscated by an end-run

---

[3] Genworth Life Insurance Company is a subsidiary of Genworth.

around King's right to prosecute her case on behalf of herself and the putative class. For these reasons, transfer of the *King* Action is wholly inappropriate.

Of numerous Panel decisions in other data breach cases cited by the parties in support of transfer, in none of those cases surveyed by King did the Panel transfer a case filed against a different defendant with a unique theory of liability. *See In re T-Mobile Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d 1373 (U.S. Jud. Pan. Mult. Lit. 2021) (finding centralization and transfer was appropriate for putative class actions concerning alleged data security breach of cellular phone provider's systems); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350 (U.S. Jud. Pan. Mult. Lit. 2019) (finding centralization was appropriate in data breach to collection agency, involving compromised patient data); *In re Ashley Madison Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1378 (U.S. Jud. Pan. Mult. Lit. 2015); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372 (U.S. Jud. Pan. Mult. Lit. 2019); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351 (U.S. Jud. Pan. Mult. Lit. 2018); *In re: Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380 (U.S. Jud. Pan. Mult. Lit. 2013). Rather, in data breach cases similar to the MOVEit cases, centralization has been denied where, "rather than a single data breach, there were numerous data breaches of each client defendant, occurring at different times and involving each client defendant's own servers." *In re Accellion, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372, 1374 (J.P.M.L. 2021). The Panel should reach the same conclusion here, also.

Furthermore, no efficiencies will be gained for King by mass centralization. One group of cases supporting transfer states that "Discovery in all Related Actions will necessarily focus on documents, witnesses and other evidence pertaining to Massachusetts Defendant Progress's testing, development, sale, and maintenance of the MOVEit software and Progress's knowledge

6

about the ease with which hackers could compromise the software and steal PII." This statement does not, in fact, apply to "all Related Actions" if the *King* Action is included in a transfer. Rather, in the *King* Action the nucleus of discovery will be focused on *Genworth's* knowledge, acts, and omissions for which it is *independently liable*, as alleged by King. In reality, litigating the various claims against a growing list of unique defendants in one consolidated action will create significant *inefficiencies* as the court and the parties will habitually be asked to sort out which issues overlap, and which do not. *See In re Accellion, Inc.*, MDL 3002.

Finally, it is unfair and inappropriate for King, the Virginia resident who initiated the *King* Action, to be required to litigate against a Virginia-based company whom she sued in federal court in Virginia in a forum outside of Virginia.

## CONCLUSION

For all these reasons, King opposes the transfer of the *King* Action.

Date: August 4, 2023.

Respectfully Submitted,

By: */s/ Andrew R. Tate*
Andrew R. Tate – GA Bar #518068
**PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP**
235 Peachtree Street NE, Suite 400
Atlanta, GA 30303
Ph: (404) 282-4806
atate@peifferwolf.com

By: */s/ Brandon M. Wise*
Brandon M. Wise – IL Bar # 6319580
**PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: (314) 833-4825
bwise@peifferwolf.com

*Counsel for Plaintiff Deliliah King and the Putative Class*