**BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION** | **MDL No. 3083** |

**PLAINTIFFS STEVE LANDI, RICHARD HURLEY, AND NILA HURLEY'S RESPONSE
SUPPORTING TRANSFER AND CENTRALIZATION, AND REQUESTING THE
<u>TRANSFEREE VENUE OF THE NORTHERN DISTRICT OF CALIFORNIA</u>**

I.      **INTRODUCTION**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of Judicial Panel on Multidistrict Litigation Rules of Procedure, California plaintiffs Steve Landi, Richard E. Hurley, and Nila Hurley (the "Landi and Hurley Plaintiffs") in the putative class action *Landi, et. al. v. Progress Software Corp., et. al.*, No. 3:23-cv-03839 (N.D. Cal.) ("*Landi*"), submit this response in partial support of Plaintiff Bruce Bailey's motion for centralization and transfer of related actions pursuant to 28 U.S.C. § 1407 for consolidated pretrial proceedings ("Motion"). This response supports the Motion's request that the 40 underlying related actions pending in nine federal judicial districts (the "Related Actions") be transferred and centralized for pretrial purposes under § 1407. But it opposes the movant's request that the Panel select the transferee venue of the District of Minnesota, as well as other parties' requests for the District of Massachusetts. Instead, the Landi and Hurley Plaintiffs propose the Northern District of California as the most appropriate transferee venue under the circumstances, for three main reasons.

First, while the full details of the data breach events at the center of this litigation (the "Data Breach") are still coming to light, California residents comprise an enormous percentage of the Data Breach's currently known victims. This is attributable, in no small measure, to the Data Breach victims' ranks including an estimated 1.2 million individuals[1] who, like the Landi and Hurley Plaintiffs, are members and beneficiaries of the country's two largest public pension funds: the California Public Employees Retirement System ("CalPERS") and the California State

---

[1] *See* CalPERS, "CalPERS Takes Action in Response to Third-Party Breach of Retiree Information, CalPERS" (June 21, 2023), https://www.calpers.ca.gov/page/newsroom/calpers-news/2023/calpers-responds-to-third-party-breach-of-retiree-information (769,000 CalPERS members); Daniel Macht, "California treasurer calls for 'full accounting' by CalPERS, CalSTRS boards after data breach impacts 1 million members," *KCRA* (June 28, 2023), https://www.kcra.com/article/california-treasurer-calpers-calstrs-boards-data-breach-exposes-more-than-1-million-members/44378640 (415,000 CalSTRS members).

1

Teachers' Retirement System ("CalSTRS"). The outsized impact of the Data Breach on these California pensioners is reflected by the fact that, despite the Data Breach reportedly having affected hundreds of organizations, **nearly half (17 of 40)** of the Related Actions are being brought by CalPERS or CalSTRS plaintiffs.[2]

Second, many of the Related Actions brought by California plaintiffs (including CalPERS and CalSTRS plaintiffs) raise claims under the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100 *et seq*. Statutory damages under the CCPA range from $100 to $750 "per consumer per incident." Cal. Civ. Code § 1798.150 (a)(1)(A). These CCPA claims by California plaintiffs could be worth hundreds of millions of dollars, and thus put the financial center of gravity of this litigation in the state of California. Third, the Northern District of California has a host of able jurists who are highly experienced in managing complex MDLs, as well as deep experience and competence overseeing litigation involving complex technological issues, including data breaches.

---

[2] *See* **(1)** *Berry, et. al., v. Pension Benefit Information, LLC*, No. 3:23-cv-03297 (N.D. Cal. June 30, 2023); **(2)** *Ortega, et. al., v. Progress Software Corp., et. al.*, No. 5:23-cv-01329 (C.D. Cal. July 3, 2023); **(3)** *Hurtado v. Pension Benefit Information, LLC*, No. 3:23-cv-03377 (N.D. Cal. July 6, 2023); **(4)** *Cheng v. Pension Benefit Information, LLC, et. al.*, No. 2:23-cv-05481 (C.D. Cal. July 7, 2023); **(5)** *Collins v. Pension Benefit Information, LLC, et. al.*, No. 0:23-cv-02045 (D. Minn. July 7, 2023); **(6)** *Smith v. Pension Benefit Information, LLC, et. al.*, No. 0:23-cv-02055 (D. Minn. July 10, 2023); **(7)** *Deutsch v. Progress Software Corp.*, No. 1:23-cv-11547 (D. Mass. July 11, 2023); **(8)** *Garrison v. Pension Benefit Information, LLC, et. al.*, No. 0:23-cv-02071 (D. Minn. July 11, 2023); **(9)** *Harris v. Pension Benefit Information, LLC, et. al.*, No. 0:23-cv-02075 (D. Minn. July 11, 2023); **(10)** *Ellis, et. al. v. Pension Benefit Information, LLC, et. al.*, No. 0:23-cv-02139 (D. Minn. July 14, 2023); **(11)** *Feregrino, et. al. v. Pension Benefit Information, LLC, et. al.*, No. 0:23-cv-02176 (D. Minn. July 20, 2023); **(12)** *Williams v. Pension Benefit Information, LLC, et. al.*, No. 0:23-cv-02238 (D. Minn. July 27, 2023); **(13)** *White, et. al. v. Pension Benefit Information, LLC, et. al.*, No. 0:23-cv-02254 (D. Minn. July 28, 2023); **(14)** *Landi, et al. v. Progress Software Corp, et. al.*, No. 3:23-cv-03839 (N.D. Cal. July 31, 2023); **(15)** *Glabb v. Pension Benefit Information, LLC*, No. 0:23-cv-02240 (D. Minn. Aug. 1, 2023); **(16)** *Mosqueda v. Progress Software Corp., et al.*, No. 0:23-cv-02278 (D. Minn. Aug. 2, 2023); **(17)** *Silfinger, et. al. v. Progress Software Corp., et. al.*, No. 1:23-cv-11782 (D. Mass. Aug. 3, 2023).

## II. BACKGROUND

In or about May 2023, a group of Russian hackers known by the name "Clop" or "C10p" found a security flaw in the file transfer software MOVEit owned by Defendant Progress Software Corporation ("Progress Software")—and widely used by organizations, including pension fund service providers like Defendants Public Benefit Information LLC, dba PBI Research Services, and The Berwyn Group Inc. (collectively, the "PBI Defendants")—to transmit millions of individuals' personal identifying information ("PII"). *Landi*, Dkt. 1, Compl. ¶ 1. This massive theft of PII and the decisions leading up to it, referred to herein as the "Data Breach," has left millions of Americans vulnerable to continuing and imminent risk of identity theft and a wide variety of other financial harms. *Id*. These are the common facts underlying the Related Actions, which have been similarly explained in many other filings before the Panel. *See, e.g.*, ECF Nos. 6, 100, 103.

The Landi and Hurley Plaintiffs are CalPERS or CalSTRS members whose PII was stolen in the Data Breach. *Landi*, Dkt. 1, Compl. ¶ 2. CalPERS and CalSTRS use the services of the PBI Defendants to help reduce their costs and overpayments, and to manage cybersecurity risks to their members' and beneficiaries' PII. *Id*. In providing these services, the PBI Defendants use Progress Software's MOVEit file transfer software to transmit the PII of hundreds of thousands of CalPERS and CalSTRS members and beneficiaries, including the Landi and Hurley Plaintiffs. *Id*. Given the sensitive nature of the PII at issue, the Landi and Hurley Plaintiffs allege that Defendants have a heightened duty to provide a secure digital infrastructure for transmitting and storing their PII. *Id*.

Since the Data Breach was first publicly announced in May 2023, at least 40 Related Actions have been filed in nine federal judicial districts. *See* ECF No. 2 (Schedule of Actions);

ECF Nos. 8, 19, 27, 29, 53, 62, 70, 71, 79, 90, 103, 107, 110, 111 (Notices of Related Actions). Given the timing, all the Related Actions are still in their infancy. The actions are brought against some combination of defendants that include Progress Software, the PBI Defendants, and other organizations that have used Progress Software's MOVEit technology to transfer individuals' PII. As in other large data breach cases, the claims raise complex factual and legal issues, including the nature and extent of the defendants' data-security obligations and practices, whether those practices met industry standards, how the Data Breach occurred, the extent of PII affected by the breach, when Defendants knew or should have known about the Data Breach, the extent to which Defendants investigated and sought to remedy the Data Breach, and the extent to which Defendants timely disclosed or otherwise warned Plaintiffs and class members about the Data Breach. Pretrial litigation of these actions will involve complex and voluminous electronic discovery.

The Related Actions involve common facts, claims, legal theories, relief sought, and overlapping proposed class definitions. Many of the Related Actions, particularly those brought by California plaintiffs, assert claims for violations of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100 *et seq*. The relief sought in these actions includes damages, restitution, injunctive relief, and CCPA statutory damages. The CCPA statutory damages alone, which can be up to $750 "per consumer per incident," could be worth hundreds of millions of dollars. *See* Cal. Civ. Code § 1798.150 (a)(1)(A).

### III.   ARGUMENT

As argued below, the Panel should grant the motion to transfer and centralize the Related Actions, and any similar tag-along actions that may be filed, and should select for the transferee venue the Northern District of California. The Related Actions are complex and involve common

facts, claims, legal theories, relief sought, and overlapping proposed class definitions. Similar issues will necessarily arise in each of the Related Actions, which will benefit significantly from pretrial consolidation or coordination. The Northern District of California has the technology, experience, and ability to handle complex data-breach class actions.

> A. **The Related Actions Should Be Transferred and Centralized for Consolidated or Coordinated Pretrial Proceedings.**

The "basic purpose" of multidistrict litigation is to secure the "just, speedy and inexpensive determination of every action." *In re Nat'l Student Mktg. Litig.*, 368 F. Supp. 1311, 1316 (J.P.M.L. 1972). Section 1407 permits transfer and centralization of cases that are pending in different districts if (1) the cases "involve one or more common questions of fact"; (2) transfer and centralization "will promote the just and efficient conduct of such actions"; and (3) transfer and centralization will further the "convenience of the parties and witnesses." 28 U.S.C. § 1407(a). The aim of § 1407 is to "eliminate duplication in discovery, avoid conflicting rules and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Gelboim v. Bank of America Corp.*, 574 U.S. 405, 410 (2015) (quoting Manual for Complex Litigation § 20.131 (4th ed. 2004)). Transfer of the Related Actions for consolidated or coordinated pretrial proceedings will satisfy each of these requirements and will advance § 1407's underlying objectives.

> 1. **Transfer is appropriate because the Related Actions involve complex common questions of fact and law.**

The Panel has consistently held that cases involving overlapping complex factual and legal issues are particularly appropriate for transfer and centralization for consolidated or coordinated pretrial proceedings—even if the parties and claims are not identical, or if there are

5

differing legal theories or remedies sought. *See In re Bank of N.Y. Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1373 (J.P.M.L. 2012) (finding transfer appropriate notwithstanding different parties and legal theories because "[a]ll actions share factual issues arising from allegations concerning BNY Mellon's provision of foreign exchange [] services to its clients"); *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 398 F. Supp. 2d 1365, 1366 (J.P.M.L. 2005) (holding that the "presence of differing theories or remedies is outweighed when the underlying actions still arise from a common factual core, as the actions do here"); *In re Radiation Incident at Washington*, 400 F. Supp. 1404, 1405 (J.P.M.L. 1975) (holding that six actions in two federal districts should be centralized into a single MDL because there were common questions of fact, notwithstanding that factual questions relating to damages were unique to each action); *In re Multidistrict Private Civil Treble Damage Litig. Involving Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970) (noting that the "potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring [] related actions to a single district for coordinated or consolidated pretrial proceedings which will include an early resolution of such potential conflicts").

Here, the Related Actions are putative class actions that arise from a common factual core and share many common legal claims and issues. Specifically, the plaintiffs in the Related Actions all allege that Progress Software, the PBI Defendants, and other defendants failed to safeguard millions of individuals' PII from unauthorized disclosure and theft.

> **2. Transfer and centralization will promote the just and efficient conduct of the Related Actions.**

Section 1407's "remedial aim is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict

related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491–93 (J.P.M.L. 1968). "It is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest." *Id.* at 493; *see also In re Tyson Foods, Inc. Chicken Raised Without Antibiotics Consumer Litig.*, 582 F. Supp. 1378, 1379 (J.P.M.L. 2008) (consolidating nine putative class actions because doing so would, among other things, "prevent inconsistent pretrial rulings (particularly with respect to class certification)"); *In re Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970) (transferring four putative class actions to a single judge, stating that "a potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated pretrial proceedings which will include an early resolution of such potential conflicts"). Equally important are § 1407's efficiency-related aims to "eliminate duplication in discovery, avoid conflicting rules and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Gelboim*, 574 U.S. at 410; *see also In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig.*, 38 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) (finding that centralization would "eliminate duplicative discovery … and conserve the resources of the parties, their counsel, and the judiciary").

  Here, due to the overlapping factual and legal theories, as well as the overlapping proposed class definitions, the Related Actions will involve many of the same pretrial issues. Such issues will include those related to class certification, discovery, and dispositive motions—all of which will benefit from centralized management and coordination. Regarding class certification, Plaintiffs' various proposed class definitions have substantial overlap, but they are far from identical. Thus, there is great potential for overlapping or conflicting class definitions,

which the Panel has stated is one of the "strongest reasons" for transferring related cases to single district for coordinated pretrial proceedings. *In re Plumbing Fixtures*, 308 F. Supp. at 244.

### 3. Transfer and Centralization Will Further the Convenience of the Parties and Witnesses.

Transfer and centralization will also serve the overall "convenience of the parties and witnesses" consistent with § 1407(a). *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 2018 U.S. Dist. LEXIS 170489, at *2–3 (J.P.M.L. Oct. 3, 2018) (noting that the JPML looks to the "overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation"). As stated above, the elimination of duplicative discovery would significantly increase convenience for the parties (especially defendants) and witnesses. Additionally, all the plaintiffs in nearly half of the Related Actions (17 of 40) are CalPERS or CalSTRS members or beneficiaries, indicating that the Northern District of California would be the most convenient forum for them to litigate this matter.

Transfer and centralization will also be more convenient for witnesses, including third-party witnesses, such as representatives and employees of CalPERS and CalSTRS, both of whom have their headquarters in Sacramento, California, just outside the Northern District of California. For such third-party witnesses, responding to coordinated subpoenas for documents and deposition testimony from combined proceedings overseen by a single judge and subject to uniform discovery parameters is more convenient and less costly than responding to duplicative and uncoordinated discovery requests from multiple districts overseen by multiple judges, and likely subject to conflicting discovery rules.

In sum, transfer of the Related Actions to a single district court for coordinated or consolidated pretrial proceedings is appropriate under § 1407 because the Actions share

8

numerous and complex common issues of fact and law, and because centralization would promote the just and efficient conduct of the Actions and serve the overall convenience of parties, witnesses, and the courts.

### B. The Related Actions Should Be Transferred to and Centralized in the Northern District of California.

This Panel considers numerous factors when determining the most appropriate transferee forum. Such factors include the relative number of cases pending in each jurisdiction, the district in which the cases with the broadest allegations are pending, the transferee forum's experience in managing class actions and complex litigation, and whether the district is in a geographically central and accessible metropolitan location. *See, e.g., In re Viagra Prods. Liab. Litig.*, 414 F. Supp. 2d 1357, 1358 (2006) (selecting a transferee district with "a jurist experienced in complex multidistrict litigation" and "with the capacity to handle this litigation"); *In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1367 (2006) (transferring to district that offered "an accessible metropolitan location"); *In re Midwest Milk Monopolization Litig.*, 379 F. Supp. 989, 991 (J.P.M.L. 1974) (choosing transferee district, in significant part, because it "has become the center of gravity of this litigation" and because it is the venue of "the action containing the broadest allegations," despite recognizing that "other concentrations of litigation" existed in two other states).

Here, the Northern District of California (San Francisco Division) is the most appropriate and convenient venue for transfer and centralization of the Related Actions and any tag-along actions for several reasons. First, California residents comprise an enormous percentage of the Data Breach's currently known victims, owing in significant part to the estimated 1.2 million CalPERS and CalSTRS members and beneficiaries whose PII was stolen in the Data Breach. *See*

9

*supra* note 1. The outsized impact of the Data Breach on these California pensioners is reflected by the fact that they are responsible for bringing nearly half (17 of 40) of the Related Actions. *See supra* note 2.

Second, while there are more Related Actions pending in other states, the CCPA claims raised in the cases brought by California plaintiffs—and hundreds of millions in statutory damages available under those claims—make the Northern District of California and the Related Actions pending there the financial center of gravity in this litigation. Third, the Northern District of California, which includes within its borders Silicon Valley, has a host of able jurists who are highly experienced in managing complex MDLs, as well as deep experience and competence overseeing litigation involving complex technological issues, including data breaches. Lastly, the Northern District of California, which includes the cities of San Francisco, Oakland, and San Jose (all three of which have major international airports) meets the criterion of providing a forum in a convenient and easily accessible metropolitan area.

## IV. CONCLUSION

For the foregoing reasons, the Landi and Hurley Plaintiffs request that the Panel grant the Motion as to the request for transfer and centralization, but that the Panel transfer the Related Actions for consolidated or coordinated pretrial proceedings under 28 U.S.C. § 1407 to the Northern District of California.

Respectfully submitted,

Dated: August 4, 2023

/s/ Niall P. McCarthy
NIALL P. MCCARTHY

**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577
nmccarthy@cpmlegal.com

Attorneys for Plaintiffs Steve Landi, Richard Hurley, and Nila Hurley in *Landi, et. al. v. Progress Software Corp., et. al.*, No. 3:23-cv-03839 (N.D. Cal.)