BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO.: 3083 |

### RESPONSE IN OPPOSITION TO MOTION FOR TRANSFER OF ACTION

Plaintiffs Pamela Hunter, Maria Gregory, and Ayomiposi Asaolu (collectively, the "Hopkins Plaintiffs"), by and through undersigned counsel, respectfully submit this Response in Opposition to the Motion for Centralization and Transfer of Related Actions filed by Bruce Bailey ("Movant" or "Bailey") on July 6, 2023 (Dkt. 1).

### INTRODUCTION

The Hopkins Plaintiffs, plaintiffs in two cases filed in the Federal District Court for the District of Maryland, filed cases that name only two entities: The Johns Hopkins University and The Johns Hopkins Health System Corporation (collectively, the "Hopkins Defendants"). Yet Movant seeks to move these cases away from the region where the parties and most of the witnesses are located to the District of Minnesota and to consolidate them with the *thirty-three and counting* other cases against numerous defendants not named in the Hopkins Plaintiffs' complaints. Neither judicial economy nor the facts of the Hopkins Plaintiffs' cases support such a transfer.

### FACTUAL AND PROCEDURAL BACKGROUND

Over the past several months, a number of entities have announced data breaches relating to the MOVEIt file transfer software, a product of Progress Software Corporation ("PSC") and/or its subsidiary Ipswitch, Inc. ("Ipswitch") (collectively, the "Progress Companies"). MOVEIt is a popular software product, with tens of thousands of users. To date, a small percentage of those

1

users – approximately 400 entities – have announced breaches relating to the software.

On July 5, 2023, Bailey filed an action against the Progress Companies and Pension Benefit Information, LLC ("PBI"), a death verification and location service used by pension and insurance companies. *Bailey v. Progress Software Corp., et al.*, No. 0:23-cv-2028 (D. Minn.). On July 6, 2023, Movant filed a motion to consolidate and transfer nine other actions that also named the Progress Companies and/or PBI into a single proceeding before the U.S. District Court for the District of Minnesota (the "Action"). Dkt. 1.

The Hopkins Plaintiffs initiated their actions in July 2023 for a data breach of Johns Hopkins' systems that involved sensitive health information for patients of Johns Hopkins hospitals and medical providers. *Hunter v. The Johns Hopkins University, et al.*, No. 1:23-cv-01826 (D. Md.); *Gregory et al. v. The Johns Hopkins University, et al.*, No. 1:23-cv-01854 (D. Md.) (collectively, the "Hopkins-only Cases"). And just yesterday, a third case was filed that named only the Johns Hopkins entities as defendants.[1] Though three additional cases filed in the District of Maryland name PSC, the Hopkins Plaintiffs and the Schaffer Action name only the Hopkins Defendants because they have no privity with the Progress Companies and did not believe them to be the responsible entities for the Data Breach that occurred on Johns Hopkins server(s). Shortly after the filing of the three cases that name both the Hopkins Defendants and PSC, *Truesdale v. PSC, et al.*, No. 1:23-cv-01913 (D. Md.); *Pulignani v. PSC et al.*, No. 1:23-cv-01912 (D. Md.), and *Doe v. PSC et al.*, No. 1:23-cv-01923 (D. Md.) (collectively, the "Hopkins-PSC Cases"), Doe filed a Notice of Related Action as to the *Hunter* and *Gregory* cases, seeking to bring those cases into the Action.[2]

---

[1] *Schaffer et al. v. The Johns Hopkins University, et al.*, No. 1:23-cv-02099 (D. Md.) (the "Schaffer Action"). Counsel for the *Schaffer* Action confirmed their intent to prosecute their claims solely against the Johns Hopkins entities, not PSC.
[2] The Hopkins Plaintiffs anticipate a similar notice as to the Schaffer Action, but no such notice has yet been filed.

2

At the time of this submission, Movant or others have designated at least thirty-three complaints as "related" to this Action, and there may be more yet lingering in federal and state courts. The actions for which Movant seeks consolidation involve breaches of data for seven named defendants other than the Progress Companies, ranging from banks to life insurance companies to state agencies. Several of these actions, like the Hopkins Plaintiffs', do not name the Progress Companies.

## LEGAL STANDARD

28 U.S.C. § 1407 provides that the Panel may transfer actions that involve "one or more common questions of fact" where transfer "will be for the convenience of parties and witnesses" and "will promote the just and efficient conduct of such actions."

## ARGUMENT

### I. The Cases Proposed for Consolidation and Transfer Involve Predominantly Distinct Factual Issues

Consolidation and transfer promote efficiency where common questions of fact prevail. 28 U.S.C. § 1407. Here, the only commonality between the cases that Movant is attempting to consolidate and centralize is the use of the MOVEit software, a fact dwarfed by the factual questions that are *not* shared by the Hopkins Plaintiffs' cases. Specifically, given the relatively low percentage of MOVEit users that were subject to breach of their systems, the Hopkins Defendants' supervision, management, and related policies concerning internal use of the MOVEit application will be of primary interest, as will the terms of their contracts with the Progress Companies, which may or may not mirror those of other data breach targets. Similarly, the Hopkins Defendants' response to the breach, including the nature of their investigation, the speed of their response, the manner of their notice to victims, and the type of remedial action taken, will be key questions

---

given the recency of its filing.

distinct from those of any other defendant.

Moreover, the Hopkins Defendants, unlike the Progress Companies, are consumer-facing, establishing both a legal and factual relationship that differs from many of the other defendants. Notably, while most of the data breaches involved the disclosure of personal identifying information ("PII") such as dates of birth and Social Security numbers, the Johns Hopkins breach involved not only PII but also sensitive health information including procedure codes and the dates they were performed, a fact common to very few of the data breaches at issue. With such varied facts across dozens of cases now potentially being caught up in the Action, consolidation and transfer will not satisfy the statutory requirements and will result in an unwieldy and inefficient proceeding that includes potentially dozens of defendants, hundreds of plaintiffs, many differing classes and subclasses, and, perhaps most daunting, irreconcilable theories of liability.

## II.     Consolidation and Transfer Creates No Procedural Efficiencies

The fact that these entities all used MOVEit does not create any efficiency realized by a § 1407 transfer. A deposition of a MOVEit lead designer or PSC executive does not eliminate the need for a deposition of the Hopkins Defendants' executive boards, cybersecurity officers, or those in charge of patient records.  In fact, litigating the claims against the dozens of varying defendants in one consolidated action will create significant inefficiencies as the Court and the parties will constantly have to sort out which issues overlap and which do not.  It will also multiply the parties and counsel involved in a manner that will not help streamline the cases. *See In re Accellion, Inc., Customer Data Security Breach Litigation*, MDL 3002 (Aug. 1, 2021) (denying transfer and centralization of 26 data breach actions as "unnecessary for the convenience of the parties and witnesses or to further the just and efficient conduct of this litigation" because "any factual overlap among the actions as to Accellion's [file transfer] product, its vulnerability to attack, and its alleged

support of this 'legacy' product may be eclipsed by factual issues specific to each client defendant"); *see also In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F.Supp.2d 1350, 1351 (J.P.M.L. 2012) (denying motion to centralize all actions involving fentanyl patches irrespective of manufacturer); *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F.Supp.2d 1377, 1378 (J.P.M.L. 2012) (denying centralization of 13 product liability actions involving different plumbing products, stating that "we are typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products").

The Panel has recognized its "usual reluctance to centralize actions against different defendants in one MDL," because "a multi-defendant MDL may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials." *In re CP4 Fuel Pump Mktg., Sales Pract., and Prods. Liab. Litig.*, 412 F.Supp.3d 1365, 1367 (J.P.M.L. 2019) (denying motion to centralize ten single-defendant cases). The fact that some of the non-Progress Companies may be competitors – such as financial institutions, health companies, universities, and other businesses – also militates against centralization in one case, as it would create unmanageable confidentiality issues in discovery. As the Panel has previously recognized, "centralizing competing defendants in the same MDL likely would complicate case management due to the need to protect trade secrets and confidential information." *Id*.

### III. The Hopkins Plaintiffs Do Not Have Privity with the Progress Companies

Transfer for the Hopkins-only cases would force the Hopkins Plaintiffs into litigation with parties with which they have no privity, whatever the Progress Companies' degree of responsibility. Maryland courts set a high bar for privity "refrain[ing] from finding a tort duty absent privity or its equivalent—i.e., an 'intimate nexus.'" *Balfour Beatty Infrastructure, Inc. v.*

5

*Rummel Klepper & Kahl, LLP*, 451 Md. 600, 614-15, 155 A.3d 445, 453 (2017). "[T]he intimate nexus test requires the relationship between the parties to be sufficiently close—or intimate—to support finding a tort duty." *Id.* Here, neither contractual privity nor an intimate nexus exist between the Hopkins Plaintiffs and the Progress Companies. The Hopkins Plaintiffs never specifically consented to the use of the MOVEIt software, and almost certainly had no knowledge of its use prior to the Data Breach. To the contrary, the Progress Companies are merely vendors for the entities with which the Hopkins Plaintiffs (and all other named plaintiffs in the separate actions filed across the country) *did* have relationships. The Panel should, therefore, allow the Hopkins Plaintiffs to proceed as to the entities they can legally hold responsible for the Data Breach.

## IV. The Cases at Issue Are Distinct from Other Consolidated Data Breach Cases

Supporters of this centralization may point to cases involving a single data breach for which the JPML has granted transfer and consolidation. *See, e.g.*, *In re T-Mobile Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d 1373 (U.S. Jud. Pan. Mult. Litl. 2021); *In re Marriott Int'l Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372 (U.S. Jud. Pan. Mult. Litl. 2019); *In re Samsung Customer Data Sec. Breach Litig.*, MDL No. 3055, 2023 WL 1811247 (J.P.M.L. 2023). But each of these MDLs involves customers of the defendants named – in other words, individuals with clear, direct privity. *In re T-Mobile*, 576 F. Supp. 3d at 1374 (MDL involving a security breach "allegedly compromise[ing] the personal information of approximately 54 million current, former, and prospective customers of T-Mobile."); *In re Marriott Int'l Inc.*, 363 F. Supp. 3d at 1374 (motion to transfer granted where movant included ten of eleven actions based on "breach of Marriott's Starwood guest reservation database from 2014 to 2018"); *In re Samsung*, 20213 WL 1811247 at *1 (motion to transfer granted for putative class actions concerning breach "that


allegedly compromised the personal information of millions of consumers using Samsun products and services.")

The cases at bar, in contrast, do not involve a single entity, but target many entities separately based on differing theories of liability relating to separate breaches of each entity's own systems and servers and divergent factual and practical considerations. Moreover, as discussed above, unlike the consolidated case brought by T-Mobile customers, the Hopkins Plaintiffs have no direct relationship with the Progress Companies. Consolidation here, therefore, could complicate rather than simplify.

### V.     Transfer Would Be Inconvenient for the Hopkins Parties and Witnesses

Moreover, consolidation and transfer of the "MOVEit" actions will not serve the convenience of the parties and witnesses. While some cases involved against the Progress Companies were filed in Louisiana, California, Massachusetts, and Minnesota, many others – such as the Hopkins Plaintiffs' – were filed in other districts primarily on a regional basis. Unlike the cases that have been filed involving class members and witnesses potentially spread across the country, the Johns Hopkins Data Breach affected those primarily on a regional basis. Neither the Hopkins Plaintiffs nor the Hopkins Defendants have any connection to Minnesota, Louisiana, California, or Massachusetts, and transfer would impose significant burdens on the Hopkins Plaintiffs associated with litigating in such remote forums.

### VI.     Cases that Name the Hopkins Defendants and PSC Should Not Favor Transfer of the Cases that Only Name the Hopkins Defendants

The fact that certain cases filed in the District of Maryland name PSC in addition to the Hopkins Defendants does not require transfer of the cases that name only the Hopkins Defendants. To the contrary, it suggests that all of the cases that name Johns Hopkins alone would be better suited to the District of Maryland. Furthermore, if all claims against the Progress Companies are

eventually centralized into the District of Minnesota, the District of Massachusetts, or some other forum as determined by the Panel or self-organization by counsel, any claims brought against PSC in the District of Maryland can simply be severed and transferred to that chosen forum under Federal Rule of Civil Procedure 21, 28 U.S.C. § 1404(a), and other applicable law. Alternatively, the interests of justice may be better served by requiring PSC, which chose to do business in Maryland, to continue to litigate the facts unique to its purported role in the John Hopkins breach, if any, in the District of Maryland, rather than forcing the Hopkins Parties into a remote forum to which they have no connection to litigate issues involving a multiplicity of unrelated entities.

## VII. Indemnification by the Progress Companies Does Not Require Transfer

The extent to which PSC has indemnified the Hopkins Defendants is a question of contract unique to these cases and unique to each defendant alone. However, even if PSC has fully indemnified the Hopkins Defendants, transfer of the Hopkins Plaintiffs' claims against Johns Hopkins to a remote forum with no connection to Johns Hopkins remains inappropriate, as the Data Breach of the Johns Hopkins servers and the facts surrounding such are still unique to Johns Hopkins and geographically located in the State of Maryland. Moreover, the Hopkins Defendants have their own counsel and also oppose the transfer and centralization of these cases, indicating that indemnification questions should not favor transfer. In the event that the Progress Companies seek to resolve all of the cases together, they are free to do so even if the cases remain in different forums. Accordingly, the Panel should deny the Motion to Transfer and Consolidate as to the Hopkins Plaintiffs' cases.

## CONCLUSION

For the reasons set forth above, the Hopkins Plaintiffs respectfully request that the Panel deny the request of Movant Bailey to consolidate and transfer the Hopkins-only Cases to a

consolidated action in the District of Minnesota. To the extent there are requests for centralization in any other forums, the Hopkins Plaintiffs likewise oppose those requests.

Dated: August 7, 2023

Respectfully submitted,

*/s/ Courtney Weiner*
Courtney Weiner
**LAW OFFICE OF COURTNEY WEINER, PLLC**
1629 K Street, NW Suite 300
Washington, DC 20006
T: (202) 827-9980
cw@courtneyweinerlaw.com

*Attorney for Plaintiff Hunter and the Plaintiff Classes*

Marc H. Edelson (*pro hac vice* forthcoming)
Eric Lechtzin (*pro hac vice* forthcoming)
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N300
Newtown, PA 18940
T: (215) 867-2399
F: (267) 685-0676
medelson@edelson-law.com
elechtzin@edelson-law.com

*Attorneys for Plaintiffs Maria Gregory and Ayomiposi and the Plaintiff Classes*