**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL Docket No. 3083 |

**GENWORTH FINANCIAL, INC.'S BRIEF IN RESPONSE TO *BAILEY* PLAINTIFF'S MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1407, AND RESPECTING OTHER PARTIES' EARLY-FILED RESPONSES SUPPORTING TRANSFER**

**INTRODUCTION**

Genworth Financial, Inc. ("Genworth") respectfully submits this response to the motion for transfer and centralization pursuant to 28 U.S.C. § 1407 (ECF Doc. 1), and, in doing so, also addresses the early-filed responses of the Plaintiffs in *McAdam* (ECF Doc. 6), *Mitchell/Deutsch* (ECF. Doc. 77), *Pipes* (ECF Doc. 100), and of the PBI Defendants (together "PBI") (ECF Doc. 86), all of which support Multidistrict Litigation proceedings. Like its co-defendants Progress Software Corporation ("PSC") and PBI—whose conduct is critical to any effort by plaintiffs to foist liability onto Genworth for the data security incident involving PSC's MOVEit software, which in turn was used by PBI, a vendor for a Genworth subsidiary—Genworth supports centralization in the District of Massachusetts.

PBI, a vendor for a Genworth subsidiary, decided to use PSC's MOVEit secure file transfer software. Alleged vulnerabilities in MOVEit allowed an unauthorized third-party to access data from numerous companies like PBI who use PSC's software. As an attenuated result of that chain of events, because PBI had data from Genworth subsidiaries in order to provide PBI's contracted-for services, Genworth now finds itself a defendant in a few putative class actions subject to transfer in this already sprawling docket of roughly four dozen total cases. Should actions against Genworth advance past dismissal (and there is no basis for holding Genworth liable for vulnerabilities in software created and sold by PSC and used, not by Genworth, but by PBI, a vendor providing services to Genworth subsidiaries), centralized proceedings will be essential to efficiency, especially by avoiding conflicting class action proceedings. If there is any wrongdoer here aside from the unauthorized third party who accessed MOVEit, it will be revealed through discovery and proceedings centered on the work and conduct of PSC and PBI. PSC and PBI already are co-defendants with Genworth in one action, and PSC and PBI are also co-defendants

in many other cases with other defendants that, similar to Genworth, are one or more steps removed from the software at issue. Given the numerous complaints already pending around the country brought by many different plaintiffs' lawyers against PSC, PBI, and a hodgepodge of other defendants, there would be no good or remotely efficient way to handle these cases without Multidistrict Litigation.

## BACKGROUND

Genworth is a publicly traded insurance holding company with insurance company subsidiaries that insure long-term care and life insurance policyholders and annuity owners. Genworth is headquartered in Richmond, Virginia and incorporated in Delaware. Genworth does not itself use the PSC MOVEit software that is the subject of this litigation. But PBI, a vendor that provides services to Genworth subsidiaries, does use MOVEit.

To satisfy certain regulatory obligations, Genworth subsidiaries use PBI to conduct research and searches to determine whether an insured person is deceased, which may trigger benefits under a life insurance policy or annuity contract. These searches are also done to determine if a death impacts the payment of other policy benefits, or commissions to insurance agents. In connection with its work, PBI, like many other companies and government entities globally, used PSC's purportedly secure file transfer application, MOVEit Transfer. PSC is headquartered in Massachusetts, PBI is headquartered in Minneapolis, and both are incorporated in Delaware.

On May 31, 2023, PSC issued a security advisory disclosing a software vulnerability in its MOVEit Transfer and MOVEit Cloud products that could allow for unauthorized access to and exfiltration of files, and advised its customers to take certain mitigation actions. PBI was one of many PSC customers impacted by the incident. PBI notified Genworth on June 16, 2023 that the MOVEit incident affected the data of Genworth subsidiaries. Genworth and its subsidiaries are not

MOVEit customers and their IT systems were not impacted by the incident.

On June 22, 2023, Genworth filed a Form 8-K with the U.S. Securities and Exchange Commission—and then posted a notice on Genworth's website on June 27—regarding the MOVEit incident.[1] Genworth stated, as it had learned from PBI, that data relating to customers and insurance agents of Genworth's life insurance subsidiaries was at issue.

Given that the impacts on MOVEit users extend far beyond PBI and reach across the economy, the incident has received considerable publicity and lawsuits have predictably followed. Plaintiffs have named Genworth as a defendant in two MOVEit-related cases—*King v. Genworth*, No. 3:23-cv-00426 in the Eastern District of Virginia (filed June 30, 2023), and *Anastasio v. Progress Software Corp. et al.*, No. 1:23-cv-11442 in the District of Massachusetts, which was originally brought against PSC and PBI alone and to which Genworth was added in an amended complaint filed on July 13, 2023[2]—and a related entity in a third, unserved case, *Hauser v. Genworth Life Ins. Co.*, No. 3:23-cv-00486 (E.D. Va.). While *King* and *Hauser* do not name PSC and PBI as defendants, those cases too hinge on the MOVEit vulnerability and implicate PSC's and PBI's roles. *See, e.g.*, King Compl. (ECF Doc. 70-3) ¶ 4 & nn.1-2 (premising claims on the MOVEit events); *id.* ¶ 6 (invoking Genworth's website notice concerning MOVEit); *id.* ¶ 7 (complaining about, *inter alia*, "adequa[cy] of notice to Plaintiff" in connection with the MOVEit incident); *id.* ¶ 8 (claiming "the mechanism of the Data Breach," *i.e.*, the MOVEit vulnerability, "was a known risk"); *id.* ¶ 24 n.4 (citing https://www.genworth.com/moveit.html); *Hauser* Compl. (ECF. Doc. 110-1) ¶ 1 n.1, ¶ 36 (MOVEit disclosures).

Barely a month after PSC announced the MOVEit incident, already almost four dozen

---

[1] *See* https://investor.genworth.com/sec-filings/all-sec-filings/content/0001193125-23-172549/0001193125-23-172549.pdf; https://www.genworth.com/moveit.html.
[2] Genworth was served in *Anastasio* on July 26, but has not yet been served in *King*.

3

putative class action lawsuits have been filed in federal district courts against some combination of PSC, PBI, other PSC customers, and customers of a PSC customer (similarly situated to the Genworth subsidiaries). The actions are pending before more than a dozen different judges in at least 10 district courts, and are highly concentrated in the District of Massachusetts, where PSC is based, and secondarily in the District of Minnesota, where PBI is based. All of these actions are in their infancy. Many have not been served and no responsive pleadings have been filed.

Nearly all of the cases are putative nationwide class actions with overlapping statewide or customer-specific subclasses, and they assert similar liability theories and causes of action under various state consumer protection statutes, as well as common law tort and contract claims.

## **DISCUSSION**

**I. THE PANEL SHOULD TRANSFER AND CENTRALIZE THE ACTIONS PURSUANT TO SECTION 1407.**

Genworth agrees with moving Plaintiff Bailey, numerous other responding Plaintiffs, PBI, and the forthcoming response of PSC that the related actions should be transferred and coordinated pursuant to Section 1407.[3] The Panel has regularly found centralization appropriate for data security litigation. *See, e.g.*, *In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, No. 3073, 2023 WL 3829244, *1 (J.P.M.L. June 2, 2023); *In re Am. Med. Collection Agency, Inc.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019) ("*AMCA*"); *see generally* 28 U.S.C. § 1407(a) (transfer of "civil actions involving one or more common questions of fact … pending in different districts" is appropriate when "such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions").

While Genworth views the claims against it as ripe for dismissal on the pleadings, if those

---

[3] *See* Bailey Mem. Supp. Mot. Centralization and Transfer (ECF Doc. 1-1) at 3; McAdam Resp. (ECF Doc. 6) at 1-2, 3-5; Mitchell/Deutsch Resp. (ECF Doc. 77) at 5-9; Pls.' Joint Resp. (ECF Doc. 80) at 2; Pipes Resp. (ECF Doc. 100) at 2-4; PBI Resp. (ECF Doc. 86) at 2, 4-6.

claims were to survive, discovery would implicate the alleged vulnerabilities in PSC's MOVEit software, PSC's knowledge and disclosure of those vulnerabilities, PBI's decision to use PSC's software, PBI's notice, knowledge, and disclosure of the MOVEit vulnerabilities, and so on. Thus, even an action brought against Genworth alone clearly "involve[s]" PSC and PBI and their "responsibility for a security breach." *See*, *e.g.*, Bailey's Mot. Transfer & Centralization (ECF Doc. 1) at 1; *see also* McAdam Resp. (ECF Doc. 6) at 4 (characterizing the relevant actions as implicating "the same core nucleus of facts, to-wit, millions of individuals whose personal information was being transferred and/or stored and transferred using the MOVEit software applications was compromised by the data breach described above"); Mitchell/Deutsch (ECF Doc. 77) Resp. at 2, 5-6 (similar); PBI Resp. (ECF Doc. 86) at 2-6.

### A. The Actions Involve Common Questions of Fact.

The actions subject to transfer involve one or more common questions of fact, as that concept is understood under 28 U.S.C. § 1407. Those questions pertain to the security vulnerabilities in the MOVEit software that allowed an unauthorized third-party to gain access in late May 2023. Across the actions, the conduct and alleged shortcomings of PSC are front and center—plaintiffs allege that PSC failed to maintain adequate software and data security measures—and so too are those of PBI, the entity whose deployment of the MOVEit software affected Genworth's subsidiaries.

Centralization is appropriate here because, paraphrasing this Panel, the factual questions that would arise in every action would include "[PSC's] data security practices and whether those practices met industry standards, how the unauthorized actor . . . obtained access . . ., the extent of the personal information affected by the breach, and when [PSC] knew or should have known of [vulnerabilities and the subsequent] breach." *In re T-Mobile 2022*, 2023 WL 3829244, at *1; *see*, *e.g.*, *In re KeyBank Customer Data Sec. Breach Litig.*, MDL No. 3056, 2023 WL 1811824, at *1

5

(J.P.M.L. Feb. 1, 2023) (similar); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1364 (J.P.M.L. 2020); *In re AMCA*, 410 F. Supp. 3d at 1353 (centralizing proceedings because factual inquiries "concerning [breached third-party vendor's] data security practices, how the unauthorized access occurred, and the investigation into the breach will be substantially the same in all actions"). Even in the two cases brought against solely either Genworth or its related entity, plaintiffs are relying on allegations related the MOVEit security incident. *See, e.g., King* Compl. ¶ 4; *Hauser* Compl. ¶ 36; Factual Background, *supra*, pp. 2-4.

Finally, the facts that certain customers of PSC are named as co-defendants in some actions (*e.g.*, PBI), customers of customers (*e.g.*, Genworth's subsidiaries) are implicated, and that different parties may be subject to different theories of liability from PSC do not militate against centralization. *See In re KeyBank*, 2023 WL 1811824, at *1; *In re AMCA*, 410 F. Supp. 3d at 1353-54 ("Section 1407 does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of additional facts is not significant where the actions arise from a common factual core."); *In re Uber Tech., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 276 F. Supp. 3d 1382, 1383 (J.P.M.L. 2017); *see also* Mitchell/Deutsch Resp. (ECF Doc. 77) at 4 (complaints naming PBI alone also should be transferred); *id.* at 6 (cases not naming PSC should be transferred because "they nevertheless concern the instant MOVEit Data Breach"). Far more significant here is that, as noted, factual issues regarding how the MOVEit vulnerability occurred, the threat actor's access and data exfiltration, and PSC's response thereto, which affected all the various defendants, are implicated across the cases. *See, e.g., In re KeyBank*, 2023 WL 1811824, at *1-2; *In re AMCA*, 410 F. Supp. 3d at 1353; *In re Uber*, 304 F. Supp. 3d at 1354-55. So too are such questions about PBI. In sum, that there are surely individualized issues regarding any attempt to shift liability onto

customers of PBI, like Genworth (whose subsidiaries were customers of PBI), and other entities downstream from PSC does not defeat the efficiencies to be gained from coordination. *See*, *e.g.*, *In re AMCA*, 410 F. Supp. 3d at 1353-54; *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019); *In re Uber*, 304 F. Supp. at 1354-55. If it becomes apparent that certain actions or claims could be handled more efficiently by a transferor court, the transferee judge may remand. *See In re Uber*, 304 F. Supp. 3d at 1355.

### B. Transfer Will Be Convenient for Parties and Witnesses and Will Promote the Just and Efficient Conduct of the Actions.

Coordinated pretrial proceedings stand to substantially benefit all involved. Absent transfer, the parties and witnesses are at risk of crisscrossing the country for repetitive and duplicative depositions, hearings, and other proceedings. Moreover, different judges would have to resolve many of the same pretrial issues and decide similar motions, potentially including certification of competing class actions (should those cases survive dismissal). *See e.g.*, *King* Compl. ¶ 126 (putative nationwide class of individuals seeking relief against Genworth); *Anastasio* Am. Compl. (ECF Doc. 10 in 1:23-cv-11442 (D. Mass.)) ¶ 161 (similar Genworth-specific subclass). Thus, centralization "will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary." *E.g.*, *In re T-Mobile 2022*, 2023 WL 3829244, at *1.

While MOVEit-related litigation is still in its infancy, the number of actions, their geographic dispersion, the number of different plaintiffs' counsel, and varying combinations of defendants are significant. They render informal coordination an impracticable alternative to centralization. *See*, *e.g.*, *In re Uber*, 304 F. Supp. 3d at 1354; *In re Equifax, Inc., Customer Sec. Data Breach Litig.*, 289 F. Supp. 3d 1322, 1325 (J.P.M.L. 2017); *cf. In re Accellion, Inc. Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372, 1373 (J.P.M.L. 2021) (denying centralization where

there was a "small number of involved courts and the preference of most parties [was] to informally coordinate"); *In re Fresh Dairy Prods. Antitrust Litig.*, 856 F. Supp. 2d 1344, 1345 (J.P.M.L. 2012) (denying centralization of several putative class actions where, among other things, "Plaintiffs in the consolidated actions share counsel").

For these reasons, the actions should be transferred pursuant to Section 1407.

## II. THE DISTRICT OF MASSACHUSETTS IS THE MOST APPROPRIATE TRANSFEREE DISTRICT UNDER THE CIRCUMSTANCES.

Like PSC, PBI, the Plaintiffs in the *Mitchell*/*Deutsch* and the *Pipes* actions, as well as Plaintiff McAdam in the alternative, Genworth agrees that the related cases should be transferred to the District of Massachusetts, which has the most related cases and each of four experienced transferee judges are already presiding over them (Saylor, C.J., Gorton, J., Stearns, J., and Talwani, J.). *See*, *e.g.*, Schedules of Actions (*e.g.*, ECF Doc. 117-1); Mitchell/Deutsch Resp. at 2; McAdam Resp. at 9-12; PBI Resp. at 6-8; Pipes Resp. at 4-7.

### A. Many of the Related Actions are Already Pending in the District of Massachusetts, a Central and Convenient Forum.

The District of Massachusetts has heavy gravitational pull here. As of this filing, the number of related actions filed in the District of Massachusetts outpaces any other district. *See generally* Schedules of Actions; *see also*, *e.g.*, *In re Tepezza Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. MDL 3079, 2023 WL 3829248, at *2 (J.P.M.L. June 2, 2023) (selecting transferee court with the most pending actions). Massachusetts ostensibly will remain a focal point for new filings given PSC's central role in these litigations and headquarters in the district. *See* Mitchell/Deutsch Resp. at 7-8. Centralization should occur in Massachusetts as a result. *See*, *e.g.*, *In re KeyBank*, 2023 WL 1811824, at *2 (selecting transferee district because, *inter alia*, "[f]ive of the ten actions [are] pending" there); *In re Covidien Hernia Mesh Prod. Liab. Litig.*, 607 F. Supp. 3d 1356, 1358 (J.P.M.L. 2022) (selecting District of Massachusetts because, *inter alia*, "[m]ost cases are pending

8

in this district"); *In re Zofran (Ondansetron) Prod. Liab. Litig.*, 138 F. Supp. 3d 1381 (J.P.M.L. 2015) (similar selection of District of Massachusetts). And there is no question that the District of Massachusetts "is an easily accessible district for this nationwide litigation." *In re Evenflo Co., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 466 F. Supp. 3d 1384, 1385 (J.P.M.L. 2020); *accord In re: Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 999 F. Supp. 2d 1383, 1384 (J.P.M.L. 2014) (same where, as here, multiple defendants were "based along the East Coast").

**B. Much of the Relevant Evidence is Located in the District of Massachusetts.**

As the Panel has found relevant in the data security context (and a range of others), "relevant documents and witnesses are likely to be located [in Massachusetts]" because PSC—whose software is at the heart of this litigation—is headquartered there. *In re Samsung Customer Data Sec. Breach Litig.*, MDL No. 3055, 2023 WL 1811247, at *2 (J.P.M.L. Feb. 1, 2023) (transferring actions to district where defendant was headquartered and "witnesses and other evidence likely will be found"); *In re KeyBank*, 2023 WL 1811824, at *2 (similar); *In re Covidien*, 607 F. Supp. 3d at 1358 (relying on defendant's Massachusetts headquarters); *In re AMCA*, 410 F. Supp. 3d at 1354 (transferring actions to district where defendants "have their headquarters [or are] located nearby"); *In re Carbon Black Antitrust Litig.*, 277 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) (transferring actions to the District of Massachusetts because, *inter alia*, "one of the main defendants has its principal place of business in Boston, Massachusetts"). As detailed, every Complaint alleges that the software vulnerability in PSC's MOVEit Transfer and MOVEit Cloud products as the basis for suit. Thus, as Plaintiff *McAdam* rightly summarizes, Massachusetts is an appropriate transferee court because PSC and "thus many of the witnesses and documents may also be located in this District." McAdam Resp. at 7; *see* Mitchell/Deutsch Resp. at 11 (similar); Pipes Resp. at 1, 5 (similar); *see also* PBI Resp. at 7.

9

### C. The District of Massachusetts and its Judges Presently Assigned Related Actions are MDL-Experienced.

The Panel regularly selects the District of Massachusetts as an appropriate transferee court for a variety of legal issues. *See, e.g.*, *In re Covidien*, 607 F. Supp. 3d at 1358; *In re Evenflo*, 466 F. Supp. 3d at 1385; *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 355 F. Supp. 3d 1382, 1383 (J.P.M.L. 2019); *In re Stryker Orthopaedics LFIT V40 Femoral Head Prod. Liab. Litig.*, 249 F. Supp. 3d 1353, 1356 (J.P.M.L. 2017); *In re: Collecto, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 999 F. Supp. 2d 1373, 1374 (J.P.M.L. 2014); *In re Carbon Black*, 277 F. Supp. 2d at 1381. Notwithstanding its substantial experience, the District of Massachusetts is not over-utilized, with only five pending MDLs. *Cf. In re Kia Hyundai Vehicle Theft Litig.*, MDL No. 3052, 2022 WL 17843100, at *2 (J.P.M.L. Dec. 13, 2022) (selecting "a relatively underutilized transferee district with only four pending MDL dockets").[4] With 12 active and highly seasoned Article III judges, the district has the capacity to successfully guide this litigation. It beats the national averages on significant statistics, including the percentage of civil cases pending over three years, median time to trial, and median time to disposition.[5] *See In re: Maxim Integrated Prods., Inc., Patent Litig.*, 867 F. Supp. 2d 1333, 1336 (J.P.M.L. 2012) (transferring actions to district that "enjoys favorable caseload conditions").

Moreover, all the District of Massachusetts judges presently assigned at least one related action are experienced transferee judges and generally have favorable caseloads. For instance, "Judge Saylor is an experienced transferee judge [in whom the Panel has had] confiden[ce] [to

---

[4] The District of Massachusetts has 12 active district judges and five MDLs, whereas, for instance, the Northern District of California has the same number of judges but 17 MDLs, and the District of Minnesota has seven active district judges and six MDLs. *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-17-2023.pdf (last accessed: July 27, 2023).

[5] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2023.pdf (last accessed: July 27, 2023).

10

steer … litigation on a prudent course," *In re Zofran*, 138 F. Supp. 3d at 1381, currently lacks an MDL docket, and has a relatively favorable caseload for this assignment.[6] Similarly, Judge Gorton, a member of this Panel, is "a jurist well-versed in the nuances of complex and multidistrict litigation," *In re Ranbaxy*, 355 F. Supp. 3d at 1383; *see* Pipes Resp. at 1, 6-7 (requesting transfer to Judge Gorton), and the one MDL he is overseeing appears manageable, down to 17 actions from 4,517.[7] *Cf. In re: Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 652 F. Supp. 2d 1377, 1377-78 (J.P.M.L. 2009) (selecting Judge Gorton given that he had "a caseload relatively favorable for this assignment"). Judge Stearns also "is an experienced transferee judge," *In re: Collecto, Inc.*, 999 F. Supp. 2d at 1374, currently lacks an MDL, and has a favorable caseload (no motions pending for more than six months and no cases older than three years).[8] Finally, the Panel has previously selected Judge Talwani as an MDL judge. *See In re Stryker Orthopaedics*, 249 F. Supp. 3d at 1356. That docket, however, remains more substantial (270 actions) than other MDLs in the district.[9]

In sum, the District of Massachusetts remains a premier transferee court, and the Panel is presented with a host of strong potential transferee judges already presiding over related actions.[10]

---

[6] *See* https://www.uscourts.gov/sites/default/files/data_tables/cjra_7_0930.2022.pdf (last accessed: July 27, 2023) (six cases older than three years); https://www.uscourts.gov/sites/default/files/data_tables/cjra_8_0930.2022.pdf (three motions pending over six months).

[7] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-17-2023.pdf (last accessed: July 27, 2023).

[8] https://www.uscourts.gov/sites/default/files/data_tables/cjra_8_0930.2022.pdf (last accessed: July 27, 2023).

[9] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-17-2023.pdf (last accessed: July 27, 2023). Thus, Judge Talwani's docket conditions are somewhat less favorable than those of other judges just-discussed. *See* https://www.uscourts.gov/sites/default/files/data_tables/cjra_8_0930.2022.pdf (last accessed: July 27, 2023) (four motions pending over six months).

[10] In addition to being where PSC is based, home to more cases, and a more convenient location than Louisiana and many other places where related actions are pending, the District of Massachusetts has far more favorable docket conditions than the Eastern District of Louisiana, which *McAdam* primarily requests. *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2023.pdf (last accessed: July 27, 2023) (73.7% of civil cases pending are over 3 years old and the median time from filing to disposition in the civil context is 68.9 months). If the Panel does not centralize these actions in the District of Massachusetts, the next best choice would be the District of Minnesota, where PBI is based, which various Plaintiffs request, *see* Bailey Mem. (ECF 1-1); Pls.' Joint Resp. (ECF Doc. 80), and also is an experienced MDL court (including MDLs that now-District Judge Menendez presided over while a Magistrate Judge).

**CONCLUSION**

For the foregoing reasons, Genworth respectfully requests that the Panel transfer the actions to the District of Massachusetts pursuant to 28 U.S.C. § 1407.

Dated: August 8, 2023

Respectfully Submitted,

By: */s/ Eamon P. Joyce*

Eamon P. Joyce
ejoyce@sidley.com
Kristina A. Gliklad
SIDLEY AUSTIN LLP
787 Seventh Ave.
New York, NY 10019
(212) 839-5300

Garrett M. Lance*
glance@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave.
Dallas, TX 75201
(214) 969-3513
 *Admitted to practice only
  in Washington, D.C. and
  New York. Not admitted
  to practice in Texas.

*Counsel for Genworth Financial, Inc.*