**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION** | MDL DOCKET NO.: 3083 |

**INTERESTED PARTY RESPONSE IN OPPOSITION TO THE
MOTION FOR TRANSFER AND CENTRALIZATION OF RELATED ACTIONS**

Interested Party, Plaintiff Carlos Harding ("Plaintiff Harding"), by and through undersigned counsel, respectfully submits this Interested Party Response in Opposition to the Motion for Centralization and Transfer of Related Actions to the District of Minnesota pursuant to 28 U.S.C. § 1407 for Consolidated Pretrial Proceedings ("MDL Motion"), filed by Bruce Bailey ("Movant" or "Bailey") in MDL No. 3083 on July 6, 2023 (ECF No. 1), and in support thereof states as follows:

**I.     INTRODUCTION**

The Panel should deny the MDL Motion. The scope of the proposed MDL has changed substantially since Movant's initial Motion and, as described in Movant's reply, would potentially result in the centralization of claims related to *hundreds* of independent breaches, each of which occurred at different times, resulted from different data security failures, involved different breached promises or representations, involved different data, and resulted in different damages. In *Accellion*—a similar proposed MDL involving multiple breaches through Accellion's File Transfer Appliance—the Panel denied centralization, finding factual differences specific to each defendant outweighed any overlap among the actions as to Accellion's FTA product. *In re: Accellion, Inc., Customer Data Security Breach Litigation*, MDL No. 3002, June 7, 2021, Order at 2. The same reasoning should guide the Panel here. This proposed MDL would potentially involve hundreds of defendants with no relationship beyond use of Progress Software's MOVEit

software. Many of the potential actions do not name Progress Software as a defendant. As such, the Panel should conclude centralization is unnecessary and that any efficiencies to be gained by centralization can be accomplished through informal coordination, where necessary.

## II.   FACTUAL BACKGROUND

MOVEit is a widely-used file transfer service created, owned, and/or operated by Progress Software Corporation ("PSC"), and/or Ipswitch, Inc. ("Ipswitch"). Pension Benefit Information, LLC ("PBI") is one of hundreds of customers of PSC/Ipswitch. Like any other software program, MOVEit users are each separately responsible for deciding what kinds of files to transfer using MOVEit, and for configuring the product to operate in a secure manner in their environments. PSC acknowledges as much and publishes detailed recommendations for users regarding the configuration of its product, recommending that each user review the user's "updates, settings, accounts, and policies" on a monthly or quarterly basis, and that administrators perform regular security audits. PSC also recommends that users review their configuration for "unexpected activity":

> Updates, settings, accounts, and policies should be reviewed on a regular cadence to ensure the configuration is meeting current compliance frameworks and to review for unexpected activity or behavior that needs to be addressed. It is recommended that MOVEit administrators perform a regular security audit with their corporate security and compliance teams. Many teams perform this monthly or quarterly. This document is intended to provide MOVEit administrators with a *starting point* to create their own security checklist that can be used for regular reviews. The list is not exhaustive and not all recommendations will apply to all MOVEit installations.[1]

PSC's website claims MOVEit is used by hundreds of thousands of companies worldwide.[2]

On or about May 28, 2023, PSC notified its MOVEit customers that its MOVEit software

---

[1] https://community.progress.com/s/article/MOVEit-Security-Best-Practices-Guide
[2] https://investors.progress.com/news-releases/news-release-details/progress-releases-moveit-2022-advanced-capabilities-secure-and (last visited August 9, 2023).

contained a vulnerability through which hackers could access information stored on its *customers'*

*systems*[3]:

> Hackers have stolen data **from the systems of a number of users** of the popular file transfer tool MOVEit Transfer, U.S. security researchers said on Thursday, one day after the maker of the software disclosed that a security flaw had been discovered. Software maker [PSC], after disclosing the vulnerability … said it could lead to **potential unauthorized access into *users'* systems**.

On May 28, 2023, PSC released a patch intended to fix the vulnerability in MOVEit's

software. But, PSC's announcements, and subsequent fix efforts, were too late. Before PSC's

announcement, hackers had already exploited the vulnerability to access the separate, individual

systems of hundreds of MOVEit customers. One cybersecurity expert claiming to keep a tally of

the total number of impacted individuals and entities reported that it has impacted the separate

systems of 668 *separate organizations* whose combined data pertained to up to 40 million

individuals, to date.[4] Other estimates run into the thousands of separate organizations,

encompassing diverse entities ranging from the State of California's Pension system to New York

City public schools to the Louisiana DMV.[5] Some of the affected parties are huge financial

institutions, like New York-based Teachers Insurance and Annuity Association of America, which

manages pension programs for 15,000 institutional clients.[6]

Reuters has described the MOVEit breach as "hydra-headed" and has warned that it is not

yet over, as new information about victims is still coming to light. Corporations who use MOVEit

are making daily announcements regarding data exposure and exfiltration. Some of these

---

[3] https://www.reuters.com/technology/hackers-use-flaw-popular-file-transfer-tool-steal-data-researchers-say-2023-06-02/ (last visited August 9, 2023).

[4] https://www.emsisoft.com/en/blog/44123/unpacking-the-moveit-breach-statistics-and-analysis/ (last visited August 14, 2023).

[5] https://www.reuters.com/technology/moveit-hack-spawned-around-600-breaches-isnt-done-yet-cyber-analysts-2023-08-08/ (site last visited August 13, 2023)

[6] *Id.*

announcements mention MOVEit, while others just identify the existence of a breach and describe the nature of the data exposed. Indeed, in just the past couple of weeks, numerous new entities have announced they were the victims of breaches exploiting vulnerabilities in their configurations of MOVEit. For example, on August 4, 2023, the State of Oregon announced that protected health information belonging to 1.7 million people was breached.[7]

Importantly, not all MOVEit customers may have been impacted. Indeed, some MOVEit customers had appropriate monitoring and other security measures in place and, as a result, were able to detect and thwart efforts to exploit the MOVEit vulnerability on their systems. For instance, on May 27, 2023, Akamai, a managed detection and response service that corporations can hire to monitor their data systems, detected the attack and prevented it. "Akamai researchers detected exploitation attempts against one of Akamai's financial customers — an attack that was blocked by the Akamai Adaptive Security Engine."[8]

Simply put, Movant's claim that there was a single "exfiltration of data from the MOVEit file transfer software" (Movant's Reply at 4) is not supported by the emerging facts. Instead, there were hundreds of *separate* exfiltrations, all of which capitalized, at least in part, on an underlying software vulnerability, but all of which also involved entirely different facts and circumstances depending on the customer who was breached, the data security measures that customer did (or did not) have in place, and the nature of the data at issue. In stark contrast to the picture Movant paints, multiple cybersecurity and data breach experts have uniformly explained that cybercriminals exploited a *vulnerability* in MOVEit that allowed them "unauthorized access into

---

[7] https://techcrunch.com/2023/08/04/oregon-health-data-accessed-moveit-mass-hacks/
[8] *See* https://www.akamai.com/blog/security-research/moveit-sqli-zero-day-exploit-clop-ransomware (last visited August 9, 2023).

[MOVEit] **users'** systems."[9] There are many separate breaches, each of which is an independent

exfiltration of "stolen data from the systems of … users of the popular file transfer tool MOVEit."[10]

Lawsuits against MOVEit users/customers will therefore center upon those users' separate

and independent decisions about:

- how to protect and configure the environments in which MOVEit was operating;

- what kind of data was transferred via MOVEit;

- whether and how to encrypt that data;

- whether to monitor or respond to early indicators that hackers were taking steps to access and exfiltrate that data;

Given that this is not a single breach, but instead multiple breaches, the foundation of Movant's

MDL Motion and Reply collapses.

## III.    PROCEDURAL HISTORY

On July 5, 2023, Movant filed a class action complaint in the District of Minnesota alleging

claims arising from the Data Breach, in which he named PSC, PBI, and Ipswitch (collectively, the

"MDL Defendants") only. *Bailey v. Progress Software Corp*., *et al*., No. 0:23-cv-2028 (D. Minn.).

The next day, Movant filed a Motion for Centralization and Transfer of Related Actions to the

District of Minnesota pursuant to 28 U.S.C. § 1407 for Consolidated Pretrial Proceedings ("MDL

Motion") in MDL No. 3083 (ECF No. 1). By its terms, the MDL Motion sought only to consolidate

and transfer other actions naming the MDL Defendants.

Subsequently, numerous MOVEit customers, such as Genworth Financial, Inc., Union

Bank and Trust Company, Berwyn Group, Inc., many of whom are named in actions that do not

include *any* of the MDL Defendants, have also filed in support of consolidation. Still other

---

[9] https://www.reuters.com/technology/hackers-use-flaw-popular-file-transfer-tool-steal-data-researchers-say-2023-06-02/
[10] *Id*.

MOVEit customers, including the Illinois Department of Innovation and Technology and Johns Hopkins Health System, have filed in opposition. *See, e.g.*, ECF Nos. 126, 140.

Despite initially limiting the scope of the proposed MDL to only cases naming the MDL Defendants, and in spite of the bedrock principle that new arguments cannot be raised for the first time on reply[11], in his MDL Reply (ECF No. 155), Movant vastly expands the scope of the centralization he seeks to include *all* actions stemming from breaches that involved the MOVEit software vulnerability, even those that do not name *any* of the MDL Defendants, such as the *Harding* Action. *See also, e.g., King v. Genworth Financial, Inc.*, No. 3:23-cv-00426 (E.D. Va.) (naming only Genworth as defendant); *Scott v. Union Bank and Trust Company*, No. 4:23-cv-03126 (D. Neb.) (naming only Union Bank as defendant); *Berry v. PBI Research Services, LLC*, No. 3:23-cv-03297 (N.D. Cal.) (naming only PBI as the Berwyn Group as defendants); *Soto v. Milliman Solutions, LLC et al*, No. 2:23-cv-01236 (W.D. Wash) (naming only Milliman entities as defendants).

On August 8, 2023, Plaintiff Harding filed a class action complaint in the United States District Court Eastern District of Virginia naming *only* the following defendants located in that district: Maximus, Inc. and Maximus Federal Services, Inc. (collectively, "Maximus"), but none of the MDL Defendants. *See Harding v. Maximus, Inc. et al.*, No. 1:23-cv-1045-ATJ-WEF (E.D. Va.) ("*Harding* Action"), at ECF No. 1. Two other cases naming Maximus, but not the MDL Defendants, have been filed in the Eastern District of Virginia.[12] Plaintiffs in all 3 cases allege that Maximus' systems were accessed by hackers exploiting the flaw in the MOVEit software, and

---

[11] *See, e.g., Adrieanna Hooks v. Target Corp., et al.*, No. 5:22-CV-00052-SSS-SPX, 2023 WL 4680337, at *1 (C.D. Cal. May 11, 2023) ("Raising new facts or arguments on reply is improper") (collecting cases).

[12] *Bishop v. Maximus Federal Services, Inc.*, No. 1:23-cv-01019 (E.D. Va.); *Buzzell v. Maximus, Inc. et al*, No. 1:23-cv-01028 (E.D. Va.).

exfiltrated data from Maximus' systems (or the systems of its vendors/business affiliates). Plaintiffs allege Maximus breached their non-delegable duties to class members by failing to implement and maintain reasonable security procedures and practices to protect the PII and PHI entrusted to them from unauthorized access and disclosure, including by failing to ensure their vendors and business associates had secure services, processes and procedures in place to safeguard PII and PHI that Maximus shared with those third parties. Plaintiff Harding specifically alleges, among other things, that Maximus failed to properly configure the MOVEit system, and to properly use and monitor the system. Plaintiff also alleges that other entities that used MOVEit but who properly monitored their use of MOVEit were able to detect and prevent would-be-hackers' efforts to exploit MOVEit's vulnerabilities, which further supports Plaintiff Harding's position here that there was not a single set of facts, or a single exfiltration that impacted all MOVEit users, because some users were able to detect and prevent the individual attempts to access their systems and exfiltrate data therefrom. As a result, Plaintiff Harding alleges that those other MOVEit users were not victims of the attacks.

As of August 14, 2023 neither Movant nor any other party to this Panel's Proceedings had tagged Plaintiff's matter as related. Plaintiff filed an opposition as an interested party (ECF No. 161) , but was informed that in order for his interested party response to be considered, his action must first be noticed as a potential tag-along matter. Plaintiff subsequently noticed his case as a potential tag along (ECF No. 164) and now re-files his opposition.

## IV.   LEGAL STANDARD

Federal civil actions are eligible for transfer pursuant to 28 U.S.C. § 1407 if they involve "common questions of fact" subject to discovery. *See* 28 U.S.C. § 1407(a); *In re Kugel Mesh Hernia Patch Prods. Liab. Litig.*, 493 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2007). Where the evidentiary needs of some actions fundamentally differ from others, transfer and centralization

will not promote efficiency. *See In re Comcast Corp. Emp. Wage & Hour Emp. Pracs. Litig.*, 190

F. Supp. 3d 1344, 1345 (J.P.M.L. 2016) ("despite the factual commonality among the actions, we

are not convinced that centralization is necessary to ensure the efficient conduct of these cases").

A party moving to centralize cases into a muti-district litigation bears "a heavy burden to show

that [the] common questions of fact are sufficiently complex, and that the accompanying discovery

will be so time-consuming as to justify transfer under Section 1407." *In re 21st Century Prods.,*

*Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978).

## V.       ARGUMENT

### A.       The *Harding* Action Does Not Share Common Facts to Make it Eligible for Transfer

Consolidation and transfer are appropriate only where common questions of fact prevail.

28 U.S.C. § 1407. There is nearly a total lack of common questions of fact between the *Harding*

Action and those naming the MDL Defendants sought to be consolidated by the MDL Motion.

The same is true of the numerous other actions filed against MOVEit users that do not name the

MDL Defendants.[13]

Plaintiff Harding's claims and discovery in the *Harding* Action will focus on Maximus'

duty to *their* customers to protect sensitive private personal and health data, Maximus' data privacy

processes and procedures, their failure to detect the Data Breach, their failure to prevent or

minimize the scope of the Data Breach, their response to the Data Breach after discovering it, the

steps they took to mitigate the damage, the value of the information exfiltrated during the breach,

and the facts surrounding Maximus' eventual transmission of notice of the Data Breach to

---

[13] *See, e.g.*, *King v. Genworth Financial, Inc.*, No. 3:23-cv-00426 (E.D. Va.) (naming only Genworth as defendant); *Scott v. Union Bank and Trust Company*, No. 4:23-cv-03126 (D. Neb.) (naming only Union Bank as defendant); *Berry v. PBI Research Services, LLC*, No. 3:23-cv-03297 (N.D. Cal.) (naming only PBI as the Berwyn Group as defendants); *Soto v. Milliman Solutions, LLC et al*, No. 2:23-cv-01236 (W.D. Wash) (naming only Milliman entities as defendants).

impacted individuals. Each of these issues are unique to Maximus, alone, and do not directly involve the MDL Defendants. Likewise, Plaintiff Harding makes no allegations that PSC, Ipswitch, or PBI—i.e., the MDL Defendants—failed to protect his data. The only shared fact between the *Harding* Action and the other actions naming the MDL Defendants is the hackers' exploitation of the MOVEit software vulnerability which, standing alone, falls far short of satisfying the "heavy burden" of warranting centralization. The same will be true of other cases in which only MOVEit customers, and not the MDL Defendants, are named.

The situation here is almost identical to the *Accellion* data breach MDL, in which the Panel denied transfer and consolidation. *See In re Accellion, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372 (J.P.M.L 2021) ("*Accellion* MDL"). Like here, the *Accellion* MDL involved a situation where one company (Accellion) experienced a data breach of its file transfer service (like MOVEit) that impacted many other companies that used Accellion's file transfer service. Multiple class action lawsuits were filed against Accellion, as well as those other companies that used its service.[14] In denying consolidation, the Panel reasoned as follows:

> Any factual overlap among the actions as to Accellion's [file transfer] product, its vulnerability to attack, and its alleged support of this "legacy" product may be eclipsed by factual issues specific to each [Accellion]-client defendant. Opponents of centralization argue that, rather than a single data breach, there were numerous data breaches of each client defendant, occurring at different times and involving each client defendant's own servers. Moreover, each client defendant's knowledge of the [file transfer service]'s alleged vulnerability to attack will be unique …. Other unique factual issues include when each [Accellion]-client was made aware of a data breach and when it notified its customers and/or employees. Proponents of centralization argue that even in the actions in which Accellion is not named, it will be involved in some third-party discovery. But we are persuaded that such discovery can be informally coordinated.

---

[14] Specifically, as summarized by the Panel: "Of the 26 actions and potential tag-along actions now pending, nine name only Accellion as the defendant, ten name only one Accellion client, and seven are multi-defendant actions naming Accellion and one of its clients." *Id.* at 1373.

*Id.* at 1374. These same facts that the Panel found dispositive in *Accellion* are present here:
(1) there were numerous data breaches at different times of each MOVEit-client such as Maximus,
which is evidenced by the fact that some companies were able to detect and prevent the exfiltration
while others were not; (2) Maximus' vulnerability to the Data Breach is entirely unique from that
of other impacted companies and the MDL Defendants; (3) when Maximus was made aware of
the Data Breach is unique to Maximus; (4) what Maximus did to investigate, mitigate, and respond
to the Data Breach is completely unique to Maximus; and (5) when, why, and how Maximus chose
to notify impacted individuals is unique from other impacted companies and the MDL Defendants.
Therefore, the same result as *Accellion* should follow here and consolidation should be denied.

### B.   Transfer and Consolidation of the *Harding* Action Creates No Procedural Efficiencies

The mere fact that the Maximus entities used MOVEit does not create any efficiency to be
gained by transferring under § 1407. Even if Plaintiff Harding needs some discovery from PSC,
as in *Accellion*, such discovery could be centrally coordinated.[15] The far more time-consuming,
and important discovery will be that which Plaintiff Harding seeks from Maximus, namely
depositions of Maximus executives and employees, including cybersecurity officers and those in
charge of protecting consumers' health information. Litigating unrelated claims against hundreds
of varying defendants in one consolidated action will create significant inefficiencies as the
transferee court and the parties will constantly have to sort out which issues overlap and which do
not. It will also multiply the parties and counsel involved in a manner that will not help streamline

---

[15] Indeed, in *Accellion*, the Panel explained that the need to depose the non-party file transfer
provider (here, MOVEit) was not a sufficient basis to warrant centralization: "Proponents of
centralization argue that even in the actions in which Accellion is not named, it will be involved
in some third-party discovery. But we are persuaded that such discovery can be informally
coordinated." *In re Accellion, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372, 1374
(J.P.M.L. 2021).

the cases. *See In re Accellion,* 543 F. Supp. 3d at 1374; *see also In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) (denying motion to centralize all actions involving fentanyl patches irrespective of manufacturer); *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F.Supp.2d 1377, 1378 (J.P.M.L. 2012) (denying centralization of 13 product liability actions involving different plumbing products, stating that "we are typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products").

Furthermore, the Panel has consistently explained its "usual reluctance to centralize actions against different defendants in one MDL"—like consolidating the *Harding* Action here would do—because "a multi-defendant MDL may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials." *In re CP4 Fuel Pump Mktg., Sales Prac., and Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (denying motion to centralize ten single-defendant cases). The fact that some of the non-MDL Defendant companies impacted by the MOVEit breach—such as Maximus—may be competitors (e.g., financial institutions, health companies, universities, and other businesses) also militates against centralization in one case, as it would create unmanageable confidentiality issues in discovery. As the Panel has previously recognized, "centralizing competing defendants in the same MDL likely would complicate case management due to the need to protect trade secrets and confidential information." *Id*.

C.      **Any Centralization of the Maximus cases, if any, Should be in the Eastern District of Virginia**

Just as there is no support for a "global" MDL, there is also no need for centralization of defendant-specific MDLs. *See Accellion*, 543 F. Supp. 3d at 1374 at fn. 3. There are currently three pending cases against Maximus, all pending in the Eastern District of Virginia. Counsel in those

cases have already met and conferred regarding how those cases can be handled most efficiently in the Eastern District of Virginia and anticipate coordinating their efforts through trial. Given the Panel's deference to informal coordination, no defendant-specific MDL for Maximus is needed here.

To the extent the Panel does consider defendant-specific MDLs, *Harding* and any other actions against Maximus should be coordinated in the Eastern District of Virginia. As explained above, centralizing and transferring the *Harding* Action to Minnesota will not serve the convenience of the parties and witnesses. None of the Maximus defendants named in the *Harding* Action are located, or have any presence whatsoever, in Minnesota. Instead, both Maximus entities named as defendants in the *Harding* Action are located in Virginia. Therefore, the acts giving rise to Plaintiff Harding's claims occurred in Virginia such that it will be the locus of fact discovery as all of Maximus' relevant employees and document custodians are located in, or worked from, their offices in Virginia. For that reason, to the extent depositions are conducted in-person, they will occur in Virginia. As aptly explained by Movant, "the Panel has often ruled that the single most important factor in deciding where to send the MDL is the presence of key documents and witnesses," which in this case is solely Virginia and no documents or witnesses from Maximus are located in Minnesota. MDL Mot. at 4. Therefore, transfer and consolidation in the District of Minnesota will not serve the convenience of the parties, and any Maximus-specific MDL should instead proceed in the Eastern District of Virginia. In that event, the Hon. Anthony J. Trenga, the judge assigned to the *Harding* Action, would be an outstanding transferee judge. Judge Trenga has successfully handled several MDLs, including the recently settled *In Re: Capital One Consumer*

*Data Security Breach Litigation*, MDL No. 2915, which presented many of the same issues likely to arise in the *Maximus* actions.[16]

### D. Premature Centralization Deprives Litigants of the Opportunity to Respond

The vast breadth of centralization Movant sought for the first time on Reply means that parties in cases that do not name the MDL Defendants who are not monitoring the MDL Docket had no way of knowing that their cases are at risk of being swept up in a sprawling MDL. Contrary to the Panel's rules, no such litigants have received formal notice. Indeed, Plaintiff Harding tagged his own case as related, only after reviewing Movant's Reply which pertained to another matter involving Harding's counsel. Moreover, because PSC's customers who are impacted by the breach are being identified on a near-daily basis, the Panel is not presently as well-positioned as it could be to fully assess the number of litigants, the type of litigants, or the nature of the claims that any MDL would encompass. Should the Panel decide to consider a MDL of the scope proposed in Movant's Reply, Movant should be required to provide notice to all affected litigants, who should have the opportunity to respond.

## VI.    CONCLUSION

For all of these reasons, the *Harding* Action should not be transferred and consolidated in the District of Minnesota, nor should any other case that does not exclusively name the MDL

---

[16] If the Panel were to centralize a "global" MDL anywhere, it should be in the venue where cases involving the largest number of impacted individuals are pending, which is the Eastern District of Virginia. The proposed class in the *Harding* Action for the Maximus data breach, alone, is comprised of 11 million impacted individuals. The Genworth data breach, which also is the subject of multiple class actions filed in the Eastern District of Virginia, involves an additional 2.7 million impacted individuals. Given that the current estimated total of impacted individuals is 40 million (but not all of those 40 million have been included in proposed classes filed in class actions) the 13.7 million impacted individuals being represented in cases in the Eastern District of Virginia may constitute a majority of the total number of proposed class members across all cases filed to date. Accordingly, to the extent the Panel is inclined towards centralization, the Eastern District of Virginia would be a superior venue.

Defendants. Alternatively, if the Panel considers defendant-specific MDLs, it should centralize the

*Maximus* cases in the Eastern District of Virginia.

Dated: August 16, 2023                              Respectfully submitted,

                                                    */s/ E. Michelle Drake*
                                                    E. Michelle Drake (*Pro Hac Vice* forthcoming)
                                                    BERGER MONTAGUE, PC
                                                    1229 Tyler Street NE, Suite 205
                                                    Minneapolis, MN 55413
                                                    Tel: (612) 594-5933
                                                    Fax: (612) 584-4470
                                                    Email: emdrake@bm.net

                                                    Mark B. DeSanto (*Pro Hac Vice* forthcoming)
                                                    BERGER MONTAGUE, PC
                                                    1818 Market Street, Suite 3600
                                                    Philadelphia, PA 19103
                                                    Tel: (215) 875-3000
                                                    Fax: (215) 875-4604
                                                    Email: mdesanto@bm.net

                                                    Norman E. Siegel (*Pro Hac Vice* forthcoming)
                                                    Barrett J. Vahle (*Pro Hac Vice* forthcoming)
                                                    STUEVE SIEGEL HANSON LLP
                                                    460 Nichols Road, Suite 200
                                                    Kansas City, Missouri 64112
                                                    Telephone: (816) 714-7100
                                                    siegel@stuevesiegel.com
                                                    vahle@stuevesiegel.com

                                                    *Attorneys for Plaintiff Harding*