BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL NO. 3083 |

**PLAINTIFFS HALE AND WOOTEN'S OPPOSITION TO MOTION TO TRANSFER AND CONSOLIDATE ACTIONS PURSUANT TO 28 U.S.C. § 1407, OR ALTERNATIVELY TO TRANSFER THE *GENWORTH* LITIGATION TO THE EASTERN DISTRICT OF VIRGINIA**

Interested Parties Gilbert Hale, Lynda Hale, and Alan Wooten—the Plaintiffs in *Hale v. Genworth Financial, Inc.* pending in the U.S. District Court for the Eastern District of Virginia ("the *Hale* Plaintiffs")—oppose the Motion of Bruce Bailey ("Movant"), the plaintiff in *Bailey v. Progress Software Corporation and Pension Benefit Information, LLC* to centralize all Related Actions and transfer them to the United States District Court for the District of Minnesota (MDL No. 3083, Doc. 1). Though not a named defendant in the *Bailey* action or any of the original complaints marked as related, Genworth Financial, Inc. ("Genworth"), has improperly sought to tag several actions against Genworth as related actions in this MDL, including *Hale*. Doc. 165. Because the litigation against Genworth will be primarily focused on Genworth's actions and inactions related to its data breach, centralization of the Genworth actions should be denied for the same reasons the Panel denied centralization in *In re Accellion, Inc., Customer Data Security Breach Litigation*, 543 F. Supp. 3d 1372 (J.P.M.L 2021).

I.   **FACTUAL BACKGROUND**

On July 5, 2023, Movant filed a class action complaint in the District of Minnesota alleging claims arising from the MOVEit software data breach, naming Progress Software Corporation ("PSC"), the seller of MOVEit software and Pension Benefit Information, LLC ("PBI"), one of

hundreds of customers of PSC that use MOVEit software.[1] The next day, Movant filed a Motion for Centralization and Transfer of Related Actions to the District of Minnesota Pursuant to 28 U.S.C. § 1407 for Consolidated Pretrial Proceedings ("MDL Motion") in MDL No. 3083 (ECF No. 1). By its terms, the MDL Motion sought only to consolidate and transfer other actions naming the original MDL Defendants—PSC and PBI.

Genworth was another user of MOVEit software. After the filing of the MDL Motion, several cases were filed by Genworth's customers *against Genworth* alleging that Genworth failed to adequately protect its customers' sensitive personal information. Those cases—all of which were filed in the Eastern District of Virginia (where Genworth is headquartered) and none of which name any of the original MDL Defendants—have all been tagged by Genworth as "related" to this MDL:

- *King v. Genworth Financial, Inc.,* Case No. 3:23-cv-00426 (Doc. 70)
- *Hauser v. Genworth Life Insurance Company*, Case No. 3:23-cv-00486 (Doc. 110)
- *Smith v. Genworth Financial Inc.*, Case No. 3:23-cv-00510 (Doc. 159)
- *Berens v. Genworth Life Insurance Company*, Case No. 3:23-cv-00515 (Doc. 165)
- *Hale v. Genworth Financial Inc.*, Case No. 3:23-cv-00517 (Doc. 165)
- *Burkett v. Genworth Life and Annuity Company*, Case No. 3:23-cv-00528 (Doc. 182)

These actions all seek to hold Genworth—and only Genworth—responsible for compromising plaintiffs' sensitive personal information and those of 2.7 million other members of the proposed class of Genworth customers. Conversely, only one case currently tagged to this proposed MDL names both Genworth and an original MDL Defendant—*Anastasio v. Progress Software, et. al*, Case No. 1:23-cv-11442 (D. Ma). *Anastasio* was identified in the MDL Motion as a related action

---

[1] Some plaintiffs in the Related Cases have named Ipswitch, Inc., the original developer of MOVEit that was acquired by PSC in 2019,

and originally named *only* PSC and PBI (Doc. 1, Attachment 4), but was later amended after the MDL Motion to add Genworth.

Notwithstanding the fact that the original Motion did not seek centralization of any cases against Genworth, subsequent filings by both the Movant and Genworth have sought to sweep the Genworth cases into a proposed sprawling MDL to include every customer of PSC's MOVEit software that suffered a data breach. For example, it its Reply in Support of Centralization (Doc. 155), Movant vastly expands the scope of the centralization he seeks to include *all* actions stemming from breaches that involved the MOVEit software vulnerability, even those that do not name any of the MDL Defendants. For its part, Genworth has tagged all cases naming Genworth (only one of which names an MDL Defendant following an amendment) and argues that PSC, as seller of MOVEit, is responsible for Genworth's failed data security. These arguments should be rejected based on the underlying facts, and the Panel's now well-established precedent.

## **LEGAL STANDARD**

Federal civil actions are eligible for transfer pursuant to 28 U.S.C. § 1407 if they involve "common questions of fact" subject to discovery. *See* 28 U.S.C. § 1407(a); *In re Kugel Mesh Hernia Patch Products Liability Litigation*, 493 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2007). A party moving to centralize cases into a mutidistrict litigation bears "a heavy burden" to establish that a transfer is justified under 28 U.S.C. § 1407. *In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978). Where the evidentiary needs of some actions fundamentally differ from others, transfer and centralization will not promote efficiency. *See In re Comcast Corp. Emp. Wage & Hour Emp. Pracs. Litig.*, 190 F. Supp. 3d 1344, 1345 (J.P.M.L. 2016) ("despite the factual commonality among the actions, we are not convinced that centralization is necessary to ensure the efficient conduct of these cases").

## ARGUMENT

**A. The Genworth cases should not be centralized into a massive "MOVEit" MDL.**

None of the factors the Panel typically considers support centralization of the Genworth cases. To start with, the *Hale* Plaintiffs' claims—like the other cases filed in the Eastern District of Virginia naming only Genworth—will focus discovery on Genworth's duty to *their* customers to protect sensitive private personal information, Genworth's data privacy processes and procedures, Genworth's failure to detect the data breach, Genworth's failure to prevent or minimize the scope of the data breach, Genworth's response to the data breach after discovering it, the steps Genworth took to mitigate the damage, the value of the information of Genworth's customers exfiltrated during the breach, and the facts surrounding Genworth's eventual transmission of notice of the data breach to impacted individuals. Each of these issues are unique to Genworth alone, and do not directly involve the MDL Defendants. Likewise, the *Hale* Plaintiffs make no allegations that PSC, Ipswitch, or PBI failed to protect their data. Thus, the only shared fact between the *Hale* Action and the other actions naming the MDL Defendants is the hackers' exploitation of the MOVEit software vulnerability which, standing alone, falls far short of satisfying the "heavy burden" of warranting centralization.

The situation presented here is almost identical to the *Accellion* data breach MDL, in which the Panel denied transfer and centralization. *See In re Accellion, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372 ("*Accellion* MDL"). Like here, the *Accellion* MDL involved a situation where one company's (Accellion) file-transfer software (like MOVEit) was exploited in a data breach that impacted many other companies that used Accellion's file-transfer service.

Multiple class action lawsuits were filed against Accellion, as well as those other companies that used its service.[2] In denying consolidation, the Panel reasoned as follows:

> Any factual overlap among the actions as to Accellion's [file transfer] product, its vulnerability to attack, and its alleged support of this "legacy" product may be eclipsed by factual issues specific to each [Accellion]-client defendant. Opponents of centralization argue that, rather than a single data breach, there were numerous data breaches of each client defendant, occurring at different times and involving each client defendant's own servers. Moreover, each client defendant's knowledge of the [file transfer service]'s alleged vulnerability to attack will be unique …. Other unique factual issues include when each [Accellion]-client was made aware of a data breach and when it notified its customers and/or employees.

*Id*. at 1374.

Many of the same facts that the Panel found dispositive in *Accellion* are present here: (1) there were numerous data breaches at different times of each MOVEit customer such as Genworth, which is evidenced by the fact that some companies were able to detect and prevent the exfiltration while others were not; (2) Genworth's vulnerability to the data breach is entirely unique from that of other impacted companies and the MDL Defendants; (3) when Genworth was made aware of the data breach is unique to Genworth; (4) what Genworth did to investigate, mitigate, and respond to the data breach is completely unique to Genworth; and (5) when, why, and how Genworth chose to notify impacted individuals is unique from other impacted companies and the MDL Defendants.

Moreover, the mere fact that Genworth used MOVEit does not create any efficiency to be gained by transferring under § 1407. Even if the *Hale* Plaintiffs need some discovery from PSC, as in *Accellion*, such discovery could be informally coordinated. *Accellion*, 543 F. Supp. 3d at 1374 ("Proponents of centralization argue that even in the actions in which Accellion is not named,

---

[2] Specifically, as the Panel summarized: "Of the 26 actions and potential tag-along actions now pending, nine name only Accellion as the defendant, ten name only one Accellion client, and seven are multi-defendant actions naming Accellion and one of its clients." *Id.* at 1373. Here, only one of seven cases against Genworth include an MDL Defendant.

it will be involved in some third-party discovery. But we are persuaded that such discovery can be informally coordinated.").

The far more time-consuming, and important discovery will be that which the *Hale* Plaintiffs seek from Genworth, namely depositions of Genworth executives and employees, including cybersecurity officers and those in charge of protecting the class's private data. Litigating unrelated claims against potentially hundreds of varying defendants that happened to use the MOVEit software in one consolidated action will create significant inefficiencies as the transferee court and the parties will constantly have to sort out which issues overlap and which do not. It will also multiply the parties and counsel involved in a manner that is contrary to the goals of centralization. *See In re Accellion*, 543 F. Supp. 3d at 1374; *see also In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) (denying motion to centralize all actions involving fentanyl patches irrespective of manufacturer); *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) (denying centralization of 13 product liability actions involving different plumbing products, stating that "we are typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products").

Furthermore, the Panel has consistently explained its "usual reluctance to centralize actions against different defendants in one MDL," because "a multi-defendant MDL may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials." *In re CP4 Fuel Pump Mktg., Sales Pract., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (denying motion to centralize ten single-defendant cases). The fact that some of the non-MDL Defendant companies may be competitors (*e.g.*, financial institutions, health companies, universities, and other businesses) also militates against centralization in one case, as it would create unmanageable confidentiality issues

in discovery. As the Panel has previously recognized, "centralizing competing defendants in the same MDL likely would complicate case management due to the need to protect trade secrets and confidential information." *Id.*

In short, there is no basis to centralize the Genworth cases into an unbounded MDL involving potentially scores or hundreds of defendants simply because they all happened to use the same software. The Motion should therefore be denied.

### B. Centralization of the Genworth cases, if any, should be in the Eastern District of Virginia.

Just as there is no support for a "global" MDL, there is also no need for centralization of defendant-specific MDLs. *See Accellion*, 543 F. Supp. 3d at 1374 n.3. There are currently six pending cases against Genworth, five of which are pending in the Eastern District of Virginia. The *Hale* Plaintiffs anticipate those cases may be informally coordinated or consolidated in the Eastern District of Virginia without the need for an MDL. And, given the Panel's deference to informal coordination, no defendant-specific MDL for Genworth is needed here.

To the extent the Panel does consider defendant-specific MDLs, the Genworth cases should be coordinated in the Eastern District of Virginia. The Genworth entities are located in Richmond, Virginia. Therefore, the acts giving rise to the *Hale* Plaintiffs' claims occurred in Virginia such that it will be the locus of fact discovery, including depositions of Genworth's employees. As Movant explains, "the Panel has often ruled that the single most important factor in deciding where to send the MDL is the presence of key documents and witnesses," (Doc. 1 at 4) which for Genworth will be primarily in Virginia. Therefore, transfer and consolidation in the District of Minnesota (or any other district outside of the Eastern District of Virginia) will not serve the convenience of the parties.[3]

---

[3] If the Panel were to centralize a "global" MDL anywhere, it should be in the venue where cases involving the largest number of impacted individuals are pending, which is the Eastern District of

       /s/ Norman E. Siegel
Norman E. Siegel
Brandi S. Spates
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
siegel@stuevesiegel.com
spates@stuevesiegel.com

Jonathan M. Petty
**PHELAN PETTY, PLC**
3315 W. Broad St.
Richmond, VA 23230
Tel. (804) 767-7818
jpetty@phelanpetty.com

Brian Douglas Penny
**GOLDMAN SCARLATO & PENNY, P.C.**
Eight Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA 19428
Tel. 484-342-0700
Fax 484-580-8747
penny@lawgsp.com

Stuart A. Davidson
**ROBBINS GELLER RUDMAN & DOWD LLP**
255 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750-3000
sdavidson@rgrdlaw.com

Attorneys for Plaintiffs and the Proposed Class

---

Virginia. The proposed class in the *Hale* action alone is comprised of 2.7 million impacted individuals. The Maximus data breach, which also is the subject of multiple class actions filed in the Eastern District of Virginia, involves an additional 11 million impacted individuals. Given that the current estimated total of impacted individuals is 40 million (but not all of those 40 million have been included in proposed classes filed in class actions) the 13.7 million impacted individuals being represented in cases in the Eastern District of Virginia may constitute a majority of the total number of proposed class members across all cases filed to date. Accordingly, to the extent the Panel is inclined towards global centralization, the Eastern District of Virginia would be a superior venue.