# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANA LOGIUDICI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PROGRESS SOFTWARE CORPORATION and PENSION BENEFIT INFORMATION, LLC d/b/a PBI RESEARCH SERVICES,<br><br>Defendants. | Case No.: 1:23-cv-11916<br><br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Dana LoGiudici ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this class action complaint against Progress Software Corporation ("PSC") and Pension Benefit Information, LLC d/b/a PBI Research Services ("PBI") (collectively, "Defendants"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## <u>INTRODUCTION</u>

1. Plaintiff brings this class action lawsuit on behalf of all persons who entrusted Defendants with sensitive personal information that was exposed in a data breach when, between May 29, 2023 and May 30, 2023, an unauthorized third party accessed PBI's internal MOVEit Transfer servers which contained individuals' sensitive personally identifying information ("PII") (the "Data Breach" or the "Breach").

2. PSC is a software company that offers software products and services to corporate and governmental entities, including cloud hosting and secure file transfer services such as MOVEit.

3. PBI processes information about employees or individuals for insurers engaged by employers, or for companies acting on such insurers' behalf, in connection with certain employee benefit programs. PBI uses PSC's MOVEit file transfer services.

4. Plaintiff's claims arise from Defendants' failure to safeguard Plaintiff's and Class members' PII. Plaintiff's and Class members' PII was compromised due to Defendants' negligent and/or careless acts and the failure to protect their PII.

5. As part of performing its services, employers provide the PII of their past and current employees and customers to PBI in connection with the services offered by PBI to its clients.

6. In carrying out its services, PBI utilizes MOVEit, the file sharing application created and operated by PSC, to securely transmit files containing sensitive consumer information. On or about May 31, 2023, PBI received a notification from PSC that an unauthorized external party had exploited a vulnerability within the MOVEit software. PBI then initiated an inquiry and determined that the unauthorized party had gained entry to one of PBI's MOVEit Transfer servers on May 29, 2023 and May 30, 2023. During this time, the unauthorized party acquired data containing sensitive PII held by PBI.

7. The hackers responsible for the Data Breach were subsequently identified as the Russian cyber gang, Clop.[1]

8. Plaintiff and members of the Class furnished sensitive and private PII directly or indirectly to PBI including their names, Social Security numbers, and birthdates.

---

[1] Onur Demirkol, *US Government Under Siege: MOVEit Breach Exposes Critical Data to Ruthless Clop Ransomware Attack*, DATA CONOMY (June 19, 2023), available at https://dataconomy.com/2023/06/19/moveit-breach-data-clop-ransomware/ (last visited August 22, 2023).

9. Defendants failed to properly secure and safeguard Plaintiff's and the Class's PII that was stored within the MOVEIT servers.

10. Despite acting as a safe container for sensitive information, Defendants failed to take precautions designed to keep that information secure.

11. The data that PBI exposed was highly sensitive, including names, dates of birth, and Social Security numbers. The compromised data also allows individuals to infer that consumers were employed in certain sectors or use certain services offered by PBI.

12. The Data Breach affecting PSC's MOVEit file transfer tool impacted more than 15 million consumers in the United States.[2]

13. The sensitive nature of the data exposed through the Data Breach, including Social Security numbers, substantiates that Plaintiff and Class members have suffered irreparable harm. Plaintiff and Class members have lost the ability to control their private information and are subject to an increased risk of identity theft.

14. Defendants owe a duty to Plaintiff and Class members to maintain adequate security measures to safeguard the PII they were entrusted with. Defendants breached their duty by failing to implement and/or maintain adequate security practices.

15. PBI delayed acknowledging and giving notice of the Data Breach. PBI did not notify its customers of the Data Breach until July 19, 2023 (the "Notice Letter"). *See* Plaintiff's Notice Letter, attached hereto as Exhibit A Notice Letter. PBI waited despite knowing that hackers accessed its account holders and customers information, and that sensitive PII was compromised.

---

[2] *See* Carly Page, *Millions affected by MOVEit mass-hacks as list of casualties continues to grow*, TECHCRUNCH https://techcrunch.com/2023/06/29/millions-affected-moveit-mass-hacks/ (last visited August 22, 2023).

16.     As a result of the PBI's inadequate digital security and notice process, Plaintiff and Class members' PII was exposed to criminals. Plaintiff and the Class have suffered and will continue to suffer injuries including: financial losses caused by misuse of PII; the loss or diminished value of their PII as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal, medical, and financial information.

17.     Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendants for: negligence; negligence per se; breach of implied contract; and unjust enrichment.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one member of the Class defined below is a citizen of a different state than Defendant, and there are more than 100 putative Class members.

19.     This Court has personal jurisdiction over Defendants because they both conduct substantial business in this jurisdiction. Further, this Court has general jurisdiction over Defendant PSC because its corporate headquarters is located in this District.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District, Defendant PSC is based in this District, Defendant PSC interacted with Defendant PBI in this District, Defendant PSC designed, marketed, sold, and maintained the MOVEit transfer application in this District, and the harm caused to Plaintiff and Class Members emanated from this District.

## PARTIES

21.     Plaintiff Dana LoGiudici is a citizen of Oakland Park, Florida. Plaintiff LoGiudici received the Notice Letter dated July 19, 2023, notifying her that her information was part of the Data Breach. Plaintiff LoGiudici has and will spend considerable time and effort monitoring her accounts to protect herself from identity theft. Plaintiff LoGiudici fears for her personal financial security and uncertainty over what PII was exposed in the Data Breach.

22.     Defendant Progress Software Corporation is a corporation organized under the laws of the State of Delaware with its principal place of business located at 15 Wayside Road, Suite 4, Burlington, Massachusetts 01803.

23.     Defendant Pension Benefit Information, LLC is a Delaware limited liability corporation with its principal place of business located at 333 S. 7th Street, Suite 2400, Minneapolis, Minnesota 55402.

## FACTUAL BACKGROUND

### A.     The Data Breach

24.     On or about May 31, 2023, PSC, the creator of the MOVEit software, announced that it was subject to a Data Breach which compromised highly sensitive personal information of those that utilize the MOVEit software including names, dates of birth, and Social Security numbers.

25.     PBI employs the MOVEit software, which is supplied by PSC. MOVEit's intended use is to safely move files as part of their routine operations. Within this process, PBI uploads, retains, shifts, or retrieves PII owned or held by various companies it provides its various services on behalf of. This data is shared with PBI and managed using the MOVEit software.

26. On or about May 31, 2023, PSC informed PBI of a vulnerability in the MOVEit software that was exploited by an unauthorized third party.

27. PBI reportedly performed an internal investigation into the scope of the vulnerability in MOVEit's software and the impact on their systems.[3] PBI's investigation revealed that the third party accessed one of their MOVEit servers between May 29, 2023 and May 30, 2023 and subsequently downloaded data from its servers.[4] On June 16, 2023, PBI completed a manual review of their records, and confirmed the identities of individuals affected by the Data Breach.

28. Individuals impacted by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

29. Plaintiff and Class members are or were PBI customers or account holders that entrusted PBI with their PII.

**B.      PBI's Obligation to Protect Plaintiff and Class members' PII**

30. PBI provides audit and address research services for insurance companies, pension funds, and other organizations.[5]

31. PBI's Privacy Policy highlights its protection of PII, stating that:

> PBI recognizes the importance of protecting personal information. We use a variety of administrative, physical and technical security measures intended to safeguard your personal information.[6]

---

[3] *See* Exhibit A.
[4] *Id*.
[5] *See About PBI Research Services,* PBI https://www.pbinfo.com/who-we-are/ (last visited August 22, 2023).
[6] *See Privacy Policy,* PBI *https://www.pbinfo.com/privacy-policy/* (last visited August 22, 2023).

32.     PBI further notes the "PBI Advantages" on its website, stating that consumers should have "Confidence Your Data is Secure," explaining that:

> Protecting and securing your information is our highest priority. Our formalized security program follows industry-recognized security frameworks and undergoes an annual SSAE 18 SOC 2, Type II audit.[7]

33.     As a pension management business that handles consumers' personal information, PBI is legally required to protect personal information from unauthorized disclosure.

**C.     PBI's Failure to Prevent, Identify and Timely Report the Data Breach**

34.     PBI failed to take adequate measures to protect its computer systems and internal network against unauthorized access.

35.     PBI also failed to properly select its information security partners that it relied upon to keep the personal information it held safe and secure.

36.     PBI was not only aware of the importance of protecting the PII that it maintains, as alleged, it touted its capability to do so.  The PII that was exposed in the Data Breach is the type of private information that PBI knew or should have known would be the target of cyberattacks.

37.     Despite its own knowledge and supposed expertise on the subject of cybersecurity, and notwithstanding the FTC's data security principles and practices,[8] PBI failed to disclose that its systems and security practices were inadequate to reasonably safeguard sensitive personal information.

---

[7] *See About PBI Research Services,* PBI https://www.pbinfo.com/who-we-are/ (last visited August 22, 2023).

[8] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited August 22, 2023).

38.     The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[9]  Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.  Despite this guidance, PBI delayed the notification of the Data Breach.

**D.     The Harm Caused by the Data Breach, Now and Going Forward**

39.     Victims of data breaches are susceptible to becoming victims of identity theft.

40.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority," 17 C.F.R. § 248.201(9), and when "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[10]

41.     The type of data that was accessed and compromised here – including Social Security numbers – can be used to perpetrate fraud and identity theft.  Social Security numbers are widely regarded as the most sensitive information hackers can access.  Social Security numbers and dates of birth together constitute high risk data.

42.     Plaintiff and Class members face a substantial risk of identity theft given that their Social Security numbers, addresses and dates of birth were compromised.  Once a Social Security number is stolen, it can be used to identify victims and target them in fraudulent schemes and identity theft.

---

[9] *Id.*
[10] *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness  (last visited August 22, 2023).

43.     Stolen PII is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal identities and online activity.

44.     When malicious actors infiltrate companies and copy and exfiltrate the PII that those companies store, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[11]

45.     For example, when the U.S. Department of Justice announced its seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity. Other marketplaces, similar to the now-defunct AlphaBay, "are awash with [PII] belonging to victims from countries all over the world. One of the key challenges of protecting PII online is its pervasiveness.  As data breaches in the news continue to show, PII about employees, customers and the public is housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[12]

46.     PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details

---

[11] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Dec. 28, 2020) https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited August 22, 2023).
[12] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018) https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/  (last visited August 22, 2023).

have a price range of $50 to $200.[13]  Criminals can also purchase access to entire company data breaches from $900 to $4,500.[14]

47.    A compromised or stolen Social Security number cannot be addressed as simply as, perhaps, a stolen credit card.  An individual cannot obtain a new Social Security number without significant work.  Preventive action to defend against the possibility of misuse of a Social Security number is not permitted; rather, an individual must show evidence of actual, ongoing fraud activity to obtain a new number.  Even then, however, obtaining a new Social Security number may not suffice.  According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[15]

48.    The PII compromised in the Data Breach demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10 times on the black market."[16]

49.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[17]

---

[13] *Id.*

[14] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015) https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft  (last visited August 22, 2023).

[15] *Id.*

[16] *Experts advise compliance not same as security*, RELIAS MEDIA (Mar. 1, 2015) https://www.reliasmedia.com/articles/134827-experts-advise-compliance-not-same-as-security (Last visited August 22, 2023).

[17] *2019 Internet Crime Report Released*, FBI, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion. (Last visited August 22, 2023).

50.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[18] Defendants did not rapidly or timely report to Plaintiff and Class members that their PII had been stolen.

51.     PBI offered victims twelve months of complimentary credit monitoring and identity restoration services through Kroll. The service offered by PBI is inadequate.  Identity thieves often hold onto personal information in order to commit fraud years after such free programs expire.

52.     As a result of the Data Breach, Plaintiff and Class members' PII has been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class members, or likely to be suffered thereby as a direct result of Defendants' Data Breach, include:

    a.  unauthorized use of their PII;

    b.  theft of their personal and financial information;

    c.  costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

    d.  damages arising from the inability to use their PII;

    e.  Improper disclosure of their PII;

    f.  loss of privacy, and embarrassment;

    g.  trespass and damage their personal property, including PII;

    h.  the imminent and certainly impending risk of having their confidential medical information used against them by spam callers and/or hackers targeting them with phishing schemes to defraud them;

---

[18] *Id.*

    i.    costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, and the stress, nuisance, and annoyance of dealing with all issues resulting from the Data Breach;

    j.    the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their PII being placed in the hands of criminals and already misused via the sale of Plaintiff's and Class members' information on the Internet black market; and

    k.    damages to and diminution in value of their PII entrusted to Defendants.

53.    In addition to a remedy for economic harm, Plaintiff and Class members maintain an interest in ensuring that their PII is secure, remains secure, and is not subject to further misappropriation and theft.

54.    Defendants disregarded the rights of Plaintiff and Class members by (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (ii) failing to disclose that Defendants did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; and (iv) failing to provide Plaintiff and Class members prompt notice of the Data Breach.

55.    The actual and adverse effects to Plaintiff and Class members, including the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud

and/or medical fraud directly and/or proximately caused by Defendants' wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class members have suffered, and will continue to suffer, such damages for the foreseeable future.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following Nationwide Class:

> All persons in the United States whose PII was accessed, acquired, or compromised during the Data Breach as a result of the exploitation of PSC's MOVEit Application vulnerability (the "Class").

57.     The Florida Subclass is defined as follows:

> All persons residing in Florida whose PII was accessed, acquired, or compromised during the Data Breach as a result of the exploitation of PSC's MOVEit Application vulnerability (the "Florida Class").

58.     Specifically excluded from the Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

59.     Plaintiff reserves the right to amend the Class definitions above if further

investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

60.    This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

61.    Numerosity (Rule 23(a)(1)): The Class is so numerous that joinder of all Class members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendants, Plaintiff estimates that the Class is comprised of millions of Class members. The Class is sufficiently numerous to warrant certification.

62.    Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of those of other Class members because they all had their PII compromised as a result of the Data Breach. Plaintiff is a member of the Class and her claims are typical of the claims of the members of the Class.  The harm suffered by Plaintiff is similar to that suffered by all other Class members that was caused by the same misconduct by Defendants.

63.    Adequacy of Representation (Rule 23(a)(4)): Plaintiff will fairly and adequately represent and protect the interests of the Class.   Plaintiff has no interest antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

64.    Superiority (Rule 23(b)(3)): A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the monetary damages suffered by individual Class members is relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted

herein. If Class treatment of these claims is not available, Defendants will likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

65.     <u>Predominant Common Questions (Rule 23(a)(2))</u>: The claims of all Class members present common questions of law or fact, which predominate over any questions affecting only individual Class members, including:

    a.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    b.  Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    c.  Whether Defendants' storage of Class Member's PII was done in a negligent manner;

    d.  Whether Defendants had a duty to protect and safeguard Plaintiff's and Class members' PII;

    e.  Whether Defendants' conduct was negligent;

    f.  Whether Defendants' conduct violated Plaintiff's and Class members' privacy;

    g.  Whether Defendants took sufficient steps to secure its customers' PII;

    h.  Whether Defendants were unjustly enriched;

    i.  The nature of relief, including damages and equitable relief, to which Plaintiff and members of the Class are entitled.

66.     Information concerning Defendants' policies is available from Defendants' records.

67.     Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

68.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendants.  Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

69.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

70.     Given that Defendants have not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

71.     Plaintiff repeats and re-alleges each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

72.     Plaintiff brings this claim individually and on behalf of the Class members.

73.     Defendants knowingly collected, came into possession of, and maintained Plaintiff's and Class members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

74.     Defendants had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class members' PII.

16

75. Defendants had, and continue to have, a duty to timely disclose that Plaintiff's and Class members' PII within its possession was compromised and precisely the type(s) of information that were compromised.

76. Defendants owed a duty of care to Plaintiff and Class members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected its customers' PII.

77. Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and its customers. Defendants were in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class members from a data breach.

78. Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential PII.

79. Defendants breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII.

80. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class members' PII;

b. Failing to adequately monitor the security of its networks and systems;

17

c. Failing to adequately and timely notify impacted consumers of the Data Breach; and

e. Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

81. Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class members' PII within Defendant's possession.

82. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class members' PII.

83. Defendants, through their actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiff and Class members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

84. It was foreseeable that Defendants' failure to use reasonable measures to protect Plaintiff's and Class members' PII would result in injury to Plaintiff and Class members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

85. It was foreseeable that the failure to adequately safeguard Plaintiff's and Class members' PII would result in injuries to Plaintiff and Class members.

86. Defendants' breaches of duties owed to Plaintiff and Class members caused Plaintiff's and Class members' PII to be compromised.

87. But for Defendants' negligent conduct and breach of the above-described duties owed to Plaintiff and Class members, their PII would not have been compromised.

88.     As a result of Defendants' failure to timely notify Plaintiff and Class members that their PII had been compromised, Plaintiff and Class members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

89.     As a result of Defendants' negligence and breach of duties, Plaintiff and Class members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

## COUNT II
### Negligence *Per Se*
**(On Behalf of Plaintiff and the Class or Alternatively the Florida Subclass)**

90.     Plaintiff re-alleges and incorporates by reference herein all the allegations contained above.

91.     Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendants of failing to use reasonable measures to protect Plaintiff's and Class members' PII. Various FTC publications and orders also form the basis of Defendants' duty.

92.    Defendants violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff's and Class members' PII and not complying with industry standards.

93.    Defendants' conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach.

94.    Defendants' violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

95.    Class members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

96.    Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class members.

97.    As a result of Defendants' negligence, Plaintiff and the other Class members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing and correcting the current and future consequences of the Data Breach.

## COUNT III
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

98.     Plaintiff repeats and re-alleges each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

99.     Plaintiff and the Class provided and entrusted their PII to Defendants. Plaintiff and the Class provided their PII to Defendants, as part of Defendants' regular business practices.

100.     Defendants should have been aware that they had a minimum duty to alert Plaintiff and Class embers that their data was compromised "without unreasonable delay."

101.     Thus, when Defendants took Plaintiff's and Class members' PII, it entered into implied contracts with Plaintiff and Class members by which Defendants agreed to safeguard and protect such information and to keep such information secure and confidential.  Implied in these exchanges was a promise by Defendants to ensure that the PII of Plaintiff and Class members in its possession was secure.

102.     Pursuant to these implied contracts, Plaintiff and Class members provided Defendants with their PII in order for Defendants to provide their services, for which Defendants are compensated.  In exchange, Plaintiff understood, and Defendants agreed to, among other things, that Defendants would: (1) provide services to Plaintiff and Class members; (2) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII; (3) protect Plaintiff's and Class members PII in compliance with federal and state laws and regulations and industry standards; and (4) notify Plaintiff and Class members in compliance with state laws and regulations.

103.     Implied in these exchanges was a promise by Defendants to ensure the PII of Plaintiff and Class members in its possession was only used to provide the agreed-upon reasons,

that Defendants would take adequate measures to protect Plaintiff's and Class members' PII, and notify Plaintiff and Class members where data safeguards failed.

104. A material term of this contract is a covenant by Defendants that they would take reasonable efforts to adequately secure that information. Defendants breached this covenant by allowing Plaintiff's and Class members' PII to be accessed in the Data Breach.

105. Indeed, implicit in the agreement between Defendants and their customers was the obligation that both parties would maintain information securely and respond accordingly if that information was compromised.

106. These exchanges constituted an agreement and meeting of the minds between the parties: Plaintiff and Class members would provide their PII in exchange for services by Defendants. These agreements were made by Plaintiff and Class members as Defendants' customers.

107. When the parties entered into an agreement, mutual assent occurred. Plaintiff and Class members would not have disclosed their PII to Defendants but for the prospect of utilizing Defendants' services. Conversely, Defendants presumably would not have obtained Plaintiff's and Class members' PII if they did not intend to provide Plaintiff and Class members with their services.

108. Defendants were therefore required to reasonably safeguard and protect the PII of Plaintiff and Class members from unauthorized disclosure and/or use and, as promptly as reasonable, notify Plaintiff and Class members when it failed in that duty.

109. Plaintiff and Class members accepted Defendants' offer of services and fully performed their obligations under the implied contract with Defendants by providing their PII, directly or indirectly, to Defendants, among other obligations.

22

110.     Plaintiff and Class members would not have entrusted their PII to Defendants in the absence of their implied contracts with Defendants and would have instead retained the opportunity to control their PII.

111.     Defendants breached the implied contracts with Plaintiff and Class members by failing to reasonably safeguard and protect Plaintiff's and Class members' PII.

112.     Defendants' failure to implement adequate measures to protect the PII of Plaintiff and Class members violated the purpose of the agreement between the parties.

113.     Defendants further failed to adequately and promptly notify Plaintiff and Class members that their PII had been compromised.

114.     Instead of spending adequate financial resources to safeguard Plaintiff's and Class members' PII, which Plaintiff and Class members were required to provide to Defendants, Defendants instead used that money for other purposes, thereby breaching its implied contracts it had with Plaintiff and Class members.

115.     As a proximate and direct result of Defendants' breaches of their implied contracts with Plaintiff and Class members, Plaintiff and the Class members suffered damages as described in detail above.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

116.     Plaintiff incorporates the above allegations as if fully set forth herein.

117.     This claim is pleaded in the alternative to the breach of implied contractual duty claim.

118.     Plaintiff conferred a benefit upon Defendants by using Defendants' services.

119.     Defendants appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and Class members. Defendants also benefited from the receipt of Plaintiff's PII as this was used for Defendants administer its services to Plaintiff and the Class.

120.     Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff's services because Defendants failed to adequately protect her PII. Plaintiff and the proposed Class would not have provided their PII to Defendants or utilized its services had they known Defendants would not adequately protect their PII

121.     Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a)     For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and her counsel as Class Counsel;

(b)     For an order declaring the Defendants' conduct violates the laws referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For damages in amounts to be determined by the Court and/or jury;

(e)     An award of statutory damages or penalties to the extent available;

(f)     For pre-judgment interest on all amounts awarded;

(g)     For an order of restitution and all other forms of monetary relief; and

(h)     Such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: August 22, 2023

**LEVI & KORSINSKY, LLP**

By: /s/ Gary S. Ishimoto
Gary S. Ishimoto (BBO# 707319)
Mark S. Reich*
Courtney E. Maccarone*
**LEVI & KORSINSKY, LLP**
55 Broadway, 4th Floor, Suite 427
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: gishimoto@zlk.com
Email: mreich@zlk.com
Email: cmaccarone@zlk.com

*Counsel for Plaintiff*

*pro hac vice* forthcoming

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:23-cv-11916-GAO

LoGiudici v. Progress Software Corporation et al      Date Filed: 08/22/2023
Assigned to: Judge George A. OToole, Jr      Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Fraud      Nature of Suit: 370 Other Fraud
     Jurisdiction: Diversity

**Plaintiff**
**Dana LoGiudici**            represented by   **Gary Suzutaro Ishimoto**
*individually and on behalf of all others*        Levi & Korsinsky LLP
*similarly situated*                       33 Whitehall Street
     17th Floor
     New York, NY 10004
     212-363-7500
     Fax: 212-363-7171
     Email: gishimoto@zlk.com
     *ATTORNEY TO BE NOTICED*

V.

**Defendant**
**Progress Software Corporation**

**Defendant**
**Pension Benefit Information LLC d/b/a**        represented by   **Jordan S. O'Donnell**
**PBI Research Services**                            Mullen Coughlin, LLC
     426 W. Lancaster Avenue
     Suite 200
     Devon, PA 19333
     267-930-4106
     Email: jsodonnell@mullen.law
     *LEAD ATTORNEY*
     *ATTORNEY TO BE NOTICED*

[ Email All Attorneys ]
[ Email All Attorneys and Additional Recipients ]

| Date Filed | # | Docket Text |
|---|---|---|
| 08/22/2023 | 1 | COMPLAINT against Pension Benefit Information LLC d/b/a PBI Research Services, Progress Software Corporation Filing fee: $ 402, receipt number AMADC-10003491 (Fee Status: Filing Fee paid), filed by Dana LoGiudici. (Attachments: # 1 Civil Cover Sheet, # 2 Category Form)(Ishimoto, Gary) (Entered: 08/22/2023) |
| 08/22/2023 | 2 | EXHIBIT re 1 Complaint, *(Proposed) Summons in a Civil Action - Progress Software Corp.* by Dana LoGiudici. (Ishimoto, Gary) (Entered: 08/22/2023) |

| 08/22/2023 | 3 | EXHIBIT re 1 Complaint, *(Proposed) Summons in a Civil Action - Pension Benefits Information, LLC d/b/a PBI Research Services* by Dana LoGiudici. (Ishimoto, Gary) (Entered: 08/22/2023) |
|---|---|---|
| 08/22/2023 | 4 | EXHIBIT re 1 Complaint, *Exhibit A - Notice Letter* by Dana LoGiudici. (Ishimoto, Gary) (Entered: 08/22/2023) |
| 08/23/2023 | 5 | ELECTRONIC NOTICE of Case Assignment. Judge George A. OToole, Jr assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Paul G. Levenson. (Cook, Savannah) (Entered: 08/23/2023) |
| 08/23/2023 | 6 | Summons Issued as to Pension Benefit Information LLC d/b/a PBI Research Services, Progress Software Corporation. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (Horvath, Courtney) (Entered: 08/23/2023) |
| 08/23/2023 | 7 | WAIVER OF SERVICE Returned Executed by Dana LoGiudici. Pension Benefit Information LLC d/b/a PBI Research Services waiver sent on 8/23/2023, answer due 10/23/2023. (Ishimoto, Gary) (Entered: 08/23/2023) |
| 08/24/2023 | 8 | NOTICE of Appearance by Jordan S. O'Donnell on behalf of Pension Benefit Information LLC d/b/a PBI Research Services (O'Donnell, Jordan) (Entered: 08/24/2023) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/06/2023 10:40:26 | | |
| **PACER Login:** | Mullen1001 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-11916-GAO |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |