**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: MOVEIT CUSTOMER ) <br> DATA SECURITY ) <br> BREACH LITIGATION ) <br> _____) | MDL Docket No. 3083 |

**INTERESTED PARTY PLAINTIFFS EDWARD CASEY, JERRY MCDANIEL, BARBARA CRUCIATA, JENNIFER HOPKINS, CHRISTOPHER ARDEN, MEAGHAN ALLEN, CRYSTAL KENNEDY, KIMBERLEE DANIELS, JAMES SMILEY, FRANK COOPER, AND EDWARD MARSHALL'S RESPONSE AND MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION OF RELATED ACTIONS FOR CENTRALIZED PRETRIAL PROCEEDINGS
<u>PURSUANT TO 28 U.S.C. § 1407</u>**

## I.   INTRODUCTION

Plaintiffs and Interested Parties Edward Casey, Jerry McDaniel, Barbara Cruciata, Jennifer Hopkins, Christopher Arden, Meaghan Allen, Crystal Kennedy, Kimberlee Daniels, James Smiley, Frank Cooper, and Edward Marshall are named Plaintiffs in the following actions pending in federal district courts (henceforth, "Plaintiffs"):

- *Edward Casey v. Progress Software Corporation; Pension Benefit Information, LLC d/b/a PBI Research Services; Talcott Resolution Life Insurance Company; and Talcott Resolution Life and Annuity Insurance Company*, D. Mass. Case No. 1:23-cv-11864;

- *Jerry McDaniel and Barbara Cruciata v. Progress Software Corporation; and Maximus Federal Services, Inc.*, D. Mass. Case No. 1:23-cv-11939;

- *Jennifer Hopkins v. Progress Software Corporation; Trillium Community Health Plan, Inc.; and Performance Health Technology, Ltd.*, D. Or. Case No. 3:23-cv-01259;

- *Christopher Arden v. Progress Software Corporation; Pension Benefit Information, LLC d/b/a PBI Research Services; and Prudential Insurance Co.*, D. Mass. Case No. 1:23-cv-12015;

- *Meaghan Allen and Crystal Kennedy v. Progress Software Corporation*, D. Mass. Case No. 1:23-cv-11984;

- *Kimberlee Daniels v. Progress Software Corporation and International Business Machines Corporation d/b/a IBM*, D. Mass. Case No. 1:23-cv-12010;

- *James Smiley v. Progress Software Corporation Pension Benefit Information, LLC d/b/a PBI Research Services; Milliman, Inc. d/b/a Milliman Intelliscript; Milliman Solutions LLC; The Independent Order of Foresters d/b/a Foresters Financial; and Foresters Financial Holding Company, Inc.*, W.D. Wash. Case No. 2:23-cv-01354;

- *Frank Cooper v. Progress Software Corporation; Pension Benefit Information, LLC d/b/a PBI Research Services; Fidelity Investments Institutional Operations Co., Inc.; Bank of America Corp.; F&G Annuities & Life, Inc.; and Corebridge Financial, Inc.*, D. Mass. Case No. 1:23-cv-12067; and

- *Edward Marshall v. Progress Software Corporation; Pension Benefit Information, LLC d/b/a PBI Research Services; and Teachers Insurance and Annuity Association of America*, S.D.N.Y. Case No. 1:23-cv-07822.

Plaintiffs support in part Movant Bruce Bailey's Motion for Centralization pursuant to 28 U.S.C. § 1407 (the "Motion"). All Related Actions involve one or more common questions of fact and will involve common legal theories. At the core of each case are allegations of a vulnerability in Progress Software Corporation's ("Progress's") MOVEit File Transfer Software application that allowed an unauthorized third party to access Plaintiffs' and putative Class Members' sensitive

and confidential personally identifiable information ("PII"). This vulnerability resulted in a massive security breach that has adversely impacted millions of consumers and patients nationwide. Many Defendants in the Related Actions who utilized Progress's MOVEit software, including Pension Benefit Information, LLC ("PBI"), recognize that the District of Massachusetts is the center of gravity for this litigation and support consolidation and transfer of all federal actions regarding the MOVEit File Transfer software data breaches to District of Massachusetts.

Consolidation and transfer are appropriate under 28 U.S.C. § 1407. Although Plaintiffs join in Movant's centralization arguments, Plaintiffs disagree that consolidation in the District Court of Minnesota is appropriate. The district that is the most appropriate venue for this litigation is the District of Massachusetts, which is the epicenter of the case for at least the following reasons:

- More Actions (22) are pending in the District of Massachusetts than in any other single district;

- Defendant Progress has its principal place of business located at 15 Wayside Road, Burlington, Massachusetts, within the District of Massachusetts;

- Defendant Progress is named as a defendant in most Actions;

- Defendant Progress created and maintains the MOVEit software in the District of Massachusetts;

- The District of Massachusetts is where Progress licensed its MOVEit software for use by various other defendants;

- Discovery in all the Related Actions will necessarily focus on a core set of documents, witnesses, and other evidence in the District of Massachusetts pertaining to Progress's MOVEit software;

- The District of Massachusetts, therefore, has a significant interest in the litigation;

- The District of Massachusetts has experienced jurists who have presided over many complex cases and MDLs; and
- The District of Massachusetts is a convenient and accessible venue.

By contrast, other districts, such as the District of Minnesota (proposed by Movant), have minimal, immaterial connections with this litigation.

Plaintiffs respectfully request that the Panel consolidate and transfer all federal actions regarding the MOVEit File Transfer software data breach to the United States District Court for the District of Massachusetts, which is supported by the majority of parties that filed briefing.

## II.     BACKGROUND

There are currently (81) actions (the "Related Actions" or "Actions") pending in 18 federal district courts in the following 14 states relating to the MOVEit data breach: California, Illinois, Louisiana, Maryland, Massachusetts, Minnesota, Nebraska, New Jersey, New York, Oklahoma, Oregon, Washington, Wisconsin, and Virginia.  Twenty-two of the cases are pending in the District of Massachusetts; twelve in the District of Minnesota; eight in the Southern District of New York and Eastern District of Virginia; five in the District of Maryland; four in the Western District of Washington; three in the Central District of California, Northern District of California, District of Nebraska, and Eastern District of Louisiana; two in the District of Oregon and Northern District of Illinois; and only one in the remainder of the relevant districts.  *See* Exhibit A.[1]  Progress is a defendant in 41 of these Actions.  All the cases were filed in the last six to eight weeks, and no dispositive motion practice or discovery has occurred in any Action.

---

[1] Although Plaintiffs know of no other related cases pending in federal courts as of the date of this filing other than those listed in Exhibit A, it is possible that additional cases have been filed and will continue to be filed as additional organizations announce data breaches relating to their use of Progress's MOVEit software.

The transfer of these Actions will promote their just and efficient prosecution and serve the convenience of the parties and witnesses. *See* 28 U.S.C. § 1407. Central to each case is a massive data breach of Progress's MOVEit File Transfer software, precipitated by a Russian ransomware group. The breach has impacted more than 43 million consumers and patients in the United States whose PII was stolen from dozens of organizations—including Defendants PBI, Talcott Resolution Life Insurance Company, Maximus Federal Services, Inc., Trillium Community Health Plan, Inc. Performance Health Technology, Ltd., Prudential Insurance Co., IBM, Milliman, Inc., Fidelity Investments, Bank of America Corp., F&G Annuities & Life, Inc., Corebridge Financial, Inc., Johns Hopkins Health System, Teachers Insurance and Annuity Association of America—that used the MOVEit software.

Given the extensive overlap in factual allegations, the plaintiffs in each case will seek overlapping discovery relating to the development and implementation of the MOVEit File Transfer software, the vulnerabilities on PSC's MOVEit software, PSC's knowledge and disclosure of the vulnerabilities to users of the MOVEit software, the alleged breaches, and the personal identifying information compromised in the intrusions. All Actions implicate the same core nucleus of facts resulting in the exposure of the sensitive PII of millions of individuals whose data was transferred and stored using the MOVEit software applications. Centralization will minimize the burden of discovery on all parties and ensure that the parties do not face competing and inconsistent rulings and discovery obligations.

The Actions are all class actions with overlapping classes and overlapping legal claims commonly sounding in negligence, breach of contract, invasion of privacy, and unjust enrichment. Beyond discovery, motion practice in each of the cases filed to date would require 18 courts to evaluate and rule on the same common issues when addressing and ruling upon dispositive motions

and class certification. As pointed out by Progress (*see* ECF. No. 142), it will be necessary to assert common defenses to the Actions and seek critical pretrial rulings that will overlap in numerous cases, including summary judgement and class certification. Other defendants will also raise the same common defenses. Absent centralization, there will be a race in all the Actions, each of which will be pressed to decide overlapping common issues; inefficiencies, burden, and inconsistent procedural and substantive rulings will ensue. Thus, centralization is the best option to spare these different courts and the parties from duplicative motion practice involving the same common issues and defenses, as well as potentially inconsistent rulings.

### III.   ARGUMENT

**A.   Transferring the Related Actions for coordinated pretrial proceedings is proper.**

28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon the determination that (i) they "involv[e] one or more common questions of fact," (ii) transfer will further "the convenience of parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The principal goals of 28 U.S.C. § 1407 are to avoid duplicative discovery, prevent inconsistent or repetitive rulings, promote efficient management of litigation, and conserve the resources of the parties, counsel, and the courts. *See* MANUAL ON COMPLEX LITIGATION § 22.33 at 367 (4th ed. 2004). "Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification matters), and conserve the resources of the parties, their counsel and the judiciary." *In re Methyl Methacrylate (MMA) Antitrust Litig.,* 435 F. Supp. 2d 1345, 1347 (J.P.M.L. 2006*); In re SoClean, Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.,* 585 F. Supp. 3d 1355, 1356 (J.P.M.L. 2022). Furthermore, "[t]ransfer under section 1407 does not require a complete identity of common factual issues or

parties as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant where … the actions still arise from a common factual core." *In re FTX Cryptocurrency Exch. Collapse Litig.*, No. MDL 3076, 2023 WL 3829242, at *2 (J.P.M.L.) (citing *In re Auto Body Shop Antitrust Litig.,* 37 F. Supp. 3d 1388, 1390-91 & n.5 (J.P.M.L. 2014)).

 1. **The Related Actions involve common questions of fact and law.**

   a. **The MOVEit software is central to each Action, even where Progress is not a defendant.**

The Related Actions are all based on a breach of Defendant Progress's MOVEit software and involve the same or substantially similar questions of law and fact. Common questions of fact exist across all the Related Actions, namely the vulnerability of the MOVEit software and extent of the MOVEit data Incident, which is the subject of and the basis for each Related Action. Questions pertain to the security vulnerabilities in the MOVEit software that allowed an unauthorized third-party to gain access in late May 2023 and exploit millions of innocent individuals' personal information. Front and center in each action is the MOVEit software and Progress's conduct and failures to maintain adequate software and data security measures to prevent access by an unauthorized party.

Plaintiffs' claims in all the Actions invoke other common questions such as the alleged wrongdoing by Progress and MOVEit's users such as PBI related to data security practices and procedures, Progress's and others' investigation and response to the MOVEit breach, and the breach notifications provided to consumers. Although MOVEit users are not the same in every action, the basis of each claim against them is the same, that is, each MOVEit customer was impacted by the exploitation by Russian cyber hackers of a "zero-day" vulnerability that resulted in the MOVEit Incident. As such, the same or similar defenses will be raised across all the Actions

by the Defendants.  Additional common questions of fact and law at issue in the Related Actions include, but are not limited to, the following:

    a. whether Defendants violated state tort, contract, and equitable-based principles by failing to properly secure Plaintiffs' and putative Class Members' PII;

    b. whether Plaintiffs are entitled to declaratory relief;

    c. whether the proposed putative Classes should be certified; and

    d. whether Defendants' conduct caused injury to Plaintiffs and the putative Classes and, if so, in what amount.

Centralization is appropriate here because, as the Panel has previously recognized, the factual questions that would arise in every action would include "[Progress's] data security practices and whether those practices met industry standards, how the unauthorized actor . . . obtained access . . ., the extent of the personal information affected by the breach, and when [Progress] knew or should have known of[vulnerabilities and the subsequent] breach." *In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, MDL No. 3073, 2023 WL 3829244, at *1 (J.P.M.L.. June 2, 2023); *see, e.g.*, *In re KeyBank Customer Data Sec. Breach Litig.*, MDL No. 3056, 2023 WL 1811824, at *1 (J.P.M.L. Feb. 1, 2023) (similar); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1364 (J.P.M.L. 2020);*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019) (centralizing proceedings because factual inquiries "concerning [breached third-party vendor's] data security practices, how the unauthorized access occurred, and the investigation into the breach will be substantially the same in all actions").  Even in the cases brought against solely the <u>user</u> of the MOVEit software and not against Progress,  Plaintiffs will necessarily rely on the <u>same</u> allegations related to the MOVEit security incident.  *See, e.g.,* King Compl. ¶ 4; Hauser Compl. ¶

36. This demonstrates that the MOVEit software and Progress's conduct will be central to each action in terms of establishing and/or apportioning Progress's fault for the security vulnerability and resulting breaches, even where the conduct of the defendant users of the MOVEit software will also be at issue.[2] Indeed, users' purported failure to follow Progress's directions or instructions will very likely be a central defense raised by Progress in each and every case, when the users seek to either implead Progress or point to the "empty chair" in those cases where Progress is not already a defendant.[3]

        **b.**    **Parties arguing against centralization misread § 1407 and misapply *Accellion*.**

Oppositions to centralization contending that tag-along Actions that do <u>not</u> specifically name Progress or PBI as a defendant cannot be centralized undermine the purpose of 28 U.S.C. § 1407. That certain customers of Progress are named as sole defendants in some actions (such as Johns Hopkins or TIAA in some, but not all, cases against those defendants) or co-defendants in others (with PBI and/or Progress), and that different parties may be subject to different theories of

---

[2] Plaintffs note that the Plaintiff Jose Soto, citing an expert declaration, opposes consolidation by arguing that Progress hands off to users control of the security features offered by the MOVEit software and puts the burden on those users to perform regular security audits that would have easily prevented hackers from exploiting the MOVEit vulnerability. Thus, the argument goes, focus should be on the users and not Progress. *See generally* Dkt. No. 240. This argument against consolidation is not well taken for at least three reasons. *First*, the expert's opinion is obviously untested and, therefore, the Panel should accord it no weight. *Second*, even if the opinion were potentially viable, whether users should have taken certain precautions that would have been effective is the type of common factual question that should be uniformly addressed by a transferee court. *Third*, Mr. Soto's argument ignores <u>the</u> critical fact that should not be overlooked: the MOVEit software itself had a vulnerability (as even Mr. Soto's expert acknowledges). It is the root, common cause of all MOVEit data breaches, and discovery into that vulnerability will be needed in all cases, without regard to what users purportedly did or did not do to protect against the vulnerability.

[3] Other defendants will undoubtedly raise as a defense Progress's conduct as a cause or contributing cause or factor to the data breaches. As such, the facts of all these Related Actions are connected and intertwined, which supports centralization.

liability where Progress is absent, do not militate against centralization because § 1407 does not require that all issues be common across all parties. *See, e.g.,* 28 U.S.C. § 1407(a) ("When all civil actions involving <u>one</u> or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.") (emphasis added); *In re KeyBank*, 2023 WL 1811824, at *1; *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d at 1353-54 ("Section 1407 does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of additional facts is not significant where the actions arise from a common factual core"; ordering transfer and centralization, recognizing that a "single, multi-defendant MDL" is "necessary to ensure the just and efficient conduct of this litigation"); *In re Uber Tech., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018); *In re Sonic Corp. Customer Data Sec. Breach Litig.,* 276 F. Supp.3d 1382, 1383 (J.P.M.L. 2017); *see also Joint Response of Plaintiffs Mitchell, Guillory-Callier, and Deutsch* [ECF Doc. 77] at 4 (complaints naming PBI alone also should be transferred); *id*. at 6 (cases not naming Progress should be transferred because "they nevertheless concern the instant MOVEit Data Breach").

This Panel has previously explained[4] that the focus is on whether one or more key issues

---

[4] *See, e.g., In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig*., 201 F. Supp. 3d 1375, 1376 (J.P.M.L. 2016) ("Although the advocates of separate MDLs have identified certain product-specific issues, Section 1407 does not require a complete identity of factual issues or parties as a prerequisite to transfer, and the presence of additional facts is not significant when the actions arise from a common factual core. We are confident that the transferee judge can accommodate any issues involving the different products and defendants, including confidentiality and defendant-specific resolutions, in a manner that guarantees the just and efficient resolution of all cases."); *In re: fairlife Milk Products Marketing and Sales Practices Litig.*, MDL No. 2909, ECF No. 73, Transfer Order at 1 ("Plaintiff is correct that her allegations differ from those asserted by plaintiffs in the MDL—she seeks to represent a putative class of purchasers of Fair Oaks' milk products, as opposed to purchasers of fairlife, LLC's milk products. These differences, though, are outweighed by the similarities between Honeycutt and the actions in the MDL.").

of fact overlap, which clearly happens here.  Factual issues regarding MOVEit's vulnerability, how the cybercriminals accessed and exfiltrated data, and Progress's response thereto (which affected all the various defendants) are implicated across all the cases.  *See, e.g., In re KeyBank*, 2023 WL 1811824, at *1-2; *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d at 1353; *In re Uber Tech., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d at 1354-55.  That some of Progress's users are named as sole defendants and that there are other individualized issues regarding any attempt to shift liability onto entities downstream from Progress does not defeat the efficiencies to be gained from coordination.  *See, e.g., In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d at 1353-54; *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,* 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019); *In re Uber Tech., Inc., Data Sec. Breach Litig.*, 304 F. Supp. at 1354-55.  In every action, the MOVEit software is the hub of the wheel.  Indeed, not one party in any of the Related Actions disputes that all the actions are centrally related or tied to the May 2023 cyberattack and data exfiltration from the MOVEit file transfer software.

Oppositions to centralization all cite *In re Accellion, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372 , 1373 (J.P.M.L 2021), where the Panel denied centralization "given the small number of involved courts and the preference of most parties to informally coordinate." *Id*.  In *Accellion*, the actions were pending in just <u>three courts</u> before three judges, and <u>most</u> parties preferred informal coordination over centralization.  *Id.*[5]  But this case is not like *Accellion*, save for the fact that both groups of actions involve a data breach.  *First*, most parties here support

---

[5] *Accellion* involved only 26 actions and potential tag-along actions; nine named only Accellion as the Defendant; ten named only one Accellion client; and seven were multi-defendant actions naming Accellion and one of its Clients (Kroger, Flagstar Bank, or potential tag-along defendants Health net of California, Inc. and Health net , L.L.C.)  *See id.*

11

centralization and the advantages and efficiencies that it provides and do not believe that informal coordination will work. The Panel has previously found that where many parties—and especially plaintiffs—do not support §1404 centralization or informal coordination, it is doomed to failure, and §1407 transfer and consolidation is preferred. *See In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.,* 619 F. Supp. 3d 1349, 1351 (J.P.M.L. 2022) ("Considering the number of involved districts, the wholesale absence of any transfer activity, and the potential tag-along actions, we find that transfer under Section 1404 or the first to file rule does not provide a reasonable prospect for eliminating the multidistrict character of this litigation"); *see also In re Natrol, Inc., Glucosamine/ Chondroitin Mktg. & Sales Practices Litig.,* 26 F. Supp. 3d 1392, 1393 (J.P.M.L. 2014).

The *second* factor making *Accellion* inapposite is the sprawling nature of the Related Actions here. The MOVEit breach is one of the biggest, if not the biggest, data breach to result in litigation, impacting an estimated 60 million consumers and patients and hundreds if not thousands of companies.[6] Currently, there are at least 81 MOVEit breach class actions filed across 18 districts, of which 43 name Progress as a sole or co-defendant, and many more cases are expected to be filed over the next year as companies continue to send breach notices to consumers. In contrast again, *Accellion* was much smaller in scope with actions pending in just three courts. The number of involved districts, the geographical dispersion thereof, the number of plaintiffs' counsel, and varying combinations of defendants render informal coordination an impracticable alternative to 1407 centralization. *See, e.g., In re Uber Tech., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d at 1354; *In re Equifax, Inc., Customer Sec. Data Breach Litig.*, 289 F. Supp. 3d 1322, 1325

---

[6] https://techcrunch.com/2023/08/25/moveit-mass-hack-by-the-numbers/ (last visited Sept. 19, 2023)

(J.P.M.L. 2017). The MOVEit software is the common touchstone of every claim, and every defendant who failed to prevent the data breach. Because numerous common issues of fact exist among these Actions, the first element of the transfer analysis under Section 1407 is satisfied.

    **2.    Consolidating the Related Actions will further the convenience of the parties and the witnesses.**

Consolidating the Related Actions likewise satisfies the second requirement of Section 1407 because it will serve the convenience of the parties and witnesses. Discovery in all Related Actions will necessarily focus on documents, witnesses and other evidence pertaining to Massachusetts Defendant Progress's testing, development, sale, and maintenance of the MOVEit software and Progress's knowledge about any vulnerabilities through which hackers could compromise the software and steal PII. These subjects are likely to be complex and technical and will require substantial discovery. Because all of these actions arise from a common core of factual allegations, there is a strong likelihood of duplicative discovery demands and redundant depositions. Consolidation will promote the convenience of the parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and the potential for inconsistent rulings, including determinations on class certification. *See, e.g.*, *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d at 1353 ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary."); *In re Pilot Flying J Fuel Rebate Contract Litig.,* 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of [the defendant's] officers and employees and duplicative document discovery regarding the alleged scheme."); *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978) ("[Plaintiffs] will have to depose many of the same witnesses, examine many of the same documents, and make many similar pretrial motions in order to prove their . . . allegations.

The benefits of having a single judge supervise this pretrial activity are obvious."). Coordination will also enable a single District Judge to establish a single pretrial schedule, thereby minimizing inconvenience to witnesses and expense to parties.

Absent transfer, the parties and witnesses are at risk of crisscrossing the country for repetitive and duplicative depositions, hearings, and other proceedings. Moreover, different judges would have to resolve many of the same pretrial issues and decide similar motions, potentially including certification of competing class actions (should those cases survive dismissal). *See, e.g.,* King Compl. ¶ 126 (putative nationwide class of individuals seeking relief against Genworth); Anastasio Am. Compl. (ECF Doc. 10 in 1:23-cv-11442 (D. Mass.)) ¶ 161 (similar Genworth-specific subclass). Thus, centralization "will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary." *E.g., In re T-Mobile 2022 Customer Data Sec. Breach Litig*, 2023 WL 3829244, at *1.

### 3. Transfer and consolidation will promote just and efficient conduct of the Related Actions.

For these same reasons, transfer and coordination would also promote the just and efficient adjudication of the Related Actions. The Related Actions all raise common questions of fact and law. Plaintiffs in each action will seek to depose many of the same individuals and request production of similar documents. As discussed above, informal coordination is impracticable. The failure to consolidate these actions would, therefore, result in unnecessary and duplicative discovery; witnesses would have to appear for multiple depositions; and Defendants would have to negotiate and produce multiple sets of overlapping documents. Consolidation and coordination of the actions avoids this needless waste of resources and confer benefits upon both Plaintiffs and Defendants. *See, e.g,, In re Neurontin Mktg. & Sales Pracs. Litig*., 342 F. Supp. 2d 1350, 1351

(J.P.M.L. 2004); *In re Ephedra Prod. Liab. Litig.,* 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004) (supporting consolidation to avoid the possibility of inconsistent rulings (including inconsistent determinations on class certification) and duplicative discovery, as well needless taxation on the judicial system); *In re Eur. Rail Pass Antitrust Litig.,* MDL No. 1386, 2001 WL 587855, at *1 (J.P.M.L. Feb. 7, 2001) (transferring related actions to single district to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary").

**B.   The Related Actions should be transferred to the District of Massachusetts for coordinated or consolidated pretrial proceedings.**

In selecting a transferee district, the Panel considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." MANUAL ON COMPLEX LITIGATION § 20.131 (4th ed. 2004).[7] The balance of these factors weighs in favor of transferring the related cases to the District of Massachusetts—the epicenter giving rise to all Plaintiffs' claims as well as defenses to those claims.

**1.   The District of Massachusetts has the most pending Actions and is likely to be the location with the most evidence and the largest number of witnesses.**

The District of Massachusetts has more pending related actions than any other district. *See In re Covidien Hernia Mesh Prods. Liab. Litig.*, 607 F. Supp. 3d 1356, 1358 (J.P.M.L. 2022) (finding District of Massachusetts is the appropriate transferee district because most cases were pending in the district, where defendant was headquartered); *In re Zofran (Ondansetron) Prod.*

---

[7] The case progression and discovery occurrence factors favor no district because the cases were all filed in the last two months and, therefore, have not progressed.

*Liab. Litig.,* 138 F. Supp. 3d 1381 (J.P.M.L. 2015) (similar selection of District of Massachusetts); *see also, e.g., In re Tepezza Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 3079, 2023 WL 3829248, at *2 (J.P.M.L. June 2, 2023) (selecting transferee court with the most pending actions). Massachusetts ostensibly will remain a focal point for new filings given Progress's central role in these cases and headquarters in the district. Centralization should occur in Massachusetts as a result. *See, e.g., In re KeyBank*, 2023 WL 1811824, at *2 (selecting transferee district because, inter alia, "[f]ive of the ten actions [are] pending" there).

The District of Massachusetts is also favored because it is the site of the occurrence of common facts. Although Plaintiffs and putative Class Members are spread throughout the nation, Defendant Progress—the primary and most common defendant in the Related Actions—has its headquarters in the District of Massachusetts where most of the discovery will necessarily focus. The Panel has frequently highlighted the importance of factors such as the defendant's location, the locations of relevant documents, and the centrality of the location for the convenience of the parties and the location of witnesses. The Panel has found relevant and determinative in the data security context (and a range of others), "relevant documents and witnesses are likely to be located [in Massachusetts]" because Progress— whose software is at the heart of this litigation—is headquartered there. *In re Samsung Customer Data Sec. Breach Litig.*, MDL No. 3055, 2023 WL 1811247, at *2 (J.P.M.L. Feb. 1, 2023) (transferring actions to district where defendant was headquartered and "witnesses and other evidence likely will be found"); *In re KeyBank*, 2023 WL 1811824, at *2 (similar); *In re Covidien,* 607 F. Supp. 3d at 1358 (relying on defendant's Massachusetts headquarters); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig*, 410 F.Supp. 3d at 1354 (transferring actions to district where defendants "have their headquarters [or are] located nearby"); *In re Carbon Black Antitrust Litig.*, 277 F. Supp. 2d 1380,

16

1381 (J.P.M.L. 2003) (transferring actions to the District of Massachusetts because, inter alia, "one of the main defendants has its principal place of business in Boston, Massachusetts"); *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 935 F. Supp. 2d 1362, 1363 (J.P.M.L. 2013) (finding that District of Massachusetts "stands out as an appropriate transferee forum" because defendant Fresenius located in Massachusetts and "relevant witnesses and documentary evidence common to all the actions are likely to be found there"); *ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 410 F. Supp. 3d 1357, 1360 (J.P.M.L. 2019) (finding Central District of California to be appropriate transferee forum because several defendants are headquartered there and the relevant documents and witnesses likely will be found there); *In re Kaplan Higher Educ. Corp.*, 626 F. Supp. 2d 1323, 1324 (J.P.M.L. 2009) ("We are persuaded that the Southern District of Florida is an appropriate transferee forum[,] where witnesses and documents may be found, inasmuch as Kaplan maintains a headquarters and a place of business there."); *In re Chocolate Confectionary Antitrust Litig.*, 542 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008) (similar). Having the litigation nearest to the defendant with the most discoverable information and most relevant witnesses will promote efficiency. Indeed, defendants PBI and The Berwyn Group, which are headquartered in Minnesota and are defendants in many actions, also favor transfer to the District of Massachusetts because Defendant Progress "is likely to be the target of discovery in all actions, and is already a party in most." ECF No. 86 at 7. And Progress itself favors centralization in Massachusetts.

    **2.**    **The District of Massachusetts has a favorable caseload and experienced jurists and is a convenient location.**

The District of Massachusetts is a major metropolitan court, its judges are well-equipped to manage complex class actions and MDLs, and the district "has the necessary judicial resources and expertise to efficiently manage this litigation." *In re Fresenius Granuflo/Naturalyte Dialysate*

17

*Prods. Liab. Litig.*, 935 F. Supp. 2d at 1363.  The District of Massachusetts is not overtaxed with other MDL dockets, as it has five MDL dockets pending compared to six for the District of Minnesota and seventeen for the Northern District of California as of July 17, 2023.  *See* [https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-17-2023.pdf](https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-17-2023.pdf).  And the District of Massachusetts has a manageable caseload on a relative basis.  Of the 583,543 cases pending in federal district courts nationwide as of March 31, 2023, only 3,291—or approximately ½ percent—are pending in the District of Massachusetts.  *See* [https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2023/03/31](https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2023/03/31).  Twenty-seven districts have more pending cases.  *Id.*  Indeed, of the districts hosting Related Actions, the District of Massachusetts has among the fewest cases.  *Id.* (Central District of California, 10,270 cases; Northern District of California, 12,746 cases; Northern District of Illinois, 9,946 cases; Eastern District of Louisiana, 16,423 cases; District of Maryland, 4,047 cases; District of Minnesota, 7,524 cases; District of New Jersey, 62,015 cases).

Further, Boston is a major international airline hub that is reachable by direct flights from most major U.S. cities, making travel to and from Boston convenient.  The federal courthouse is conveniently located approximately 15-20 minutes' drive from the airport, and there are ample hotel accommodations within easy walking distance of the courthouse.  There is no question that the District of Massachusetts "is an easily accessible district for this nationwide litigation." *In re Evenflo Co., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 466 F. Supp. 3d 1384, 1385 (J.P.M.L. 2020); *accord In re: Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 999 F. Supp. 2d 1383, 1384 (J.P.M.L. 2014) (noting that the District of Massachusetts "offers a forum that is both convenient and accessible for the parties and witnesses, particularly for the numerous defendants that are based along the East Coast").

IV.     CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Panel transfer the Related Actions and any subsequently filed cases raising similar claims to the District of Massachusetts for coordinated pretrial proceedings.

Dated:  September 19, 2023.          Respectfully submitted,

GOLDENBERG SCHNEIDER, LPA

*/s/ Jeffrey S. Goldenberg*
Jeffrey S. Goldenberg
Todd Naylor
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Tel: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

Kristen A. Johnson
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Square, 5th Floor
Boston, Massachusetts 02109
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
kristen@hbsslaw.com

Steve W. Berman
Sean R. Matt
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

Charles Schaffer
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

cschaffer@lfsblaw.com

Joseph M. Lyon, Esq.
THE LYON FIRM, LLC
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
Facsimile: (513) 766-9011
jlyon@thelyonfirm.com

*Attorneys for Plaintiffs Casey, McDaniel, Cruciata, Hopkins, Arden, Allen, Kennedy, Daniels, Smiley, Cooper, and Marshall*