# EXHIBIT  7

JD4,NDISPO

# U.S. District Court - District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:23-cv-02309-CNS-MDB

Torres v. State of Colorado ex rel. et al                    Date Filed: 09/08/2023
Assigned to: Judge Charlotte N. Sweeney                      Jury Demand: Plaintiff
Referred to: Magistrate Judge Maritza Dominguez Braswell     Nature of Suit: 360 P.I.: Other
Cause: 28:1332 Diversity-Personal Injury                     Jurisdiction: Diversity

**Plaintiff**

**Jorge A. Torres**                    represented by   **William Bernard Federman**
                                                        Federman & Sherwood
                                                        10205 North Pennsylvania Avenue
                                                        Oklahoma City, OK 73120
                                                        405-235-1560
                                                        Fax: 405-239-2112
                                                        Email: wbf@federmanlaw.com
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**State of Colorado ex rel.**

**Defendant**

**Colorado Department of Health Care Policy & Financing**

**Defendant**

**International Business Machines Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/08/2023 | 1 | COMPLAINT against Colorado Department of Health Care Policy & Financing, International Business Machines Corporation, State of Colorado ex rel. (Filing fee $ 402,Receipt Number ACODC-9285348)Attorney William Bernard Federman added to party Jorge A. Torres(pty:pla), filed by Jorge A. Torres. (Attachments: # 1 Exhibit Notice Letter, # 2 Civil Cover Sheet Civil Cover Sheet)(Federman, William) (Entered: 09/08/2023) |
| 09/08/2023 | 2 | Case assigned to Judge Charlotte N. Sweeney and drawn to Magistrate Judge Maritza Dominguez Braswell. Text Only Entry (efoga, ) (Entered: 09/11/2023) |
| 09/11/2023 | 3 | Magistrate Judge consent form issued pursuant to 28 U.S.C. 636(c). No summons issued. (efoga, ) (Entered: 09/11/2023) |
| 09/11/2023 | 4 | ORDER REFERRING CASE to Magistrate Judge Maritza Dominguez Braswell for **non-dispositive matters**. Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b), this case is referred to the assigned United States Magistrate Judge to (1) convene a scheduling conference under Fed. R. Civ. P. 16(b) and enter a scheduling order meeting the requirements of Local Civ. R. 16.2, (2) conduct such status conferences and issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause, (3) hear and determine pretrial matters, including discovery and other non-dispositive motions, (4) pursuant to Local Civ. R. 16.6 and at the discretion of the Magistrate Judge, convene such early neutral evaluation and/or settlement conferences and direct related procedures as may facilitate resolution of this case without the necessity of a motion or prior authorization of the undersigned. By Judge Charlotte N. Sweeney on 9/11/23. Text Only Entry (jdyne) (Entered: 09/11/2023) |
| 09/12/2023 | 5 | ORDER SETTING INITIAL CASE DEADLINES. Proposed Scheduling Order due 12/6/2023. By Magistrate Judge Maritza Dominguez Braswell on 9/12/2023. (evaug) (Entered: 09/12/2023) |

**PACER Service Center**

| **Transaction Receipt** | | | |
|---|---|---|---|
| 09/18/2023 12:40:41 | | | |
| **PACER Login:** | sharedlogin | **Client Code:** | 999999-999999 |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-02309-CNS-MDB |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

| DISTRICT COURT, DENVER COUNTY, COLORADO | |
|---|---|
| 520 W Colfax, Ave. <br> Denver Co, 80204 | |
| **Plaintiff:** <br><br>     Jorge A. Torres <br><br> v. <br><br> **Defendants:** <br><br>     State of Colorado *ex rel.*, Colorado Department of Health Care Policy & Financing; and International Business Machines Corporation. | <br><br><br><br><br><br><br><br><br><br> ▲ **COURT USE ONLY** ▲ |
| Attorney: <br><br>     William B. Federman <br>     **FEDERMAN & SHERWOOD** <br>     10205 N. Pennsylvania Ave <br>     Oklahoma City, OK 73120 <br>     Phone: (405)235-1560 <br>     wbf@federmanlaw.com | Case Number: <br><br> Div.:          Ctrm.: |
| **CLASS ACTION COMPLAINT** | |

Plaintiff Jorge A. Torres, individually and on behalf of all others similarly situated, for his Class Action Complaint, brings this action against Defendants State of Colorado *ex rel.*, Colorado Department of Health Care Policy & Financing ("CO HCPF") and International Business Machines Corporation ("IBM") based on personal knowledge and the investigation of counsel and alleges as follows:

## I.  INTRODUCTION

1.  On May 28, 2023, an unknown actor gained access to files CO HCPF's files that were saved on IBM's MOVEit server. As a result, Plaintiff and the Class Members (as further

defined below) have had their personal identifiable information ("PII")[1] and protected health information ("PHI") exposed (the "Data Breach"). It is believed that the well-known Russian cybergang, CL0P ("Clop") is the source of the attack.[2]

2.       In carrying out its business, CO HCPF obtains, collects, uses, and derives a benefit from the PII and PHI of Plaintiff and the Class. As such, CO HCPF assumed the legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

3.       In carrying out its business, CO HCPF shared Plaintiff and the Class Members' PII and PHI with its vendor IBM.

4.       On May 31, 2023, Defendants became aware of a security vulnerability impacting the MOVEit Secure File Transfer server that it used.

5.       Defendants launched an investigation into the matter, and, by June 13, 2023, had identified the breach files. The investigation confirmed that CO HCPF's files located on IBM's MOVEit server, containing confidential and personal information, had been accessed without authorization on May 28, 2023.

6.       According to CO HCPF, the PII and PHI exposed in the Breach included names, Social Security numbers, Medicaid ID numbers, Medicare ID numbers, dates of birth, home addresses, and other contract information, demographic or income information, clinical medical

---

[1] Personal identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.
[2] https://securityintelligence.com/news/the-moveit-breach-impact-and-fallout-how-can-you-respond/.

information (such as diagnosis/condition, lab results, medication, or other treatment information), and health insurance information (collectively "Personal Information").

7.      Around August 11, 2023, CO HCPF began sending out notices to Plaintiff and Class Members of the Data Breach.

8.      Due to Defendants' negligence, cybercriminals obtained everything they need to commit identity theft and wreak havoc on the financial and personal lives of thousands of individuals.

9.      This class action seeks to redress Defendants' unlawful, willful and wanton failure to protect the personal identifiable information of approximately 4,091,794 individuals that was exposed in a major data breach of CO HCPF's files saved on IBM's MOVEit server in violation of their legal obligations.[3]

10.     For the rest of their lives, Plaintiff and the Class Members will have to deal with the danger of identity thieves possessing and misusing their Personal Information. Plaintiff and Class Members will have to spend time responding to the Breach and are at an immediate, imminent, and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach. Plaintiff and Class Members have incurred and/or will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, deprivation of the value of their Personal Information, loss of privacy, and/or additional damages as described below.

---

[3] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/5b434968-ff60-47f4-ac52-fb7946cf3bc6.shtml.

11.     Defendants betrayed the trust of Plaintiff and the other Class Members by failing to properly safeguard and protect their personal identifiable information and thereby enabling cybercriminals to steal such valuable and sensitive information.

12.     Plaintiff brings this action individually and on behalf of the Class, seeking remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, injunctive relief, reasonable attorney fees and costs, and all other remedies this Court deems proper.

## II.     THE PARTIES

13.     Plaintiff Jorge A. Torres is a citizen of Colorado Springs, Colorado.

14.     Colorado Department of Health Care Policy & Financing is a Colorado state entity with its principal place of business located in Denver, Colorado.

15.     International Business Machines Corporation is incorporated in New York and has its headquarters in Armonk, New York. IBM has locations in and conducts substantial business in Denver, Colorado.

16.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

17.     All of Plaintiff's claims stated herein are asserted against Defendants and any of their owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III.     JURISDICTION AND VENUE

18.     This Court has personal jurisdiction over Defendants because both Defendants conduct substantial business in this District, maintain sufficient minimum contacts with this District, and collected and/or stored the Personal Information of Plaintiff and Class Members in this District. CO HCPF is also a citizen of the State of Colorado.

19.     Venue is proper in this District because Defendants operate in this District and a substantial part of the events or omissions giving rise to Plaintiff and the Class Members' claims occurred in this District, including Defendants collecting and/or storing the PII of Plaintiff and Class Members.

## IV.     FACTUAL ALLEGATIONS

*Background*

20.     CO HCPF administers Health First Colorado (Colorado's Medicaid Program), Child Health Plan Plus, and other health care programs. In providing these services, CO HCPF requires the Personal Information of Plaintiff and the Class Members.

21.     IBM is an American multinational technology corporation that specializes in hardware, middleware, and software, and provides hosting and consulting services in areas ranging from mainframe computers to nanotechnology.

22.     CO HCPF used IBM's services in the course and scope of its business. In doing so, CO HCPF shared Plaintiff and the Class Members' Personal Information in order to obtain IBM's services.

23.     Plaintiff and Class Members relied on these sophisticated Defendants to keep their Personal Information confidential and securely maintained, to use this information for business

purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their Personal Information.

24.     Defendants had a duty to adopt reasonable measures to protect the Personal Information of Plaintiff and the Class Members from involuntary disclosure to third parties.

***Defendants' Data Breach***

25.     IBM used the MOVEit Software system to transfer, store, and collect Plaintiff and the Class Members Personal Information.

26.     The MOVEit software had a critical zero-day flaw.[4] This critical zero-day flaw led to a wave of cyber-attacks against organizations who collected the sensitive PII/PHI.[5] Multiple organizations have now confirmed data breaches, including Johns Hopkins.[6]

27.     On May 28, 2023, due to IBM's failure to adequately secure the Personal Information saved on the MOVEit server, CO HCPF's failure to adequately oversee and ensure IBM's security system, and Defendants' failure to delete Personal Information beyond its use date, an unknown hacker gained access to the IBM's MOVEit server and acquired certain files and information including Plaintiff and Class Members' Personal Information.

28.     Defendants first received notice of the MOVEit's critical vulnerability on May 31, 2023. Despite this, Defendants negligently delayed in responding to the notice and notifying Plaintiff and Class Members of the Data Breach.

---

[4] "A zero-day vulnerability is a vulnerability in a system or device that has been disclosed but is not yet patched. An exploit that attacks a zero-day vulnerability is called a zero-day exploit." *See* https://www.trendmicro.com/vinfo/us/security/definition/zero-day-vulnerability.

[5] *See* https://www.techtarget.com/searchsecurity/news/366539672/MoveIt-Transfer-flaw-leads-to-wave-of-data-breach-disclosures

[6] *Id.*

29.     By June 13, 2023, Defendants knew what information had been breached.

30.     Yet, it wasn't until August 11, 2023 that CO HCPF started sending Plaintiff and Class Members a notice of the Data Breach ("Notice of Data Breach"). Attached hereto as Exhibit A.

31.     CO HCPF;. admitted in the Notice of Data Breach that an unauthorized actor accessed sensitive information about Plaintiff and Class Members. *Id.*

32.     The details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur have not been shared with regulators or Plaintiff and Class Members, who retain a vested interest in ensuring that their information remains protected.

33.     The unencrypted Personal Information of Plaintiff and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed Personal Information for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the Personal Information of Plaintiff and Class Members.

***The Data Breach was Foreseeable***

34.     Defendants were negligent and did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of Personal Information for Plaintiff and Class Members.

35.     Because Defendants had a duty to protect Plaintiff's and Class Members' Personal Information, Defendants should have known through readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

36.     In the years immediately preceding the Data Breach, Defendants knew or should have known that their servers were a target for cybersecurity attacks because warnings were readily available and accessible via the internet.

37.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[7]

38.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[8]

39.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted

---

[7] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations (Oct. 2, 2019) (emphasis added), *available at* https://www.ic3.gov/Media/Y2019/PSA191002 (last visited Jan. 25, 2022).

[8] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020) (emphasis added), available at https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited Jan. 25, 2022).

their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[9]

40.     This readily available and accessible information confirms that, prior to the Data Breach, Defendants knew or should have known that: (i) cybercriminals were targeting big companies such as Defendants, (ii) cybercriminals were ferociously aggressive in their pursuit of companies in possession of significant sensitive information such as Defendants, (iii) cybercriminals were leaking corporate information on dark web portals, and (iv) cybercriminals' tactics included threatening to release stolen data.

41.     Considering the information readily available and accessible on the internet before the Data Breach, Defendants, having elected to store the unencrypted Personal Information of Plaintiff and Class Members in an Internet-accessible environment, had reason to be on guard for the exfiltration of the Personal Information, and Defendants' type of business had cause to be particularly on guard against such an attack.

42.     Prior to the Data Breach, Defendants knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' Personal Information could be accessed, exfiltrated, and published as the result of a cyberattack.

43.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted the Social Security numbers and other sensitive data elements within the Personal Information to protect against their publication and misuse in the event of a cyberattack.

_____

[9] U.S. CISA, Ransomware Guide – September 2020, available at https://www.cisa.gov/sites/default/files/publications/CISA_MS-ISAC_Ransomware%20Guide_S508C.pdf (last visited Jan. 25, 2022).

*Defendants Acquires, Collects, and Stores the PII and PHI of Plaintiff and Class Members*

44.     Defendants acquired, collected, and stored the Personal Information of Plaintiff and Class Members.

45.     Plaintiff and other Members of the Class entrusted their Personal Information to CO HCPF who entrusted to IBM access and control over the highly sensitive Personal Information.

46.     By obtaining, collecting, and storing the Personal Information of Plaintiff and Class Members, Defendants assumed legal and equitable duties and knew or should have known that it was responsible for protecting the Personal Information from disclosure.

47.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Personal Information and relied on Defendants to keep their Personal Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

48.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[10]

49.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendants could and should have implemented, or ensured their vendors implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy

---

[10] See How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited July 17, 2023).

Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[11]

50.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendants could and should have implemented, or ensured their vendors implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer.** Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks. . . .

- **Use caution with links and when entering website addresses.** Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net). . . .

- **Open email attachments with caution.** Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe.** Check a website's security to ensure the information you submit is encrypted before you provide it. . . .

- **Verify email senders.** If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself.** Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you

---

[11] *Id.* at 3-4.

when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs.** Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic. . . .[12]

51.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendants could and should have implemented, or ensured their vendors implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**
- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; Remove privilege credentials

**Thoroughly investigate and remediate alerts**
- Prioritize and treat commodity malware infections as potential full comprise

**Include IT Pros in security discussions**
- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely

**Build credential hygiene**
- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords
- Apply principle of least-privilege

**Monitor for adversarial activities**
- Hunt for brute force attempts
- Monitor for cleanup of Event logs
- Analyze logon events

**Harden infrastructure**
- Use Windows Defender Firewall

---

[12] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://www.cisa.gov/news-events/news/protecting-against-ransomware (last visited July 17, 2023).

- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[13]

52.  To prevent zero-day attacks, Defendants could and should have implemented, or ensured their vendors implemented, as recommended by Security Intelligence, the following:

- **Patch management:** Formal patch management can help security teams remain aware of critical patches.
- **Vulnerability management:** Vulnerability assessments and penetration tests can help companies detect zero-day vulnerabilities before adversaries find them.
- **Attack surface management (ASM):** ASM enables security teams to identify all network assets and scan them for vulnerabilities. ASM tools assess the network from an attacker's perspective, focusing on how threat actors might try to exploit assets.
- **Threat intelligence:** Security researchers are often the first to identify zero-day vulnerabilities. Organizations that receive threat intelligence updates may be informed about zero-day vulnerabilities sooner.
- **Anomaly-based detection methods:** Machine learning tools can spot suspicious activity in real-time. Common anomaly-based detection solutions include user and entity behavior analytics (UEBA), extended detection and response (XDR) platforms, endpoint detection and response (EDR) tools and some intrusion detection and intrusion prevention systems.[14]

53.  Given that Defendants were storing the Personal Information of other individuals, Defendants could and should have implemented all of the above measures, and ensured that their vendors did the same, to prevent and detect ransomware attacks.

---

[13] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a- preventable-disaster/ (last visited July 17, 2023).

[14] https://securityintelligence.com/news/the-moveit-breach-impact-and-fallout-how-can-you-respond/.

54. Further, Defendants could have ensured that they, and their vendors, were not storing Personal Information beyond its use date or other dates required by law.

55. The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the Personal Information of Plaintiff and Class Members.

***Securing Personal Information and Preventing Breaches***

56. Defendants could have prevented this Data Breach by properly securing and encrypting the folders, files, and or data fields containing the Personal Information of Plaintiff and Class Members, and ensuring the MOVEit software properly secured and encrypted the folders, files, and/or data fields containing the Personal Information of Plaintiff and Class Members. Alternatively, Defendants could have destroyed the data it no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

57. Defendants' negligence in safeguarding the Personal Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

58. Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the Personal Information of Plaintiff and Class Members from being compromised.

59. The ramifications of Defendants' failure to keep secure the Personal Information of Plaintiff and Class Members are long lasting and severe. Once Personal Information is stolen,

particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

***Defendant's Response to the Data Breach is Inadequate***

60.     Defendants were negligent and failed to inform Plaintiff and the Class Members of the Data Breach in time for them to protect themselves from identity theft.

61.     Defendants admitted that it learned of a possible data breach as early as May 31, 2023. Yet, Defendants did not start notifying affected individuals until almost a year later on or around August 2023.

62.     During these intervals, the cybercriminals have had the opportunity to exploit the Plaintiff and the Class Member's Personal Information while Defendants were secretly investigating the Data Breach.

***Value of PII and PHI***

63.     The PII and PHI of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[15] Experian reports that a stolen credit or

---

[15] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed July 17, 2023).

debit card number can sell for \$5 to \$110 on the dark web.[16] Criminals can also purchase access to entire company data breaches from \$900 to \$4,500.[17]

64.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

65.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[18]

66.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

67.     One such example of criminals using PII for profit is the development of "Fullz" packages.

68.     Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of

---

[16] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed July 17, 2023).

[17] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed July 17, 2023).

[18] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed July 17, 2023).

accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

69.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

70.     That is exactly what is happening to Plaintiff and members of the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen PII and PHI is being misused, and that such misuse is fairly traceable to the Data Breach.

***Plaintiff's Experience***

71.     Plaintiff entrusted his Personal Information to CO HCPF as required by CO HCPF to obtain Medicare, Medicaid, and other health care services in Colorado. CO HCPF then gave IBM Plaintiff's Personal Information in order to use its services.

72.     Plaintiff received Defendant's Notice of Data Breach dated August 11, 2023. The Notice stated that Plaintiff's Personal Information, including his names, Social Security numbers, Medicaid ID numbers, Medicare ID numbers, dates of birth, home addresses, and other contract information, demographic or income information, clinical medical information (such as diagnosis/condition, lab results, medication, or other treatment information), and health insurance information.

73.     As a result of the Data Breach, Plaintiff's sensitive information may have been accessed and/or acquired by an unauthorized actor. Defendants have not yet provided definitive findings for Plaintiff to know.

74.     As a result of the Data Breach, Plaintiff has spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

75.     As a result of the Data Breach, the confidentiality of Plaintiff's sensitive information has been irreparably harmed. For the rests of his life, Plaintiff will have to worry about when and how his sensitive information may be shared or used to his detriment

76.     Additionally, Plaintiff is very careful about not sharing his sensitive Personal Information. He has never knowingly transmitted unencrypted sensitive Personal Information over the internet or any other unsecured source.

77.     Plaintiff stores any documents containing his sensitive Personal Information in safe and secure locations or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

78.     Plaintiff has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and experiences fear and anxiety and increased concern for the loss of his privacy.

79.      Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Personal Information,

especially his Social Security number and medical information, being placed in the hands of cyber criminals.

80.     Plaintiff has a continuing interest in ensuring that his Personal Information, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

***Plaintiff and the Class Face Significant Risk of Continued Identity Theft***

81.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their Personal Information that can be directly traced to Defendants.

82.     Defendants negligently disclosed the Personal Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the Personal Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Personal Information.

83.     As a result of Defendant's negligence and failure to prevent the Data Breach, Plaintiff and the Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.     The loss of the opportunity to control how their Personal Information is used;

b.     The diminution in value of their Personal Information;

c.     The compromise and continuing publication of their Personal Information;

     d.     Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

     e.     Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spend researching how to prevent, detect, contest, and recover form identity theft and fraud;

     f.     Delay in receipt of tax refund monies;

     g.     Unauthorized use of stolen Personal Information; and

     h.     The continued risk to their Personal Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Personal Information in their possession.

84.     The fraudulent activity resulting from the Data Breach may not come to light for years.

85.     There may be a time lag between when harm occurs versus when it is discovered, and also between when Personal Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[19]

---

[19] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed July 17, 2023).

86.     Defendantss negligence and failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Personal Information and take other necessary steps to mitigate the harm caused by the Data Breach

87.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Classes are incurring and will continue to incur such damages in addition to any fraudulent use of their Personal Information.

88.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data contained in Defendants' database and on IBM's MOVEit server, amounting to potentially thousands of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

89.     At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the Personal Information of Plaintiff and Class Members, including Social Security numbers and medical information, and of the foreseeable consequences that would occur if Defendants' data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

90.     To date, Defendants have offered Plaintiff and some Class Members only two (2) years of credit monitoring and identity restoration services. The offered services are inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the Personal Information at issue here.

91.     The injuries to Plaintiff and Class Members are directly and proximately caused by Defendants' negligence and failure to implement or maintain adequate data security measures for the Personal Information of Plaintiff and Class Members.

***Defendants Failed to Adhere to FTC Guidelines***

92.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendants, should employ to protect against the unlawful exposure of PII.

93.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[20] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[21]

94.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

    a.     Protect the sensitive consumer information that they keep;

    b.     Properly dispose of PII that is no longer needed;

---

[20] 17 C.F.R. § 248.201 (2013).

[21] *Id.*

      c.      Encrypt information stored on computer networks;

      d.      Understand their network's vulnerabilities; and

      e.      Implement policies to correct security problems.

95.      The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

96.      The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

97.      The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

98.      Defendants' negligence and failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff and the Class's PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

***Defendants Failed to Adhere to HIPAA Guidelines***

99.      Upon information and belief, Defendants are covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45

C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

100. Defendants are subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. § 17921; 45 C.F.R. § 106.103. HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

101. HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

102. HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information, including health information that is kept or transferred in electronic form.

103. HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

104. "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

105. HIPAA's Security Rule requires Defendants to do the following:

    a.   Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b.   Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c.   Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d.   Ensure compliance by their workforce.

106.   HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

107.   Additionally, HIPAA requires Defendants to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

108.   HIPAA and HITECH also obligate Defendants to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic PHI that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

109.   HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. §

164.530(e).

110.     HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of PHI in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

111.     HIPAA also requires the Office of Civil Rights ("OCR"), within HHS, to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[22] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[23]

112.     The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, further requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

---

[22] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html.

[23]                    https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index. html (last accessed July 11, 2023).

113.     Defendant's negligence and failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff and the Class's PHI constitutes an unfair act or practice prohibited by HIPAA.

## V.     CLASS ACTION ALLEGATIONS

114.     Plaintiff brings this nationwide class action on behalf of herself and on behalf of all others similarly situated pursuant to CRCP 23.

115.     The Class that Plaintiff seeks to represent is defined as follows:

> All individuals whose Personal Information may have been accessed and/or acquired in the Data Breach that is the subject of the Notice of Data Breach that Defendants sent to Plaintiff and Class Members on or around August 2023 (the "Class").

116.     Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

117.     Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

118.     **Numerosity:** The Class is so numerous that joinder of all members is impracticable. Defendants reported to the Maine Attorney General that 4,091,794 individuals were impacted by the Data Breach.

119.     **Commonality:** Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a.       Whether and to what extent Defendants had a duty to protect the Personal Information of Plaintiff and Class Members;

b.       Whether and to what extent Defendants had a duty to ensure that the MOVEit software was capable of adequately protecting Plaintiff and the Class Members Personal Information;

c.       Whether Defendants had duties not to disclose the Personal Information of Plaintiff and Class Members to unauthorized third parties;

d.       Whether Defendants had duties not to use the Personal Information of Plaintiff and Class Members for non-business purposes;

e.       Whether Defendants failed to adequately safeguard the Personal Information of Plaintiff and Class Members;

f.       Whether Defendants failed to ensure their vendors provided adequate cyber security;

g.       Whether Defendants were negligently in utilizing the MOVEit system and permitting the unencrypted Personal Information of vast numbers of individuals to be stored on the MOVEit network.

h.       Whether Defendants were negligent in failing to ensure their vendors adhered to reasonable retention policies, thereby greatly increasing the size of the Data Breach;

i.       Whether Defendants were negligent in failing to ensure they adhered to

reasonable retention policies, thereby greatly increasing the size of the Data Breach;

j.      Whether Defendants breached implied contractual duties to Plaintiff and Class Members to use reasonable care in protecting their Personal Information;

k.      When Defendants actually learned of the Data Breach;

l.      Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their Personal Information had been compromised;

m.      Whether Defendants violated the law by failing to promptly notify Plaintiff and Class Members that their Personal Information had been compromised;

n.      Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

o.      Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

p.      Whether Defendants engaged in unfair, unlawful, or deceptive practice by failing to safeguard the Personal Information of Plaintiff and Class Members;

q.      Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendants' wrongful conduct;

r.      Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and

s.      Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

120.    **Typicality:** Plaintiff's claims are typical of those of other Class Members because all had their Personal Information compromised as a result of the Data Breach, due to Defendants' misfeasance.

121.    **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

122.    **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

123.    **Superiority and Manageability:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the

adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

124.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

125.    The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

126.    Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

127.    Unless a Class-wide injunction is issued, Defendants may continue in its failure to properly secure the Personal Information of Class Members, Defendants may continue to refuse

to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

128.    Further, Defendants have acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to Class Members as a whole is appropriate.

129.    Likewise, particular issues under CRCP 23 are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.      Whether Defendants owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Personal Information;

b.      Whether Defendants owed a legal duty to Plaintiff and Class Members to exercise due care in selecting and hiring vendors to collect, store, use, and safeguard Plaintiff and the Class Members' Personal Information;

c.      Whether Defendants breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Personal Information;

d.      Whether Defendants breached a legal duty to Plaintiff and Class Members to exercise due care in selecting and hiring vendors to collect, store, use, and safeguard Plaintiff and the Class Members' Personal Information;

e.      Whether Defendants failed to comply with its own policies and applicable

laws, regulations, and industry standards relating to data security;

f.      Whether Defendants adequately and accurately informed Plaintiff and Class Members that their Personal Information had been compromised;

g.      Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.      Whether Defendants failed to ensure that their vendors implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.      Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Personal Information of Plaintiff and Class Members;

j.      Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to ensure that their vendors safeguarded the Personal Information of Plaintiff and Class Members and,

k.      Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendants' wrongful conduct.

## VI.      CAUSES OF ACTION

### <u>COUNT I – NEGLIGENCE</u>
**(On Behalf of Plaintiff and the Class against Defendant IBM)**

130.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

131.    Defendant solicited, gathered, and stored the Personal Information of Plaintiff and the Class as part of the operation of its business.

132.     Upon accepting and storing the Personal Information of Plaintiff and Class Members, Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

133.     Defendant had full knowledge of the sensitivity of the Personal Information, the types of harm that Plaintiff and Class members could and would suffer if the Personal Information was wrongfully disclosed, and the importance of adequate security.

134.     Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class members had no ability to protect their Personal Information that was in Defendant's possession. As such, a special relationship existed between Defendant and Plaintiff and the Class.

135.     Defendant was well aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal sensitive Personal Information.

136.     Defendant owed Plaintiff and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data.

137.     Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

138.     Defendant had duties to protect and safeguard the Personal Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Personal Information. Additional duties that Defendant owed Plaintiff and the Class include:

a.      To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' Personal Information was adequately secured from impermissible access, viewing, release, disclosure, and publication;

b.      To protect Plaintiff's and Class Members' Personal Information in its possession by using reasonable and adequate security procedures and systems;

c.      To implement processes to quickly detect a data breach, security incident, or intrusion involving their networks and servers; and

d.      To promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Personal Information.

139.      Defendant was the only one who could ensure that its systems and protocols were sufficient to protect the Personal Information that Plaintiff and the Class had entrusted to it.

140.     Defendant breached its duty of care by failing to adequately protect Plaintiff's and Class Members' Personal Information. Defendant breached its duty by, among other things:

a.  Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Personal Information in its possession;

b.  Failing to protect the Personal Information in its possession using reasonable and adequate security procedures and systems;

c.  Failing to adequately train its employees to not store Personal Information longer than absolutely necessary;

d.  Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Personal Information; and

e.  Failing to implement processes to quickly detect data breaches, security incidents, or intrusions.

141.  Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

142.  As a proximate and foreseeable result of Defendant's negligent and/or grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages.

143.  Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Personal Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Personal Information of Plaintiff and Class Members while it was within Defendant's possession and control.

144.     As a result of the Data Breach, Plaintiff and Class Members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, closely reviewing and monitoring bank accounts, credit reports, and statements sent from providers and their insurance companies and the payment for credit monitoring and identity theft prevention services.

145.     Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

146.     The damages Plaintiff and the Class have suffered and will suffer were and are the direct and proximate result of Defendant's negligent and/or grossly negligent conduct.

147.     Plaintiff has served CO HCPF with notice pursuant to Colo. Rev. Stat. § 24-10-109 and reserves the right to amend this complaint and assert claims against CO HCPF.

### COUNT II – NEGLIGENCE *PER SE*
**(On Behalf of Plaintiff and the Class against Defendant IBM)**

148.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

*Violation of the FTC Act*

149.     In addition to its duties under common law, Defendant had additional duties imposed by statute and regulations, including the duties the FTC Act. The harms which occurred as a result of Defendant's failure to observe these duties, including the loss of privacy and significant risk of identity theft, are the types of harm that these statutes and their regulations were intended to prevent.

150.     Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' Personal Information.

151.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Personal Information. The FTC publications and orders also form part of the basis of Defendant's duty in this regard.

152.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect consumers Personal Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Personal Information it obtained and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class Members.

153.     Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se* as Defendant's violation of the FTC Act establishes the duty and breach elements of negligence.

154.     Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

155.     The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

***Violation of HIPAA***

156.    Under HIPAA, Defendant had a duty to use reasonable security measures to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information."  Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

157.    Moreover, under HIPAA, Defendant had a duty to render the electronic Private Information that they maintained as unusable, unreadable, or indecipherable to unauthorized individuals. Specifically, the HIPAA Security Rule requires "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key."

158.    Plaintiff and Class members are within the class of persons that the HIPAA was intended to protect. And the injuries that Defendant inflicted on Plaintiff and Class Members are precisely the harms that HIPAA guards against. After all, the Federal Health and Human Services' Office for Civil Rights ("OCR") has pursued enforcement actions against businesses which— because of their failure to employ reasonable data security measures for PHI— caused the very same injuries that Defendant inflicted upon Plaintiff and Class Members.

159.    Under § 17932 of the Health Information Technology for Economic and Clinical Health Act ("HITECH"), Defendant had a duty to promptly notify "without unreasonable delay and in no case later than 60 calendar days after the discovery of a breach" the respective covered entities and affected persons so that the entities and persons can take action to protect themselves.

160.    Moreover, § 17932(a) of HITECH states that, "[a] covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses

unsecured protected health information (as defined in subsection (h)(1)) shall, in the case of a breach of such information that is discovered by the covered entity, notify each individual whose unsecured protected health information has been, or is reasonably believed by the covered entity to have been, accessed, acquired, or disclosed as a result of such breach."

161.     And § 17932(b) of HITECH states that, "[a] business associate of a covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses unsecured protected health information shall, following the discovery of a breach of such information, notify the covered entity of such breach. Such notice shall include the identification of each individual whose unsecured protected health information has been or is reasonably believed by the business associate to have been, accessed, acquired, or disclosed during such breach."

***Defendant's Violations Caused Plaintiff and the Class's Injuries***

162.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

163.     The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet their duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

164.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

165.     Plaintiff has served CO HCPF with notice pursuant to Colo. Rev. Stat. § 24-10-109 and reserves the right to amend this complaint and assert claims against CO HCPF.

**<u>COUNT III – INVASION OF PRIVACY</u>**
**(On Behalf of Plaintiff and the Class Against Defendant IBM)**

166.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

167.     Plaintiff and Class Members had a legitimate expectation of privacy regarding their Personal Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

168.     Defendant owed a duty to Plaintiff and Class Member to keep their Personal Information confidential.

169.     Defendant affirmatively and recklessly disclosed Plaintiff and Class Members' Personal Information to unauthorized third parties.

170.     The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff and Class Members' Personal Information is highly offensive to a reasonable person.

171.     Defendant's reckless and negligent failure to protect Plaintiff and Class Members' Personal Information constitutes an intentional interference with Plaintiff and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

172.     In failing to protect Plaintiff and Class Members' Personal Information, Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

173.     Because Defendant failed to properly safeguard Plaintiff and Class Members' Personal Information, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

174.     Defendant knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

175.     As a proximate result of Defendant's acts and omissions, Plaintiff and the Class Members' private and sensitive Personal Information was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

176.     Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Personal Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

177.     Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard Plaintiff and the Class's Personal Information.

178.     Plaintiff, on behalf of herself and Class Members, seeks injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff and Class Members' Personal Information.

179.     Plaintiff, on behalf of herself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus

prejudgment interest, and costs.

180.     Plaintiff has served CO HCPF with notice pursuant to Colo. Rev. Stat. § 24-10-109

and reserves the right to amend this complaint and assert claims against CO HCPF.

**COUNT IV – BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class Against All Defendants)**

181.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as

though fully set forth herein.

182.     By requiring Plaintiff and the Class Members Personal Information to provide

accreditation to nursing programs, Defendants entered into an implied contract in which

Defendants agreed to comply with its statutory and common law duties to protect Plaintiff and

Class Members' Personal Information. In return, Defendants considered and gave accreditation to

Plaintiff and Class Members' nursing programs.

183.     Based on this implicit understanding, Plaintiff and the Class accepted Defendants'

offers and provided their nursing programs, and by proxy Defendants, with their Personal

Information.

184.     Plaintiff and Class members would not have provided their Personal Information to

Defendant had they known that Defendants would not safeguard their Personal Information, as

promised.

185.     Plaintiff and Class members fully performed their obligations under the implied

contracts with Defendants.

186.     Defendants breached the implied contracts by failing to safeguard Plaintiff and

Class Members' Personal Information.

187.     Defendants also breached the implied contracts when it engaged in acts and/or omissions that are declared unfair trade practices by the FTC and HIPAA. These acts and omissions included (i) representing, either expressly or impliedly, that they, or their vendors, would maintain adequate data privacy and security practices and procedures to safeguard the Personal Information from unauthorized disclosures, releases, data breaches, and theft; (ii) omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class's Personal Information; and (iii) failing to disclose to Plaintiffs and the Class at the time they provided their Personal Information that Defendants', and Defendants' vendors', data security system and protocols failed to meet applicable legal and industry standards.

188.     The losses and damages Plaintiff and Class members sustained were the direct and proximate result of Defendants' breach of the implied contract with Plaintiff and Class Members.

## <u>COUNT V – BREACH OF CONFIDENCE</u>
### (On Behalf of Plaintiff and the Class Against Defendant IBM)

189.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

190.     Defendant was fully aware of the confidential nature of the Personal Information of Plaintiff and Class Members that it was provided.

191.     As alleged herein and above, Defendant's relationship with Plaintiff and the Class were governed by promises and expectations that Plaintiff and Class Members' Personal Information would be collected, stored, and protected in confidence, and would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

192.    Plaintiff and Class members provided their respective Personal Information to CO HCPF, who provided the Personal Information to IBM, with the explicit and implicit understandings that IBM would protect and not permit the Personal Information to be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

193.    Plaintiff and Class Members provided their Personal Information to CO HCPF, who provided the Personal Information to IBM, with the explicit and implicit understandings that IBM would take precautions, and ensure that its vendors took those same precautions, to protect their Personal Information from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting their networks and data systems.

194.    Defendants voluntarily received, in confidence, Plaintiff and Class members' Personal Information with the understanding that the Personal Information would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by the public or any unauthorized third parties.

195.    Due to Defendant's failure to prevent, detect, and avoid the Data Breach from occurring by, inter alia, not following best information security practices to secure Plaintiff and Class Members' Personal Information, Plaintiff and Class Members' Personal Information was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties beyond Plaintiff and Class Members' confidence, and without their express permission.

196.    As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and Class members have suffered damages as alleged herein.

197.    But for Defendant's failure to maintain and protect Plaintiff and Class Members' Personal Information in violation of the parties' understanding of confidence, their Personal Information would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the misuse of Plaintiff and Class members' Personal Information, as well as the resulting damages.

198.    The injury and harm Plaintiff and Class Members suffered and will continue to suffer was the reasonably foreseeable result of Defendant's unauthorized misuse of Plaintiff and Class members' Personal Information. Defendants knew it, and its vendor's, data systems and protocols for accepting and securing Plaintiff and Class Members' Personal Information had security and other vulnerabilities that placed Plaintiff and Class members' Personal Information in jeopardy.

199.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class members have suffered and will suffer injury, as alleged herein, including but not limited to (a) actual identity theft; (b) the compromise, publication, and/or theft of their Personal Information; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Personal Information; (d) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (e) the continued risk

to their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect Class Members' Personal Information in their continued possession; (f) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (g) the diminished value of Plaintiff and Class Members' Personal Information.

200.    Plaintiff has served CO HCPF with notice pursuant to Colo. Rev. Stat. § 24-10-109 and reserves the right to amend this complaint and assert claims against CO HCPF.

## **COUNT VI – BREACH OF FIDUCIARY DUTY**
### **(On Behalf of Plaintiff and the Class Against Defendant IBM)**

201.    Plaintiff incorporates by reference all preceding factual allegations as though fully alleged herein.

202.    A relationship existed between Plaintiff and Class Members and Defendant in which Plaintiff and the Class put their trust in Defendant to protect their Personal Information. Defendant accepted this duty and obligation when it received Plaintiff and the Class Members' Personal Information.

203.    Plaintiff and the Class Members entrusted their Personal Information to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their Personal Information for business purposes only, and refrain from disclosing their Personal Information to unauthorized third parties.

204.    Defendant knew or should have known that the failure to exercise due care in the collecting, storing, and using of individual's Personal Information involved an unreasonable risk

of harm to Plaintiff and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

205.    Defendant's fiduciary duty required it to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff and the Class's information in Defendant's possession was adequately secured and protected.

206.    Defendant also had a fiduciary duty to have procedures in place, and ensure that its vendors had also had procedures in place, to detect and prevent improper access and misuse of Plaintiff's and the Class's Personal Information. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Defendant was entrusted with Plaintiff and the Class's Personal Information.

207.    Defendant breached their fiduciary duty that they owed Plaintiff and the Class by failing to case in good faith, fairness, and honesty; by failing to act with the highest and finest loyalty; and by failing to protect the Personal Information of Plaintiff and the Class Members.

208.    Defendant's breach of fiduciary duties were a legal cause of damages to Plaintiff and the Class.

209.    But for Defendant's breach of fiduciary duty, the damage to Plaintiff and the Class would not have occurred, and the Data Breach contributed substantially to producing the damage to Plaintiff and the Class.

210.    As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff and the Class are entitled to actual, consequential, and nominal damages and injunctive relief, with amounts to be determined at trial.

211.    Plaintiff has served CO HCPF with notice pursuant to Colo. Rev. Stat. § 24-10-109 and reserves the right to amend this complaint and assert claims against CO HCPF.

**COUNT VII – UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class Against All Defendants)**

212.    Plaintiff realleges and incorporates by reference in this count all paragraphs above as if fully set forth herein and further alleges:

213.    This count is pleaded in the alternative to Breach of Implied Contract.

214.    Plaintiff and Class Members conferred a monetary benefit on Defendants by providing Defendants with their valuable Personal Information.

215.    Defendants enriched themselves by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information.

216.    Instead of providing a reasonable level of security, and ensuring that its vendors did to as well, that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

217.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendants failed

50

to implement appropriate data management and security measures that are mandated by industry standards.

218.   Defendants acquired the monetary benefit and Personal Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

219.   If Plaintiff and Class Members knew that Defendants had not secured their Personal Information, they would not have agreed to provide their Personal Information to Defendants.

220.   Plaintiff and Class Members have no adequate remedy at law.

221.   As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Personal Information is used; (iii) the compromise, publication, and/or theft of their Personal Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Personal Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Personal Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Personal Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

222.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

223.     Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendants should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendants' services.

224.     Wherefore, Plaintiff and Class Members pray for relief as set forth below.

## COUNT VIII – DECLARTORY JUDGMENT
### (On Behalf of Plaintiff and the Class Against All Defendants)

225.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

226.     Under the Declaratory Judgment Act, CRCP 57, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Further, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

227.     An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and the Class's Personal Information and whether Defendants are currently maintaining data security measures adequate to protect Plaintiff and the Class from further data breaches that compromise their Personal Information. Plaintiff alleges that Defendants' data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of her Personal Information and remains at imminent risk that further compromises of their Personal Information will occur in the future. It is unknown what specific measures and changes Defendants have undertaken in response to the Data Breach.

228.     Plaintiff and the Class have an ongoing, actionable dispute arising out of Defendants' inadequate security measures, including (i) Defendants' failure to encrypt Plaintiff's and the Class's Personal Information, including Social Security numbers and medical information, while storing it in an Internet-accessible environment, and (ii) Defendants' failure to delete Personal Information it has no reasonable need to maintain in an Internet-accessible environment, including the Social Security numbers of Plaintiff and the Class.

229.     Pursuant to its authority under the CRCP 57, this Court should enter a judgment declaring, among other things, the following:

        a.     Defendants owe a legal duty to secure the Personal Information of Plaintiff and the Class;

        b.     Defendants owe a legal duty to ensure that its vendors secure the Personal Information of Plaintiff and the Class;

        c.     Defendants continue to breach this legal duty by failing to employ reasonable measures to secure consumers' Personal Information; and

        d.     Defendants' ongoing breaches of its legal duty continue to cause Plaintiff and the Class harm.

230.     This Court also should issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with law and industry and government regulatory standards to protect consumers' Personal Information. Specifically, this injunction should, among other things, direct Defendants to:

        a.     engage third party auditors, consistent with industry standards, to test its systems for weakness and upgrade any such weakness found;

b.      audit, test, and train its data security personnel regarding any new or modified procedures and how to respond to a data breach;

c.      regularly test its systems for security vulnerabilities, consistent with industry standards;

d.      implement an education and training program for appropriate employees regarding cybersecurity.

231.      If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendants. The risk of another such breach is real, immediate, and substantial. If another breach at Defendants occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

232.      The hardship to Plaintiff and Class Members if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendants of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

233.      Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendants, thus eliminating the additional injuries that would result to Plaintiff and others whose confidential information would be further compromised.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendants as follows:

a.      An order certifying this action as a class action under CRCP 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff are a proper representative of the Class requested herein;

b.      A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual and statutory damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

c.      An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

i.      Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

ii.     Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

iii.    Ordering that Defendants audit, test, and train its security personnel regarding any new or modified procedures;

iv.      Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

v.      Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for their provisions of services;

vi.      Ordering that Defendants conduct regular database scanning and securing checks; and

vii.      Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

d.      An order requiring Defendants to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.      A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f.      An award of such other and further relief as this Court may deem just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 8, 2023                    Respectfully submitted,

                                            */s/ William B. Federman*_____
                                            William B. Federman
                                            **FEDERMAN & SHERWOOD**
                                            10205 N. Pennsylvania Ave.
                                            Oklahoma City, OK 73120
                                            Telephone: (405) 235-1560
                                            *wbf@federmanlaw.com*

                                            *Counsel for Plaintiff and Proposed Lead
                                            Counsel for the Class*