**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| In re:<br><br>MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL Docket No. 3083 |

**MILLIMAN, INC. AND MILLIMAN SOLUTIONS, LLC'S
INTERESTED PARTY RESPONSE IN SUPPORT OF TRANSFER AND
CENTRALIZATION OF THE RELATED ACTIONS**

Milliman, Inc. and Milliman Solutions, LLC (collectively, the "Milliman Entities"), through their undersigned attorneys, respectfully submit this interested party response in support of the pending motion for transfer and centralization pursuant to 28 U.S.C. § 1407 (Dkt. No. 1) (the "Transfer Motion"), in part, as well as addressing the interested party responses of Plaintiffs in four of the five actions pending against the Milliman Entities filed by the Plaintiff in *Soto* (Dkt. No. 240).[1]

**INTRODUCTION**

The Milliman Entities did not suffer a data security incident at issue in any of the litigation naming them as a defendant—its third-party vendor Pension Benefit Information, LLC ("PBI") did. All of the Plaintiffs in these related actions are aware of this fact. For example, each of these Plaintiffs refer to the notification letter that Plaintiffs received *from PBI*, which disclosed the data security incident involving PBI's systems. In sum, the PBI letter informed individuals that it used file-transfer software developed by Progress Software Corporation ("PSC") known as "MOVEit." PBI's letter explained that an alleged vulnerability in the MOVEit software "was exploited by an unauthorized third party," and one of PBI's transfer servers was accessed by an unauthorized person as a result. (Dkt. No. 215-12 at 56).

Transfer and centralization of these actions is appropriate because they all undoubtedly will involve the actions of [1] PBI, the Milliman Entities' third-party vendor, and [2] PSC, the developer of the MOVEit file-transfer program (which PBI used). Both PBI and PSC are co-defendants in the *Smiley* litigation pending in the Western District of Washington (Case No. 2:23-cv-01354) against the Milliman Entities as well as one of Milliman's clients. To the extent some of the other Plaintiffs alleging claims against the Milliman Entities did not strategically

---

[1] Plaintiff Jose Soto submitted the Interested Party Response, but he noted that he "has been authorized by counsel for Plaintiffs" in three other matters (but not all) pending against the Milliman Entities. *See* Dkt. No. 240 at 1.

- 1 -

name either PSC or PBI as co-defendants in their later-filed cases, the Milliman Entities intend to join them as co-defendants.

If any of the pending litigation against the Milliman Entities survive motions to dismiss (since there is no basis to hold the Milliman Entities liable for any of the alleged vulnerabilities developed by PSC and used by PBI—not the Milliman Entities), centralized proceedings are appropriate, if not required, pursuant to Section 1407. If liability is to attach to any entities other than the unauthorized intruders, it will undoubtedly require discovery of PSC and PBI's data and depositions of its employees/agents. Given the fact that PSC and PBI are inexorably linked to *any* action involving this MOVEit data security incident, Multidistrict Litigation is appropriate to wrangle the current slate of actions pending across the country against PSC, PBI, and their respective clients (and clients of those clients), including those actions recently brought against the Milliman Entities and its clients.

## **BACKGROUND**

The Milliman Entities provide a range of risk-assessment services to clients in multiple industries, including insurance companies. On or about May 31, 2023, PSC, "the provider of MOVEit Transfer software, disclosed [to PBI] that a vulnerability in its software was exploited by an unauthorized third party." (*See* Dkt. No. 215-12 at 56) (copy of PBI Letter). PBI outlined the following relevant information in its letter:

> On or around May 31, 2023, [PSC], the provider of MOVEit Transfer software, disclosed that a vulnerability in its software was exploited by an unauthorized third party. **PBI utilizes MOVEit** in the regular course of our business operations to security transfer files. **PBI promptly launched an investigation** into the nature and scope of the MOVEit vulnerability's impact on our systems. Through the investigation, we learned that **the third party access one of our [*i.e.*, PBI's] MOVEit Transfer servers**. . .

(*See* Dkt. No. 215-12 at 56.) (emphasis added).

Based on the scope of the related actions identified in the Transfer Motion and subsequently identified related actions, it appears that PBI was one of PSC's customers that was impacted by the data security incident. However, neither of the Milliman Entities are PSC's customers, and there is nothing to suggest that any of the Milliman Entities' information technology systems were involved in any respect (because they were not). Despite this indisputable fact, Plaintiffs have brought at least five pending actions against the Milliman Entities in multiple states, one of which includes both PBI and PSC as co-defendants. [*See* Dkt. No. 215) (identifying *Smiley* as a related action).] All of these cases against the Milliman Entities unquestionably involve the events concerning PBI and PSC.

The sprawl of these cases involving PSC and its clients, like PBI, continues to grow by the week. The nucleus of cases are centered in the District of Massachusetts, where PSC is headquartered. As PSC's clients (like PBI) continue to investigate and provide notice of the incident to potentially impacted individuals, the geographical reach of these cases continues to expand—apparently based largely on the location of PBI's clients and, in some cases, the clients of PBI's clients. *See e.g., Gregory v. Milliman Solutions, LLC*, Case No. 3:23-cv-00559-slc (W.D. Wis.) (naming as a co-defendant a client of the Milliman Entities, CMFG Life Insurance Co., which plaintiff identifies as "a Madison, Wisconsin based insurance company. . . .").

All of the actions that currently involve the Milliman Entities are putative nationwide class actions, two of which include a sub-class based on the geographical location of the individual putative class members. All of these cases also assert similar common law claims and alleged violations of state consumer protection statutes as well. These common threads further demonstrate why centralization of these cases brought against the Milliman Entities and co-defendants PSC and PBI is appropriate.

## DISCUSSION

**I.  THE PANEL SHOULD TRANSFER AND CENTRALIZE THESE ACTIONS PURSUANT TO SECTION 1407.**

Centralization pursuant to "Section 1407 does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of additional facts is not significant where the actions *arise from a common factual core.*" *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.* ("AMCA"), 410 F. Supp. 3d 1350, 1353 (U.S. Jud. Pan. Mult. Lit. 2019); *see also In re KeyBank*, 2023 WL 1811824, at *1 (U.S. Jud. Pan. Mult. Lit. 2019) ("[W]e find that these actions involve common questions of fact, and that centralization . . . will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation."). In *Am. Med. Collection Agency, Inc.*, the Panel ordered centralization of all cases involving "a breach that reportedly compromised patent data that various medical diagnostic testing companies had provided to AMCA for billing and collection purposes." *AMCA*, 410 F. Supp. 3d at 1352. The Panel reasoned that "a single MDL encompassing [various clients of AMCA] is necessary to ensure the just an efficient conduct of this litigation," noting that "there is significant overlap in the central factual issues, parties, proposed classes, and claims" that warranted a single MDL. *Id.*, at 1353; *see also* 28 U.S.C. § 1407(a).

Here, the Milliman Entities agree with the numerous other parties supporting centralization that these related actions should be transferred and coordinated pursuant to Section 1407, especially clients of PBI, like Genworth Financial, Inc. *See e.g.*, Dkt. No. 152 (Genworth Response in support of transfer). If the claims against the Milliman Entities (or Milliman's clients) were to survive motions to dismiss, discovery would undoubtedly focus on PSC and PBI's conduct, including PSC's disclosed "vulnerability"; PSC's knowledge and disclosure of the vulnerability to its clients, including PBI and others; PSC's response when it became aware

- 4 -

of the vulnerability; PBI's diligence with regard to selecting PSC's MOVEit software; and PBI's maintenance of the MOVEit software. As Genworth noted in its response, "even an action brought against Genworth [and likewise the Milliman Entities alone], clearly 'involve' PSC and PBI and their 'responsibility for a security breach.'" [*See* Dkt. No. 152 at 6 (quoting Dkt. No. 1 at 1).]

Some—but not all—of the Plaintiffs in the actions pending against the Milliman Entities claim that the actions should not be centralized.[2] (*See* Dkt. No. 240.) They allege that the Panel should resist centralization because it did not do so in the prior matter involving the *Accellion* data security incident. However, in that case, the Panel noted that there were a "small number of involved courts and the preference of most parties to informally coordinate" as the reason why it did not order centralization at that time. *See In re Accellion, Inc. Customer Data Security Breach Litigation*, 543 F.Supp.3d 1372, 1373 (U.S. Jud. Pan. Mult. Lit. 2021). Moreover, in that case, the Panel noted that it was unclear which defendants would be considered the "primary" defendant, and if that were Accellion (akin to PSC), "then only two actions would be transferred." *See id.* at fn. 3.

As illustrated above, *Accellion* is both factually and procedurally distinguishable from these cases involving PSC, PBI, and their customers. Simply put, the facts concerning the MOVEit vulnerability, how the unauthorized person accessed the data, and PSC's response to the incident, are going to pervade every single one of the litigations regardless of whether PSC or its clients (like PBI) are named. All of the cases will involve deposing PSC employees regarding

---

[2] These subset of plaintiffs also allege that the Milliman Entities' cases should be centralized as a separate MDL, but there is no reason for that artificial divide because all of the cases involve the conduct of Milliman's vendor, PBI, and the developer of the MOVEit Software, PSC. Plaintiffs' own expert acknowledges this. *See* Dkt. No. 240.

their knowledge and remediation efforts for example. Similarly, for those many cases involving PBI's systems, their employees and data will have to be produced for examination.

The actions subject to the Transfer Motion and the potential tag-along actions like those involving the Milliman Entities are pending across the country and all relate back to PSC. As a result, efficiencies clearly are gained by centralizing these litigations—this is a classic case ripe for centralization.

## II. THE DISTRICT OF MASSACHUSETTS IS THE MOST APPROPRIATE TRANSFEREE DISTRICT UNDER THE CIRCUMSTANCES

As the Panel has noted in previous orders, it is appropriate to transfer the cases to a district where the primary defendant's senior management is located, especially when the district, like the District of Massachusetts, "is an easily accessible district for this nationwide litigation." *See In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*, 466 F. Supp. 3d 1384, 1385 (U.S. Jud. Pan. Mult. Lit. 2020) (ordering transfer to D. Mass.); *see also In re Samsung Customer Data Sec. Breach Litig.*, No. MDL 3055, 2023 WL 1811247, at *2 (U.S. Jud. Pan. Mult. Lit. Feb. 1, 2023) ("Defendant has its headquarters in New Jersey, where common witnesses and other evidence likely will be found."); *In re Carbon Black Antitrust Litig.*, 277 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) (ordering transfer in part to the District of Massachusetts because "one of the main defendants has its principal place of business in Boston, Massachusetts.").

Here, it is undeniable that the vast amount of witnesses and data are located in Massachusetts where PSC is located. *See also* Dkt. No. 152 at 10 (Genworth Response) (collecting other responses in favor of transfer to Massachusetts). PSC is going to be the central defendant (or cross-defendant) in all of these litigations. To the extent there are other co-defendants like PBI with relevant data and witnesses, they can be shared easily amongst the parties in a single centralized proceeding. To force PSC and PBI (and tangentially related

entities like the Milliman Entities and Genworth Financial, Inc.) to have to litigate in multiple forums across the country is neither efficient nor just. As a result, centralization in Massachusetts—where the lion's share of evidence and potential liability is found—is appropriate.

## **CONCLUSION**

For the foregoing reasons, the Milliman Entities respectfully request that the Panel (i) centralize the actions and transfer them to the District of Massachusetts pursuant to 28 U.S.C. § 1407, and (ii) issue a conditional transfer order as to all of the tag-along actions involving the Milliman Entities to the extent they are not covered by the Panel's Transfer order.

Dated: September 21, 2023

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Craig J. Mariam*
    Craig J. Mariam
    Michael J. Dailey
    Gordon Rees Scully Mansukhani, LLP
    633 West Fifth Street, 52nd Floor
    Los Angeles, CA 90071
    Tel: (213) 576-5000
    Fax: (213) 680-4470
    cmariam@grsm.com
    mjdailey@grsm.com
*Counsel for Defendants Milliman Solutions, LLC and Milliman, Inc. d/b/a Milliman Intelliscript*