# Exhibit 2

## *1:23cv12255, Robinson V. Teachers Insurance And Annuity Association Of America Et Al*

US District Court Docket

United States District Court, Massachusetts

(Boston)

**This case was retrieved on 10/04/2023**

## Header

**Case Number:** 1:23cv12255
**Date Filed:** 10/02/2023
**Assigned To:** Judge Nathaniel M. Gorton
**Nature of Suit:** Personal Property (380)
**Cause:** Fed. Question
**Lead Docket:** None
**Other Docket:** 1:23cv11370, 1:23cv11442
**Jurisdiction:** Federal Question

**Class Code:** Open
**Statute:** 28:1331
**Jury Demand:** Plaintiff
**Demand Amount:** $5,000,000
**NOS Description:** Personal Property

## Participants

### Litigants

Alana Robinson
**Plaintiff**

### Attorneys

PATRICK T. EGAN
ATTORNEY TO BE NOTICED
BERMAN TABACCO
One Liberty Square
Boston, MA  02109
USA
617-542-8300 Email:Pegan@bermantabacco.Com

STEVEN J. BUTTACAVOLI
ATTORNEY TO BE NOTICED
BERMAN TABACCO
One Liberty Square
Boston, MA  02109
USA
617-542-8300 Email:Sbuttacavoli@bermantabacco.Com

Teachers Insurance and Annuity Association of America
**Defendant**
Pension Benefit Information, LLC
**Defendant**
Progress Software Corporation
**Defendant**

## Proceedings

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 1 | 10/02/2023 | COMPLAINT  against Progress Software Corporation, Pension | |

1:23cv12255, Robinson V. Teachers Insurance And Annuity Association Of America Et Al

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Benefit Information, LLC, Teachers Insurance and Annuity Association of America Filing fee: $ 402, receipt number AMADC-10064219 (Fee Status: Filing Fee paid), filed by Alana Robinson. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet, # 3 Category Form)(Buttacavoli, Steven) (Entered: 10/02/2023) | |
| 2 | 10/02/2023 | ELECTRONIC NOTICE of Case Assignment. Judge Nathaniel M. Gorton assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge M. Page Kelley. (Cook, Savannah) (Entered: 10/02/2023) | |
| 3 | 10/02/2023 | Summons Issued as to All Defendants. Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service. (Barbosa, Nilsa) (Entered: 10/02/2023) | |
| 4 | 10/03/2023 | NOTICE of Appearance by Patrick T. Egan on behalf of Alana Robinson (Egan, Patrick) (Entered: 10/03/2023) | |
| 5 | 10/03/2023 | WAIVER OF SERVICE Returned Executed by Alana Robinson. Pension Benefit Information, LLC waiver sent on 10/3/2023, answer due 12/4/2023. (Buttacavoli, Steven) (Entered: 10/03/2023) | |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALANA ROBINSON, individually and on behalf of other similarly situated persons,<br><br>*Plaintiff*,<br><br>vs.<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, PENSION BENEFIT INFORMATION, LLC, and PROGRESS SOFTWARE CORPORATION,<br><br>*Defendants* | Case No. 1:23-cv-12255<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alana Robinson ("Plaintiff" or "Robinson"), by and through her undersigned attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Teachers Insurance and Annuity Association of America ("TIAA"), Pension Benefit Information, LLC ("PBI"), and Progress Software Corporation ("PSC") (collectively, the "Defendants") and makes the following allegations based upon knowledge as to herself and her own acts, and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1. Plaintiff brings this class action against Defendants for their failure to implement and maintain reasonable security measures over personally identifiable information ("Personal Information") entrusted to it—including Plaintiff's and Class members' names, dates of birth, addresses, and Social Security numbers.

2. TIAA is a New York based Fortune 100 financial services organization that provides financial services, such as retirement and annuity-related services, in the academic, research, medical, cultural, and governmental fields.[1] TIAA has been ranked as one of the 500 largest corporations in the United States, with over $1 trillion in assets under management and holdings in more than 50 countries.[2]

3. TIAA hired a vendor, PBI, that provides various tools to financial services institutions such as TIAA.[3] In the course of its services, PBI used software from PSC called "MOVEit" to store and transfer TIAA's client data.[4] Reportedly, PBI regularly used PSC's

---

[1] *See* https://www.tiaa.org/public/about-tiaa/why-tiaa/who-we-are (Last visited Sep. 28, 2023).
[2] *See* https://en.wikipedia.org/wiki/Teachers_Insurance_and_Annuity_Association_of_America (Last visited Sep.28, 2023).
[3] *See* https://www.jdsupra.com/legalnews/pension-benefit-information-notifies (Last visited Sep. 28, 2023).
[4] *Id.*

MOVEit transfer file services for a variety of purposes, including storing and transferring Plaintiff's and Class members' Personal Information.[5]

4.      Between May 29, 2023 and May 30, 2023, a third-party cyber-criminal exploited the MOVEit software, downloading and exporting the data, including Personal Information, of Plaintiff and Class members (the "Data Breach").[6]

5.      On or around June 7, 2023, a well-known cybergang, Clop, claims to have perpetrated this Data Breach so that it could sell private information like the Personal Information of Plaintiff and Class members on the dark web.[7] Clop publicly claimed that they were behind the MOVEit Data Breach but would not share the number of organizations breached. As is common in these cyberattacks, Clop instead threatened to expose their victims' Personal Information on their data leak site if a ransom was not promptly paid: "AFTER 7 DAYS ALL YOU DATA WILL START TO BE PUBLICATION" (sic).[8]

6.      Once Personal Information is exposed on the dark web, criminals buy and sell it for purposes such as opening fraudulent credit accounts or loans in the names of their victims, making purchases with victims' credit cards, stealing victims' tax refunds, and draining victims' financial accounts.[9] These crimes cause significant harm to victims that can last for years, particularly when, like here, information as immutable and valuable as Social Security numbers is involved.

7.      As a result of Defendants' failure to protect Plaintiff's and Class members' Personal Information, over 2.6 million Class members suffered concrete injury in fact including but not

---

[5] *Id*.
[6] *See* https://apps.web.maine.gov/ (Last visited Sep. 28, 2023).
[7] *See* https://www.techtarget.com/searchsecurity/news/State-governments-among-victims-of-MoveIT-Transfer-breach (Last visited Sep. 28, 2023).
[8] *See* https://www.bleepingcomputer.com/us-govt-offers-10-million-bounty-for-info-on-clop-ransomware/ (Last visited Sep. 28, 2023).
[9] *See* https://www.identityforce.com/blog/what-is-pii (Last visited Sep. 28, 2023).

limited to: (i) lost or diminished value of their Personal Information; (ii) lost opportunity costs essential to mitigating the consequences of the Data Breach, including but not limited to lost time; (iii) invasion of privacy; and (iv) the continued and increased risk to their Personal Information, which remains available for unauthorized third parties to access and abuse.[10] Additionally, because Defendants continue to maintain Class members' Personal Information without employing adequate data security protocols, Class members remain at imminent risk of future unauthorized disclosures.

8.      Thus, Plaintiff, on behalf of herself and all others similarly situated, brings this Action for restitution, actual damages, nominal damages, statutory damages, injunctive relief, disgorgement of profits, and all other relief that this Court deems just and proper.

## II.      PARTIES

### Plaintiff

9.      **Plaintiff Robinson** is, and at all times material hereto was, an individual resident and citizen of New York.

### Defendants

10.      **Defendant TIAA** is a New York based company, with its headquarters and principal place of business located at 730 Third Avenue, New York, New York 10017.

11.      **Defendant PBI** is a Minnesota based company, with its headquarters and principal place of business located at 333 South 7th Street, Suite 2400, Minneapolis, Minnesota 55402.

12.      **Defendant PSC** is a Massachusetts based company, with its global headquarters and principal place of business located at 15 Wayside Road, Suite 400, Burlington Massachusetts 01803.

---

[10] *See* https://apps.web.maine.gov/ (Last visited Sep. 28, 2023).

III.     JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, including but not limited to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 members of the proposed class, and at least one member of the class is a citizen of a state different from Defendants.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Defendants because PSC is headquartered in this District, and all Defendants are authorized to do business in this District and regularly conduct business in this District, and Defendants have sufficient minimum contacts with this state and/or sufficiently avail themselves of the markets of this state through their promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible. In addition, the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated in part from this District.

15.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendants are residents of and/or do business in this District, have intentionally availed themselves of the laws and markets within this District by conducting substantial business in this District, and a significant portion of the facts and circumstances giving rise to this Complaint occurred in or emanated from this District.

IV.     FACTUAL ALLEGATIONS

    A.     Background.

16.     TIAA is a New York based financial services company. To obtain TIAA's services, Plaintiff and Class members were required to provide sensitive, confidential, and immutable

information to TIAA, that included their names, Social Security numbers, dates of birth, address, and gender. At the time of the Data Breach, the information held by Defendants included the Personal Information of Plaintiff and Class members.

17. In the course of providing its services to consumers, TIAA made promises and representations to customers that Personal Information it collected would be kept safe and confidential, and the privacy of that Personal Information would be maintained.[11]

18. TIAA emphasizes the importance of keeping Personal Information safe stating "We're committed to your privacy" and "The privacy of your personal information is something we take seriously."[12] TIAA's publicized privacy notice states:

> **Security of your information**
>
> TIAA protects the personal information you provide against unauthorized access, disclosure, alteration, destruction, loss, or misuse. Your personal information is protected by physical, electronic, and procedural safeguards in accordance with federal and state standards. These safeguards include appropriate procedures for access and use of electronic data, provisions for the secure transmission of sensitive personal information on our website, and telephone system authentication procedures. Additionally, we limit access to your personal information to those TIAA employees and agents who need access in order to offer and provide products or services to you. We also require our service providers to protect your

---

[11] *See* https://www.tiaa.org/public/support/privacy/privacy-notice (Last visited Sep. 28, 2023).
[12] *See* https://www.tiaa.org/public/support/privacy (Last visited Sep. 28, 2023).

personal information by utilizing the privacy and security safeguards required by law.[13]

**B.      The Data Breach.**

19.      TIAA hired a vendor, PBI, that provides various tools to financial services institutions such as TIAA.[14] In the course of providing its services, PBI used software from PSC called "MOVEit" to store and transfer TIAA's client data. Reportedly, PBI regularly used PSC's MOVEit transfer file services for a variety of purposes, including storing and transferring Plaintiff and Class members' Personal Information.[15]

20.      Between May 29, 2023 and May 30, 2023, a third-party cyber-criminal exploited the MOVEit software, downloading and exporting the data of Plaintiff and Class members (the "Data Breach").[16]

21.      On June 6, 2023, a well-known cybergang, Clop, claims to have perpetrated this Data Breach so that it could sell private information like the Personal Information of Plaintiff and Class members on the dark web.[17] Clop publicly claimed that they were behind the MOVEit Data Breach but would not share the number of organizations breached. As is common in these cyberattacks, Clop instead threatened to expose their victims' Personal Information on their data leak site if a ransom was not promptly paid:

---

[13] *See* https://www.tiaa.org/public/support/privacy/privacy-notice (Last visited Sep. 28, 2023).
[14] *See* https://www.jdsupra.com/legalnews/pension-benefit-information-notifies (Last visited Sep. 28, 2023).
[15] *See* https://www.jdsupra.com/legalnews/pbi-data-breach (Last visited Sep. 28, 2023).
[16] *See* https://apps.web.maine.gov/ (Last visited Sep. 28, 2023).
[17] *See* https://www.bleepingcomputer.com/clop-ransomware-claims-responsibility-for-moveit-extortion-attacks (Last visited Sep. 28, 2023).
.



22.     TIAA and PBI reported to the Maine Attorney General that the Data Breach comprised the Personal Information of over 2.6 million current consumers.[19] To date, none of the

---

[18] *See* https://www.bleepingcomputer.com/news/security/us-govt-offers-10-million-bounty-for-info-on-clop-ransomware (Last visited Sep. 28, 2023).

[19] *See* https://apps.web.maine.gov/ (Last visited Sep. 28, 2023).

Defendants have claimed whether they have paid any ransom or secured the stolen Personal Information of Plaintiff and other consumers.

23.    On or around July 14, 2023, TIAA's vendor PBI began notifying TIAA's customers with a letter ("Notice Letter"), describing the Data Breach that occurred when PBI enabled the access of individuals' Personal Information by an unauthorized party[20]:

> **What Happened?** On or around May 31, 2023, Progress Software, the
> provider of MOVEit Transfer software disclosed a vulnerability in their
> software that had been exploited by an unauthorized third party. PBI
> utilizes MOVEit in the regular course of our business operations to
> securely transfer files. PBI promptly launched an investigation into the
> nature and scope of the MOVEit vulnerability's impact on our systems.
> Through the investigation, we learned that the third party accessed one of
> our MOVEit Transfer servers on May 29, 2023 and May 30, 2023 and
> downloaded data. We then conducted a manual review of our records to
> confirm the identities of individuals potentially affected by this event and
> their contact information to provide notifications.
>
> **What Information Was Involved?** Our investigation determined that the
> following types of information related to you were present in the server at
> the time of the event: name, Social Security number, date of birth, address
> and gender.

---

[20] *See* https://www.jdsupra.com/legalnews/pension-benefit-information-notifies (Last visited Sep. 28, 2023).

> **What We Are Doing.** We take this event and the security of information
> in our care seriously. Upon learning about this vulnerability, we promptly
> took steps to patch servers, investigate, assess the security of our systems,
> and notify potentially affected customers and individuals associated with
> those customers. In response to this event, we are also reviewing and
> enhancing our information security policies and procedures.[21]

24.　　The Notice Letter did not include the dates of Defendants' investigations, root causes of the Data Breach, or specific remedial measures that will be undertaken to ensure such a breach does not occur again.[22] Up to this date, these omitted details have not been clarified to Plaintiff and Class members.

25.　　In the Notice Letter, PBI offers 24 months of identity monitoring services, thereby essentially admitting that they have caused irreparable and ongoing harm, which is wholly inadequate to compensate Plaintiff and Class members.[23] Victims of data breaches and other unauthorized disclosures often face multiple years of on-going identity theft and financial fraud. For this reason, this solatium fails to provide sufficient compensation for the harm that has been done and could continue to increase overtime.

**C.　　Industry standards, identity theft, and protection of Personal Information.**

26.　　It is well known that Personal Information, and financial account information in particular, is an invaluable commodity and a frequent target of hackers. Despite this widespread knowledge and industry alerts of other notable data breaches, Defendants failed to take reasonable steps to adequately protect its systems from being breached.

---

[21] *See* Exhibit A.
[22] *Id*.
[23] *Id*.

27.　　According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.[24]

28.　　Defendants are, and at all relevant times have been, aware that the Personal Information it maintains is highly sensitive and could be used for illegal purposes by third parties.

29.　　Consumers place a high value not only on their Personal Information, but also on the privacy of that data. This is because identity theft causes significant "financial hardships that may… last for months or years"[25], as well as "significant emotional and physical stress."[26]

30.　　Consumers are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers."[27] There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiff and Class members cannot obtain new numbers unless they become a victim of social security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems … and won't guarantee … a fresh start."[28]

31.　　In light of the multiple high-profile data breaches targeting financial institutions and consumer-facing companies like Morgan Stanley, Target, eBay, Anthem, and Equifax,

---

[24] Javelin Strategy & Research, *Identity Fraud Hits All Time High With 16.7 Million U.S. Victims in 2017, According to New Javelin Strategy & Research Study* (Feb. 6, 2018), https://www.javelinstrategy.com/press-release/identity-fraud.

[25] *See* https://lifelock.norton.com/learn/identity-theft-resources/(Last visited Sep. 28, 2023).

[26] *See* https://www.ojp.gov/feature/identity-theft/overview (Last visited Sep. 28, 2023).

[27] Cameron Huddleston, *How to Protect Your Kids From the Anthem Data Breach*, Kiplinger, (Feb. 9, 2015), https://www.kiplinger.com/article/credit.

[28] Social Security Admin., Identity Theft and Your Social Security Number at 6-7, https://www.ssa.gov/pubs.

Defendants are, or reasonably should have been, aware of the importance of safeguarding its customers' Personal Information, as well as of the foreseeable consequences of its systems being breached. In fact, in 2021, a number of companies experienced a similar breach involving a software tool developed by Accellion that lead to the stealing and exposure of their confidential data. These events clearly put Defendants on notice that it should have shored up its vendors security protocols and usage of third-party software for managing or transferring data.

32.     Nonetheless, Defendants failed to upgrade and maintain their data security systems in a meaningful way so as to prevent the Data Breach. Had Defendants properly maintained their systems and adequately protected them through industry standard protocols, they could have prevented the Data Breach.

33.     Defendants had a duty to Plaintiff and Class members to properly secure their Personal Information, encrypt, tokenize, and maintain their Personal Information using industry standard methods, using widely available technology to defend its systems from invasion, acting reasonably to prevent foreseeable harm to Plaintiff and Class members, and promptly notify Plaintiff and Class members when Defendants became aware of the potential that their customers' Personal Information may have been compromised. Defendants purposefully chose not to fulfill these obligations, and Plaintiff and Class members now bring this suit for damages and appropriate injunctive relief.

34.     Plaintiff and Class members provided their Personal Information to Defendants with the reasonable expectation and mutual understanding that Defendants would abide by their obligations to keep this Personal Information confidential and secure from any unauthorized use.

35.     Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their Personal Information. It is reasonable for Plaintiff and Class member to

12

have relied on the sophistication of Defendants to keep their Personal Information confidential and secure in compliance with state and federal law, to use this information only when necessary, and to solely make authorized disclosures of the information. The confidentiality of this Personal Information is important to Plaintiff and Class members for obvious reasons and they demand the security that Defendants promised them to safeguard this information.

36.     Defendants' business required the submission of Personal Information to perform their services. Without collecting Plaintiff's and Class members' Personal information, Defendants would not have been able to derive a substantial economic benefit.

37.     Due to the nature of its business, obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members Personal Information, Defendants assumed legal and equitable duties and they knew or should have known they had a responsibility to protect Plaintiff's and Class members' Personal Information from disclosure.

**D.     The FTC Act Prohibits Defendants' Conduct**

38.     Defendants are prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

39.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

40.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no

longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.

41.    The FTC further recommends that companies not maintain Personal Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

42.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

43.    Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer Personal Information, or to prevent the disclosure of such information to unauthorized individuals, as reflected by the sensitive Social Security information stolen, constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

44.    Defendants were always fully aware of their obligations to protect the Personal Information of consumers because of their business of obtaining, collecting, and disclosing Personal Information as well as collecting, storing, and using other confidential personal and financial information. Defendants were also aware of the significant repercussions that would result from its failure to do so.

14

## V.     PLAINTIFF'S EXPERIENCES

### *Plaintiff Robinson*

45.     Plaintiff Robinson obtained financial services from Defendants. To obtain these financial services, Plaintiff Robinson was required to provide her Personal Information to Defendant.

46.     Defendants' systems maintained Plaintiff Robinson's Personal Information on May, 29 and May 30, 2023, the time of the Data Breach.

47.     Plaintiff received two Notice Letters of the Data Breach – one from PBI on July 25, 2023, the other from the NYC Department of Education on August 23, 2023. According to the Notice Letter, on or around May 31, 2023 PSC, the provider of MOVEit Transfer Software disclosed a vulnerability in their software that had been exploited by an unauthorized third party. The Notice Letter informed Plaintiff Robinson that her name, Social Security number, gender, date of birth, and address were present in the server at the time of the breach.

48.     PBI is offering Plaintiff 24 months of free credit monitoring.

49.     As a result of learning of the Data Breach, Plaintiff spent time and effort dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the news reports of the Data Breach, corresponding with Defendants exploring and signing up for Kroll credit monitoring, as well as monitoring her information. To date, Plaintiff has spent at least 5 hours dealing with the Data Breach.

50.     Plaintiff suffered actual injury in the form of damages to and diminution of the value of Personal Information - a form of intangible property that Plaintiff entrusted to Defendants for their services, which was compromised in and as a result of the Data Breach.

51.     Plaintiff has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach. This is time Plaintiff Robinson otherwise would have spent performing other activities, such as her job and/or leisurely activities for the enjoyment of life.

52.     Knowing that thieves stole her Personal Information and that Personal Information may be available for sale on the dark web, has caused Plaintiff Robinson emotional distress. She is now very concerned about identity theft in general.

53.     Plaintiff has suffered imminent and impending injury arising from the disclosure of their Personal Information and for the substantially increased risk of fraud, identity theft, and misuse resulting from Personal Information being placed in the hands of unauthorized third parties and criminals.

54.     Plaintiff has a continued interest in ensuring that Personal Information, which remains backed up in Defendants' possession, is protected and safeguarded from further and future breaches.

**VI.     CLASS ACTION ALLEGATIONS**

55.     Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and a Nationwide Class defined as (the "Class"):

> All customers of Defendants whose Personal Information was compromised in the Data Breach.

56.     Plaintiff Robinson also brings claims in this suit as class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all members of the following New York Sub-class:

> All customers of Defendants in New York whose Personal Information was compromised in the Data Breach.

16

57.     Excluded from the Class and New York Sub-Class (collectively "Class" or "Classes") are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants have a controlling interest, and their current or former employees, officers, and directors; (3) counsel for Plaintiff and Defendants and (4) legal representatives, successors, or assigns of any such excluded persons.

58.     The Classes meet all of the criteria required by Federal Civil Rule 23(a).

59.     **Numerosity.** Class members are so numerous that joinder of individual claims is impracticable TIAA and PBI report to the Maine Attorney General that the Data Breach comprised the Personal Information of over 2.6 million current consumers.[29] Class members can be easily identified through Defendants' records and PBI has notified these individuals.

60.     **Commonality and predominance.** Common questions of law and fact exist as to all Class members. These common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

a.      Whether Defendants engaged in wrongful conduct as alleged herein;

b.      Whether Defendants owed a duty to Plaintiff and Class members to adequately protect their Personal Information and to provide timely and accurate notice of the Data Breach to Plaintiff and Class members, and whether Defendants willfully, recklessly, or negligently breached these duties;

---

[29] *See* https://apps.web.maine.gov/ (Last visited Sep. 28, 2023).

c.      Whether Defendants willfully, recklessly, or negligently failed to maintain and execute reasonable procedures to prevent unauthorized access to its data security networks and to Plaintiff's and Class members' Personal Information;

d.      Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the Data Breach;

e.      Whether Defendants failed to inform Plaintiff and Class members of the Data Breach in a timely and accurate manner;

f.      Whether Defendants continue to breach their duties to Plaintiff and Class members;

g.      Whether Defendants have sufficiently addressed or remedied Plaintiff's and Class members' injuries and have taken adequate preventive and precautionary measures to ensure that Plaintiff and Class members will not experience further harm;

h.      Whether Defendants engaged in unfair or deceptive practices by failing to disclose they failed to properly safeguard Plaintiff's and Class members' Personal Information;

i.      Whether Defendants violated the consumer protection statutes applicable to Plaintiff and members of the Class;

j.      Whether Plaintiff and Class members suffered damages as a proximate result of Defendants' conduct or failure to act; and

k.      Whether Plaintiff and Class members are entitled to damages, equitable relief, and other relief.

61.    **Typicality.** Plaintiff's claims are typical of the claims of the Class they seek to represent. Plaintiff's, like all Class members, have suffered harm as a result of Defendants' failure to adequately protect their Personal Information.

62. **Adequacy.** Plaintiff will fairly and adequately protect the interests. She has no interests adverse to any class members, and she is represented by qualified counsel experienced in class action litigation.

63. **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if Class members could afford individual litigation, the judicial system could not. In addition to the burden and expense of managing many actions arising from the Data Breach, individual litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

64. In the alternative, the proposed classes may be certified because:

a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

b. the prosecution of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party Class members, or which would substantially impair their ability to protect their interests; and

c. Defendants acted or refused to act on grounds generally applicable to the proposed class, thereby making appropriate final and injunctive relief with respect to members of the Class as a whole.

## VII.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT
### (Against Defendant TIAA Only)

65.    Plaintiff realleges each and every allegation above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

66.    Plaintiff and Class members entered into a contract with Defendant TIAA when they joined TIAA. In order to use TIAA's services Plaintiff and Class members were forced to provide their Personal Information, which TIAA agreed to receive, store, utilize, transfer, and protect.

67.    TIAA received a benefit when it received Plaintiff and Class members' Personal Information.

68.    Plaintiff and Class members would not have provided their Personal Information to TIAA if they knew TIAA would not safeguard their Personal Information as promised.

69.    TIAA violated the contracts when it failed to employ reasonable and adequate privacy practices and measures, which led to the disclosure of Plaintiff's and Class members' Personal Information for purposes not required or permitted under the contracts or the law.

70.    Plaintiff and Class members are damaged by TIAA's conduct, and will incur harms and injuries arising from the Data Breach now and in the future.

### SECOND CAUSE OF ACTION

### BREACH OF IMPLIED CONTRACT
### (Against all Defendants)

71.    Plaintiff realleges each and every allegation above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

20

72.     When Plaintiff and Class members provided their Personal Information to Defendants, they entered into implied contracts, in which Defendants agreed to protect their Personal Information.

73.     Defendants solicited applicants, including Plaintiff and Class members, to use their portal.

74.     An implied term of Defendants' offer was that Defendants would, by reasonable or industry-standard means, safeguard Personal Information.

75.     Plaintiff and Class members accepted Defendants' offer when they provided Personal Information to Defendants in order to utilize Defendants' services.

76.     Plaintiff and Class members would not have provided their Personal Information to Defendants if they knew Defendants would not safeguard their Personal Information as agreed.

77.     Defendants violated the contracts by failing to use reasonable and adequate privacy practices and measures, leading to the disclosure of Plaintiff's and Class members' Personal Information for purposes not required or permitted under the contracts.

78.     Plaintiff and Class members have been injured by Defendants' conduct, incurring the harms and injuries arising from the Data Breach now and in the future.

## THIRD CAUSE OF ACTION

### BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
**(Against all Defendants)**

79.     Plaintiff realleges each and every allegation above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

80.     Defendants entered into one or more written contracts with Plaintiff and the Class (i.e. their clients) and with each other to provide services for the benefit of Plaintiff and Class Members, including, but not limited to, financial services, retirement benefits services,

administrative services, data storage and transfer services, and information technology services, for the benefit of Plaintiff and the Class.

81.     As part of those agreements, Defendants agreed to implement adequate security measures to protect the Personal Information of Plaintiff and the Class and timely and adequately notify them of the Data Breach.

82.     These contracts were made expressly for the benefit of Plaintiff and the Class, since Plaintiff and Class members were the intended third-party beneficiaries of the contracts entered into between Defendants and their clients. Defendants knew that they breached these contracts with their clients, the clients' current and formers employees, Plaintiff and Class members, would be harmed.

83.     Defendants breached the contracts they entered into with their clients by, among other things, failing to (i) use reasonable data security measure, (ii) implement adequate protocols and employee training sufficient to protect Plaintiff's Personal Information from unauthorized disclosure to third parties, and (iii) promptly and adequately notify Plaintiff and Class members of the Data Breach.

84.     Plaintiff and Class members were harmed by Defendants' breaches of contract as such breaches are alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof, as well as their costs and attorneys' fees incurred in this action.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
(Against all Defendants)

85.     Plaintiff realleges each and every allegation above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

86.     As described above, Plaintiff and Class members were parties to and/or third-party beneficiaries under the contracts with and/or between Defendants. They also maintained an implied contract with TIAA when they provided their Personal Information.

87.     Inherent in every contract is that implied covenant of good faith and fair dealing, which Defendants violated when they failed to maintain reasonable data security protocols, leading to the disclosure of Plaintiff's and Class members' Personal Information for purposes not required or permitted under the contracts.

88.     Plaintiff and Class members have been injured by Defendants conduct, incurring the harms and injuries arising from the Data Breach now and in the future and are entitled to the losses and damages they have sustained as a direct and proximate result thereof, as well as their costs and attorneys' fees incurred in this action.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE
### (Against all Defendants)

89.     Plaintiff realleges each and every allegation above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

90.     Plaintiff and Class members entrusted Defendants with their Personal Information, which is highly sensitive and valuable data subject to confidentiality.

91.     Obtaining and storing Plaintiff's and Class members' Personal Information, created a duty of reasonable care that Defendants must take in safeguarding this Personal Information.

92.     Defendants' networks, systems, protocols, policies, procedures and practices were not adequately designed, implemented, maintained, monitored and tested to ensure that Plaintiff's and Class members' Personal Information was secured from release, disclosure, and/or publication.

93. Defendants' networks, systems, protocols, policies, procedures and practices were not reasonable given the sensitivity of the Plaintiff's and Class member's Personal Information.

94. Upon discovery of the breach, Defendants should have immediately reported the Data Breach to Plaintiff and Class members, credit reporting agencies, the Internal Revenue Service, financial institutions, and all other third parties might have a right to know and the ability to mitigate harm to Plaintiff and Class members.

95. Despite knowing their networks, systems, protocols, policies, procedures and practices were not adequately designed, implemented, maintained, monitored and tested to ensure that Plaintiff's and Class members' Personal Information were secured from release, disclosure, and publication, Defendants ignored the inadequacies and the risk of release, disclosure, and publication they had created.

96. Defendants' behavior illustrates a reckless disregard for Plaintiff's and Class members' rights. Defendants' negligence is directly linked to Plaintiff's and Class members' injuries.

97. As a result of Defendants' reckless disregard for Plaintiff's and Class members' rights, failing to secure their Personal Information despite knowing their networks, systems, protocols, policies, procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiff and Class members suffered injury. This injury includes but is not limited to the impermissible release, disclosure, and publication their Personal Information as well as exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Indeed, Plaintiff have themselves actually suffered such harm already. This is all directly and indirectly caused by Defendants' negligence.

98.    Plaintiff and Class members must now monitor their financial accounts and credit histories more closely and frequently and have incurred and will continue to incur costs for the time and expense necessary to obtain credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The prohibited release, disclosure, and publication of Plaintiff's and Class members' Personal Information has also diminished the value of their Personal Information.

99.    The harm to Plaintiff and the Class members was a proximate and reasonably foreseeable result of Defendants' breaches of their duties of reasonable care in safeguarding Class members' Personal Information.

100.    Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION

### NEGLIGENCE PER SE
### (Against all Defendants)

101.    Plaintiff realleges each and every allegation above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

102.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses of failing to use reasonable measures to protect data collected on consumers.

103.    Defendants violated Section 5 of the FTC Act when they failed to use reasonable measures to protect Personal Information and comply with applicable industry standards. Defendants' conduct is particularly unreasonable given the nature and amount of Personal Information they obtained and stored, as well as the foreseeable consequences of a data breach, including the immense damages that would result to Plaintiff and Class members.

104.    Defendant's violation of Section 5 of the FTC Act constitutes negligence per se.

105.    Plaintiff and the other Class members are within the class of persons that the FTC Act was intended to protect.

106.    The harm that occurred as a result of the Data Breach is the type of harm that the FTC Act was intended to protect against. Previously the FTC pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable security measures and avoid unfair or deceptive practices, caused similar harm to the harm suffered by Plaintiff and Class members as a result of the Data Breach.

107.    This injury and harm suffered by Plaintiff and Class members was the direct and proximate result of Defendants' violations of the FTC Act and similar state statutes. Plaintiff and Class members have suffered actual damages, including identity theft, improper disclosure of their Personal Information, lost value of their Personal Information, lost time and money incurred to mitigate and remediate the effects of the Data Breach, and increased risk of identity theft that continues to injure them in the future.

## SEVENTH CAUSE OF ACTION

### INVASION OF PRIVACY
### (Against all Defendants)

108.    Plaintiff realleges each and every allegation above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

109.    Defendants invaded Plaintiff's and Class members' right to privacy when they allowed unauthorized access to their Personal Information and negligently maintained the confidentiality of Plaintiff's and Class members' Personal Information, as set forth above.

110.    The intrusion was offensive and objectionable to Plaintiff, the Class members, and any reasonable person.

111.    The intrusion was into a place or thing which was private and is entitled to be private.

112.    As a proximate result of Defendants' above acts, Plaintiff's and Class members' Personal Information was viewed, distributed, and used by persons without written authorization, thereby causing them damages.

113.    Defendants are guilty of oppression, fraud, or malice by allowing the unauthorized disclosure of Plaintiff's and Class members' Personal Information with a willful disregard of their right to privacy.

114.    Defendants' wrongful conduct will continue to cause Plaintiff and Class members great and irreparable injury unless and until enjoined and restrained by court order, as the Personal Information maintained by Defendants can be viewed, printed, distributed, and used by unauthorized persons.

115.    Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for the monetary damage will not cease the invasion of privacy for Plaintiff and the Class.

## EIGHTH CAUSE OF ACTION

### BREACH OF CONFIDENCE
### (Against all Defendants)

116.    Plaintiff realleges each and every allegation above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

117.    As alleged above, Plaintiff and Class members had agreements with Defendants, both express and implied, that required Defendants to keep their Personal Information confidential.

118.    Defendants breached that confidence by disclosing Plaintiff's and Class members' Personal Information without their authorization and for unnecessary purposes.

119. As a result of the Data Breach, Plaintiff and Class members suffered damages that were attributable to Defendants' failure to maintain confidence in their Personal Information.

## NINTH CAUSE OF ACTION

### DECLARATORY JUDGMENT
### (Against all Defendants)

120. Plaintiff realleges each and every allegation above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

121. Defendants failed to fulfill their obligations to provide adequate and reasonable data security measures for the Personal Information of Plaintiff and the Class, as evidenced by the Data Breach.

122. As a result of the Data Breach, Defendants' systems are more vulnerable to access by unauthorized parties and require more stringent measures to be taken to safeguard the Plaintiff's and Class members' Personal Information going forward.

123. An actual controversy has arisen in the wake of the Data Breach regarding Defendants' current obligations to provide data security measures that will adequately protect Plaintiff's and Class members' Personal Information.

124. Plaintiff seeks a declaration that Defendants must implement specific additional, prudent, industry-standard data security practices to provide reasonable protection and security to Plaintiff's and Class members' Personal Information. Specifically, Plaintiff and the Class seek a declaration that Defendants' existing security measures do not comply with their obligations, and that Defendants must implement and maintain reasonable data security measures on behalf of Plaintiff and the Class to comply with its data security obligations.

## TENTH CAUSE OF ACTION

### UNJUST ENRICHMENT
### (Against all Defendants)

125.    Plaintiff realleges each and every allegation above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

126.    Plaintiff and Class members granted monetary benefits to Defendants when they provided Defendants with their Personal Information. Plaintiff and Class members understood, that in doing so, part of the benefits Defendants derived from the Personal Information would be applied to data security efforts to safeguard the Personal Information.

127.    Defendants were enriched when they saved costs they reasonably should have expended on data security measures to securely maintain Plaintiff's and Class members' Personal Information.

128.    Defendants did not provide the reasonable level of security that would have prevented the Data Breach, and instead avoided their data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

129.    It would be inequitable to allow Defendants to keep hold of the monetary value of the benefit provided by Plaintiff and Class members to each Defendant at the cost of their Personal Information security, since Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

130.    Defendants acquired monetary benefits and Personal Information through inequitable means when they failed to disclose their inadequate security practices previously alleged.

131.   If Plaintiff and Class members knew Defendants had not properly secured their Personal Information, they would not have agreed to provide their Personal Information to Defendants.

132.   Plaintiff and Class members have no adequate remedy at law.

133.   As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered and will suffer injury, included but not limited to: (i) identity theft; (ii) loss of opportunity to control how their Personal Information is used; (iii) the compromise, publication, and/or theft of their Personal Information; (iv) out-of-pocket expenses associated with the prevention, detection, recovery from identity theft, and/or unauthorized use of their Personal Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) continued risk to their Personal Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Personal Information in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

134.   As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm.

135.   Defendants should be compelled to place proceeds that they unjustly received from Plaintiff and Class members into a common fund or constructive trust for their benefit.

## ELEVENTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY
### (Against all Defendants)

136.    Plaintiff realleges each and every allegation above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

137.    In light of their special relationship, Defendants have become the guardians of Plaintiff's and Class members' Personal Information. Defendants have become fiduciaries, created by their undertaking and guardianship of users Personal Information, to act primarily for the benefit of their client's users, including Plaintiff and Class members. This duty included the obligation to safeguard Plaintiff's and Class Members' Personal Information and to timely notify them in the event of a data breach.

138.    Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship. Defendants have breached the fiduciary duties owed to Plaintiff and Class Members by failing to:

(a)     properly encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class members' protected Personal Information;

(b)     timely notify and/or warn Plaintiff and Class members of the Data Breach.

139.    As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Personal Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Personal Information; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from

31

identity theft; (v) the continued risk to their Personal Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect their users' Personal Information in their continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

140.    As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer injury and/or harm.

## TWELFTH CAUSE OF ACTION

## VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW, SECTION 349
### (Against all Defendants)

141.    Plaintiff realleges each and every allegation above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

142.    New York's General Business Law, Section 349, prohibits "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Violations of Section 349 are unlawful and actionable by aggrieved consumers.

143.    At all times herein, Defendants were subject to the requirements of Section 349, which they breached in connection with the Data Breach.

144.    Defendants violated Section 349 by disclosing Plaintiff's and Class members' Personal Information in connection with the Data Breach.

145.    As a result of the Data Breach, Plaintiff and Class members suffered damages that were attributable to Defendants' failure to maintain the confidentiality in their Personal

Information.  Accordingly, pursuant to Section 349(h), Plaintiff and Class members are entitled to actual damages, statutory damages, injunctive relief, attorneys' fees and costs of suit.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the Class, prays for relief as follows:

A.      For an order certifying the Class and appointing Plaintiff as class representative;

B.      Awarding monetary and actual damages and/or restitution, as appropriate;

C.      Awarding punitive damages, as appropriate;

D.      Awarding declaratory and injunctive relief as permitted by law or equity to ensure that the Class has an effective remedy, including enjoining Defendant from continuing its unlawful practices;

E.      Prejudgment interest to the extent allowed by the law;

F.      Awarding all costs, including expert fees and attorneys' fees, expenses, and costs of prosecuting this action; and

G.      Such other and further relief as the Court may deem just and proper.

## IX.   JURY TRIAL DEMAND

Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

Dated: October 2, 2023

Respectfully submitted,

/s/ *Steven J. Buttacavoli*
Patrick T. Egan (BBO #637477)
Steven J. Buttacavoli (BBO #651440)
BERMAN TABACCO
One Liberty Square
Boston, MA 02109
Telephone: 617-542-8300
pegan@bermantabacco.com
sbuttacavoli@bermantabacco.com

**Local Counsel for Plaintiff**

Laurence D. King (*pro hac vice* forthcoming)
Matthew B. George (*pro hac vice* forthcoming)
KAPLAN FOX & KILSHEIMER LLP
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: (415) 772-4700
lking@kaplanfox.com
mgeorge@kaplanfox.com

Joel B. Strauss (*pro hac vice* forthcoming)
Arielle Frank (*pro hac vice* forthcoming)
KAPLAN FOX & KILSHEIMER LLP
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
JStrauss@kaplanfox.com
Afrank@kaplanfox.com

**Counsel for Plaintiff**

# EXHIBIT A



Additional 29978

<<Return Mail Address>>

<<Name 1>> <<Name 2>>
<<Address 1>>
<<Address 2>>                                                                          <<Date>>
<<City>>, <<State>> <<Zip>>
<<Country>>

**<<Notice of Data Breach>>**

Dear <<Name 1>> <<Name 2>>:

Pension Benefit Information, LLC ("PBI") provides audit and address research services for insurance companies, pension funds, and other organizations<<, including <<Data Owner>>.  PBI is providing notice of a third-party software event that may affect the security of some of your information. Although we have no indication of identity theft or fraud in relation to this event, we are providing you with information about the event, our response, and additional measures you can take to help protect your information, should you feel it appropriate to do so.

**What Happened?** On or around May 31, 2023, Progress Software, the provider of MOVEit Transfer software disclosed a vulnerability in their software that had been exploited by an unauthorized third party. PBI utilizes MOVEit in the regular course of our business operations to securely transfer files. PBI promptly launched an investigation into the nature and scope of the MOVEit vulnerability's impact on our systems. Through the investigation, we learned that the third party accessed one of our MOVEit Transfer servers on May 29, 2023 and May 30, 2023 and downloaded data. We then conducted a manual review of our records to confirm the identities of individuals potentially affected by this event and their contact information to provide notifications. We recently completed this review.

**What Information Was Involved?** Our investigation determined that the following types of information related to you were present in the server at the time of the event: name and <<Data Elements>>.

**What We Are Doing**. We take this event and the security of information in our care seriously. Upon learning about this vulnerability, we promptly took steps to patch servers, investigate, assess the security of our systems, and notify potentially affected customers and individuals associated with those customers. In response to this event, we are also reviewing and enhancing our information security policies and procedures.

While we are unaware of any identity theft or fraud as a result of this event, as an additional precaution, PBI is offering you access to <<12/24>> months of complimentary credit monitoring and identity restoration services through Kroll. Details of this offer and instructions on how to activate these services are enclosed with this letter.

**What You Can Do.** We encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors for the next twelve to twenty-four months and to report suspected identity theft incidents to the institution. Please also review the enclosed *Steps You Can Take to Protect Personal Information*, which contains information on what you can do to safeguard against possible misuse of your information. You can also enroll in the credit monitoring services that we are offering.

**For More Information.** If you have additional questions, you may call our toll-free assistance line at <<Kroll Call Center Number>> Monday through Friday from 9:00 am to 6:30 pm Eastern time (excluding U.S. holidays). You may also write to PBI at 333 South Seventh Street, Suite 2400, Minneapolis, MN 55402.

Sincerely,

The PBI Team

**STEPS YOU CAN TAKE TO PROTECT PERSONAL INFORMATION**

## Enroll in Kroll's Monitoring Services

To help relieve concerns and restore confidence following this event, we have secured the services of Kroll to provide identity monitoring at no cost to you for <<12/24>> months. Kroll is a global leader in risk mitigation and response, and their team has extensive experience helping people who have sustained an unintentional exposure of confidential data. Your identity monitoring services include Credit Monitoring, Fraud Consultation, and Identity Theft Restoration.[1]

> Visit <<IDMonitoringURL>> to activate and take advantage of your identity monitoring services.
>
> *You have until <<Date>> to activate your identity monitoring services.*
>
> Membership Number: <<Member ID>>

For more information about Kroll and your Identity Monitoring services, you can visit info.krollmonitoring.com.

## Additional Information

- **Credit Monitoring**. You will receive alerts when there are changes to your credit data—for instance, when a new line of credit is applied for in your name. If you do not recognize the activity, you'll have the option to call a Kroll fraud specialist, who will be able to help you determine if it is an indicator of identity theft.
- **Fraud Consultation**. You have unlimited access to consultation with a Kroll fraud specialist. Support includes showing you the most effective ways to protect your identity, explaining your rights and protections under the law, assistance with fraud alerts, and interpreting how personal information is accessed and used, including investigating suspicious activity that could be tied to an identity theft event.
- **Identity Theft Restoration**. If you become a victim of identity theft, an experienced Kroll licensed investigator will work on your behalf to resolve related issues. You will have access to a dedicated investigator who understands your issues and can do most of the work for you. Your investigator will be able to dig deep to uncover the scope of the identity theft, and then work to resolve it.

## Monitor Your Accounts

Under U.S. law, a consumer is entitled to one free credit report annually from each of the three major credit reporting bureaus, Equifax, Experian, and TransUnion. To order a free credit report, visit www.annualcreditreport.com or call, toll-free, 1-877-322-8228. Consumers may also directly contact the three major credit reporting bureaus listed below to request a free copy of their credit report.

Consumers have the right to place an initial or extended "fraud alert" on a credit file at no cost. An initial fraud alert is a one-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If consumers are the victim of identity theft, they are entitled to an extended fraud alert, which is a fraud alert lasting seven years. Should consumers wish to place a fraud alert, please contact any of the three major credit reporting bureaus listed below.

As an alternative to a fraud alert, consumers have the right to place a "credit freeze" on a credit report, which will prohibit a credit bureau from releasing information in the credit report without the consumer's express authorization. The credit freeze is designed to prevent credit, loans, and services from being approved in a consumer's name without consent. However, consumers should be aware that using a credit freeze to take control over who gets access to the personal and financial information in their credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application they make regarding a new loan, credit, mortgage, or any other account involving the extension of credit. Pursuant to federal law, consumers cannot be charged to place or lift a credit freeze on their credit report. To request a credit freeze, individuals may need to provide some or all of the following information:

1. Full name (including middle initial as well as Jr., Sr., II, III, etc.);

---

[1] Kroll's activation website is only compatible with the current version or one version earlier of Chrome, Firefox, Safari and Edge. To receive credit services, you must be over the age of 18 and have established credit in the U.S., have a Social Security number in your name, and have a U.S. residential address associated with your credit file.

2. Social Security number;
3. Date of birth;
4. Addresses for the prior two to five years;
5. Proof of current address, such as a current utility bill or telephone bill;
6. A legible photocopy of a government-issued identification card (state driver's license or ID card, etc.); and
7. A copy of either the police report, investigative report, or complaint to a law enforcement agency concerning identity theft if they are a victim of identity theft.

Should consumers wish to place a credit freeze or fraud alert, please contact the three major credit reporting bureaus listed below:

| Equifax | Experian | TransUnion |
|---|---|---|
| https://www.equifax.com/personal/credit-report-services/ | https://www.experian.com/help/ | https://www.transunion.com/credit-help |
| 1-888-298-0045 | 1-888-397-3742 | 1-800-916-8800 |
| Equifax Fraud Alert, P.O. Box 105069 Atlanta, GA 30348-5069 | Experian Fraud Alert, P.O. Box 9554, Allen, TX 75013 | TransUnion Fraud Alert, P.O. Box 2000, Chester, PA 19016 |
| Equifax Credit Freeze, P.O. Box 105788 Atlanta, GA 30348-5788 | Experian Credit Freeze, P.O. Box 9554, Allen, TX 75013 | TransUnion Credit Freeze, P.O. Box 160, Woodlyn, PA 19094 |

## Additional Information

Consumers may further educate themselves regarding identity theft, fraud alerts, credit freezes, and the steps they can take to protect your personal information by contacting the consumer reporting bureaus, the Federal Trade Commission, or their state attorney general. The Federal Trade Commission may be reached at: 600 Pennsylvania Avenue NW, Washington, D.C. 20580; www.identitytheft.gov; 1-877-ID-THEFT (1-877-438-4338); and TTY: 1-866-653-4261. The Federal Trade Commission also encourages those who discover that their information has been misused to file a complaint with them. Consumers can obtain further information on how to file such a complaint by way of the contact information listed above. Consumers have the right to file a police report if they ever experience identity theft or fraud. Please note that in order to file a report with law enforcement for identity theft, consumers will likely need to provide some proof that they have been a victim. Instances of known or suspected identity theft should also be reported to law enforcement and the relevant state attorney general. This notice has not been delayed by law enforcement.

*For Colorado and Illinois residents,* you may obtain information from the Federal Trade Commission and the credit reporting agencies about fraud alerts and security freezes.

*For District of Columbia residents*, the District of Columbia Attorney General may be contacted at: 400 6th Street, NW, Washington, D.C. 20001; 202-727-3400; and oag.dc.gov.

*For Iowa residents,* you are advised to report any suspected identity theft to law enforcement, including the Federal Trade Commission and the state Attorney General.

*For Maryland residents*, the Maryland Attorney General may be contacted at: 200 St. Paul Place, 16th Floor, Baltimore, MD 21202; 1-410-528-8662 or 1-888-743-0023; and https://www.marylandattorneygeneral.gov/.

*For Massachusetts residents*, you have the right to obtain any police report filed in regard to this event. If you are the victim of identity theft, you also have the right to file a police report and obtain a copy of it.

*For New Mexico residents*, consumers have rights pursuant to the Fair Credit Reporting Act, such as the right to be told if information in their credit file has been used against them, the right to know what is in their credit file, the right to ask for their credit score, and the right to dispute incomplete or inaccurate information. Further, pursuant to the Fair Credit Reporting Act, the consumer reporting bureaus must correct or delete inaccurate, incomplete, or unverifiable information; consumer reporting agencies may not report outdated negative information; access to consumers' files is limited; consumers must give consent for credit reports to be provided to employers; consumers may limit "prescreened" offers of credit and insurance based on information in their credit report; and consumers may seek damages from violators. Consumers may have additional rights under the Fair Credit Reporting Act not summarized here. Identity theft victims and active-duty military personnel

have specific additional rights pursuant to the Fair Credit Reporting Act. We encourage consumers to review their rights pursuant to the Fair Credit Reporting Act by visiting www.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf, or by writing Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.

*For New York residents,* the New York Attorney General may be contacted at: Office of the Attorney General, The Capitol, Albany, NY 12224-0341; 1-800-771-7755; or https://ag.ny.gov.

*For North Carolina residents*, the North Carolina Attorney General may be contacted at: 9001 Mail Service Center, Raleigh, NC 27699-9001; 1-877-566-7226 or 1-919-716-6000; and www.ncdoj.gov.

*For Oregon residents*, you are advised to report any suspected identity theft to law enforcement, including the Federal Trade Commission and Oregon Attorney General at Oregon Department of Justice, 1162 Court Street NE, Salem, OR 97301-4096, (877) 877-9392, or www.doj.state.or.us.

*For Rhode Island residents*, the Rhode Island Attorney General may be reached at: 150 South Main Street, Providence, RI 02903; www.riag.ri.gov; and 1-401-274-4400. Under Rhode Island law, individuals have the right to obtain any police report filed in regard to this event. Fees may be required to be paid to the consumer reporting agencies. There are approximately [#] Rhode Island residents that may be impacted by this event.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Alana Robinson | Teachers Insurance and Annuity Association of America, Pension Benefit Information, LLC, and Progress Software Corporation |

| (b) County of Residence of First Listed Plaintiff _Kings County_ | County of Residence of First Listed Defendant _New York County_ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Steven J. Buttacavoli<br>Berman Tabacco<br>One Liberty Square, Boston, MA 02109<br>(617) 542-8300 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [x] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 791 Employee Retirement Income Security Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)(2)

Brief description of cause:
Data breach/failure to properly secure and safeguard personally identifiable information.

## VII. REQUESTED IN COMPLAINT:

- [x] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ No less than $5,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE Nathaniel M. Gorton

DOCKET NUMBER 1:23-cv-11370 and 1:23-cv-11442

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 10/2/2023 | */s/ Steven J. Buttacavoli* |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1.  **Title of case (name of first party on each side only)** Alana Robinson v. Teachers Insurance and Annuity Association of America, et al.

2.  **Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).**

    [ ]   I.      160, 400, 410, 441, 535, 830*, 835*, 850, 880, 891, 893, R.23, REGARDLESS OF NATURE OF SUIT.

    [ ]   II.     110, 130, 190, 196, 370, 375, 376, 440, 442, 443, 445, 446, 448, 470, 751, 820*, 840*, 895, 896, 899.

    [X]   III.    120, 140, 150, 151, 152, 153, 195, 210, 220, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 367, 368, 371, 380, 385, 422, 423, 430, 450, 460, 462, 463, 465, 480, 485, 490, 510, 530, 540, 550, 555, 560, 625, 690, 710, 720, 740, 790, 791, 861-865, 870, 871, 890, 950.
            *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3.  **Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.**
    *Diggs v. Progress Software*, 1:23-cv-11370 and *Anastasio v. Progress Software*, 1:23-cv-11442

4.  **Has a prior action between the same parties and based on the same claim ever been filed in this court?**
    YES [ ]   NO [✔]

5.  **Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)**
    YES [ ]   NO [✔]

    **If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?**
    YES [ ]   NO [ ]

6.  **Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?**
    YES [ ]   NO [✔]

7.  **Do all of the parties  in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? -  (See Local Rule 40.1(d)).**
    YES [ ]   NO [ ]

    A.   **If yes, in which division do all of the non-governmental parties reside?**
         Eastern Division [X]      Central Division [ ]      Western Division [ ]

    B.   **If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?**
         Eastern Division [ ]      Central Division [ ]      Western Division [ ]

8.  **If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)**
    YES [ ]   NO [✔]

**(PLEASE TYPE OR PRINT)**
**ATTORNEY'S NAME** Steven J. Buttacavoli
**ADDRESS** Berman Tabacco, One Liberty Square, Boston, MA 02109
**TELEPHONE NO.** (617) 542-8300

**(CategoryForm11-2020.wpd )**